Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail: pmurphy@wpdn.net

Christopher K. Ralston (*Pro Hac Vice* Pending)
Lindsay Calhoun (*Pro Hac Vice* Pending)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone: 504-584-9358
Facimile: 504-568-9130
Email: chris.ralston@phelps.com
         lindsay.calhoun@phelps.com

Attorneys for The Trial Lawyers College

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 MAY 13  PM 2: 28

MARGARET BOTKINS, CLERK
CASPER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING
## CASPER DIVISION

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation <br><br> Plaintiff, <br><br> v. <br><br> GERRY SPENCES TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, a nonprofit corporation, and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, and JOHN DOE, individuals. <br><br> Defendants. | CIVIL ACTION NO. <br> 20 C V 80- J <br><br> **EMERGENCY APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER** |

1

PD.28672392.1

**PLAINTIFF'S EMERGENCY APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT**

PLAINTIFF The Trial Lawyers College, ("Plaintiff" or the "TLC"), complains against DEFENDANTS Gerry Spences Trial Lawyers College at Thunderhead Ranch, Gerald L. Spence, John Zelbst, Rex Parris, Joseph H. Low, Kent Spence, and John Doe (collectively, "Defendants") and as cause thereof states:

## NATURE OF THE ACTION

This action arises out of Defendants' violations of the Lanham Act, 15 U.S.C. §§ 1114, *et. seq.*, and 15 U.S.C. § 1125(a), through its infringement of Plaintiff's federally-registered trademarks and Defendants' unfair competition, false designation of origin, passing off, and false advertising related to TLC's federally-registered trademarks, as well as Defendants' violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Defend Trade Secrets Act, 18 U.S.C. § 1836, and Wyo. Stat. Ann. § 40-24-101, *et seq.*, through Defendants' unauthorized access and misuse of Plaintiff's confidential and proprietary computer files. Plaintiff seeks injunctive, monetary, and declaratory relief under the foregoing Acts and the Declaratory Judgment Act, 28 U.S.C § 2201. At this time, Plaintiff seeks temporary emergency injunctive relief as to its claims under the Lanham Act (Counts 1 and 2) to halt Defendants' infringement of Plaintiff's federally-registered trademarks, unlawfully passing off, and false advertising.

## I.    INTRODUCTION

TLC is a 501(c)(3) nonprofit corporation providing training and education services to lawyers and is organized under the laws of Wyoming.[1]  TLC is led by a Board of Directors (the

---

[1] Verified Complaint ¶ 2.

"Board").[2]  TLC has operated as a Wyoming nonprofit corporation since December 1, 1993.[3] Specifically, pursuant to a lease with the Spence Foundation for People's Attorneys, Inc. (the "Spence Foundation"), TLC has conducted its training and education services at the Thunderhead Ranch in DuBois, WY, since August 1994.[4]

In order to protect its intellectual property, TLC applied to and received from the United States Patent and Trademark Office (the "USPTO") the following federally-registered trademarks:

    a. Per Registration Number 4,197,908 (the "'908 Mark"), registered August 28, 2012, TLC possesses a trademark for "TRIAL LAWYERS COLLEGE" in standard characters, without claim to any particular font, style, size, or color. No claim is made to the exclusive right to use "college," apart from the mark as shown.[5]

    b. Per Registration Number 4,198,054 (the '054 Mark"), registered August 28, 2012, TLC possesses a trademark consisting of a stylized design of a cloud with a bolt of lightning.[6]

TLC has maintained and used the '908 and '054 Marks in interstate commerce since they were issued by the USPTO.[7]

As of April 30, 2020, Defendant Gerry Spences Trial Lawyers College at the Thunderhead Ranch ("GSTLC"), with the aid of Defendants Gerald L. Spence, John Zelbst, Rex Parris, Joseph

---

[2] *Id.*

[3] *Id.* ¶ 3.

[4] *Id.* ¶ 4.

[5] A copy of the '908 Mark is attached to the Verified Complaint as Exhibit "A."

[6] A copy of the '054 Trademark is attached to the Verified Complaint as Exhibit "B." *See also* Verified Complaint ¶ 5.

[7] *Id.* ¶ 6.

H. Low, and Kent Spence (collectively, the "Individual Defendants") and Defendant John Doe ("Doe"), operates as a Wyoming nonprofit corporation with its registered principal place of business in Jackson, Wyoming.[8] Upon information and belief, through GSTLC, Defendants intend to offer services substantially similar to those that TLC has offered since August 1994.[9]

Defendants' use of the business name "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" constitutes infringement of the '908 Mark. Additionally, as described more fully below, Defendants have infringed on TLC's intellectual property by sending and/or authorizing the sending of certain communications and publications that wholly incorporate both the '908 Mark and the '054 Mark (collectively, the "TLC Marks") without TLC's authorization. These recent communications and publications, which Defendants have sent or caused to be sent to TLC alumni, Board members, and other individuals with connections to TLC, as well as to the public, falsely suggest that Defendants represent TLC, and that GSTLC constitutes TLC. Defendants' actions indicate that they seek to pass GSTLC off as TLC, thus misleading and confusing those persons who receive Defendants' communications. Defendants' actions infringe on TLC's Marks and further violate the Lanham Act, Computer Fraud and Abuse Act, Defend Trade Secrets Act, and constitute misappropriation of trade secrets under Wyoming state law.

TLC intends to fully prosecute each of its claims against Defendants, but at this time it specifically seeks emergency injunctive relief to enjoin Defendants from infringing on TLC's Marks, unlawfully passing off GSTLC as TLC and the Individual Defendants as representatives of TLC, and making myriad false statements regarding GSTLC and TLC. TLC has already been harmed by Defendants' actions, and will continue to be harmed irreparably if Defendants are not

---

[8] *Id.* ¶ 7.

[9] *Id.* ¶ 8.

enjoined from their unlawful conduct.  TLC thus seeks emergency injunctive relief in the form of a temporary restraining order to cease Defendants' willful, malicious, and improper conduct.

## II.   STATEMENT OF FACTS

TLC is dedicated to training and educating lawyers and judges who are committed to the jury system and to representing and obtaining justice for individuals; the poor, the injured, the forgotten, the voiceless, the defenseless and the damned, and to protecting the rights of such people from corporate and government oppression.[10]  Since it began operations in August 1994 until May 8, 2020, TLC operated pursuant to a lease agreement at the Thunderhead Ranch, located in Dubois, Wyoming.[11]

Defendant Gerry Spence founded TLC in 1993, and has been affiliated with TLC in various capacities since its founding.[12]  Gerry Spence's prominent role and involvement with TLC is well-known in the legal community.[13]  Defendant Zelbst has been affiliated with TLC in various capacities since 1999.[14]  Defendant Parris has been affiliated with TLC in various capacities since 1995.[15]  Defendant Low has been affiliated with TLC in various capacities since 1998.[16]  Defendant Kent Spence has been affiliated with TLC in various capacities since 1995.[17] Defendant Doe is believed to currently be or have been affiliated with TLC as an alumnus of TLC's education

---

[10] *Id.* ¶ 25.

[11] *Id.* ¶ 26.

[12] *Id.* ¶ 27.

[13] *Id.*

[14] *Id.* ¶ 28.

[15] *Id.* ¶ 29.

[16] *Id.* ¶ 30.

[17] *Id.* ¶ 31.

services and programs.[18]  Each of the Individual Defendants recently served on TLC's Board.[19] As of May 6, 2020, the Individual Defendants' were not elected to the Board, and thus no longer serve on the Board as of that date.[20]

Over the course of the last several years, while serving as members of TLC's Board, the Individual Defendants, led by Gerry Spence, sought to expend TLC's funds to build a library in honor of Gerry Spence at the leased premises (the "Spence Proposal").[21]  However, the TLC Board held a December 2019 vote at a duly noticed Board Meeting and declined to support the Spence Proposal, which would have used TLC funds to build a multi-million dollar facility on land TLC did not own.[22]

As a result of the Board's decision not to support the Spence Proposal, the Individual Defendants have taken a series of retaliatory actions against individual Board members and TLC.[23] Of relevance here, Gerry Spence, through the Spence Foundation, which owns the land upon which the Thunderhead Ranch sits and from whom TLC leased the premises, terminated TLC's lease agreement.[24]  As a result of the termination of the lease agreement, TLC immediately made plans to and did in fact vacate the premises as required by the terms of the lease and the Notice to Vacate letter.[25]  With the exception of some property that it owns and that it intends to remove and two improvement projects that it has undertaken but not completed, TLC vacated the Thunderhead

---

[18] *Id.* ¶ 32.

[19] *Id.* ¶ 33.

[20] *Id.*

[21] *Id.* ¶ 34.

[22] *Id.*

[23] *Id.* ¶ 35.

[24] *Id.* ¶ 36.

[25] *Id.*

6

Ranch by May 8, 2020.[26] TLC has been prevented from removing its property from Thunderhead Ranch and the disposition of this issue will require further legal proceedings.[27]

With knowledge that TLC was in the process of vacating the Thunderhead Ranch due to the Spence Foundation's termination of its lease agreement with TLC, on April 30, 2020, the Individual Defendants caused to be registered with the Wyoming Secretary of State "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" as a Wyoming nonprofit corporation.[28]

Defendants' use of the name "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" is deliberately confusing because it incorporates the '908 Mark, and because it specifically refers to "Gerry Spence" and "the Thunderhead Ranch," both of which were prominently connected to TLC for decades.[29]

TLC maintains confidential and contact information, including email addresses, of its alumni and other individuals, in order, among other reasons, to communicate via several listservs with individuals regarding its services and other works (the "Database").[30] The Database is akin to a customer list.[31] Approximately three years ago, TLC took steps to keep the information contained in the Database confidential, such that only a few individuals affiliated with TLC had access to the information contained therein.[32] TLC also maintains written policies setting the parameters of use for the information contained in the Database.[33] The written policies expressly

---

[26] *Id.* ¶ 37.

[27] *Id.*

[28] *Id.* ¶ 38.

[29] *Id.* ¶ 39.

[30] *Id.* ¶ 40.

[31] *Id.*

[32] *Id.* ¶ 41.

[33] *Id.*

7

prohibit contacting persons whose personal information is stored in the Database to promote competing programs.[34]

Despite these policies and the steps TLC has taken to maintain the confidentiality of the Database, on or before April 30, 2020, the Individual Defendants and Doe, on behalf of Defendant GSTLC, accessed TLC's confidential and proprietary Database to access the contact information stored therein.[35] Defendants used that confidential and proprietary information to create a new listserv (the "New Listserv") and send mass emails to recipients whose information they improperly obtained from the Database.[36] The contact information in the Database was gathered by TLC for its sole use.[37] Defendants' first email to the New Listserv falsely stated that the "old listserve was experiencing difficulties" and that "Gerry Spence authorized a new listserve." The email was sent to the from "Gerry Spence's Trial Lawyer College" (the "April 30 Email").[38]

On May 1, 2020, Defendants posted a video featuring Gerry Spence to YouTube.com, which bears the date April 30, 2020, and as of May 11, 2020, could be accessed at https://www.youtube.com/watch?v=DwBPLFUht5s (the "April 30 Video").[39] The April 30 Video falsely implies that the statements Gerry Spence makes during the video are made on behalf of TLC. Indeed, for several years, TLC has maintained an account with and regularly used YouTube.com to promote its services and works.[40] Further, the April 30 Video wholly

---

[34] *Id.*

[35] *Id.* ¶ 42.

[36] *Id.*

[37] *Id.*

[38] A copy of the April 30 Email is attached to the Verified Complaint as Exhibit "C." *See also* Verified Complaint ¶ 43.

[39] A copy of the April 30 Video is manually attached to the Verified Complaint as Exhibit "D." *See also* Verified Complaint ¶ 44.

[40] *Id.* ¶ 45.

incorporates the TLC Marks without the authorization of TLC, and thus infringes upon those trademarks.[41]

Specifically, the '054 Mark is displayed in the left corner throughout the April 30 Video without TLC's permission.[42]  Additionally, in the video Gerry Spence states: "[m]y vision, my friends, for this college, is you.  And it will stay alive and beautiful and ringing across the land, as long as you're there."[43]  As Gerry Spence refers to "this college," TLC's Marks are also displayed.[44]  Gerry Spence then further states:

> Some people think that Trial Lawyers College is over.  Well, I'd like you to know a marvelous secret.  It's a secret for some, but now, you know it too.  Trial Lawyers College is going to continue.  It's going to continue with marvelous new leadership. We're going to continue forwarding the message of our great institution, that we are an organization dedicated to teaching our trial lawyers how to fight the good battle for ordinary people who need our support and our help.  And, we're going to have classes next year where we teach trial lawyers to represent ordinary people.[45]

The foregoing statements contained in the April 30 Video wrongly suggest that GSTLC is equivalent to TLC.  Further, Defendants' incorporation of TLC's Marks in the video constitutes *per se* infringement of those Marks.

Defendants did not stop there.  On May 6, 2020, after TLC held a Special Board of Directors Meeting, Defendants sent another email to the New Listserv from "Gerry Spence via Gerry Spence's Trial Lawyer College" (the "May 6 Email").[46]  Among other false statements, the

---

[41] *See* Ex. D to Verified Complaint. *See also* Verified Complaint ¶ 44.

[42] Screenshots from the YouTube video are attached to the Verified Complaint as Exhibit "E." *See also* Verified Complaint ¶ 46.

[43] Verified Complaint ¶ 48.

[44] *Id.*

[45] *See* Ex. D to Verified Complaint. *See also* Verified Complaint ¶ 48.

[46] A copy of the May 6 Email is attached to the Verified Complaint as Exhibit "F." *See also* Verified Complaint ¶ 49. *See also* Verified Complaint ¶ 54.

9

May 6 Email falsely portrays the Individual Defendants as speaking on behalf of TLC's Board.[47]
Specifically, Defendants falsely state that on that date, "Rex Parris then moved to elect Gerry
Spence as President and it was seconded but before a vote could be taken John Sloan unilaterally
terminated the zoom board meeting. The TLC board then resumed the meeting and Gerry was
elected President, John Zelbst, V.P., Joey Low Treasurer, and Kent Spence Secretary."[48]  In fact,
those individuals were not elected to those positions on the TLC Board as described therein.[49]
After Defendants sent the May 6 Email, TLC received questions from TLC alumni expressing
confusion as to whether Defendants' communications were on behalf of TLC or another entity.[50]

On May 8, 2020, TLC sent to each of the Defendants, except Defendant Doe who, whose
precise identity is not yet confirmed, cease-and-desist letters requesting that they immediately
cease their unlawful actions as described herein.[51]

Also on May 8, 2020, after TLC sent to each of the Defendants cease-and-desist letters,
Defendants sent another message to the New Listserv with additional false statements (the "May
8 Email").[52]  In the May 8 Email, Defendants falsely claim that: "[p]roperty was recently taken
from Thunderhead Ranch without authorization from the Court responsible for settling the current
dispute. The TLC Board of Directors considers this property to be stolen, and will aggressively
pursue all remedies possible against any individual in possession of the stolen property."[53]  The

---

[47] Verified Complaint ¶ 54.

[48] *Id.* ¶ 55.

[49] *Id.*

[50] *Id.* ¶ 56.

[51] Copies of the cease-and-desist letters are attached to the Verified Complaint *in globo* as Exhibit "G." *See also* Verified Complaint ¶ 57.

[52] A copy of the May 8 email is attached to the Verified Complaint as Exhibit "G." *See also* Verified Complaint ¶ 58.

[53] Verified Complaint ¶ 59.

May 8 Email is signed "Gerry Spence's Trial Lawyers College."[54]  Defendants' statements in the May 8 Email that property was improperly taken is false, as is its statement that the "TLC Board of Directors considers this property to be stolen."[55]  In fact, the property referenced in the May 8 Email is the property of TLC, is considered such by the TLC Board, and remains in TLC's possession.[56]  Collectively, the April 30 Email, the May 6 Email, and the May 8 Email are referred to as the "New Listserv Communications."

Defendants' conduct unlawfully infringes on TLC's Marks, and further violates the Lanham Act because it unlawfully passes off GSTLC as TLC, falsely advertises GSTLC as TLC, and falsely suggests that the Individual Defendants represent TLC.  TLC has been and will continue to be irreparably harmed by Defendants' conduct, and thus, for the reasons set forth below, TLC is entitled to a temporary restraining order enjoining Defendants' unlawful conduct.

## II.    LAW & ARGUMENT

### A.  TLC requires an *Ex Parte* Restraining Order to maintain the status quo.

The purpose of a temporary restraining order is to preserve the status quo of the subject matter of this litigation and prevent irreparable harm until a hearing can be held on a preliminary injunction.[57]  To receive an *ex parte* restraining order, TLC must prove that "immediate and irreparable injury, loss, or damage will result to" TLC before notice can be served and a hearing

---

[54] *Id.*

[55] *Id.* ¶ 60.

[56] *Id.*

[57] *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974); Fed. R. Civ. P. 65(b).

PD.28672392.1

held on the preliminary injunction.[58] "Irreparable injury is frequently presumed where a trademark is appropriated by another."[59]

Here, TLC will suffer immediate and irreparable harm if the Court does not grant a temporary restraining order because Defendants will continue to unfairly and improperly use and benefit from their infringement on TLC's Marks, as well as their passing off GSTLC as TLC to Defendants' benefits and to TLC's detriment. TLC seeks maintenance of the status quo that existed prior to the controversy, that is, Defendants' cessation of infringing uses of the TLC Marks, cessation of their actions intended to confuse the public and falsely designate GSTLC as TLC or otherwise "pass off" GSTLC as equivalent to, the legitimate successor of, or otherwise affiliated with TLC, and cessation of their actions intended to confuse the public into believing that the Individual Defendants represent TLC, rather than GSTLC.

TLC's Application for Temporary Restraining Order is authorized by general principles of equity, federal statutes, federal rules, and Wyoming state law.[60]

An *ex parte* Temporary Restraining Order, without notice to Defendants, is necessary because there is not enough time to give notice to Defendants, hold a hearing, and issue a restraining order before further irreparable injury and harm to TLC occurs. Specifically, Defendants have been consistently and unlawfully communicating via the New Listserv Communications and through the improper use of the information obtained from TLC's Database, as well as through the April 30 Video, and those communications have violated the Lanham Act

---

[58] Fed. R. Civ. P. 65(b).

[59] *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100-001 (10th Cir. 1991), *overruled on other grounds by O Central Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).

[60] *See eBay Inc. v. Merc-Exchange, LLC*, 547 U.S. 388, 391 (2006) (providing that injunctive relief is based on well-established principles of equity).

by: (i) infringing upon the TLC Marks by wholly incorporating them into those communications and publications; (ii) operating under the infringing business name "Gerry Spences Trial Lawyers College at the Thunderhead Ranch"; (ii) intentionally misleading the audience into believing that GSTLC is equivalent to, the legitimate successor of, or otherwise affiliated with TLC; (iii) intentionally misleading the audience into believing that the Individual Defendants represent TLC, rather than GSTLC; and (iv) making myriad misrepresentations regarding GSTLC and TLC in commerce. The full extent of Defendants' unlawful conduct and the harm it causes to TLC has yet to be determined.

In the absence of a restraining order, it is highly likely that upon being served with the Verified Complaint and TLC's Application for Temporary Restraining Order, Defendants will further escalate their unlawful activity, thereby causing further irreparable harm to TLC. Moreover, given Defendants' clear willingness to infringe on TLC's Marks and deliberately mislead the public, there is a significant risk that advance notice to Defendants will only accelerate their unlawful efforts to pass off GSTLC as TLC and to otherwise infringe on TLC's Marks. For these reasons, TLC is entitled to a Temporary Restraining Order without notice to Defendants.

## B. TLC requires a Temporary Restraining Order to protect its federally-registered marks.

Defendants have infringed on TLC's federally-registered Marks by wholly incorporating, without authorization, the TLC Marks into the New Listserv Communications and the April 30 Video. Defendants have also infringed on TLC's federally-registered Marks through the use of the business name "Gerry Spences Trial Lawyers College at the Thunderhead Ranch," which directly incorporates "Trial Lawyers College," which is protected by the '908 Mark. TLC is entitled to injunctive relief as a result of Defendants' unlawful conduct.

Section 32 of the Lanham Act:

13

allows the owner of a registered mark to bring an action for infringement against any person who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of [the] registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." [61]

Further, "[t]he Lanham Act prohibits the unauthorized use of a reproduction, copy, or imitation of a registered trademark in a way that 'is likely to cause confusion' with the registered mark."[62] "Confusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers."[63] As described below, Defendants' wholesale, unauthorized use of TLC's Marks are intended to and will cause confusion between GSTLC and TLC, and thus, TLC is entitled to a temporary restraining order enjoining Defendants' conduct.

Courts recognize that "[c]onfusion can be of several sorts."[64] For instance, "consumers may experience direct confusion of source when they develop the mistaken belief that the plaintiff is the origin of the defendant's goods or services—so that the defendant capitalizes on the plaintiff's good name," and "[t]he classic case of direct confusion occurs when '[c]ustomers want to buy the [plaintiff's] product and because of the similarity of the marks, mistakenly buy the [defendant's] product instead."[65] "Confusion need not be limited to the incorrect perception that one party was the source of the other party's product or service; it may also arise from 'a mistaken belief in common sponsorship or affiliation.'"[66] Additionally, a defendant may cause "initial-

---

[61] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (quoting 15 U.S.C. § 1114(1)(a)).

[62] *Jordache Enter., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1484 (10th Cir. 1987) (quoting 15 U.S.C. § 1114(1)(a)).

[63] *Id.* (citations omitted).

[64] *1-800 Contacts*, 722 F.3d at 1238.

[65] *Id.* at 1238-39 (quoting *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238 (10th Cir. 2006); Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:10 at 23-70 (4th ed. 2013)).

[66] *Id.* at 1239 (quoting *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir. 1984)).

14

interest confusion," which "results when a consumer seeks a particular trademark holder's product and instead is lured to the product of a competitor by the competitor's use of the same or a similar mark."[67] Initial-interest confusion "occurs even if the consumer becomes aware of the defendant's actual identity before using the product."[68]

The U.S. Court of Appeals for the Tenth Circuit has identified six non-exhaustive factors that are "relevant to whether there is a likelihood of confusion between two marks," including:

> (a) the degree of similarity between the marks;
> (b) the intent of the alleged infringer in adopting its mark;
> (c) evidence of actual confusion;
> (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties;
> (e) the degree of care likely to be exercised by purchasers; and
> (f) the strength or weakness of the marks.[69]

The Tenth Circuit advises that these factors "should not be applied mechanically; some factors may carry far more weight than others depending on the circumstances."[70] For instance, at the pleading stage, "[w]ithout the benefit of discovery, it is premature to expect _evidence_ of actual confusion."[71]

### a. TLC is likely to prevail on its trademark infringement claim for Defendants' unauthorized use of TLC's federally-protected Marks in their communications.

As an initial matter, TLC's Marks are federally-registered, and thus TLC has made a prima facie showing "of both the mark[s'] validity and the registrant's exclusive right to use it in

---

[67] _Australian Gold_, 436 F.3d at 1238.

[68] _1-800 Contacts_, 722 F.3d at 1239 (citing _Australian Gold_, 436 F.3d at 1238-39).

[69] _Id._ at 1239 (citing _King of the Mountain Sports, Inc. v. Chrysler Corp._, 185 F.3d 1084, 1089-90 (10th Cir. 1999)).

[70] _Id._ at 1239.

[71] _Intel Corp. v. Flick Intel, LLC_, No. 14-cv-1049, 2015 WL 11111294, at *7 (D.N.M. Mar. 4, 2015) (emphasis original).

commerce."[72]  Further, there is no question that there is a strong likelihood of confusion through Defendants' misuse of TLC's Marks.   Without TLC's authorization, Defendants wholly reproduced—with no changes whatsoever—the TLC Marks in the Listserv Communications and in the April 30 Video.   In these communications, the marks used by Defendants are not just "similar" to the TLC Marks, they are identical.  Such use is *per se* infringement.[73]

Defendants' improper intent in using TLC's Marks can be easily ascertained through their false and misleading statements in the New Listserv Communications and the April 30 Video, which attempt to misrepresent to the public that Defendants represent the "true" TLC.[74] Defendants' communications contain literally false statements alongside TLC's protected Marks, both of which Defendants included in their communications to confuse recipients so that the recipients believed that Defendants' statements were made on behalf of TLC.  Specifically, Defendants' intent to confuse the public by incorporating the TLC Marks into the New Listserv Communications and the April 30 Video are evidenced by:

- Defendants false and misleading statements in the April 30 Email that "[t]he old listserv is experiencing difficulties," and that "[t]o solve the problem, Gerry Spence has authorized a new listserv," thus falsely implying that Gerry Spence authorized a new listserv <u>on behalf of TLC</u>, as well as their use of the misleading signature "Gerry Spence's Trial Lawyers College";[75]

---

[72] *1-800 Contacts*, 722 F.3d at 1238 (citing 15 U.S.C. § 1115(a)); *see also* Exs. C, D, F, and H to Complaint.

[73] *See* 15 U.S.C. § 1114.

[74] *See* Exs. C, D, F, and H to Verified Complaint.

[75] *See* Ex. C to Verified Complaint.

- Defendants' false and misleading statements in the May 6 Email, where Defendants falsely claim that certain of the Individual Defendants were elected to TLC's Board, when in fact, those individuals were not elected to the Board;[76]

- Defendants' false and misleading statements in the May 8 Email that: "[p]roperty was recently taken from Thunderhead Ranch without authorization from the Court responsible for settling the current dispute. The TLC Board of Directors considers this property to be stolen, and will aggressively pursue all remedies possible against any individual in possession of the stolen property" and use of the misleading signature "Gerry Spence's Trial Lawyers College";[77] and

- Defendants' false and misleading statements in the April 30 Video that refer to "this college" while the TLC Marks are displayed, and that "Trial Lawyers College is going to continue," which imply that GSTLC is TLC.[78]

Defendants' infringing use of TLC's Marks in the above-detailed communications clearly indicate that Defendants intend to falsely signal to the public that GSTLC is TLC and that the Individual Defendants speak and act on behalf of TLC. Defendants' ill intent is further evidence of their intentional infringement of TLC's Marks.

Additionally, it is clear that Defendants' unlawful actions have caused actual confusion. Specifically, after Defendants sent the May 6 Email, TLC received questions from TLC alumni expressing confusion as to whether Defendants' communications were on behalf of TLC or another

---

[76] *See* Ex. F to Verified Complaint ("Rex Parris then moved to elect Gerry Spence as President and it was seconded but before a vote could be taken John Sloan unilaterally terminated the zoom board meeting. The TLC board then resumed the meeting and Gerry was elected President, John Zelbst, V.P., Joey Low Treasurer, and Kent Spence Secretary.").

[77] *See* Ex. H to Verified Complaint.

[78] *See* Ex. D to Verified Complaint.

17

entity.  As the Tenth Circuit has noted, "[o]bviously, the best evidence of likelihood of confusion in the marketplace is actual confusion."[79]  The inquiries made by TLC alumni to TLC shows that Defendants accomplished their intended purposes—they confused TLC's audience, who are themselves savvy attorneys, as to whether GSTLC or TLC had published the New Listserv Communications and the April 30 Video.

Moreover, in publishing their infringing communications, Defendants used precisely the same marketing platform that TLC uses, because they used TLC's own Listserv (which they improperly accessed) to send the communications, and published at least one video to YouTube.com, which platform TLC has regularly used to promote its own services via video.  As the Tenth Circuit has recognized, "[c]onverging marketing channels increase the likelihood of confusion."[80]

Defendants' unauthorized use of TLC's Marks is clearly intended to confuse recipients of Defendants' communications so that they believe that Defendants represent, speak for, or are otherwise affiliated with TLC.  Defendants also rely on TLC's Marks in the New Listserv Communications and the April 30 Video to inaccurately suggest to the audience of those communications that TLC has reviewed and approved of the statements contained therein.  As set forth above, there is a strong indication that Defendants' actions will in fact confuse the recipients of their communications into believing that GSTLC is one and the same as TLC, and that the Individual Defendants are affiliated with TLC, rather than GSTLC.  Indeed, through their infringement of TLC's Marks, Defendants' infringing actions appear intended to maximize confusion as to the origin of their new, competing nonprofit.  TLC has been irreparably harmed by

---

[79] *Jordache*, 828 F.2d at at 1487 (citations omitted).

[80] *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983).

Defendants' conduct and cannot be compensated by monetary damages. Accordingly, TLC is entitled to temporary emergency relief enjoining Defendants' from infringing on the TLC Marks.

   **b. TLC is likely to prevail on its trademark infringement claim for Defendants' unauthorized use of TLC's federally-protected Marks in their new business name.**

TLC is also likely to prevail on its trademark infringement claim on the basis of Defendants' unauthorized incorporation of the federally-protected mark "Trial Lawyers College" into the name of their newly-incorporated nonprofit entity, "Gerry Spences Trial Lawyers College at the Thunderhead Ranch." Once again, Defendants appear to be seeking to maximize confusion among the public by registering a nonprofit corporation that <u>directly</u> incorporates TLC's protected Mark, and adds only two other descriptors that have long been associated with TLC—"Gerry Spence" and the "Thunderhead Ranch." As the Tenth Circuit has recognized, "[o]ne who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived. All doubts must be resolved against him."[81]

All doubts must be resolved against Defendants here. As the Tenth Circuit has recognized, a defendant need not copy the plaintiff's protected mark entirely to cause confusion warranting an injunction. For instance, in *Standard Oil Co. v. Standard Oil Co.*, the Tenth Circuit determined that defendant's use of the trade name "Sohio" was likely to cause confusion with plaintiff's name and protected mark, "Standard Oil" and "Standard."[82] Here, Defendants' use of the name "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" is even closer to TLC's protected mark, "Trial Lawyers College," than the competing businesses in *Standard Oil*. Considering that "[t]here

---

[81] *Beer Nuts*, 711 F.2d at 941 (internal citations omitted).

[82] 252 F.2d 65, 72 (10th Cir. 1958).

is confusing similarity if prospective purchasers are likely to regard it (the offending designation) as indicating the source identified by the trade-mark or trade-name," there can be no question that Defendants' use of "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" is confusingly similar to the protected "Trial Lawyers College" mark.[83]

Moreover, "[i]ntent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion," and "proof that a defendant chose a mark with the intent of copying plaintiff's mark, standing alone, may justify an inference of confusing similarity."[84]   Given the New Listserv Communications and the April 30 Video, as described above, there seems to be no doubt that Defendants intend to traffic in the goodwill and association that the TLC Marks bring in order to bolster their new nonprofit corporation without revealing to the public that they are acting on behalf of that new corporation, not TLC.[85]   TLC has been irreparably harmed by Defendants' use of the confusingly-similar name "Gerry Spences Trial Lawyers College at the Thunderhead Ranch," and cannot be made whole through monetary damages.  TLC is thus entitled to a temporary restraining order relief prohibiting the same.

**C.  Plaintiff is entitled to a Temporary Restraining Order to prohibit Defendants' unfair competition, false designation of origin, passing off, and false and misleading advertising.**

Additionally, TLC is likely to succeed on its claim that Defendants violated the Lanham Act by engaging in unfair competition, falsely designating the origin of their proposed services, passing off "Gerry Spences Trial Lawyers College" as TLC, and making false and misleading statements about both TLC and GSTLC.

---

[83] *Standard Oil*, 252 F.2d at 72 (internal citations omitted).

[84] *Beer Nuts*, 711 F.2d at 941 (internal citations omitted).

[85] *See* Exs. C, D, F, and H to Verified Complaint.

"Section 43(a) of the Lanham Act proscribes unfair competitive practices involving potential or actual deception and is considered to proscribe passing off."[86] Further, the Lanham Act prohibits false advertising.[87]  Section 43(a) of the Lanham Act "creates two distinct bases of liability; false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."[88] Defendants have engaged in both forms of prohibited conduct, and because, as described below, TLC has been irreparably harmed by Defendants' actions, TLC is entitled to a temporary restraining order prohibiting Defendants' unlawful conduct.

To establish a Lanham Act claim for false advertising, a plaintiff must prove:

(1) that the defendant made material false or misleading representations of fact in connection with the ... promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.[89]

"[T]he Lanham Act contemplates two variants of actionable advertising representations: (1) those that are literally false, and (2) those that, while literally true, are likely to mislead and confuse consumers."[90]  Federal district courts have determined that actions of non-profit entities can constitute "commercial advertising or promotion," and that Section 43(a) is broad enough to reach communications "about the services provided by a non-profit organization" because those statements "represent a promotion of those services."[91]

---

[86] *Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 527 (10th Cir. 1987).

[87] *See* 15 U.S.C. § 1125(a).

[88] *Intermountain Stroke Ctr., Inc. v. Intermountain Heath Care, Inc.*, 686 Fed. App'x 778, 783 (10th Cir. 2016) (internal citations omitted).

[89] *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1140 (10th Cir. 2006) (internal citations omitted).

[90] *Intermountain Stroke Ctr.*, 686 Fed. App'x at 785 (citations omitted) (emphasis original).

[91] *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1532 (S.D.N.Y. 1994); *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1138 (D.N.J. 1993); *see also Iglesia Ni Cristo v. Cayabyab*, 18-00561, 2020 WL 1531349, at *10 (N.D. Cal. Mar. 31, 2020) (where a non-profit religious corporation

As outlined above, Defendants' improper actions constitute violations of Section 43(a) of the Lanham Act both by unlawfully attempting to pass off GSTLC as TLC and the Individual Defendants as representatives of TLC, and by making false and misleading statements regarding both nonprofit corporations. Specifically, Defendants' New Listserv Communications and the April 30 Video both attempt to pass off GSTLC as TLC and the Individual Defendants as representing and communicating on behalf of TLC, and constitute false advertising through: (i) wholesale incorporation of TLC's Marks into those communications, which constitutes *per se* infringement of those Marks; (ii) use of the deceptively-similar business name "Gerry Spences Trial Lawyers College," which also incorporates and thus infringes on TLC's protected mark for "Trial Lawyers College"; and (iii) Defendants' myriad statements in the New Listserv Communications and the April 30 Video, as detailed extensively above, implying that Defendants made those communications on behalf of TLC, when in fact such statements are made on behalf of GSTLC. With full knowledge that they do not represent TLC and that GSTLC is not the same nonprofit corporation as TLC, Defendants' statements are intended to mislead their recipients into believing the opposite.

Defendants introduced those communications into commerce, as that term is interpreted when applied to non-profit organizations, because they were disseminated across state lines to TLC's primary audience—members of the legal community who are interested in TLC's services.[92] Defendants' statements have caused and will continue to cause harm to TLC, because

---

("INC") sued eleven of its former ministers, officers, and members and the new non-profit religious corporation they formed after the ministers held themselves out as affiliated with INC, using INC's trademarked name, Seal, Executive Seal, and Flag, and INC's copyrighted hymns, thus causing confusion to INC's members and to the public).

[92] *See Gordon & Breach*, 859 F. Supp. at 1532 (concluding that misrepresentations were sufficiently distributed to the relevant purchasing public where they were distributed at a librarians' conference and

22

they infringe on TLC's federally-protected Marks, and because they are likely to confuse the public as to the origin of TLC's and GSTLC's services.  Damages cannot adequately compensate TLC for the harm caused by Defendants.  Because TLC is likely to prevail on its claim that Defendants violated Section 43(a) of the Lanham Act by attempting to pass of GSTLC as TLC and by making false and misleading statements about both nonprofit corporations, TLC is entitled to emergency injunctive relief prohibiting Defendants from continuing to engage in such unlawful activity.

## **PRAYER**

TLC respectfully requests that the Court grant its Application for an *Ex Parte* Temporary Restraining Order without notice.  A copy of the proposed *Ex Parte* Temporary Restraining Order is attached as Exhibit "A" to this Emergency Application.  For the foregoing reasons, TLC prays that the Court grants its Emergency Application for an *Ex Parte* Temporary Restraining Order and restrain Defendants as prayed for herein.  TLC is willing to post bond.  Plaintiff respectfully requests that the Court consider the importance of the equitable relief sought to TLC's services in its determination of the amount of the bond.

Dated: May 13, 2020

---

further distributed to librarians, where librarians "represent the core consumers of those products"); *see also Nat'l Grange of the Order of Patrons of Husbandry v. California Guild*, 334 F. Supp. 3d 1057, 1066 (E.D. Cal. 2018) (concluding, in case involving non-profit organizations, "that defendants' misleading representations of itself as the 'CSG' [plaintiff's trade name], which are available on public websites and thus part of interstate commerce, caused confusion and damage to [plaintiff's] reputation," and "[a]s such, [plaintiff] has established all elements necessary to prevail on its false designation of origin claim.").

Respectfully submitted,

By: /s/ Patrick J. Murphy
Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-Mail:  pmurphy@wpdn.net
          zmason@wpdn.net

and

*/s/ Christopher K. Ralston*
Christopher K. Ralston, (La. Bar #26706)
(*Pro hac vice application pending*)
Lindsay Calhoun, (La. Bar #35070) (*Pro hac vice application pending*)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: ralstonc@phelps.com
          lindsay.calhoun@phelps.com

**ATTORNEYS FOR PLAINTIFF THE TRIAL LAWYERS COLLEGE**

24

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
CASPER DIVISION

| | | |
|---|---|---|
| THE TRIAL LAWYERS COLLEGE,<br>a nonprofit corporation | ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | |
| v. | ) ) | _____ |
| GERRY SPENCES TRIAL<br>LAWYERS COLLEGE AT<br>THUNDERHEAD RANCH, a<br>nonprofit corporation, and GERALD<br>L. SPENCE, JOHN ZELBST, REX<br>PARRIS, JOSEPH H. LOW, KENT<br>SPENCE, and JOHN DOE,<br>individuals. | ) ) ) ) ) ) ) ) | **EMERGENCY APPLICATION<br>FOR EX PARTE TEMPORARY<br>RESTRAINING ORDER** |
| Defendants. | | |

---

## TEMPORARY RESTRAINING ORDER

---

On this day, the Court heard and considered Plaintiff The Trial Lawyers College's ("Plaintiff" or "TLC") Application for an Ex Parte Temporary Restraining Order. After considering Plaintiff's Application for Ex Parte Temporary Restraining Order, the pleadings, the declaration, and arguments of counsel, the Court finds there is sufficient evidence to support the issuance of this Order because:

1. From the evidence presented, this Court concludes that the harm, injury, loss or damage is immediate and imminent to Plaintiff;

2. From the evidence presented, this Court concludes that Plaintiff will likely succeed on the merits of Plaintiff's claims at the trial of this matter;

1

3. From the evidence presented, this Court concludes that if the Court does not issue the Temporary Restraining Order, Plaintiff will likely suffer immediate and irreparable injury, loss or damage because the harm, loss and injury to Plaintiff may be difficult to ascertain and may not be susceptible to precise measurement during the pendency of this lawsuit;

4. From the evidence presented, this Court concludes that the harm, loss and injury to Plaintiff is continuing and ongoing unless this Court restrains the unlawful activity of Defendants Gerry Spences Trial Lawyers College at the Thunderhead Ranch, Gerald L. Spence, John Zelbst, Rex Parris, Joseph H. Low, Kent Spence, and John Doe (collectively, "Defendants"); and

5. From the evidence presented, this Court concludes that if the Court does not issue a Temporary Restraining Order, Plaintiff will be irreparably injured and harmed because:

   a. Plaintiff has federally-registered trademarks that Defendants' are infringing upon, to Plaintiff's detriment and to the benefit of Defendants;

   b. Defendants' infringing use of Plaintiff's federally-registered trademarks are likely to confuse the audience receiving Defendants' infringing communications and publications, to Plaintiff's detriment and to the benefit of Defendants;

   c. Defendants have unlawfully attempted to pass off Defendant Gerry Spences Trial Lawyers College at the Thunderhead Ranch ("GSTLC") as TLC, to Plaintiff's detriment and to the benefit of Defendants;

   d. Defendants have unlawfully attempted to pass off Gerald L. Spence, John Zelbst, Rex Parris, Joseph H. Low, and Kent Spence (collectively, the "Individual Defendants") as representatives of TLC, when they are not, to Plaintiff's detriment

2

and to the benefit of Defendants;

    e.  Defendants have made and continue to make false and misleading statements in interstate commerce to falsely advertise GSTLC as TLC, to Plaintiff's detriment and to the benefit of Defendants; and

    f.  Defendants have made and continue to make false and misleading statements in interstate commerce to falsely represent the Individual Defendants as representatives of TLC, to Plaintiff's detriment and to the benefit of Defendants.

6. Defendants' acts are willful and intentional; and

7. As a result of Defendants' past and current actions, Plaintiff has suffered and/or is likely to suffer irreparable harm and injury that may not be adequately compensated by damages.

The Court further finds that this order is both necessary and appropriate in order to prevent imminent and irreparable harm and injury to Plaintiff's nonprofit business and services.

The Court further finds that the irreparable harm that would be suffered by Plaintiff in the absence of this restraining order would outweigh any damages that this order might cause Defendants and that the issuance of this restraining order is in the public interest.

An *ex parte* Temporary Restraining Order, without notice to Defendants, is necessary because there was not enough time to give notice to Defendants, hold a hearing, and issue a restraining order before the imminent and irreparable injury, loss or damage and harm to Plaintiff continues.

**IT IS THEREFORE ORDERED THAT:**

1. Defendants are hereby restrained and enjoined immediately from:

    a.  directly or indirectly infringing on either of TLC's federally-registered trademarks, specifically, those trademarks bearing the numbers 4,197,908 (the "'908 Mark")

PD.28683131.1

and 4,198,054 (the "'054 Mark") (collectively, the "TLC Marks"), including but not limited to, using TLC's Marks in their unauthorized communications to any of TLC's five confidential and proprietary databases of emails (the "Listserv") and/or to the public, and/or operating under the directly-infringing name "Gerry Spences Trial Lawyers College at the Thunderhead Ranch"; and

b.   directly or indirectly engaging in any false designations of origin, passing off, false and misleading statements, false advertising, and/or unfair competition related to the TLC Marks and the business of TLC, including but not limited to taking any actions which suggest that "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" is in any way affiliated with TLC and/or that the Defendants represent TLC in any capacity, and/or from taking any actions that mislead or confuse the public regarding the same.

2.   Defendants are hereby restrained and enjoined immediately from directly or indirectly, destroying, altering, disposing of, consuming, tampering with or in any manner secreting any and all business or personal records, memos, correspondence, emails, letters, electronic communications, electronically stored information or other paper and electronic documentation or records relating to or referring in any manner to the matters and facts alleged in the Plaintiff's Original Complaint; and,

3.   Actual notice of this Order shall be effective by delivery of a copy of this Order by hand, by United States mail by certified delivery return receipt requested, by courier or private delivery service, by facsimile, by e-mail or by any other reasonable means of delivery to Defendants or any of their agents, assigns, affiliates register agents or representatives.

4

The clerk shall issue notice to Defendants that the hearing on Plaintiff's Application for Preliminary Injunction is set for _____, 2020, at _____ _____a.m./ p.m. in the court room of the United States District Court for the District of Wyoming, Casper Division sitting in Casper, Wyoming.  The purpose of the hearing shall be to determine whether this Temporary Restraining Order should be made a Preliminary Injunction pending a full trial on the merits.

The clerk shall issue this Temporary Restraining Order upon Plaintiff posting a bond of $_____.

The Court finds that this Order is entered based upon very special circumstances.  It is supported by evidence showing imminent and irreparable harm that will deprive the Plaintiff of a just resolution of Plaintiff's dispute absent entry of this Order.  This Order represents the least restrictive means to protect against the threatened imminent and irreparable harm found by the Court. The Court further finds that the irreparable harm suffered by Plaintiff in the absence of this Order would greatly outweigh any damages that the Order might cause Defendants and that the issuance of this Order is in the public interest.

This Order expires at 11:59 P.M. on the _____ day of _____, 2020.