IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

THE TRIAL LAWYERS COLLEGE,
a nonprofit corporation,

    Plaintiff,

v.                                                  Case No. 1:20-cv-80-JMC

GERRY SPENCES TRIAL LAWYERS
COLLEGE AT THUNDERHEAD RANCH,
a nonprofit corporation,
GERALD L. SPENCE,
JOHN ZELBST,
REX PARRIS,
JOSEPH H. LOW,
KENT SPENCE, and
JOHN DOE individuals,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

On June 9, 2020, the parties appeared before the Court for a hearing on Plaintiff The Trial Lawyer College's Motion for Preliminary Injunction. The Court previously granted Plaintiff a Temporary Restraining Order on May 26, 2020 and entered the Order on May 27, 2020. Also on May 27, 2020, Plaintiff requested a preliminary injunction on its Lanham Act claims. For the reasons stated below, the Court grants in part and denies in part Plaintiff's motion.

                                                  I.        Background

Plaintiff is a nonprofit corporation that provides training programs to lawyers. Defendant Gerald L. Spence founded Plaintiff in 1993 and has been affiliated with it since that time. The other individual Defendants have also been affiliated with Plaintiff since the 1990s. Plaintiff began operating in 1994 at the Thunderhead Ranch in Dubois, Wyoming. In 2012, Plaintiff applied for and received two federally-registered trademarks. The first, Registration Number 4,197,908 (the

'908 Mark) is a trademark for "TRIAL LAWYERS COLLEGE" in standard characters, without claim to any particular font, style, size, or color. The second, Registration Number 4,198,054 (the '054 Mark) is a trademark for a stylized design of a cloud with a bolt of lightning. Plaintiff has maintained and used these trademarks in interstate commerce. Plaintiff further has policed the use of the trademarks.

Until May 6, 2020, Defendants undisputedly served on Plaintiff's Board. Plaintiff alleges that the individual Defendants sought to expend Plaintiff's funds to build a library in Gerry Spence's honor on the land Plaintiff leased. In December 2019 the Board declined to support the proposal to build the library on land it did not own. Defendant Spence, through the Spence Foundation, terminated Plaintiff's lease. Plaintiff vacated the premises.

On April 28, 2020, Defendants Gerald L. Spence, John Zelbst, Rex Parris, Joseph H. Low, and Kent Spence filed a Complaint in Wyoming state district court against Plaintiff The Trial Lawyers College. In that state court action, Defendants seek to dissolve Plaintiff, audit Plaintiff, and have the court appoint a receiver to oversee and manage Plaintiff's funds until the court is able to decide whether it should dissolve Plaintiff. Two days later, Defendants registered Defendant "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" as a Wyoming nonprofit corporation. Defendants accessed Plaintiff's listservs and used that information to create a new listserv to send mass emails to recipients whose information they obtained from Plaintiff's listservs. Defendants sent the new listserv recipients an email from "Gerry Spence's Trial Lawyer College" stating that the old listserv was experiencing difficulties and that Gerry Spence authorized a new listserv. Defendants also posted a video on YouTube which used both the '908 and the '054 Marks. The video displays the '054 Mark in the left corner. In the video, Spence says, "my vision,

my friends, for this college, is you.  And it will stay alive and beautiful and ringing across the land, as long as you're there."  He continues:

> Some people think that Trial Lawyers College is over.  Well, I'd like you to know a marvelous secret.  It's a secret for some, but now, you know it too.  Trial Lawyers College is going to continue.  It's going to continue with marvelous new leadership.  We're going to continue forwarding the message of our great institution, that we are an organization dedicated to teaching our trial lawyers how to fight the good battle for ordinary people who need our support and our help.  And, we're going to have classes next year where we teach trial lawyers to represent ordinary people.

On May 6, 2020, the Board split.  Defendant Rex Parris testified that this occurred because of half the Board's treatment of Gerry Spence.  Plaintiff claims that Defendants were not elected to the Board as of May 6.  Defendants dispute the validity of Plaintiff's actions and claim to be the rightful Board—or at least still members of the full Board.  Defendants sent an email to the new listserv on that date stating that the individual Defendants were Plaintiff's new Board.  Notably, at least according to Defendant Parris's testimony, this position has evolved.  Defendant Parris testified that Defendants and Plaintiffs were still board members as of this time.  So Defendants appear to have abandoned the idea that they are the "new" board—at least for the time being.  On May 12, 2020, Defendants sent an email on the new listserv advertising a speaker in which Plaintiff contends Defendants were attempting to pass off Defendant Gerry Spence's Trial Lawyers College as Plaintiff.

Fifteen days after Defendants filed the state court action, Plaintiff filed this action in federal district court alleging Defendants violated the Lanham Act, 15 U.S.C. §§ 1114, *et. seq.*, and 15 U.S.C. § 1125(a) by infringing Plaintiff's federally-registered trademarks and engaging in unfair competition, false designation of origin, passing off, and false advertising related to Plaintiff's federally-registered trademarks.  Plaintiff also alleges Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Defend Trade Secrets Act, 18 U.S.C. § 1836 and Wyo. Stat.

Ann. § 40-24-101, *et. seq.*, through Defendants' unauthorized access and misuse of Plaintiff's confidential and proprietary computer files.

The Court granted Plaintiff's application for a Temporary Restraining Order. Plaintiff now seeks a preliminary injunction on its Lanham Act claims, contending that Defendants have irreparably harmed it by: (1) infringing upon Plaintiff's Marks; (2) intentionally misleading Plaintiff's audience into believing that Defendant Gerry Spence's Trial Lawyers College at Thunderhead Ranch is Plaintiff; (3) intentionally misleading Plaintiff's audience into believing that the Individual Defendants represent Plaintiff; and (4) making myriad false statements in commerce regarding Gerry Spence's Trail Lawyers College at Thunderhead Ranch and Plaintiff.

On June 9, 2020, the parties, by counsel, appeared before the Court for a hearing on Plaintiff's motion for a preliminary injunction.[1]

---

[1] Defendants contend that before the Court can consider the propriety of preliminary injunctive relief, it must "satisfy itself that it has jurisdiction to hear this case." Defendants first argue that the Court should abstain and stay its exercise of subject matter jurisdiction. The Court considered Defendants' requested relief and denied the request by separate order. Second, Defendants contend that this action is improper pursuant to Federal Rule of Civil Procedure 17 because the real parties in interest are not the parties pursing this action. Defendants contend that because control of Plaintiff is in dispute and unresolved, the Board members bringing the action do not have standing to assert Plaintiff's trademark assets. "A real party in interest is the person who, under governing substantive law, is entitled to enforce the right asserted." *Cascades Dev. Of Minn., LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012). Here, the nonprofit corporation, The Trial Lawyers College, is the registered owner of the Marks. Thus, Plaintiff is the real party in interest. *See McRae v. Smith*, 159 F. App'x. 336 (3d Cir. 2005) (unpublished) (noting that the corporation in a trademark action, not the individual behind the corporation, is the real party in interest). Defendants' position regarding Plaintiff has not been a model of consistency. First, the Spence Foundation evicted Plaintiff from Thunderhead Ranch and Defendants created a new nonprofit entity. Second, in emails to the listserv, Defendants appear to assert that they are Plaintiff's true board and held officer elections without the other faction. Yet at the hearing, Defendant Rex Parris stated that he believed both factions remained members of Plaintiff's Board. Parris also asserted that the new entity is nothing but a shell and a back-up plan that has not taken any action. But evidence shows that is not the case. Defendants' faction of the former Board brought the state court lawsuit to dissolve the Board, created a competing entity, and allowed the new entity to use Plaintiff's registered Marks. *Someone* is sending emails on behalf of the new entity that use Plaintiff's Marks. Moreover, the very people Defendants contend have

II.     Applicable Law

As an extraordinary remedy, the district court's issuance of a preliminary injunction is "the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). The party requesting the injunction needs to prove four things to succeed on its motion: (1) that it is substantially likely to succeed on the merits; (2) that it will suffer irreparable injury if the court denies the injunction; (3) that the threatened injury without the injunction outweighs the opposing party's under the injunction; and (4) that the injunction is not adverse to the public interest. *Id.* Disfavored preliminary injunctions exhibit one of three characteristics: (1) it mandates action rather than prohibiting it; (2) it changes the status quo; or (3) it grants all the relief that the moving party could expect from a trial win. *Id.*

---

no ability to bring a suit on Plaintiff's behalf currently represent Plaintiff in the state court action. The Court takes judicial notice that Defendants do not assert in the state court action that the plaintiffs in their case have no standing or authority to represent The Trial Lawyers College. To allow Defendants to continue to use Plaintiff's Marks to assert that their new entity is The Trial Lawyers College while the state court sorts out who controls the Board changes the status quo. *See Timbisha Shoshone Tribe v. Kennedy*, 687 F. Supp. 2d 1171, 1189 (E.D. Cal. 2009) (disallowing a faction to govern another faction without having been elected to do so and stating that to hold otherwise would grant relief that goes beyond preservation of the status quo). Under Defendants' logic, any time a faction of a board contends that another faction of the board engaged in an unauthorized action, the corporation could never defend itself or its property from attack. In this case, that would mean allowing the faction to prevail in dismissing a trademark action where those same members allowed a new entity they created to use the corporation's trademarks. And Defendants provide the Court with no law to justify its position that Plaintiff's Board lacks the authority to bring the instant action on Plaintiff's behalf. In contrast, courts have held for a century that in the event of deadlock, someone—the president, a shareholder—may sue or defend on behalf of the corporation "where the need for action to preserve vital corporate interests was urgent." *Conlee Const. Co. v. Cay Const. Co.*, 221 So.2d 792, 795 (Fla. Dist. Ct. App. 1969); *see also Regal Cleaners & Dyers, Inc. v. Merlis*, 274 F. 915, 916 (2d Cir. 1921). And another non-profit using a corporation's registered trademarks with the blessing of a non-majority faction of the Board certainly fits that bill. Put simply, the Court need not determine which faction of the Board controls Plaintiff to enjoin Defendants from allowing a newly formed nonprofit entity to use Plaintiff's marks.

III.   Analysis

After the Court issued the Temporary Restraining Order, Defendants claim that they removed Gerry Spence's YouTube video, although Plaintiff asserts the video is still privately available. They also recorded a name change for Defendant Gerry Spence's Trial Lawyers College at Thunderhead Ranch to "Gerry Spence's Trial Institute at Thunderhead Ranch." In their response to Plaintiff's motion, and confirmed at the hearing, Defendants stipulate that they will agree to the requested relief to the extent it conforms to the Temporary Restraining Order and not use Plaintiff's trademarks in connection with any new or competing entity to Plaintiff. Defendants also said they would limit their use to "Gerry Spence's Trial Institute," a name the Court allows them to use for the time being. Defendants expressed concern, however, that this stipulation would still not resolve the matter because it believed: (1) that Plaintiff sought to prohibit Defendants from using the name "Gerry Spence"; and (2) that Plaintiff sought to enjoin Defendants from stating that they are still affiliated with Plaintiff or using "The Trial Lawyers College" in any context whatsoever. Plaintiff responded that it does not seek to enjoin Gerry Spence from using his own name. It also stated it does not seek to limit Defendants from referring to "The Trial Lawyers College." That leaves as the only disputed issues before the Court the extent to which Defendants can use the Marks to give the public the impression that Defendants' new entity is actually "The Trial Lawyers College" and the use of the geographic location "Thunderhead Ranch." For the reasons discussed below, the Court will preserve the status quo while the state proceeding is ongoing. Accordingly, Defendants shall not use Plaintiff's Marks to market itself as if it is in fact "The Trial Lawyers College" or its faculty as faculty of "The Trial Lawyers College" unless and until such time as the state court makes a ruling to that effect. This preliminary injunction does not prohibit Defendants from referencing "The Trial Lawyers College" in explaining that they have sued Plaintiff in state

court to challenge the control of the Board, but it does enjoin them from saying that they definitively are the Board of "The Trial Lawyers College" or to use Plaintiff's Marks to promote their new nonprofit entity. *Utah Lighthouse Ministry v. Foundation for Apologetic Information & Research*, 527 F.3d 1045, 1054 (10th Cir. 2008). Furthermore it does not prohibit Defendants from using the name "Gerry Spence" or the geographic location "Thunderhead Ranch."

### A. Likelihood of Success on the Merits

The owner of a registered mark may bring an action for infringement pursuant to § 32 of the Lanham Act against any person who:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of [the] registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(1)(a). Similarly, the owner of a valid mark may sue any person pursuant to § 43(a) of the Lanham Act who:

> uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a).

"The elements of an infringement claim under § 43(a) are (1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (internal citation and quotation marks omitted). With the exception that "the registration of a mark serves as prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce," an infringement

7

claim under § 32 has nearly identical elements. *Id.* "The central question in a typical infringement action under either § 32 or § 43(a) is whether the defendant's use of the plaintiff's mark is likely to cause consumer confusion." *Id.* For its false advertising claim, Plaintiff must prove:

> "(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff."

*Cottrell, Ltd. v. Biotrol Int'l Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999).

Confusion can take many forms. *1-800 Contacts*, 722 F.3d at 1238. Direct confusion may result when consumers mistakenly believe that the plaintiff is the origin of the defendant's services, which allows the defendant to capitalize on the plaintiff's good name. *Id.* The "classic case" of direct confusion occurs when a customer seeking to buy the plaintiff's product mistakenly buys the defendant's product because of the similarity of the marks. *Id.* Another type of confusion is reverse confusion, which occurs when a consumer mistakenly believes that the defendant is the origin of the plaintiff's services. *Id.* at 1239. In that situation, the defendant does not try "to take a free ride on the plaintiff's reputation," but instead would "drown out the value of the plaintiff's mark." *Id.* Confusion may also arise from a mistaken belief in common sponsorship or affiliation. *Id.* Finally, the Tenth Circuit has also recognized "initial-interest confusion," a distinct theory that "results when a consumer seeks a particular trademark holder's product and instead is lured to the product of a competitor by the competitor's use of the same or similar mark." *Id.* In this scenario, the improper confusion occurs even if the consumer becomes aware of the defendant's actual identity before purchasing the product. *Id.*

The Tenth Circuit has identified six non-exhaustive factors—known as the *King of the Mountain* factors—as relevant to whether a likelihood of confusion exists:

      (a) the degree of similarity between the marks;
      (b) the intent of the alleged infringer in adopting its mark;
      (c) evidence of actual confusion;
      (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties;
      (e) the degree of care likely to be exercised by purchasers; and
      (f) the strength or weakness of the marks.

*Id.* (quoting *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089–90 (10th Cir. 1999)).  A court should not apply these factors mechanically.  *Id.*

In this case, Plaintiff undisputedly has a protectable interest in its Marks.  Likewise, no party disputes that Defendants have used Plaintiff's Marks in commerce.  And Defendants' intent in using Plaintiff's Marks appears to be advertising that Gerry Spence's Trial Lawyer's College at Thunderhead Ranch *is* The Trial Lawyers College and will be offering services in the future as The Trial Lawyers College.  This is evident from the video Defendants posted on YouTube where Gerry Spence, speaking with the '054 Mark in the background and on the screen, said that "Trial Lawyers College is going to continue.  It's going to continue with marvelous new leadership.  We're going to continue forwarding the message of our great institution."  The video further referenced classes in the future.  And emails Defendants sent on the listserv refer to the entity's directors as "The TLC Board of Directors" and reference a speaker as "a leading faculty member of Gerry Spence's Trial Lawyer's College."  Defendants further sent emails that implied that Gerry Spence authorized a new listserv on behalf of Plaintiff.  The first two factors weigh in Plaintiff's favor.  *See Central Bancorp, Inc. v. Central Bancompany, Inc.*, 385 F. Supp. 3d 1122, 1140 (D. Colo. 2019) (stating that an "inquiry into the defendant's intent is deemed relevant under the presumption that some alleged infringers adopt a similar mark *hoping* that consumers will be confused and thereby mistakenly give their business to the defendant").

9

The Court believes the confusion Defendant created is self-evident. Defendants are using Plaintiff's Mark while referring to their new entity as Plaintiff. Defendants used Plaintiff's customer email list—the exact same marketing platform that Plaintiff uses—to inform those consumers that their new entity was Plaintiff and that they were Plaintiff's Board. Plaintiff presented evidence both in its motion and at the hearing that Plaintiff's alumni are confused about whether Defendant's new entity is Plaintiff. At the hearing, Plaintiff's witness, James Clary, testified that he experienced confusion when he received emails from Gerry Spence's Trial Lawyers College at Thunderhead Ranch. This was particularly so because he was unaware of any problems with the listserv and the need to create a new listserv as stated in the email. Clary also testified that he and other members of the Board have spent the vast majority of May appearing before alumni groups to explain what has happened. He stated that he and the other members of the Board receiver numerous questions from a confused alumni base. Plaintiff also provided the declaration of its Director of Communications, Melissa Butcher. Butcher provided exhibits of email and Facebook posts from Plaintiff's alumni who expressed confusion about whether two Boards existed and which "iteration of trial lawyers college" was promoting a seminar.[2] Defendants argue that these fail to show actual confusion because no proof exists these alumni saw Defendants use Plaintiff's Marks. But the Facebook posts and the email demonstrate the alumni's awareness of more than one Board and Plaintiff provided evidence that Gerry Spence's Trial Lawyers College at Thunderhead Ranch emailed its alumni.

---

[2] Defendants argue that these Facebook posts and emails are "unauthenticated, out of court statements by third parties, and as such are inadmissible as hearsay and for lack of foundation and authentication." But a district court may consider hearsay in determining whether to grant a preliminary injunction. *Mullins v. City of N.Y.*, 626 F.3d 47, 52 (2d Cir. 2010). "The admissibility of hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage." *Id.*

Additionally, Defendants' use of names similar in sound or appearance to Plaintiff's Mark has created confusion. Defendants' listserv has contained names such as "Trial Lawyers" and "Trial Warriors" (which has a similar sound to "lawyers" if pronounced "lȯi-ərs"). The Court concludes that this has created further confusion to listserv recipients. The third and fourth factors weigh in Plaintiff's favor. *See King of the Mountain*, 185 F.3d at 1089 ("Typically the greater the similarity between the products and services, the greater the likelihood of confusion.").

No matter the degree of care consumers are likely to exercise, they are likely to experience confusion. Let's consider the average attorney who had a colleague recommend a seminar from the Trial Lawyers College. That attorney would likely not expect to find two entities with the same name in the same market advertising to the same clientele. Accordingly, whatever amount of care an attorney seeking a continuing legal education seminar would normally exercise, "it is thwarted to degree the Court cannot ignore in circumstances such as these." *Central Bancorp, Inc.*, 385 F. Supp. 3d at 1143 (comparing two banks with identical names). This factor weighs in Plaintiff's favor.

Finally, the Court considers the strength of the Marks. The Supreme Court has created five categories of increasing distinctiveness and strength: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 555 (10th Cir. 1998) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties." *First Savings Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 653 (10th Cir. 1996). The '054 Mark—the stylized cloud with a thunderbolt—is an arbitrary or fanciful mark. "An arbitrary mark has a common meaning unrelated to the product for which it has been assigned." *Id.* at 654–55. A fanciful mark "signifies nothing but the

product." *Id.* The '908 Mark, however, is not as strong. It is either descriptive or suggestive. "A descriptive term describes a characteristic of a product or service." *Id.* A suggestive mark "suggests rather than describes a characteristic of the product and requires the consumer to use imagination and perception to determine the product's nature." *Id.* The Court notes that Plaintiff was the only "trial lawyers college" in Wyoming, a fact that goes to the weight of the '908 Mark's strength. The Court concludes this factor also weighs in Plaintiff's favor.

Considering each of the non-exclusive *King of the Mountain* factors, the Court concludes Plaintiff is likely to prevail on its Lanham Act claims.

### B. Irreparable Injury

"What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial." *Free the Nipple*, 916 F.3d at 806. Courts have held that "[e]vidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Central Bancorp, Inc.*, 385 F. Supp. 3d at 1144 (quoting *Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)). As mentioned above, Plaintiff presented evidence at the hearing that its customers were confused about whether Defendants' new entity was Plaintiff. And this is certainly understandable. Defendant Spence stated in the YouTube video that "Trial Lawyers College is going to continue . . . with marvelous new leadership." Because a customer intending to give its business to Plaintiff could very easily mistakenly sign up for one of Defendants' seminars, the Court finds irreparable harm. The customer may not even know that she made the mistake because she has no reason to ask, "Did I really intend to take a class from *this* Trial Lawyers College?" *Central Bancorp, Inc.*, 385 F. Supp. 3d at 1145. Plaintiff also provided evidence of monetary loss. Clary testified at the hearing that

Plaintiff has lost approximately ten percent of its monthly donations since Defendants began using Plaintiff's Marks. For these reasons, Plaintiff has established a threat of irreparable harm.

### C.   Balance of Harms

"The third preliminary-injunction factor involves balancing the irreparable harms identified above against the harm that the preliminary injunction causes [Defendants]." *Free the Nipple*, 916 F.3d at 806. Plaintiff has invested in building awareness of itself and its mark since the 1990s. With Defendants' competing entity, Plaintiff potentially stands to lose some of that investment and to suffer the irreparable harms noted above. *Central Bancorp, Inc.*, 385 F. Supp. 3d at 1145. Against this, the Court must balance the cost to Defendants of requiring the new entity to operate under another name. Defendants have already presented evidence that they changed the name of their nonprofit entity to remove "Trial Lawyers College." Plaintiff has made a strong showing that the balance of harms tips in its favor.

Defendants contend that Plaintiff cannot obtain injunctive relief because the Board members acting on Plaintiff's behalf have unclean hands because they have violated Wyoming law. No court has made this determination as of this time.

### D.   Public Interest

"Public interest can be defined in a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused. *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp 2d 1216, 1228 (D. Colo. 2001) (quoting *Opticians Ass'n of Am. V. Independent Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)). Having established Defendants created a likelihood of consumer confusion by the concurrent use of Plaintiff's Marks, it follows that if Defendants' use continues, Defendants would damage the public interest. *Id.*

### E. Scope of Injunction

#### 1. Use of "Thunderhead Ranch"

Plaintiff contends that Defendant cannot avoid infringement by adding a geographic term to a protected mark—i.e., "Trial Lawyers College at Thunderhead Ranch." The Court agrees. To the extent that Plaintiff's argument extends to *any* use of the location "Thunderhead Ranch," however, the Court declines to extend the scope of the injunction that far. For one, Plaintiff has never sought to trademark "Thunderhead Ranch." It is a place it leased from the Spence Foundation to hold its seminars. Geographically descriptive terms are not inherently distinctive and can be protected as trademarks only upon proof that through usage they have become distinctive. 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 14:1 (5th ed. 2017). "If a geographic term is used merely to indicate the location or origin of goods and services, it is purely descriptive." *Id.* Without more, the geographic term cannot serve "the trademark function of identifying one person's goods and distinguishing them from goods made or sold by others in the same locality." *Id.* Geographically descriptive terms "can only achieve trademark or service mark status upon the acquisition of secondary meaning." *Id.* Plaintiff does not appear to make this argument. Instead, it appears to only suggest that Defendants *addition* of "at the Thunderhead Ranch" to an iteration of "Trial Lawyers College" causes confusion. Thus, this preliminary injunction enjoins Defendants from using the geographic location "Thunderhead Ranch" in conjunction with "Trial Lawyers College" to market the new entity. This preliminary injunction does not enjoin or restrain Defendants from referencing or stating that classes will be held at Thunderhead Ranch—a ranch owned by the Spence Foundation.

### 2. Use of "Gerry Spence Trial Institute" or Other Names

Prior to the hearing, Defendants had used "Trial Lawyers," "Trial Lawyers College," and "Trial Warriors College" in the headings of listserv emails. In post-hearing briefing, Defendants represent that they have deactivated the prior listserv and started over with a listserv using the name "Gerry Spence's Trial Institute." The Court concludes that the use of the name "Gerry Spence's Trial Institute" does not constitute infringement. Plaintiff has no protectable interest in Gerry Spence's name and the name "Trial Institute" is sufficiently generic and distinct from "Trial Lawyers College" to avoid confusion. *Vail Assoc., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 873 (10th Cir. 2008) (noting that an entity cannot obtain a complete monopoly on a descriptive term, such as the word "Trial"). Defendants, however, should refrain from continuing to use Plaintiff's Marks—"Trial Lawyers College"—and names that sound similar to Plaintiff's Marks like "Trial Warriors College." Indeed, it appears that Defendants used such similar sounding names to minimally comply with the Court's Temporary Restraining Order and to cause further confusion to recipients as to whether they were receiving a message from Plaintiff. Defendants shall cease further use of misleading terms that infringe upon Plaintiff's Marks.

### 3. Signage at Thunderhead Ranch

Defendants represent that four signs were present leading to or on the Thunderhead Ranch that say "Trial Lawyers College." They claim to have removed the two roadside signs as well as a sign on the side of a barn. They represent that they will remove a sign hanging from an arch as soon as they can obtain an appropriate lift or ladder.

In dispute is a commissioned piece of artwork depicting the '054 Mark—a stylized design of a cloud with a bolt of lightning. Defendants assert that they do not need to remove this because the '054 Mark is identical to Thunderhead Ranch's cattle brand, which was registered in the

Wyoming Brand book before Plaintiff registered it. Although the court acknowledges that the proposition of branding livestock is similar to the principles underlying trademark law, the use of the cattle brand is not at issue in this case. If the Spence Institute runs cattle on the land—something it has not contended—the Court would not prohibit it from branding its cattle with the '054 Mark. But Defendants have plans for a competitor—Gerry Spence's Trial Institute—to use the property as a site for continuing legal education. Testimony at the hearing indicated that the Board put much thought into what Plaintiff would trademark. According to Defendant Parris, the Board, which included Gerry Spence, decided to trademark the ranch's cattle brand as Plaintiff's symbol. The pictures presented to the Court show that participants in the program had their picture taken in front of the artwork at the barn. Plaintiff presented evidence that the '054 Mark has become associated with its goods and services. Defendants cannot continue displaying the artwork depicting the '054 Mark.

### 4.     The Individual Defendants

In sum, Plaintiff has satisfied all four preliminary injunction factors. Defendants assert that the Court should not enjoin the individual Defendants. They argue that Plaintiff simply has lumped all individual Defendants together "because they were the Board members that Plaintiff purported to kick off the Board." But Plaintiff has provided the Court with evidence that some of the individual Defendants has participated in infringing Plaintiff's Marks. Defendant Gerald Spence used Plaintiff's Marks in the YouTube video marketing his new entity.

Defendant Joseph Low held himself out in an email as "a leading faculty member of Gerry Spence's Trial Lawyer's College" rather than a former faculty member of Trial Lawyer's College. Although Defendant Parris testified at the hearing that Defendant Gerry Spence's Trial Lawyers College at Thunderhead Ranch has not been engaging in any conduct, Plaintiff has provided

16

evidence squarely refuting that assertion. Plaintiff referenced an interview that Defendant Parris and Defendant Low gave to Dan Ambrose, one of Plaintiff's alumni, on April 30, 2020.[3] In that interview, Low states that "Rex [Parris] has been selected, hand-picked, as it is, by Gerry Spence to further on and actually be the new leadership of Gerry Spence's Trial Lawyers College at Thunderhead Ranch." Low went on to state that "as a result, Rex has been putting in an enormous

---

[3] The Court allowed the parties to submit supplemental briefing following the preliminary injunction hearing in order to set forth their positions in more detail. Defendants filed an objection to Plaintiff attaching evidence. Specifically, Defendants argued that the Court "closed" evidence at the hearing. Defendants argue that the Court should give them the opportunity to rebut this evidence. The Court did say that it closed evidence. But it had also just listened to Defendant Parris testify that he did not think Gerry Spence's Trial Lawyers College at Thunderhead Ranch even existed "other than a name." Parris further testified that he was not a member of a board or an officer of the new nonprofit. He further testified he did not hold any position with the new nonprofit. When the Court asked Defendant to clarify that his testimony was that he has nothing to do with the new entity, Defendant Parris said, "That's correct." He continued that he "never actually thought [the new entity] was going to do anything." The Court continued: "I want the record to be clear, just because you think the entity hasn't done anything doesn't mean you haven't been aware of it and it wasn't sitting there just in case somebody needed an entity." Parris responded: "I have not had anything to do with that entity." Given Plaintiff's unequivocal and unqualified testimony under oath concerning his lack of involvement with the entity and lack of personal activity infringing upon Plaintiff's marks, the Court chose not to allow presentation of additional evidence mentioned by Plaintiff's counsel during closing arguments.

The evidence attached to Plaintiff's post-trial briefing demonstrates that Mr. Parris apparently misunderstood the Court's direct and probing questions about his involvement with Defendant Gerry Spence's Trial Lawyers College at Thunderhead Ranch when he stated he had no involvement with the entity. And Mr. Parris and the other Defendants do not contest that Defendant Low and Mr. Parris participated in the interview referenced by Plaintiffs or that the statements quoted by Plaintiff are inaccurate or misleading. For these reasons, as a matter of judicial economy and to save Mr. Parris the trouble of having to appear under oath at another hearing, the Court OVERRULES Defendants' objection. The Court further finds that the additional evidence submitted by Plaintiff has sufficient indicia of reliability to justify its admission at this time. The Court further DENIES Defendants' request to "rebut" the evidence, as any rebuttal would seemingly be nothing more than argument about its relevance, which the Court has considered and weighed in exercising its discretion to admit it. The Court notes that Defendants complain the interview excerpts with Mr. Parris are incomplete. The Court will allow Defendants to introduce a complete copy of the full interview into evidence and the Court will fully consider the statements in context. If the Court determines that Mr. Parris' interview, taken in context, demands a different result than reached in this decision, the Court will amend this Order sua sponte.

17

amount of time putting that together and they've asked me to help as well. So that's occupying a lot of time." Later in the interview, Parris said "if you spend three weeks at the Trial Lawyers College, we want you to walk out and be able to kick anybody's ass you run into." Plaintiff provided a post that Defendant Parris posted on the new listserv on June 5, 2020 talking about how the dissolution of a corporation is like the dissolution of the marriage, showing his use of the new listserv. The Court concludes that Defendants Low and Parris have engaged in individual acts of infringement as Plaintiff demonstrated that they used Plaintiff and the new entity interchangeably.

Plaintiff attached exhibits of Defendant John Zelbst and Kent Spence's websites. Defendant Zelbst claims to be "a graduate of and a Board and Faculty Member of the Gerry Spence Trial Lawyers College, DuBois, Wyoming." Defendant Kent Spence claims he is affiliated with the Trial Lawyers College and a Board member. Neither John Zelbst nor Kent Spence appear to be promoting or identifying a competing college or entity to Plaintiff. And the Court will not enjoin or restrain Defendants from stating their legal position in the state law action. Although the Court will not restrain or enjoin Defendants John Zelbst or Kent Spence, it notes that this preliminary injunction covers persons acting in concert or active participation with the enjoined parties. Moreover, the Court will reconsider this denial as to Defendants Zelbst and Kent Spence if Plaintiffs point to fresh evidence that Mr. Zelbst and Kent Spence are participating in acts of infringement.

### IV.   Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Preliminary Injunction (Doc. 29). Accordingly, Defendant Gerry Spence's Trial Lawyers College at Thunderhead Ranch, Gerald Spence, Rex Parris, and Joseph Low are RESTRAINED and ENJOINED from (1) infringing on either of Plaintiff's Marks and (2) engaging

in any false designations of origin, passing off, false and misleading statements, false advertising, and/or unfair competition related to Plaintiff's Marks and Plaintiff's services. Specifically, this means Defendants shall not: (1) use Plaintiff's Marks to market or promote itself as if it is in fact "The Trial Lawyers College," (2) use Plaintiff's Marks to market its faculty as faculty of "The Trial Lawyers College," (3) purport definitively to be Plaintiff's true Board unless and until such time as the state court makes a ruling to that effect or (4) use linguistic plays on words or various terms associated with The Trial Lawyers College to create or cause confusion as to whether Defendants are acting as The Trial Lawyers College. To make clear, this preliminary injunction does not prohibit Defendants from: (1) referencing "The Trial Lawyers College" itself; (2) using the name "Gerry Spence" or "Thunderhead Ranch"; (3) referencing the fact that Defendants are alumni of Plaintiff and have a historical association with Plaintiff; (4) referencing or describing their *claimed*, but not judicially recognized, status as set forth in the ongoing state court litigation to challenge the control of the Board; and (5) making commentary regarding or fair use of Plaintiff's Marks.

    IT IS SO ORDERED.

    Entered for the Court
this the 16th day of June, 2020

/s/ Joel M. Carson III_____
Joel M. Carson III
United States Circuit Judge
Sitting by Designation