IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING



*4:40 pm, 8/28/20*

**U.S. Magistrate Judge**

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, *a nonprofit corporation*, <br><br>                                Plaintiff, <br><br> vs. <br><br> GERRY SPENCE'S TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, a nonprofit corporation; GERALD L. SPENCE; JOHN ZELBST; REX PARRIS; JOSEPH H. LOW; and KENT SPENCE, <br><br>                                Defendants. | Case No:  1:20-CV-00080-JMC |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR CONTEMPT**

THIS MATTER comes before the Court upon Plaintiff's Motion for Contempt [Doc. 51], which was filed in conjunction with Plaintiff's Memorandum in Support on July 10, 2020.  Plaintiff then filed a Supplemental Memorandum in Support [Doc. 53] on July 13, 2020.  Defendants filed their Response [Doc. 57] on July 24, 2020, and Plaintiff filed a Reply [Doc. 59] on July 31, 2020.  Much later, Plaintiff filed a Second Supplemental Memorandum in Support [Doc. 72] on August 17, 2020.  An evidentiary hearing was held on August 20, 2020.  ECF_64.  Being now fully advised as to the premises of the Motion, the undersigned judge reports and recommends the following.[1]

---

[1] Subject to a few exceptions, where there is an act constituting civil contempt and the magistrate judge is not presiding by consent of the parties, the magistrate judge shall certify the facts to a district judge.  28 U.S.C. § 636(e)(6)(B)(iii)

**PROPOSED FINDINGS OF FACT**

1. The Trial Lawyers College ("TLC") filed this suit against Defendants alleging Defendants had, and were continuing to, infringe on two federally registered trademarks held by TLC.  ECF_1, ¶¶ 61–73.

2. Due to the alleged Mark infringement, TLC filed a motion for a Temporary Restraining Order ("TRO").  ECF_2.  The Court granted the TRO on May 26, 2020.  ECF_26–27.

3. TLC also filed a motion for a Preliminary Injunction.  ECF_29.  That Motion was granted in part on June 16, 2020.  ECF_46.  The parties' briefing, argument and evidence leading up to the Memorandum Opinion and Order Granting in Part and Denying in Part Plaintiff's Motion for Preliminary Injunction ("the Court's Order") addressed several signs bearing the TLC federally registered trademarks that were displayed at or on the road abutting Thunderhead Ranch.  ECF_46 at 15–16.  This dispute, in part, regards a sign hanging from an arch on Thunderhead Ranch and artwork depicting the '054 Mark.  ECF_52 at 3.  The Court's Order specifically

---

(2018).  With regard to a motion for contempt pursuant to an alleged violation of a temporary restraining order or preliminary injunction, caselaw supports the conclusion that a magistrate judge must only issue a Report and Recommendation ("R & R") on such a motion, and the motion should not be directly referred to the magistrate judge.  *See Shaw v. AAA Eng'g & Drafting, Inc.*, 138 F. App'x 62, 73 (10th Cir. 2005) (discussing a magistrate judge's R & R regarding a motion requesting damages for civil contempt); *Dozier v. Aaron Sales & Lease Ownership for Less*, No. 06-CV-570-JHP-SAJ, 2008 WL11380029, at *1 (N.D. Okla. Jan. 24, 2008) ("Under 28 U.S.C. § 636(e)(6)(B)(iii), a United States Magistrate Judge generally does not have power to hold a party in civil contempt and must certify acts of contempt to the District Court."); *see also Petter Invs., Inc. v. Hydro Eng'g, Inc.*, No. 1:07-CV-1033, 2012 WL 463756, at *2 (W.D. Mich. Feb. 13, 2012) (noting the district court erred in referring the subject motion for contempt to a magistrate judge and that the magistrate judge's order was not final because it should have been an R & R); *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, No. 1:10cv1011 (LMB/JFA), 2011 WL 2559806, at *1 (E.D. Va. June 27, 2011) (adopting the magistrate judge's R & R in a motion for contempt and motion for sanctions that arose out of failure to comply with the terms of a temporary restraining order and preliminary injunction).  Hence, the undersigned is filing this as an R & R—not a final order.

noted that Defendants had represented they would "remove a sign hanging from an arch as soon as they can obtain an appropriate lift or ladder." ECF_46 at 15.

4. The sign at issue is permanently bolted to the top of the wooden archway at the entrance of Thunderhead Ranch. ECF_57-2 at 3. The artwork at issue is a wooden sculpture affixed to the side of the main barn on the property. *Id.* The items in question were both installed as permanent fixtures at Thunderhead Ranch. *Id.* Both infringing items are large, heavy, and approximately fifteen to twenty feet above the ground. *Id.* A professional contractor is needed to remove the fixtures, and the process requires professional equipment. *Id.*

5. On June 11, 2020—which was after the TRO was granted but before the Preliminary Injunction was granted in part—at least one Defendant, Defendant Kent Spence, was present at Thunderhead Ranch with at least one TLC alumnus while the infringing signs were hanging. ECF_52-2 at 1; ECF_52-2 at 4.

6. As of June 27, 2020, ten days after the Court expressly required Defendants to take down these subject infringing items, the '054 Mark hanging from the arch and the artwork with the '054 Mark depicted were still displayed. ECF_52-1.

7. On July 3, 2020, during an email conversation within the Gerry Spence's Trial Institute ("GSTI") listserv regarding the mission and purpose of GSTI, Defendant Parris asked one alumnus if he had "any ideas about how we go about identifying the 'Why' that encompasses the essence of TLC?" ECF_52-2 at 9–10.

8. Defendant Parris also posted to the GSTI listserv on July 5, 2020, that "GSTI is just a name that we are forced to use until gives [sic] us back TLC" and "[w]hoever is

running this listserv should probably call it, 'The Real College.'" ECF_52-2 at 12. On the same date, Defendant Parris wrote that "the minority of the board of the Trial Lawyers College is allowed to use the logo until the state court rules on the issues" and that "[t]here is no board, officers or managing agent of any organization called GSTI. *Id.* It is only the name of this listserv until the court, or the federal or state authorities determine who can lawfully operate the Trial Lawyers College." *Id.*

9. On July 11, 2020, Defendant Parris acknowledged that Defendants had "not taken down any vestige of TLC from the Ranch" in an email complaining about the present Motion. ECF_53-1 at 1. In the same email, Defendant Parris writes "I will not be gagged, I will not be frightened into submission, and I sure as hell will never be afraid of John Sloan and J.R. Clary." *Id.* at 2.

10. Also on July 11, 2020, Defendant Parris emailed two notices of a special board meeting, claiming that the board meeting was being held pursuant to the TLC Bylaws. ECF_53-2 at 1; ECF_53-3 at 1. One email explained that "[a]s everyone knows, we are pressing ahead on our claim that we remain on the Board of TLC, and this is disputed by some board members." ECF_53-3 at 1. That email also listed certain defendants, Kent Spence, Rex Parris, Gerry Spence, Joseph Low, and John Zelbst, as still holding offices with TLC. *Id.* at 2. Another email from the same day stated "[a]s everyone knows, we are pressing ahead on our claim that we are the legitimate Board of TLC. Everyone also knows that this is disputed by some board members who we refer to as the Sloan Group. Nonetheless, we are the majority of the lawfully elected board members." ECF_53-4 at 1.

4

11. On July 13, 2020, John Sloan—the president of TLC—sent Defendants Rex Parris, Gerry Spence, Kent Spence, Joseph Low, and John Zelbst a letter noting that Defendants were no longer on the TLC Board of Directors and there was no authorization or approval of the notice of a special board meeting.  ECF_57-1 at 2.  The same letter also pointed out that Defendants' notice was in violation of the Preliminary Injunction.  *Id.* at 3.

12. As of July 16, 2020, after receiving word from Defendants' attorney on July 10, 2020, of Plaintiff's complaint that the infringing items had not yet been removed, Defendant Low used ladders to position and secure tarps over the two infringing items.  ECF_57-2, ¶ 4, 7–12.  Although Defendant Low testified that it is a difficult and lengthy process to get professionals to come to Thunderhead Ranch for maintenance, Defendants presented no evidence of having attempted to contact a professional to take down the infringing signs.  According to the evidence presented, Defendant Low only made efforts to cover the infringing items after the Motion for Contempt was filed.

13. On July 24, 2020, Haytham Faraj—a TLC alumnus and former faculty member—posted an email claiming that GSTI was not running any programs through a competing trial skills program called "Trojan Horse Method," which was started by another TLC alumnus.  ECF_72-1 at 1, 4.  However, that same TLC alumnus, Mr. Daniel Ambrose, began a new program called "Trial Lawyers University" and Defendants Low and Parris have been featured in advertising for Trial Lawyers University.  *Id.* at 2, 5, 8.  Defendant Parris promoted a webinar by Defendant Low

in an email to the GSTI listserv on July 24, 2020. ECF_72-1 at 2, 9. He also wrote that he hoped the alumnus who started the program "doesn't get sued by the Sloan Group for trademark infringement." *Id.* at 9. Although witnesses testified to their concern regarding the timing of the emergence of Trial Lawyers University, no witnesses definitively indicated they had any personal knowledge of an affiliation between Trial Lawyers University and Defendants.

14. During the evidentiary hearing on August 20, 2020, Ms. Maren Chaloupka and Mr. James R. Clary, Jr. testified on behalf of Plaintiff. These witnesses testified regarding the exhibits admitted into the record through Plaintiff's briefings. ECF_73 at 2.

15. In the evidentiary hearing, Defendants called Mr. Daniel Ambrose, the alumnus who started Trial Lawyers University, Mr. Joseph Low, and Mr. Rex Parris. These witnesses testified in reference to Defendants briefing and exhibits. *Id.*

16. Turning to the Court's Order only Defendant Gerry Spence's Trial Lawyers College at Thunderhead Ranch, Gerald Spence, Rex Parris, and Joseph Low were restrained and enjoined pursuant to the Court's Order on Plaintiff's Motion for Preliminary Injunction.

17. As to the specific acts enjoined, the Court concluded that Defendants needed to remove the artwork at issue, even though Defendants maintained they did not need to do so since the '054 Mark was identical to Thunderhead Ranch's cattle brand, which had been registered in the Wyoming Brand book before Plaintiff registered the '054 Mark. ECF_46 at 15–16. The Court noted that Defendants never

contended they ran cattle on the ranch and, if they did run cattle they would not be prohibited from branding cattle with the brand identical to the '054 Mark, but considering their plans to run a competitor trial institute on the land, the artwork could no longer be displayed. *Id.*

18. The Court also ordered that "Defendants shall not use Plaintiff's Marks to market itself as if it is in fact 'The Trial Lawyers College' or its faculty as faculty of 'The Trial Lawyers College' unless and until such time as the state court makes a ruling to that effect." *Id.* at 6.

19. Further, the Court specifically ordered that:

> Defendants shall not: (1) use Plaintiff's Marks to market or promote itself as if it is in fact "The Trial Lawyers College," (2) use Plaintiff's Marks to market its faculty as faculty of "The Trial Lawyers College," (3) purport definitively to be Plaintiff's true Board unless and until such time as the state court makes a ruling to that effect or (4) use linguistic plays on words or various terms associated with The Trial Lawyers College to create or cause confusion as to whether Defendants are acting as The Trial Lawyers College.

*Id.* at 19.   The Preliminary Injunction specifically does not prohibit Defendants from:

> (1) referencing "The Trial Lawyers College" itself; (2) using the name "Gerry Spence" or "Thunderhead Ranch"; (3) referencing the fact that Defendants are alumni of Plaintiff and have a historical association with Plaintiff; (4) referencing or describing their claimed, but not judicially recognized, status as set forth in the ongoing state court litigation to challenge the control of the Board; and (5) making commentary regarding or fair use of Plaintiff's Marks.

*Id.*

20. The Court also noted that, at least with regard to Defendants' previous use of "Trial Lawyers," "Trial Lawyers College," and "Trial Warriors College," Defendants had used "similar sounding names to minimally comply with the Court's Temporary Restraining Order and to cause further confusion to recipients as to whether they were receiving a message from Plaintiff." *Id.* at 15.

## **DISCUSSION**

"To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998) (internal citations omitted). Then, the burden shifts to the defendant to show that the defendant either complied with the order or could not comply with the order. *Rossi Ventures, Inc. v. Pasquini*, No. 11–cv–02838–CMA-BNB, 2012 WL 5949770, at *3 (D. Colo. Nov. 28, 2012). Failure to show clear and convincing evidence of "substantial compliance" with a preliminary injunction is enough to find civil contempt. *Bad Ass Coffee Co. of Hawaii, Inc. v. Bad Ass Coffee Ltd. P'ship*, 95 F. Supp. 2d 1252, 1255 (D. Utah 2000). "The contemnor's disobedience need not be 'willful' to constitute civil contempt." *Id.* at 1256. Instead, "a district court is justified in adjudging a person to be in civil contempt for failure to be reasonably diligent and energetic in attempting to accomplish what was ordered." *Id.*

Courts should also use Rule 65 of the Federal Rules of Civil Procedure as guidance in determining whether a valid order exists and whether the defendant had notice of that order. *See Reliance Ins. Co.*, 159 F.3d at 1316. Rule 65 requires that the adverse parties

8

must have notice of the preliminary injunction. Fed. R. Civ. P. 65(a)(1). Further, every such order must: (1) "state the reasons why it issued"; (2) "state its terms specifically"; and (3) "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A)–(C). Additionally, an injunction or TRO is only binding on: (1) "the parties"; (2) "the parties' officers, agents, servants, employees, and attorneys;" and (3) "other persons who are in active concert or participation with" the aforementioned individuals. Fed. R. Civ. P. 65(d)(2)(A)–(C). The Court must find that the Preliminary Injunction was adequately specific and that Defendants had notice of it in order to find contempt.

As an initial matter, there is no dispute that Defendants have the requisite knowledge of the Court's Order. Defendants' counsel participated in the court hearings regarding the TRO and Preliminary Injunction. *See, e.g.*, ECF_23; ECF_31. Nowhere in Defendants' Response do they contend they did not have notice of the Preliminary Injunction. Therefore, notice is not at issue in this Motion. As to the validity of the court order and whether Defendants' disobeyed the order, those issues will be addressed below.

1. **Defendants' Display of Signs Bearing the Mark**

The first issue for the Court regards the TLC Marks that continued to be displayed at Thunderhead Ranch until a month after the Court's Order was filed. Defendants must take "all reasonable steps to ensure compliance" with a valid court order on preliminary injunction. *Hart's Rocky Mtn. Retreat, Inc. v. Gayhart*, No. 1:06–cv–01235-WDM–BNB, 2007 WL 2491856, at *2 (D. Colo. Aug. 29, 2007). Continued display of an infringing sign is not reasonable, especially where the sign is located at the entrance to a property and

9

emphasis was placed on the sign during preliminary injunction proceedings. *See id.* at *1. Here, there should be no dispute that the Rule 65 specificity requirements were met. The Court's Order on Preliminary Injunction described the reasons the Preliminary Injunction was granted, stated the terms specifically, and described the acts restrained in detail. The Court's Order prohibits Defendants from using Plaintiff's Marks to market or promote itself as if GSTI was TLC. ECF_46 at 19. In fact, there is a section devoted to discussing signage at Thunderhead Ranch in the Court's Order. *Id.* at 15–16. There is no doubt Defendants knew of a valid order that required Defendants to take the infringing signs down as soon as they could obtain an appropriate lift or ladder.

Plaintiff presented evidence that Defendants disobeyed the Court's Order in leaving the Marks displayed even after Plaintiff filed this Motion. It was not until July 16—six days after the Motion was filed—that the signs were covered using a tarp and ladder. Defendants represent that it was the size, weight, location, and method of installation that made these fixtures difficult to remove sooner. Defendants subtly seem to argue that it was a reasonable interpretation of the Court's Order to delay taking down or covering the signs because they were unable to uninstall the infringing signs without a professional and they were unable to attain a professional to do so. *See Hart's Rocky Mtn. Retreat, Inc*, 2007 WL 2491856, at *2 (arguing the defendants had "taken all reasonable steps to ensure compliance" and had "substantially complied with the order"). However, it was not reasonable for Defendants to have interpreted the Court's Order to allow the infringing signs to remain displayed for a month after the order was entered—while individuals were visiting the ranch and could be confused by the infringing signs. *See id.* (concluding

10

defendants unreasonably interpreted the court's order where signs were left hanging at the entrance to a property).  There was no evidence that any Defendant took any action in regard to the large signs until after the Motion for Contempt was filed.  Here, it was clearly possible to cover the signs in short order after the Motion was filed.  Therefore, it was not reasonably diligent for Defendants to delay doing so since they knew it could be some time before they could attain a professional to assist in taking down the infringing signs.  Further, Defendant Low's testimony at the hearing was that he had not contacted any professional to assist in the removal of the large signs.

    As to Defendants' argument that this issue is moot now that the signs are covered with a tarp, the Court disagrees.  *See* ECF_57 at 9.  Simply because a defendant complies with the subject court order *after* a motion for contempt is filed does not mean the defendant can no longer be held in contempt.  *See, e.g.*, *Abbasaid, Inc. v. Los Alamos Nat'l Bank*, No. 09-cv-00354 JAP/LFG, 2011 WL 13161570, at *4 (D.N.M. Apr. 19, 2011) (explaining that procedural events occurring after the acts of contempt have no effect on whether such acts of contempt *were* committed).  It is of no import that Defendants covered the infringing signs *after* Plaintiff filed this Motion.  While covering the signs after the Motion was filed may alleviate the Court's chosen sanctions for Defendants, it does not make this issue moot.

    The Court finds that all enjoined Defendants should be held in contempt for the continued display of infringing signs.  None of the Defendants except Defendant Low appear to have made any efforts to take down or cover the sign.  Even Defendant Low did not make efforts to remove or cover the large signs until after the Motion for Contempt

11

was filed.[2]  Again, while these efforts may alleviate the sanctions, they are not the type of reasonably diligent and energetic actions that must be taken to prevent a finding of civil contempt.

### 2. Defendants' Use of the TLC Marks in Communications and Marketing

Next, the Court examines the issues surrounding Defendants' repeated use of the TLC Marks in emails and other marketing strategies.  The Court's Order prohibits Defendants from using "Plaintiff's Marks to market or promote itself as if it is in fact 'The Trial Lawyers College." ECF_46 at 19.  Included within that directive, the Court specifically notes that Defendants "should refrain from continuing to use Plaintiff's Marks—'Trial Lawyers College'—and names that sound similar to Plaintiff's Marks like 'Trial Warriors College.'" *Id.* at 15.  Nevertheless, Defendants are not prohibited from:

> (1) referencing "The Trial Lawyers College" itself; (2) using the name "Gerry Spence" or "Thunderhead Ranch"; (3) referencing the fact that Defendants are alumni of Plaintiff and have a historical association with Plaintiff; (4) referencing or describing their claimed, but not judicially recognized, status as set forth in the ongoing state court litigation to challenge the control of the Board; and (5) making commentary regarding or fair use of Plaintiff's Marks.

*Id.* at 19.  Yet again, the specificity and knowledge requirements of Rule 65 are met here.

Plaintiff has presented evidence of numerous times when Defendant Parris referenced GSTI as if it was TLC, and repetitive use of a variation of a protected trademark can constitute an act of contempt.  *See Rossi Ventures, Inc.*, 2012 WL 5949770, at *6.  The

---

[2] Defendant Low did remove some smaller signs at the Ranch in compliance with the Order but failed to contact professionals to assist in the removal or covering of the larger signs at issue herein.  Even after the contempt motion was filed, co-defendants did not appear to provide any assistance to Defendant Low, who was left to devise a manner to cover the subject signs.

12

emails from Defendant Parris on multiple occasions represented that GSTI was, in fact, "The Trial Lawyers College" as is best exemplified through his writing that GSTI should be referred to as "The Real College."

Still, Defendants argue that, pursuant to the Court's order, they are permitted to reference TLC in their communications. ECF_57 at 3. According to Defendants, because Defendant Parris references the pending state and federal court proceedings in his communications when he discusses TLC, he is not using the Marks to market or promote GSTI as "the Trial Lawyers College." *Id.* at 3–6. While Defendants may argue that there is no conflation occurring in the emails that would lead to confusion as to whether they are, in fact, "The Trial Lawyers College," the Court disagrees. For example, the email discussion debating GSTI's mission and purpose where Defendant Parris asked what encompasses the essence of TLC could indicate to alumni that Defendant Parris is trying to establish the mission and purpose of TLC—not GSTI. Additionally, the time when Defendant Parris wrote that GSTI is "just a name that we are forced to use until gives [sic] us back TLC" could also confuse readers about who is the real TLC. Defendant Parris' emails are similar to the video of Defendant Gerald Spence, which was a significant factor in the Court's granting of the preliminary injunction. It is also important when considering the current Motion for Contempt to consider the factual history and actions which lead up to the issuance of the injunction. Defendants and, specifically, Mr. Parris assert that language in the notices and emails acknowledged that the board membership is disputed and, thus, the language was not in violation of the injunction. Nevertheless, the emails from Defendant Parris as attached to Plaintiff's initial Motion for Contempt [Doc. 52] are

13

putting forth his arguments in regard to the pending dispute and, as such, fall within the language, if not the spirit, of the injunction's exceptions.  However, Defendant Parris' statement in these emails must be considered in light of his subsequent emails as attached to Plaintiff's Supplemental Memorandum in Support [Doc. 53].  In these documents, Defendant Parris steps up his rhetoric and represents himself and other Defendants as the "legitimate Board of TLC," asserts nominations to the TLC Board, and calls a special meeting.  While Defendant Parris makes mention of the fact that these actions may be disputed, he is clearly and definitively purporting Defendants to be Plaintiff's true board members in direct violation of the injunction, as will be discussed further below.

With regard to Plaintiff's second supplemental memorandum supporting its motion for contempt, Plaintiff indicates concern that Defendants are involved in marketing Trial Lawyers University in a manner that also violates the Court's Order.  Evidence shows that two Defendants were featured in advertising for "Trial Lawyers University."  Further, Defendant Parris did promote Trial Lawyers University when he sent an email to the GSTI listserv about Defendant Low's presentation.  Yet, Plaintiff has not met its burden to provide clear and convincing evidence that Trial Lawyers University is acting in concert or colluding with Defendants in any way that violates the Court's Order.  Nor is there evidence that Trial Lawyers University is competing with or providing similar services to that of The Trial Lawyers College.  The Court does not conclude that the facts alleged in Plaintiff's second supplemental memorandum should be found contemptuous.

### 3. Defendants' Representation of Themselves as TLC Board Members

The last major issue to address is whether Defendants' conduct is contemptuous in the way they reference themselves as TLC board members. The Court ordered that Defendants are not to "purport definitively to be Plaintiff's true Board unless and until such time as the state court makes a ruling to that effect." ECF_46 at 19. This, again, meets the specificity requirements of Rule 65.

Plaintiff has presented evidence of Defendant Parris violating this portion of the Court's Order by sending out two notices regarding a "special Meeting of the Board of Directors of the Trial Lawyers College" that purports that a special meeting would be held in accordance with the TLC bylaws. This email was shared on the GSTI list-serve. Again, repetitive use of a variation of a protected trademark can constitute an act of contempt. *Rossi Ventures, Inc.*, 2012 WL 5949770, at \*6. One such email regarding notice of this special meeting even listed the purported offices held by Defendants. Additionally, when conversing about the mission and purpose of GSTI, Defendant Parris noted that he wanted to discuss the matter with "other board members," while shortly thereafter explaining that there was no GSTI board. This, too, would indicate that he was referring to the "other board members" as members of the TLC board. While other purported board members may have been listed in the emails, there is no evidence that any Defendants other than Defendant Parris were affirmatively holding themselves out as TLC Board Members.

Defendants contend that Defendant Parris's email communications always noted their board membership is disputed. ECF_57 at 7. They also argue that, by Plaintiff requesting them not to refer to themselves as board members, Plaintiff expects them not to

15

dispute the expected state court resolution as to this matter since Defendants' right to call a board meeting is currently pending in state court. *Id.* at 8. Yet again, the Court disagrees. In one sentence Defendant Parris noted that the issue of whether Defendants are board members is disputed, while in the very next sentence Defendant Parris called them the TLC board and proceeded to call a board meeting pursuant to the TLC Bylaws.

Plaintiff's Motion for Contempt is not alleging that Defendants must concede the state court result as to whether Defendants are actually TLC board members. Plaintiff simply asks the Court to require Defendants to comply with the federal Preliminary Injunction. This does not seem a difficult task to request. Yet, in emails, Defendant Parris has failed to comply with the specific requirements set forth in the Court's Order. When Defendant Parris violates the Court's Order by referencing Defendants as TLC board members, he also conflates GSTI and TLC to the extent that it also violates the Court's Order regarding using Plaintiff's Marks to market and promote GSTI as "The Trial Lawyers College." Moreover, Defendant Parris's email declaration that he would "not be gagged," "not be frightened into submission," and "never be afraid of John Sloan and J.R. Clary" indicates a sort of willfulness that further supports a finding of civil contempt. For the aforementioned reasons, the Court concludes Plaintiff has presented ample clear and convincing evidence that Defendant Parris is violating the valid Order on Preliminary Injunction. Defendants have not presented clear and convincing evidence of substantial compliance with the Court's Order in this respect. Therefore, the Court is justified in adjudging civil contempt as to Defendant Parris with regard to purporting definitively to

be Plaintiff's true Board and marketing or promoting Defendants as, in fact, the Trial Lawyers College.

### 4. Determining Appropriate Sanctions

Where civil contempt is found, sanctions are appropriate for two remedial purposes: (1) "to compel or coerce obedience to a court order" or (2) "to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Bad Ass Coffee Co. of Hawaii, Inc.*, 95 F. Supp. 2d at 1256 (quoting *O'Conner v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992)). Importantly, "the amount of any compensatory fine must be justified by evidence demonstrating the amount of loss to a reasonable degree of certainty." *Id.* at 1257. This requirement is to avoid awarding speculative and, therefore, arbitrary awards. *Id.* (deferring determination of alleged losses from the defendant's unauthorized use of plaintiff's mark to the trial, because plaintiff had failed to provide sufficient evidence to assist the court in determining plaintiff's damages). Notably, though, a lack of actual damages does not prevent the Court from ordering purely coercive fines. *See United States v. Prof'l Air Traffic Controllers Org., Local 504*, 703 F.2d 443, 445 (10th Cir. 1983) (discussing coercive daily fines and explaining that their "propriety depends upon the ability of the defendants to comply with the court's order"); *Hart's Rocky Mtn. Retreat, Inc.*, 2007 WL 2491856, at *1 (finding it appropriate to require defendants to pay plaintiff one hundred dollars for each day defendants were not in compliance with the court's order on preliminary injunction because the fines could be totally avoided through compliance with the court's order). It is also appropriate to award

attorney's fees in a civil contempt issue, even where there is no finding of willfulness. *John Zink Co. v. Zink*, 241 F.3d 1256, 1261–62 (10th Cir. 2001).

Here, Plaintiff has not presented evidence of actual damages. It would, however, be appropriate to impose sanctions to compel or coerce obedience with the Court's Order. Nevertheless, because Defendants have now made efforts to cover the infringing artwork with tarps, and because Defendant Parris appears to be the only Defendant holding GSTI out as The Trial Lawyers College and holding the Defendants out as the TLC Board, the Court does not deem coercive fines necessary at this time.

As to the question of whether to award attorney's fees, the Court deems it appropriate to do so. Even where the reason for civil contempt was simply that an infringing sign was not taken down and a similar design painted on a trailer was not altered, the Court found that awarding attorney's fees and costs was clearly appropriate. *Hart's Rocky Mtn. Retreat, Inc*, 2007 WL 2491856, at *3. Similarly, just the act of failing to comply with the Court's Order in taking down or covering the infringing artwork is enough to find that attorney's fees are appropriate here. When combined with the other contemptuous acts on the part of Defendant Parris, awarding attorney's fees is an acceptable method to compel obedience with the Court's Order. Because the undersigned recommends a finding that all enjoined Defendants are jointly and severally liable for failure to remove the infringing artwork, all Defendants should pay some portion of the attorney's fees and costs arising from this Motion. Yet, because Defendant Parris should be found in contempt individually for his communications in violation of the Court's Order,

the Court should allocate the attorney's fees and costs to reflect Defendant Parris' individual contempt accordingly.

## CONCLUSION

For the reasons indicated herein, the undersigned recommends the following:

1. The Court should find enjoined Defendants in civil contempt for violating the Court's Order on Plaintiff's Motion for Preliminary Injunction as pertains to the infringing artwork that was not removed or covered on the premises of Thunderhead Ranch;

2. The Court should find Defendant Parris in civil contempt for violating the Court's Order on Plaintiff's Motion for Preliminary Injunction as pertains to the directive not to market or promote GSTI as The Trial Lawyers College or purport definitively to be Plaintiff's true Board;

3. The Court should not find Defendants or any other individual in civil contempt for any of the facts alleged pertaining to the new Trial Lawyers University supposedly acting in concert to violate the Court's Order on Plaintiff's Motion for Preliminary Injunction;

4. The Court should provide Plaintiff an opportunity to submit an affidavit evincing the amount of attorney's fees and expenses accrued in connection with this Motion; and

5. The Court should allocate attorney's fees and expenses as is just and proper according to the joint and several liability for contemptuous conduct on the part of all enjoined Defendants for failing to remove the infringing artwork and the

individual contemptuous conduct of Defendant Parris in his communications regarding the Trial Lawyers College.

Pursuant to Local Civil Rule 74.1(b) of the Local Civil Rules for the United States District Court for the District of Wyoming:

> A party may object to a Magistrate Judge's proposed findings and recommendations on any matter referred pursuant to 28 U.S.C. § 636(b)(1)(B) within fourteen (14) days after service of the Magistrate Judge's proposed findings and recommendations. Any objections shall specifically identify the portions of the proposed findings and recommendations to which objections are made and the basis for such objections. The District Judge assigned to the case will conduct a de novo review of the objections in accordance with 28 U.S.C. § 636(b)(1). Any objections, response thereto and reply, if any, shall be subject to the page limitations imposed on dispositive matters under Local Rule 7.1(b)(2)(B) and (C).

Any party objecting to the undersigned judge's proposed findings and recommendations shall comply with the Local Civil Rules and 28 U.S.C. § 636(b)(1) accordingly.

Dated this 28th day of August, 2020.

_____
MARK L. CARMAN
UNITED STATES MAGISTRATE JUDGE