| | |
|---|---|
| Bradley T. Cave, P.C. (Wyo. State Bar # 5-2792)<br>Jeffrey S. Pope (Wyo. State Bar # 7-4859)<br>HOLLAND & HART LLP<br>2515 Warren Avenue, Suite 450<br>P.O. Box 1347<br>Cheyenne, WY 82003-1347<br>Telephone: 307.778.4200<br>bcave@hollandhart.com<br>jspope@hollandhart.com<br><br>Timothy Getzoff (admitted *pro hac vice*)<br>HOLLAND & HART LLP<br>1800 Broadway, Suite 300<br>Boulder, CO 80302<br>Telephone: 303.473.2700<br>tgetzoff@hollandhart.com<br><br><br>ATTORNEYS FOR DEFENDANTS GERRY SPENCE<br>TRIAL INSTITUTE, GERALD L. SPENCE, JOHN ZELBST,<br>REX PARRIS, JOSEPH H. LOW AND KENT SPENCE | NORMAN A. PATTIS (admitted *pro hac vice*)<br>Pattis & Smith, LLC<br>383 Orange St.<br>New Haven, CT 06511<br>203.393.3017 (phone)<br>npattis@pattisandsmith.com<br><br>ATTORNEY FOR REX PARRIS |

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br><br>    Plaintiff.<br><br>vs.<br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals,<br><br>    Defendants,<br><br>GERALD L. SPENCE and REX PARRIS,<br><br>    Counterclaim Plaintiffs<br><br>vs.<br><br>THE TRIAL LAWYERS COLLEGE, JOHN SLOAN, JAMES R. CLARY, JR., MILTON GRIMES, DANA COLE, MAREN CHALOUPKA, and ANNE VALENTINE,<br><br>    Counterclaim and Third-Party Claim Defendants. | Civil Action No. 1:20-CV-00080-ABJ |

## FIRST AMENDED ANSWER TO SECOND AMENDED COMPLAINT
## AND COUNTERCLAIMS/THIRD- PARTY CLAIMS

Defendants Gerry Spence Trial Institute (f/k/a Gerry Spence's Trial Lawyers College at Thunderhead Ranch), Gerald L. Spence, John Zelbst, Rex Parris, Joseph H. Low, and Kent Spence (collectively "Spence Defendants"), through their undersigned counsel, hereby submit their Answer and state their defenses to the Second Amended Complaint filed by The Trial Lawyers College ("TLC") (ECF No. 101), and assert their Counterclaims and Third-Party Claims as follows:

## ANSWER TO SECOND AMENDED COMPLAINT

### NATURE OF THE ACTION

1. The allegations in Paragraph 1 of Plaintiff's Second Amended Complaint assert legal conclusions and a summary of Plaintiff's case to which no response is required. To the extent a response is required, Spence Defendants deny the allegations in Paragraph 1 of Plaintiff's Second Amended Complaint.

2. Spence Defendants admit the allegations in Paragraph 2 of Plaintiff's Second Amended Complaint as to TLC's status and that TLC has a board of directors. Spence Defendants deny any characterizations of who is on the board.

3. Spence Defendants admit the allegations in Paragraph 3 of Plaintiff's Second Amended Complaint.

4. Spence Defendants admit the allegations in Paragraph 4 of Plaintiff's Second Amended Complaint.

5. As to Paragraph 5 and its subparagraphs a. and b. in Plaintiff's Second Amended Complaint, Spence Defendants admit the Trial Lawyers College applied for and obtained the trademark registrations cited in the Complaint. The trademark registrations speak for themselves and therefore no further response is required. To the extent any further response is required, Spence Defendants deny Plaintiff's characterization of the trademarks.

2

6.     Spence Defendants admit the allegations in Paragraph 6 of Plaintiff's Second Amended Complaint.

7.     Spence Defendants deny the allegations in Paragraph 7 of Plaintiff's Second Amended Complaint.

8.     Spence Defendants admit they possess a general intent to offer trial training in some fashion in the future, and such services may or may not be in connection with the entity Gerry Spence Trial Institute. At this point the Spence Defendants lack sufficient information to admit or deny whether such services will be substantially similar to those offered by TLC since 1994, and deny any remaining allegations in Paragraph 8 of Plaintiff's Second Amended Complaint.

9.     Spence Defendants deny the allegations in Paragraph 9 of Plaintiff's Second Amended Complaint.

10.     Spence Defendants admit that the incorporator of the originally-named entity Gerry Spence's Trial Lawyers College at Thunderhead Ranch registered a name change with the Wyoming Secretary of State changing the name to Gerry Spence Trial Institute, affirmatively state that the Court's orders issued in this case speak for themselves, and deny any remaining allegations in Paragraph 10 of Plaintiff's Second Amended Complaint.

11.     Spence Defendants deny the allegations in Paragraph 11 of Plaintiff's Second Amended Complaint.

12.     Spence Defendants deny the allegations in Paragraph 12 of Plaintiff's Second Amended Complaint.

13.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations regarding Defendant Ambrose and therefore deny those allegations.

Spence Defendants deny the remaining allegations in Paragraph 13 of Plaintiff's Second Amended Complaint.

14.     Spence Defendants deny the allegations in Paragraph 14 of Plaintiff's Second Amended Complaint.

15.     The allegations in Paragraph 15 of Plaintiff's Second Amended Complaint summarize TLC's allegations to which no response is required.  To the extent a response is required, Spence Defendants deny TLC's characterizations of Spence Defendants' actions.

**THE PARTIES**

16.     Spence Defendants admit the allegations in Paragraph 16 of Plaintiff's Second Amended Complaint.

17.     Spence Defendants admit that Gerry Spence Trial Institute (f/k/a Gerry Spence Trial Lawyers College at the Thunderhead Ranch) ("GSTI") is a Wyoming nonprofit corporation with a registered address as indicated, deny that GSTI possesses current plans at this juncture to operate at Thunderhead Ranch, and deny any remaining allegations in Paragraph 17 of Plaintiff's Second Amended Complaint.

18.     Spence Defendants deny the allegations in Paragraph 18 of Plaintiff's Second Amended Complaint.

19.     Spence Defendants deny the allegations in Paragraph 19 of Plaintiff's Second Amended Complaint.

20.     Spence Defendants admit the allegations in Paragraph 20 of Plaintiff's Second Amended Complaint.

21.     Spence Defendants admit the allegations in Paragraph 21 of Plaintiff's Second Amended Complaint.

22.     Spence Defendants admit the allegations in Paragraph 22 of Plaintiff's Second Amended Complaint.

23.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 23 of Plaintiff's Second Amended Complaint and therefore deny those allegations.

24.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 24 of Plaintiff's Second Amended Complaint and therefore deny those allegations.

**JURISDICTION AND VENUE**

25.     The allegations in Paragraph 25 of Plaintiff's Second Amended Complaint assert legal conclusions to which no response is required.  To the extent a response is required, Spence Defendants deny the allegations in Paragraph 22 of Plaintiff's Second Amended Complaint.

26.     Spence Defendants admit that this Court has personal jurisdiction over Gerry Spence Trial Institute, Gerry Spence, and Kent Spence, deny that personal jurisdiction in this action exists over Defendants Zelbst, Low, and Parris, and deny any remaining allegations in Paragraph 26 of Plaintiff's Second Amended Complaint.

27.     Spence Defendants admit that venue is proper with respect to Gerry Spence Trial Institute, Gerry Spence, and Kent Spence, deny that venue is proper as to Defendants Zelbst, Low, and Parris, and deny any remaining allegations in Paragraph 27 of Plaintiff's Second Amended Complaint.

**STATEMENT OF FACTS**

28.     Spence Defendants admit the allegations in Paragraph 28 as it relates to TLC's historical mission, denies that TLC in its current configuration as controlled by the Sloan group

possesses this same dedication, and denies any remaining allegations in paragraph 28 of the Second Amended Complaint.

29.     Spence Defendants admit the allegations in Paragraph 29 of Plaintiff's Second Amended Complaint.

30.     Spence Defendants admit the allegations in Paragraph 30 of Plaintiff's Second Amended Complaint.

31.     Spence Defendants admit the allegations in Paragraph 31 of Plaintiff's Second Amended Complaint.

32.     Spence Defendants admit the allegations in Paragraph 32 of Plaintiff's Second Amended Complaint.

33.     Spence Defendants admit the allegations in Paragraph 33 of Plaintiff's Second Amended Complaint.

34.     Spence Defendants admit the allegations in Paragraph 34 of Plaintiff's Second Amended Complaint.

35.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 35 of Plaintiff's Second Amended Complaint and therefore deny those allegations.

36.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 36 of Plaintiff's Second Amended Complaint and therefore deny those allegations.

37.     Spence Defendants admit that the individual Spence Defendants have served on the board of TLC and deny the remaining allegations in Paragraph 37 of Plaintiff's Second Amended Complaint.

38.     Spence Defendants admit the TLC board has held discussions about the construction of an Education Center at the Thunderhead Ranch, and affirmatively state that the TLC board at the December 2019 board meeting approved a proposal to further investigate the costs and other issues concerning the Education Center.  Spence Defendants deny that the TLC board "declined to support" the Education Center and deny all remaining allegations in Paragraph 38 of Plaintiff's Second Amended Complaint.

39.     Spence Defendants deny the allegations in Paragraph 39 of Plaintiff's Second Amended Complaint.

40.     Spence Defendants admit that a notice of termination of lease agreement was sent from the Spence Foundation to TLC, further admit that the individual TLC board members other than Spence Defendants in this action, without attempting to cure the default or hold a TLC board meeting, decided to and did vacate the Thunderhead Ranch premises, and deny any remaining allegations in Paragraph 40 of Plaintiff's Second Amended Complaint.

41.     Spence Defendants admit that the individual TLC board members other than Spence Defendants in this action vacated the Thunderhead Ranch prior to the 30 day cure period, further admit that the Spence Foundation agreed to allow TLC to leave property on the Thunderhead Ranch until the disputed issue of control of TLC is resolved in pending state court actions, and deny any remaining allegations in Paragraph 41 of Plaintiff's Second Amended Complaint.

42.     Spence Defendants admit that the entity formerly known as "Gerry Spence Trial Lawyers College at Thunderhead Ranch" was registered as a non-profit corporation with the Wyoming Secretary of State on or around April 30, 2020.  Spence Defendants deny the remaining allegations in Paragraph 42 of Plaintiff's Second Amended Complaint.

43.     Spence Defendants deny the allegations in Paragraph 43 of Plaintiff's Second Amended Complaint.

44.     Spence Defendants admit that the name change of GSTI was filed on May 27, 2020, which occurred prior to any injunctive orders issued by this Court and deny any remaining allegations in Paragraph 44 of Plaintiff's Second Amended Complaint.

45.     Spence Defendants deny the allegations in Paragraph 45 of Plaintiff's Second Amended Complaint.

46.     Spence Defendants admit that certain written policies have been created over the years concerning restrictions on advertising and other issues, deny that any such policy concern the supposed confidentiality of TLC alumni, and deny all remaining allegations in Paragraph 46 of Plaintiff's Second Amended Complaint.

47.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations regarding Defendant Joyce, and deny all remaining allegations in Paragraph 47 of Plaintiff's Second Amended Complaint.

48.     The email to the new listserv speaks for itself and therefore no further response is required.  To the extent a response is required, Spence Defendants deny Plaintiff's characterization of the email.

49.     Spence Defendants admit a video featuring Gerry Spence was posted to YouTube.com on or around April 30, 2020, affirmatively state that the video speaks for itself, and deny all remaining allegations in Paragraph 49.

50.     Spence Defendants admit the allegations in Paragraph 50 of Plaintiff's Second Amended Complaint.

51.     Spence Defendants admit the '054 Mark was visible in the video and deny all remaining allegations in paragraph 51 of Plaintiff's Second Amended Complaint.

52.     Spence Defendants deny the allegations in Paragraph 52 of Plaintiff's Second Amended Complaint.

53.     Spence Defendants affirmatively state that the video speaks for itself and therefore no further response is required.  To the extent a response is required, Spence Defendants deny Plaintiff's characterization of the video.

54.     Spence Defendants deny the allegations in Paragraph 54 of Plaintiff's Second Amended Complaint.

55.     The video speaks for itself and therefore no further response is required.  To the extent a response is required, Spence Defendants deny Plaintiff's characterization of the video.

56.     Spence Defendants deny the allegations in Paragraph 56 of Plaintiff's Second Amended Complaint.

57.     Spence Defendants deny the allegations in Paragraph 57 of Plaintiff's Second Amended Complaint.

58.     Spence Defendants deny the allegations in Paragraph 58 of Plaintiff's Second Amended Complaint.

59.     The email speaks for itself and therefore no further response is required.  To the extent a response is required, Spence Defendants deny Plaintiff's characterization of the email.

60.     The email speaks for itself and therefore no further response is required.  To the extent a response is required, Spence Defendants deny Plaintiff's characterization of the email. Defendants further deny Plaintiff's allegations regarding board elections.

61.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 61 of Plaintiff's Second Amended Complaint and therefore deny those allegations.

62.     Spence Defendants admit that cease-and-desist letters were sent, deny that Plaintiff had authority to send the letters, and deny any remaining allegations in paragraph 62 of Plaintiff's Second Amended Complaint.

63.     Spence Defendants admit that the email speaks for itself and therefore no further response is required and deny all remaining allegations in Paragraph 63 of Plaintiff's Second Amended Complaint.

64.     Spence Defendants admit that the email speaks for itself and therefore no further response is required and deny all remaining allegations in Paragraph 64 of Plaintiff's Second Amended Complaint.

65.     Spence Defendants deny the allegations in Paragraph 65 of Plaintiff's Second Amended Complaint.

66.     Spence Defendants admit that Defendant Low posted the email to the Gaggle listserv dated June 8, 2020 attached as Exhibit I, affirmatively state that the email speaks for itself, deny that they have used a variety of names instead of GSTI, and deny all remaining allegations in Paragraph 66 of the Second Amended Complaint.

67.     Spence Defendants admit that Defendant Parris noticed a special board meeting as reflected in Exhibit J, affirmatively state that the emails speak for themselves, and deny all remaining allegations in Paragraph 67 of the Second Amended Complaint.

68. Spence Defendants affirmatively state that the July 11 emails speak for themselves and deny all remaining allegations in Paragraph 68 of the Second Amended Complaint.

69. Spence Defendants affirmatively state that the July 11 emails speak for themselves and deny all remaining allegations in Paragraph 69 of the Second Amended Complaint.

70. Spence Defendants admit that a board meeting was held on July 14, 2020, that the identified new board members were elected at that meeting, that the results of the board elections were disclosed to certain TLC alumni, and deny all remaining allegations in Paragraph 70 of the Second Amended Complaint.

71. Defendants Parris and Low deny that they began promoting Trial Lawyers University, admit that webinars conducted by them and many others have been posted by Defendant Ambrose onto a website named by Mr. Ambrose as Trial Lawyers University, and are without knowledge sufficient to admit or deny the remaining allegations in paragraph 71 of the Second Amended Complaint and therefore deny the same.

72. Spence Defendants admit that Defendant Parris posted an email to the listserv that appears as Exhibit L, affirmatively state that the email speaks for itself, and deny all remaining allegations in paragraph 72 of the Second Amended Complaint.

73. Spence Defendants admit that approximately eleven webinars conducted by Defendant Parris have been viewable on Defendant Ambrose's website at <triallawyersuniversity.com>, Spence Defendants lack sufficient information to admit or deny the timing of when Mr. Ambrose posted any webinars to his website, and deny any remaining allegations in paragraph 73 of the Second Amended Complaint.

74.     Spence Defendants admit that approximately four webinars conducted by Defendant Low have been viewable on Defendant Ambrose's website at <triallawyersuniversity.com>, Spence Defendants lack sufficient information to admit or deny the timing of when Mr. Ambrose posted any webinars to his website, and deny any remaining allegations in paragraph 74 of the Second Amended Complaint.

75.     Spence Defendants lack information sufficient to admit or deny the truth of the allegations in paragraph 75 of the Second Amended Complaint and, therefore, deny the same.

76.     Spence Defendants admit that Defendant Ambrose has used different names to market or offer trial skills courses over the years, but lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 76 of the Second Amended Complaint and, therefore, deny the same.

77.     Spence Defendants admit that the differences between the phrases Trial Lawyers University and Trial Lawyers College speak for themselves and deny any remaining allegations or characterizations in paragraph 77 of the Second Amended Complaint.

78.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 78 of Plaintiff's Second Amended Complaint and, therefore, deny the same.

79.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 79 of Plaintiff's Second Amended Complaint and, therefore, deny the same.

80.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 80 of Plaintiff's Second Amended Complaint and, therefore, deny the same.

81.     Spence Defendants deny the allegations in paragraph 81 of the Second Amended Complaint.

82.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 82 of Plaintiff's Second Amended Complaint and, therefore, deny the same.

83.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 83 of Plaintiff's Second Amended Complaint and, therefore, deny the same.

84.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 84 of Plaintiff's Second Amended Complaint and, therefore, deny the same.

85.     Spence Defendants deny the allegations in paragraph 85 of the Second Amended Complaint.

### COUNT 1 – ALLEGED TRADEMARK INFRINGEMENT, 15 U.S.C. § 1141, *ET SEQ.* ALL DEFENDANTS

86.     Spence Defendants incorporate by reference their responses to all preceding paragraphs of their Answer.

87.     Spence Defendants deny the allegations in Paragraph 87 of Plaintiff's Second Amended Complaint.

88.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations against Defendant Ambrose and therefore deny those allegations. Spence Defendants deny the remaining allegations in Paragraph 88 of Plaintiff's Second Amended Complaint.

89.     Spence Defendants deny the allegations in Paragraph 89 of Plaintiff's Second Amended Complaint.

90.     Spence Defendants deny the allegations in Paragraph 90 of Plaintiff's Second Amended Complaint.

91.     Spence Defendants deny the allegations in Paragraph 91 of Plaintiff's Second Amended Complaint.

92.     Spence Defendants deny the allegations in Paragraph 92 of Plaintiff's Second Amended Complaint.

93.     Spence Defendants deny the allegations in Paragraph 93 of Plaintiff's Second Amended Complaint.

94.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations against Defendant Ambrose and therefore deny those allegations. Spence Defendants deny the remaining allegations in Paragraph 94 of Plaintiff's Second Amended Complaint.

95.     Spence Defendants deny the allegations in Paragraph 95 of Plaintiff's Second Amended Complaint.

96.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations against Defendant Ambrose and therefore deny those allegations. Spence Defendants deny the remaining allegations in Paragraph 96 of Plaintiff's Second Amended Complaint.

97.     Spence Defendants deny the allegations in Paragraph 97 of Plaintiff's Second Amended Complaint.

98.     Spence Defendants deny the allegations in Paragraph 98 of Plaintiff's Second Amended Complaint.

99.     Spence Defendants deny the allegations in Paragraph 99 of Plaintiff's Second Amended Complaint.

100.    Spence Defendants deny the allegations in Paragraph 100 of Plaintiff's Second Amended Complaint.

101.    Spence Defendants deny the allegations in Paragraph 101 of Plaintiff's Second Amended Complaint.

102.    Spence Defendants deny the allegations in Paragraph 102 of Plaintiff's Second Amended Complaint.

103.    Spence Defendants deny the allegations in Paragraph 103 of Plaintiff's Second Amended Complaint.

104.    Spence Defendants deny the allegations in Paragraph 104 of Plaintiff's Second Amended Complaint.

105.    Spence Defendants deny the allegations in Paragraph 105 of Plaintiff's Second Amended Complaint.

## COUNT 2 – ALLEGED UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, PASSING OFF AND FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a) ALL DEFENDANTS

106.    Spence Defendants incorporate by reference their responses to all preceding paragraphs of their Answer.

107.    Spence Defendants deny the allegations in Paragraph 107 of Plaintiff's Second Amended Complaint.

108.    Spence Defendants deny the allegations in Paragraph 108 of Plaintiff's Second Amended Complaint.

109.    Spence Defendants deny the allegations in Paragraph 109 of Plaintiff's Second Amended Complaint.

110.    Spence Defendants deny the allegations in Paragraph 110 of Plaintiff's Second Amended Complaint.

111.    Spence Defendants deny the allegations in Paragraph 111 of Plaintiff's Second Amended Complaint.

112.    Spence Defendants deny the allegations in Paragraph 112 of Plaintiff's Second Amended Complaint.

113.    Spence Defendants deny the allegations in Paragraph 113 of Plaintiff's Second Amended Complaint.

114.    Spence Defendants deny the allegations in Paragraph 114 of Plaintiff's Second Amended Complaint.

115.    Spence Defendants deny the allegations in Paragraph 115 of Plaintiff's Second Amended Complaint.

116.    Spence Defendants deny the allegations in Paragraph 116 of Plaintiff's Second Amended Complaint.

117.    Spence Defendants deny the allegations in Paragraph 117 of Plaintiff's Second Amended Complaint.

118.    Spence Defendants deny the allegations in Paragraph 118 of Plaintiff's Second Amended Complaint.

119.    Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations against Defendant Ambrose and therefore deny those allegations.

Spence Defendants deny the remaining allegations in Paragraph 119 of Plaintiff's Second Amended Complaint.

120.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations against Defendant Ambrose and therefore deny those allegations. Spence Defendants deny the remaining allegations in Paragraph 120 of Plaintiff's Second Amended Complaint.

121.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations against Defendant Ambrose and therefore deny those allegations. Spence Defendants deny the remaining allegations in Paragraph 121 of Plaintiff's Second Amended Complaint.

122.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations against Defendant Ambrose and therefore deny those allegations. Spence Defendants deny the remaining allegations in Paragraph 122 of Plaintiff's Second Amended Complaint.

123.     Spence Defendants deny the allegations in Paragraph 123 of Plaintiff's Second Amended Complaint.

### COUNT 3 – ALLEGED COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
### GERRY SPENCE'S TRIAL LAWYERS COLLEGE AT THE THUNDERHEAD RANCH

124.     Spence Defendants incorporate by reference their responses to all preceding paragraphs of their Answer.

125.     Spence Defendants admit the individual Spence Defendants are board members and had use of the listserv.  Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations regarding Defendant Joyce.  Spence Defendants deny any remaining allegations in Paragraph 125 of Plaintiff's Second Amended Complaint.

126.     Spence Defendants admit the allegations in Paragraph 126 of Plaintiff's Second Amended Complaint.

127.     Spence Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations regarding Defendant Joyce.  Spence Defendants deny all remaining allegations in Paragraph 127 of Plaintiff's Second Amended Complaint.

128.     Spence Defendants deny the allegations in Paragraph 128 of Plaintiff's Second Amended Complaint.

129.     Spence Defendants deny the allegations in Paragraph 129 of Plaintiff's Second Amended Complaint.

130.     Spence Defendants deny the allegations in Paragraph 130 of Plaintiff's Second Amended Complaint.

131.     Spence Defendants deny the allegations in Paragraph 131 of Plaintiff's Second Amended Complaint.

### COUNT 4 – DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 DEFENDANTS GSTI, GERRY SPENCE, ZELBST, PARRIS LOW, KENT SPENCE, AND JOYCE

132.     Spence Defendants incorporate by reference their responses to all preceding paragraphs of their Answer.

133.     Spence Defendants deny the allegations in Paragraph 133 of Plaintiff's Second Amended Complaint.

134.     Spence Defendants admit that TLC serves individuals who reside in states other than Wyoming and deny all remaining allegations in Paragraph 134 of Plaintiff's Second Amended Complaint.

135.     Spence Defendants deny the allegations in Paragraph 135 of Plaintiff's Second Amended Complaint.

136.     Spence Defendants deny the allegations in Paragraph 136 of Plaintiff's Second Amended Complaint.

137.     Spence Defendants deny the allegations in Paragraph 137 of Plaintiff's Second Amended Complaint.

138.     Spence Defendants deny the allegations in Paragraph 138 of Plaintiff's Second Amended Complaint.

139.     Spence Defendants deny the allegations in Paragraph 139 of Plaintiff's Second Amended Complaint.

140.     Spence Defendants deny the allegations in Paragraph 140 of Plaintiff's Second Amended Complaint.

141.     Spence Defendants deny the allegations in Paragraph 141 of Plaintiff's Second Amended Complaint.

142.     Spence Defendants deny the allegations in Paragraph 142 of Plaintiff's Second Amended Complaint.

143.     Spence Defendants deny the allegations in Paragraph 143 of Plaintiff's Second Amended Complaint.

### COUNT 5 – ALLEGED MISAPPROPRIATION OF TRADE SECRETS UNDER WYOMING LAW DEFENDANTS GSTI, GERRY SPENCE, ZELBST, PARRIS, LOW, KENT SPENCE, AND JOYCE

144.     Spence Defendants incorporate by reference their responses to all preceding paragraphs of their Answer.

145.     Spence Defendants deny the allegations in Paragraph 145 of Plaintiff's Second Amended Complaint.

146.     Spence Defendants deny the allegations in Paragraph 146 of Plaintiff's Second Amended Complaint.

## COUNT 6 – ALLEGED CIVIL CONSPIRACY
## ALL DEFENDANTS

147.    Spence Defendants incorporate by reference their responses to all preceding paragraphs of their Answer.

148.    Spence Defendants admit that there are five individuals among them and deny any remaining allegations in paragraph 148 of the Second Amended Complaint.

149.    Spence Defendants deny the allegations in Paragraph 149 of Plaintiff's Second Amended Complaint.

150.    Spence Defendants deny the allegations in Paragraph 150 of Plaintiff's Second Amended Complaint.

151.    Spence Defendants deny the allegations in Paragraph 151 of Plaintiff's Second Amended Complaint.

152.    Spence Defendants deny the allegations in Paragraph 152 of Plaintiff's Second Amended Complaint.

153.    Spence Defendants deny the allegations in Paragraph 153 of Plaintiff's Second Amended Complaint.

154.    Spence Defendants deny the allegations in Paragraph 154 of Plaintiff's Second Amended Complaint.

## COUNT 7 – DECLARATORY RELIEF
## ALL DEFENDANTS

155.    Spence Defendants incorporate by reference their responses to all preceding paragraphs of their Answer.

156.    Spence Defendants deny the allegations in Paragraph 156 of Plaintiff's Second Amended Complaint.

157.     Spence Defendants deny the allegations in Paragraph 157 of Plaintiff's Second Amended Complaint.

158.     Spence Defendants deny the allegations in Paragraph 158 of Plaintiff's Second Amended Complaint.

159.     Spence Defendants deny the allegations in Paragraph 159 of Plaintiff's Second Amended Complaint.

160.     Spence Defendants deny the allegations in Paragraph 160 of Plaintiff's Second Amended Complaint.

161.     Spence Defendants deny the allegations in Paragraph 161 of Plaintiff's Second Amended Complaint.

### COUNT 8 – INJUNCTIVE RELIEF
### ALL DEFENDANTS

162.     Spence Defendants incorporate by reference their responses to all preceding paragraphs of their Answer.

163.     Spence Defendants deny the allegations in Paragraph 163 of Plaintiff's Second Amended Complaint.

164.     Spence Defendants deny the allegations in Paragraph 164 of Plaintiff's Second Amended Complaint.

165.     Spence Defendants deny the allegations in Paragraph 165 of Plaintiff's Second Amended Complaint.

166.     Spence Defendants deny the allegations in Paragraph 166 of Plaintiff's Second Amended Complaint.

167.     Spence Defendants deny the allegations in Paragraph 167 of Plaintiff's Second Amended Complaint.

168.     Spence Defendants deny the allegations in Paragraph 168 of Plaintiff's Second Amended Complaint.

169.     Spence Defendants deny the allegations in Paragraph 169 of Plaintiff's Second Amended Complaint.

170.     Spence Defendants deny the allegations in Paragraph 170 of Plaintiff's Second Amended Complaint.

171.     Spence Defendants deny the allegations in Paragraph 171 of Plaintiff's Second Amended Complaint.

**GENERAL DENIAL**

The remainder of Plaintiff's Second Amended Complaint constitutes a prayer for relief to which no response is required.  To the extent a response may be required, Spence Defendants deny that Plaintiff is entitled to the relief requested or to any relief whatsoever.  Unless expressly admitted herein, Spence Defendants deny all allegations contained in the Second Amended Complaint.

**DEFENDANTS' AFFIRMATIVE DEFENSES**

Spence Defendants incorporate by reference the foregoing paragraphs in their entirety and assert the following affirmative and other defenses.  By asserting these defenses, Spence Defendants do not admit they bear the burden of proof on any issue and do not accept any burden they would not otherwise bear.  Spence Defendants reserve all other defenses pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, and any other defenses, at law or in equity, that now exist or in the future may be available based on discovery and further factual investigation in this case.  Spence Defendants reserve the right to amend and/or supplement these Affirmative Defenses as this case progresses and new information becomes known to it through discovery or otherwise.

### First Defense

Spence Defendants do not now infringe, and have not infringed in the past, either directly, indirectly, contributorily, by inducement, willfully, jointly, or otherwise, Plaintiff's trademarks.

### Second Defense

Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted.

### Third Defense

Plaintiff's claims against Spence Defendants are barred or defeated, in whole or in part, by the fair use doctrine.

### Fourth Defense

Plaintiff has not suffered any damages and/or has failed to mitigate its damages.

### Fifth Defense

The Sloan Group, who are the individuals purporting to control or act on behalf of Plaintiff, lack and have not acted upon proper, legal, and sufficient authority to institute this action in the name of Plaintiff and/or maintain and assert the claims set forth in Plaintiff's Second Amended Complaint.

### Sixth Defense

Spence Defendants' actions as alleged herein, to the extent they occurred, were authorized.

### Seventh Defense

Plaintiff's claims should be stayed and/or jurisdiction by this Court abstained under the *Colorado River* doctrine, the "prior exclusive jurisdiction" doctrine, and the prohibition against claim splitting.

## Eighth Defense

Plaintiff's requested injunctive and other relief is barred by Plaintiff's unclean hands.

## Ninth Defense

Venue is improper in this Court as to Defendants Zelbst, Parris, and Low.

## Tenth Defense

This Court lacks personal jurisdiction over Defendants Zelbst, Parris, and Low.

## Eleventh Defense

Plaintiff is not now and was not the owner of the '054 Mark when it applied for registration, such that the registration is *void ab initio*.

## Twelfth Defense

With respect to the '054 Mark, Plaintiff was a licensee of Gerry Spence and not its owner when it applied for registration of the mark and when it filed affidavits in support of renewal of the registration. Plaintiff also knew that its use of the '054 Mark was done pursuant to permission granted by Gerry Spence, and that Gerry Spence had the right to use the '054 Mark in commerce at the time of the application and at all times thereafter. When Plaintiff caused the application for registration to be filed, and again when it subsequently filed affidavits in support of renewal, it knowingly misrepresented to the USPTO that it was the owner of the mark and that no other person had the right to use the mark in commerce so as to induce the USPTO to issue the registration and to renew its status and accept Plaintiff's Section 8 and 15 affidavits. The USPTO relied on such misrepresentations in issuing and maintaining the registration, such that the '054 Mark registration was procured and maintained by fraud.

### Thirteenth Defense

Plaintiff and/or the Sloan Group, with the other's consent, have used Plaintiff's marks so as to misrepresent the source of the goods or services on or in connection with which the marks are used.

### Reservation of Defenses

Spence Defendants reserve their right to rely upon additional defenses that become available or apparent during discovery and reserve their right to amend this pleading to assert such defenses as discovery proceeds.

### Attorneys' Fees

Spence Defendants request an award of the attorneys' fees and costs they have incurred in the defense of this action pursuant to applicable law.

### Jury Demand

Spence Defendants hereby demand a trial by jury on all claims and issues so triable.

## COUNTERCLAIMS/THIRD PARTY CLAIMS

Defendants Gerald L. Spence and R. Rex Parris ("Spence Counterclaim Plaintiffs"), through their attorneys, bring the following counterclaims and third-party claims against John Sloan, Milton Grimes, Maren Chaloupka, James R. Clary Jr., Dana Cole, and Anne Valentine ("the Sloan Group" or "Sloan Counterclaim Defendants"), and against the Trial Lawyers College ("TLC").

### NATURE OF THE ACTION

1. These counter and third-party claims seek to protect the marks, name, voice, and likeness of Gerald L. ("Gerry") Spence, prevent the Sloan Group from making false and misleading statements regarding their purported authority over and control of TLC, and rectify the Sloan Group's abuse of the legal system to achieve improper ends.

2. As the founder and leader of TLC since its inception, Gerry Spence's reputation and personal brand have been critical to the existence, growth, and success of TLC. The Sloan Group knows this, as they have continued to use Gerry Spence's name, voice, and likeness to promote TLC's goods and services despite claiming to have ousted Mr. Spence from TLC in May 2020.

3. Moreover, the Sloan Group has continued to make the false and misleading claim that they constitute the definitive true board of TLC when in fact they are not, and despite the pendency of Wyoming state court actions, where this issue is clearly disputed and unresolved.

4. The Sloan Group's false claim to be the true board of TLC, and their efforts to usurp Gerry Spence's marks, name, voice, and likeness for their personal benefit while at the same time pursuing this litigation nominally by TLC against Gerry Spence, is shameless and unlawful.

5.     This Court has jurisdiction under 28 U.S.C. §§ 1331 & 1367.  This action involves claims arising under the laws of the United States; specifically, the Lanham Act, 15 U.S.C. § 1051 *et. seq*.  The Court has supplemental jurisdiction over the claims brought under Wyoming law pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over John Sloan, Milton Grimes, Maren Chaloupka, James R. Clary Jr., Dana Cole, and Anne Valentine because each has purposefully availed himself or herself of the privileges of Wyoming law.

7.     Additionally, during the relevant time period, each member of the Sloan Group has affirmatively submitted himself or herself to the jurisdiction of this Court.

8.     Upon information and belief, the members of the Sloan Group agreed to initiate this action in this Court.  In doing so, they agreed to file this action under the false pretense that they were acting as and on behalf of TLC, although by the date of this action's initiation the Sloan Group lacked sufficient authority to act on TLC's behalf.

9.     The members of the Sloan Group in fact acted in their personal capacities in causing this action to be filed, causing Wyoming and out-of-state attorneys to have nominally appeared for and to have made numerous filings purportedly on TLC's behalf—when in fact the Sloan Group had no authority to engage such attorneys or approve such actions for TLC.  By thus presenting themselves voluntarily before this Court, the members of the Sloan Group all consented to this Court's jurisdiction over them.

10.     Additionally, prior to and subsequent to the initiation and filing of amended pleadings in this action, the Sloan Group—knowing that TLC was in Wyoming—falsely claimed

to be the true board of TLC, and directed and caused TLC's employees to act in a manner both contrary to the interests of TLC and contrary to the direction of the true board of TLC.

11.     Counter Defendant Clary has personally and voluntarily appeared in this action and/or in related actions in Wyoming, including by signing verifications of pleadings in this action (e.g., ECF no. 1 at 24, 83-2 at 33, 89 at 33, 96-2 at 33, 101 at 33), declarations in this action (e.g., ECF nos. 30-1, 31-1), and affidavits in related proceedings in the state courts of Wyoming (e.g., on May 21, 2020, July 20, 2020 and October 1, 2020).  He also appeared and testified in this action without compulsory process at the June 9, 2020 motion hearing (see ECF no. 37) and the August 20, 2020 motion hearing (see ECF no. 73).  Without compulsion, Clary has purported to review and rebut evidence, and has directly and voluntarily participated in legal proceedings in this state directly related to the factual disputes underlying these Counterclaims.

12.     Counter Defendant Chaloupka has personally and voluntarily appeared in this action and/or in related actions in Wyoming, including by signing and submitting to this Court declarations in this action (e.g., ECF nos. 42-5, 52-2, 72-1) and affidavits in related actions proceeding in the state courts of Wyoming (e.g., on July 20, 2020 and September 28, 2020), and by testifying without compulsory process at the August 20, 2020 motion hearing (see ECF no. 73).  Without compulsion, has directly and voluntarily participated in discovery and other proceedings in this action before this Court, including with respect to the claims, defenses, and these Counterclaims for example by appearing at a deposition taken of another individual in this action, and thus has directly and voluntarily participated in these legal proceedings.

13.     Counter Defendant Valentine has personally and voluntarily appeared in this action and/or in related actions in Wyoming, including by signing affidavits in related actions proceeding in the state courts of Wyoming (e.g., on May 15, 2020 and October 1, 2020).

Without compulsion, Valentine thus has directly and voluntarily participated in legal proceedings in this state directly related to the factual disputes underlying these Counterclaims.

14. Counter Defendant Sloan has personally and voluntarily appeared in this action and/or in related actions in Wyoming, including by signing affidavits in related actions proceeding in the state courts of Wyoming (e.g., on July 20, 2020 and October 1, 2020). Without compulsion, Sloan thus has directly and voluntarily participated in legal proceedings in this state directly related to the factual disputes underlying these Counterclaims.

15. Counter Defendant Cole has personally and voluntarily appeared in this action and/or in related actions in Wyoming, including by signing affidavits in related actions proceeding in the state courts of Wyoming (e.g., on May 15, 2020 and July 20, 2020). Without compulsion, Cole thus has directly and voluntarily participated in legal proceedings in this state directly related to the factual disputes underlying these Counterclaims.

16. Counter Defendant Grimes has personally and voluntarily appeared in this action and/or in related actions in Wyoming, including by signing (false) affidavits in related actions proceeding in the state courts of Wyoming (e.g., on May 14, 2020 and July 18, 2020). Grimes thus has directly and voluntarily participated in legal proceedings in this state directly related to the factual disputes underlying these Counterclaims. Without compulsion, Grimes also has directly and voluntarily participated in discovery and other proceedings in this action before this Court, including with respect to the claims, defenses, and these Counterclaims for example by appearing at a deposition taken of another individual in this action, and thus has directly and voluntarily participated in these legal proceedings.

17. Each of the Sloan Group has repeatedly traveled to Wyoming at least one or more times per year in connection with TLC-related events, including board meetings and other

occasions, at least some of which was in furtherance of their conspiracy to commit the tortious acts as alleged herein.

18. Each of the Sloan Group parties also has committed or conspired with each other and with TLC or other persons in Wyoming to commit the tortious acts described in these Counterclaims, knowing and intending that the tortious acts or the consequences thereof would , occur at least in part within Wyoming, and would be directed into and felt primarily within Wyoming.

19. Venue is proper under 28 U.S.C. § 1391 and under other law, at least because many of the events giving rise to claims occurred in this District, because these counterclaims relate to the original action filed in this District, and because and at least one Counter Defendant resides within this District.

**PARTIES**

20. The Spence Counterclaim Plaintiffs are two of the original Defendants in this action and rightfully are and claim to be members of the Board of Directors of The Trial Lawyers College, who exercised their right under the Bylaws of The Trial Lawyers College to call a Special Meeting of a duly constituted quorum on July 14, 2020 and vote on the election of new board members to replace the members whose terms had expired.

21. Counterclaim Defendant TLC is a 501(c)(3) nonprofit corporation organized under Wyoming law. TLC's registered principal place of business is 1623 Central Avenue, Cheyenne, WY 82001. Until April 2020, TLC operated at the Thunderhead Ranch, Dubois, WY, under a lease granted to it by the Spence Foundation.

22. Counterclaim Defendant John Sloan is an individual residing in or near Longview, Texas. He purports to be a board member and the acting President of TLC but had

not been reinstated since his term expired in 2015.  He was specifically replaced pursuant to by-laws by the election of Sylvia Torres-Guillén to fill his seat on the board at the Special Meeting of the board held on July 14, 2020.

23.     Counterclaim Defendant Milton Grimes is an individual residing in or near Los Angeles, California.  He purports to be a TLC board member but was specifically replaced pursuant to the by-laws by the election of Adrian Baca to fill the seat on the board at the Special Meeting of the board held on July 14, 2020.

24.     Counterclaim Defendant Maren Chaloupka is an individual residing in Nebraska. She purports to be the acting Secretary of TLC but was never voted into that position by a majority vote of the board, nor was she ever elected to the board at a board meeting or in any other manner recognized by the by-laws or the laws of Wyoming.

25.     Counterclaim Defendant John R. Clary, Jr. is an individual residing in Louisiana. He purports to be the acting Treasurer of TLC.  He was specifically replaced pursuant to the by-laws by the election of Haytham Faraj to fill the seat on the board at the Special Meeting of the board held on July 14, 2020.

26.     Counterclaim Defendant Dana Cole is an individual residing in or near Akron, Ohio.  He resigned his position on the board on April 13, 2020 and was never reinstated as a board member by a majority vote of the board.  He now purports to be a current TLC board member.  His former board seat was specifically filled pursuant to the by-laws by the election of Lee (Jody) Amedee III at the Special Meeting of the board held on July 14, 2020.

27.     Counterclaim Defendant Anne Valentine is an individual residing in Ohio.  To the extent Ms. Valentine was lawfully on the board during the relevant time period, she was replaced

pursuant to the by-laws by the election of Hunter Hillin to fill the seat on the board at the Special Meeting of the board held on July 14, 2020.

### BACKGROUND ON THE TRIAL LAWYERS COLLEGE

28. Counterclaim Plaintiff Gerry Spence is a nationally-recognized attorney heralded as America's Greatest 20th century lawyer by national lawyer organizations. He is respected by attorneys throughout the nation, having never lost a criminal case or (since 1969) a civil case. In 2009 Gerry L. Spence was inducted into the National Trial Lawyers Hall of Fame, and his portrait hangs with John Adams, Clarence Darrow, and Melvin Belli in the Trial Lawyer National Portrait Gallery:



29. In 1993, Gerry Spence imagined a home where lawyers would be trained to learn and push themselves to be exceptional, true to themselves and the power that they have within to stand strong beside their client. With that vision in mind, in 1994 Gerry Spence founded and created TLC and established its home at the Thunderhead Ranch outside of Dubois, Wyoming.

30. Pursuant to Gerry Spence's vision and Mission Statement, TLC is dedicated to training and educating lawyers and judges who are committed to the jury system and to representing and obtaining justice for individuals, with a particular focus on defending the poor, the injured, the forgotten, the voiceless, the defenseless, and the damned. TLC is also committed to protecting the rights of those individuals from corporate and government oppression.

32

31.     Gerry Spence's overwhelming success as an attorney and name recognition have been critical to the growth of TLC and since its founding, attracted thousands of attorneys to TLC to learn trial skills.

32.     TLC has long used Gerry Spence's name, voice, and likeness, with his permission, to promote and provide TLC with the necessary skills, experience, and credibility that TLC has used and benefited from over the years.  Indeed, TLC's existence and success has largely hinged on its close affiliation with Gerry Spence.

33.     Gerry Spence has served on the board of directors of TLC since its inception and further served as the President of TLC for much of its existence.

34.     Gerry Spence and his wife, Imaging Spence, together have contributed over $8 million in money and property to create and sustain TLC.  His charitable foundation, The Spence Foundation for People's Attorneys, Inc. ("the Spence Foundation"), allowed TLC to use the Thunderhead Ranch virtually rent-free for over 25 years.

**GROWING DISAGREEMENT BETWEEN THE SPENCE GROUP AND THE SLOAN GROUP**

35.     In late 2019 and early 2020, a schism began to grow among TLC's board members over various issues concerning TLC's governance, direction, vision, and finances.  The two factions on either side of this schism became known as the Spence Group, consisting of Gerry Spence and the other named individual Spence Defendants in this action, and the Sloan Group, consisting of John Sloan and the other named individual Counterclaim Defendants.

36.     This schism between the two factions grew to the point that, on April 13, 2020, the Spence Foundation sent TLC a notice of eviction from Thunderhead Ranch for failing to operate in compliance with its Mission Statement and, further, expressly directed TLC:

> to cease and desist from using the names "Gerry Spence",
> "Spence" and "Thunderhead Ranch" in connection with its
> operations.  This includes the Thunderhead Ranch brand which

> Gerry owns.  Accordingly, the College is directed to immediately remove all photos, videos and references (whether in digital or print media) of and to Gerry from the College's website, social media sites, alumni sites, course materials, marketing materials, promotional materials and all other digital and print media using Gerry's name and likeness to promote the College.  For avoidance of doubt, the College may not use Gerry's name or likeness in any way shape or form in connection with any of its operations.

37.     On April 28, 2020, due to the seemingly irreconcilable division among the board and the resulting inability of TLC to fulfill its Mission Statement, the Spence Defendants initiated an action in Wyoming state court, *Gerald L. Spence, John Zelbst, Rex Parris, Joseph H. Low, and Kent Spence v. The Trial Lawyers College*, Civil Action No. 193-124, Laramie County District Court, Wyoming ("the State Court Action"), in which the Spence Group sought an audit of TLC finances that the Sloan Group improperly took and retained control over, appointment of a Receiver to take control and preserve the assets of TLC, and other relief.

38.     In retaliation for these actions, the Sloan Group orchestrated a coup in an attempt to wrest total control of TLC from the Spence Group.  First, the Sloan Group called a Special Meeting of the board to occur on May 6, 2020 via Zoom videoconference.

39.     The TLC bylaws expressly state that the removal of any board member requires a 2/3 majority vote by the board.

40.     At the time of the May 6, 2020 board meeting there were no more than 11 board members, meaning that the Sloan Group needed seven votes to oust any member from the board. The Sloan Group at most had only six votes.

41.     Moreover, Maren Chaloupka and Dana Cole were not in fact then Directors on the board, as Chaloupka had never been elected to the board and Cole had already resigned from the board.  In other words, the Sloan Group in fact had only four votes.

42.     Lacking the votes to expel any of the Spence Group, the Sloan Group instead devised a plan to remove the Spence Group using an unlawful end-around of the 2/3 majority requirement.

43.     First, the Sloan Group purported to pass a motion to amend TLC's Bylaws to change the number of board members to no more than eleven (11).  Although the total board members at that time was no more than eleven, the Sloan Group declared that this new Bylaw had the effect of removing *all* members from the board, although according to the Sloan Group's logic this meant that no one was left on the board.  Recognizing that this theory was patently flawed on its face, the Sloan Group has alternatively argued that all of the board members were suddenly up for reelection at the May 6, 2020 meeting, although there is no support for this contention in the Bylaws nor was the meeting Noticed for this purpose.  Regardless, the Sloan Group ignored these logical and legal flaws in their plan and proceeded to reelect the six of themselves back onto the board.

44.     The Spence Group, meanwhile, objected to the new Bylaw, objected to the purported effect of removing board members, and objected to the Sloan Group's unilateral "election" of voting themselves back onto the board.

45.     When the Spence Group similarly moved to vote themselves back onto the board, the Sloan Group summarily denied their motions and promptly terminated the Zoom video connection of the five Spence Group members, including Gerry Spence.

46.     The May 6, 2020 "elections" were a sham and unlawful under TLC Bylaws and Wyoming state non-profit law, and there was no lawful process to remove any of the Spence Group members from the board.

47.     As a result, immediately subsequent to the May 6, 2020 meeting there was no legal change to the TLC board membership, and Chaloupka and Cole still were not board members.

48.     Exactly one week after the May 6, 2020 sham election, on May 13, 2020, the Sloan Group—purporting to act as the sole board of TLC—caused to be filed the instant lawsuit in TLC's name, although they were without authority to do so or to retain the counsel who have nominally appeared on TLC's behalf.  In fact, they were acting on their own behalves and for their personal interests alone.

49.     In their Complaint and in subsequent proceedings and filings, the Sloan Group (purporting to act as TLC) has argued—falsely—that Gerry Spence and the other Spence Group members no longer have any lawful association with TLC, and that any continued reference by Gerry Spence or the other members of the Spence Group regarding TLC constitutes trademark infringement.

50.     On July 14, 2020, Gerry Spence and the other members of the Spence Group duly Noticed a board meeting of TLC in accordance with TLC bylaws, in order to conduct elections for board members whose terms had expired.

51.     The Sloan Group each received the Notice, but all chose not to attend.

52.     The Spence Group proceeded to conduct elections for the TLC board as noticed. At those properly conducted elections, each of the Sloan Group members was replaced by other individuals who were duly nominated and elected to fill their Director seats on the TLC board.

53.     As a result, at least by July 14, 2020, none of the Sloan Counterclaim Defendants were members of the TLC board.

54.     The Sloan Group (purporting to act as TLC) has taken the position that any reference or mention by Gerry Spence or the Spence Group to TLC is creating "confusion" among the relevant public by suggesting that Gerry Spence is still affiliated with TLC when, according to the Sloan Group based on the sham "election" of the May 6 meeting, he is not.

**THE SLOAN GROUP'S UNAUTHORIZED USE OF GERRY SPENCE'S NAME AND LIKENESS**

55.     Notwithstanding their positions and arguments, the Sloan Group has continued to try and reap the benefits of Gerry Spence's name and likeness to further promote, seek monetary contributions for, and prop up their "version" of TLC.

56.     For example, subsequent to the Sloan Group's attempted ouster of Gerry Spence from the TLC board, TLC's Facebook page (which the Sloan Group improperly has taken and retained control over) continued to feature numerous videos either with Gerry Spence as one of the speakers or as the primary speaker, with the "Most Popular" video featuring Gerry Spence:



57.    Notably, where its Most Popular video feature Gerry Spence was displayed, TLC included a conspicuous "Donate" link in close proximity so as to entice viewers to make a monetary donation to TLC in full view of its unlawful misappropriation of Gerry Spence's name and likeness.

58.    TLC's Facebook page, which the Sloan Group used to advertise itself and solicit monetary donations, listed nearly fifty (50) separate videos all featuring or including Gerry Spence.

59.    TLC and the Sloan Group also continue to use advertisements that falsely claim that TLC is still connected with Thunderhead Ranch, although it is not.

60.    Despite the fact that TLC was evicted from Thunderhead Ranch in April 2020, TLC and the Sloan Group have falsely maintained advertising such as that depicted below in an

effort to falsely claim a continued connection to Gerry Spence and the Spence Foundation's Thunderhead Ranch:



61.     On the very day that the Sloan Group (nominally acting as TLC) was seeking a preliminary injunction against Gerry Spence and the rest of the Spence Group to prevent them from using the TLC trademark and Thunderhead Ranch cattle brand that Mr. Spence registered and has maintained since 1965, TLC's own Executive Director Laurie Goodman—on information and belief at the direction or with the approval of the Sloan Group—conspicuously was exploiting Gerry Spence's name on her publicly-available LinkedIn page:



62.    In addition, the Sloan Group (nominally acting as TLC) has sent out fundraising emails to TLC alumni using the TLC mailing list seeking monetary donations to using false statements regarding "preserving Gerry Spence's dream," and purporting to speak on behalf of Gerry Spence ("Would Gerry Spence have let this happen?"), while also making further false statements regarding Gerry Spence's wishes, all in an effort to raise money to support and benefit the Sloan Group, without informing potential donators that *the money being donated is being used to fund this lawsuit against Gerry Spence* and the Spence Group.

### The Sloan Group's False and Misleading Claims As To Control Of TLC

63.    This Court has recognized that the question of which faction, the Spence Group or the Sloan Group, possesses the legal right and authority to control and act on behalf of TLC is a question that is pending and will ultimately be decided by the State Court Action.

64.    This Court has further stated that, while the State Court Action remains pending, it would be false and misleading to claim definitively to be the true board of TLC.  ECF No. 46

at 19 (enjoining Defendants from purporting "definitively to be Plaintiff's true Board unless and until such time as the state court makes a ruling to that effect.").

65. It is no less false or misleading for the Sloan Group to claim that they are the "true Board" of TLC than it would be for the Spence Group, given that the State Court Action remains pending and has not made any ruling to that effect.

66. Moreover, in view of the July 14, 2020, elections that unequivocally removed each of the Sloan Group members from the TLC board, their continued claim to be TLC board members and their continued efforts to act on behalf of TLC is false, misleading, and likely to confuse the relevant public.

67. The Sloan Group has gone so far as to seek (or, more precisely, to cause the attorneys nominally appearing on behalf of TLC but without any authority to do so to seek) contempt of court sanctions against the Spence Group for making any public claim as to control or board membership of TLC.

68. Notwithstanding the pendency of the State Court Action and the Sloan Group's at best *disputed* authority to act on behalf of TLC, the Sloan Group has continued to purport to act on behalf of and as TLC, to represent themselves as the definitive, true and only board members of TLC, and to take actions as and on behalf of TLC that are harmful and damaging not only to the Spence Group but to TLC itself.

69. Of particular is the fact that the Sloan Group wrongfully has maintained control of TLC funds (primarily in the form of charitable donations from TLC Alumni) in excess of $5 million, which the Sloan Group previously moved from TLC's bank in Wyoming to a bank in Louisiana, the home state of Counterclaim Defendant James R. Clary.

70.     Despite multiple requests for an audit of TLC finances, the Sloan Group has, to date, refused to provide any disclosures to the Spence Group as to TLC's finances or expenditures, which the Sloan Group has been using unilaterally for their own personal ends (including, for example, to fund this current lawsuit).

### THE SLOAN GROUP'S FRAUD ON THE USPTO AND TRADEMARK INFRINGEMENT WITH REGARD TO THE THUNDERHEAD RANCH CATTLE BRAND MARK

71.     Gerry Spence is, and at all relevant times was, the owner of the Thunderhead Ranch cattle brand mark, which he created, used himself, and has been the brand and logo for his Thunderhead Ranch for over 50 years.  Gerry Spence registered the brand with the State of Wyoming on December 2, 1965, Number A2579600-7, taking care to protect and never let the brand registration lapse.

72.     Gerry Spence granted TLC a license to use the Thunderhead Ranch cattle brand mark.

73.     At all relevant times until April 13, 2020, TLC, as a licensee of and with the permission and subject to the consent and control of Gerry Spence, made commercial use of the Thunderhead Ranch cattle brand mark.

74.     On April 13, 2020, Gerry Spence terminated TLC's license to use the Thunderhead Ranch cattle brand mark.

75.     Notwithstanding that its license to use the Thunderhead Ranch cattle brand mark had been terminated, TLC—at the direction of and with the knowledge, consent, and ratification of the Sloan Group—continued using the Thunderhead Ranch cattle brand mark in commerce thereafter with knowledge or reckless disregard of the fact that its use was unauthorized and likely to cause confusion about the source, affiliation, sponsorship, or approval of itself and its products or services and Gerry Spence and his products or services.

76.     On or about January 17, 2012, Clary caused an application for registration to be filed with the USPTO naming TLC as the owner of the Thunderhead Ranch cattle brand mark, which was a knowing misrepresentation to the USPTO, and further misrepresented that no other person had the right to use that mark in commerce.  These misrepresentations were made so as to induce the USPTO to issue the trademark registration that later issued as U.S. Reg. No. 4,198,054.

77.     TLC, again at the direction of Clary, later filed Section 8 and 15 affidavits with the USPTO on or about November 14, 2017, similarly making knowing misrepresentations to the USPTO that TLC was the owner of the Thunderhead Ranch cattle brand mark and that no other person had the right to use that mark in commerce.

78.     The USPTO relied on TLC's and Clary's misrepresentations in issuing and in maintaining the registration, which it otherwise would not have issued or maintained.

**FIRST COUNTERCLAIM**
**Violation of the Lanham Act – 15 U.S.C. § 1125(a)(1)(A)**
**(Gerry Spence against TLC and Sloan Counterclaim Defendants)**

79.     Counterclaimant Gerry Spence incorporates the allegations asserted in the preceding paragraphs of these counterclaims as if fully set forth herein.

80.     The Lanham Act imposes civil liability on anyone who uses a mark, name, voice, or likeness in connection with goods or services used in commerce that is likely to cause confusion or mistake as to the affiliation, connection, or association of a person with another.

81.     Despite purporting to sever ties with Gerry Spence, TLC and the Sloan Counterclaim Defendants have continued to use his Thunderhead Ranch cattle brand mark and his name, voice, or likeness in connection with services and solicitation of funds.

82. TLC and the Sloan Counterclaim Defendants have included Gerry Spence's Thunderhead Ranch cattle brand mark and his name, voice, or likeness with promotional materials, TLC's Facebook page, and TLC employees' LinkedIn profiles.

83. In doing so, TLC and the Sloan Counterclaim Defendants are attempting to capitalize on the fame and reputation of Gerry Spence and use Thunderhead Ranch cattle brand mark and his name, voice, or likeness to convey to the legal community that there exists an affiliation or association with Gerry Spence.

84. TLC and the Sloan Group's uses and exploitation of Gerry Spence's Thunderhead Ranch cattle brand mark and his name, voice, or likeness are unauthorized and without his permission.

85. Indeed, the unauthorized use and exploitation of Gerry Spence's Thunderhead Ranch cattle brand mark and his name, voice, or likeness continues even while TLC (actually, the Sloan Counterclaim Defendants) is purporting to sue Gerry Spence for injunctive relief on the very same issue—alleging in this action that Gerry Spence is falsely claiming a continued affiliation with TLC.

86. TLC's use of Gerry Spence's Thunderhead Ranch cattle brand mark and of his name, voice, or likeness in connection with the promotion and offering of its services and solicitation of donations creates a likelihood of confusion or mistake about his affiliation with TLC and with the Sloan Group.

87. The Sloan Counterclaim Defendants' use of Gerry Spence's Thunderhead Ranch cattle brand mark and his name, voice, or likeness in connection with the promotion and offering of their services or other solicitation of funds creates a likelihood of confusion or mistake about his affiliation with TLC and the Sloan Group.

88.     To the extent any of the Sloan Group's members have not themselves personally used Gerry Spence's Thunderhead Ranch cattle brand mark or his name, voice, or likeness in connection with their promotion and offering of their services or other solicitation of funds, on information and belief, they either (a) have knowledge of and the right and ability to control or supervise the actual infringement and have personally benefitted financially (e.g., through the Sloan Group's collection and use of funds) from that infringement; (b) have had knowledge of the infringing activities and have induced or contributed to the infringement, such as by purporting to vote for, ratify, or encourage those actions, including TLC and its employees; and/or (c) have taken steps to induce such infringements, including by purporting to vote for, ratify, or encourage those actions by others, including TLC and its employees.

89.     TLC and the Sloan Group's conduct as alleged herein has and will cause actual damages and irreparable harm to Gerry Spence, for which Gerry Spence has no adequate remedy at law.

### SECOND COUNTERCLAIM
### Violation of the Lanham Act – 15 U.S.C. § 1125(a)(1)(B)
### (Gerry Spence against TLC and Sloan Counterclaim Defendants)

90.     Counterclaimant Gerry Spence incorporates the allegations asserted in the preceding paragraphs of these counterclaims as if fully set forth herein.

91.     The Lanham Act imposes civil liability on anyone who uses a mark, name, voice, or likeness in connection with goods or services used in commerce that in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origins of his or her goods or services.

92.     Despite purporting to sever ties with Gerry Spence, TLC and the Sloan Group have continued to use his Thunderhead Ranch cattle brand mark and his name, voice, or likeness in connection with promotion and advertisement of TLC's services and solicitations of funds.

93.     TLC and the Sloan Group have included Gerry Spence's Thunderhead Ranch cattle brand mark and his name, voice, or likeness with promotional materials, including TLC's Facebook page and its employees' LinkedIn profiles.

94.     In doing so, the Sloan Group is causing TLC to misrepresent itself and the nature, characteristics, and quality of their services as being approved by or affiliated with Gerry Spence, when it is not.

95.     TLC's and the Sloan Group's continued use and exploitation of Gerry Spence's Thunderhead Ranch cattle brand mark and his name, voice, or likeness in their advertising and solicitation of funds is unauthorized and without his permission.

96.     To the extent any of the Sloan Group's members have not themselves personally committed the foregoing tortious acts, on information and belief, they either (a) have knowledge of and the right and ability to control or supervise the actual infringement and have personally benefitted financially (e.g., through the Sloan Group's collection and use of funds) from that infringement; (b) have had knowledge of the infringing activities and have induced or contributed to the infringement, such as by purporting to vote for, ratify, or encourage those actions, including TLC and its employees; and/or (c) have taken steps to induce such infringements, including by purporting to vote for, ratify, or encourage those actions by others, including TLC and its employees.

97.     TLC's and the Sloan Group's conduct as alleged herein has and will cause actual damages and irreparable harm to Gerry Spence, including reputational harm, for which Gerry Spence has no adequate remedy at law.

### THIRD COUNTERCLAIM
### Wrongful Appropriation of Name and Likeness
### (Gerry Spence against TLC and Sloan Counterclaim Defendants)

98.     Counterclaimant Gerry Spence incorporates the allegations asserted in the preceding paragraphs of these counterclaims as if fully set forth herein.

99.     Wyoming recognizes a tort for the invasion of privacy including the appropriation of another's name, voice, or likeness.  Under Wyoming law, Gerry Spence has the right to control the use of his name, voice, and likeness by others.

100.    Despite purporting to sever ties with Gerry Spence, TLC and the Sloan Group have continued to use his name, voice, and likeness in connection with promotion and advertisement of services and solicitation of funds.

101.    TLC and the Sloan Group have included Gerry Spence's name, voice, and likeness with promotional materials and TLC's Facebook page and its employees' LinkedIn profiles.

102.    TLC's and the Sloan Group's continued use and exploitation of Gerry Spence's name, voice, and likeness is unauthorized and without his permission.

103.    TLC and the Sloan Group have wrongfully violated Gerry Spence's right to privacy and control over his name, voice, and likeness.  TLC and the Sloan Group have profited from these violations and caused damages to Gerry Spence.

104.     TLC's and the Sloan Group's conduct as alleged herein has and will cause actual damages and irreparable harm and damages to Gerry Spence, including reputational harm, for which Gerry Spence has no adequate remedy at law.

**FOURTH COUNTERCLAIM**
**Violation of the Lanham Act – 15 U.S.C. § 1125(a)(1)(A)**
**(Spence Counterclaim Plaintiffs against Sloan Counterclaim Defendants)**

105.     The Spence Counterclaim Plaintiffs incorporate the allegations asserted in the preceding paragraphs of these counterclaims as if fully set forth herein.

106.     The Sloan Counterclaim Defendants have engaged in false and misleading descriptions and representations of fact regarding TLC and their affiliation with TLC by using TLC marks, controlling TLC's website, controlling TLC's listserv (and banning the Spence Counterclaim Plaintiffs from the same), controlling TLC's finances, making numerous public statements, and even filing and maintaining this instant lawsuit, all to falsely cloak themselves as being the true board of TLC.

107.     The Sloan Counterclaim Defendants have falsely claimed to be the definitive, true board of TLC with full knowledge of the pending State Court Action in which the Sloan Counterclaim Defendants' claim to TLC remain disputed, which even this Court acknowledged remains a disputed issue until the State Court Action decides the issue.

108.     The Sloan Counterclaim Defendants' repeated and persistent claims to be the definitive true board of TLC, coupled with their continued use of TLC trademarks and other TLC assets and other conduct as alleged herein, is likely to cause confusion, or cause mistake, as to an affiliation, connection or association between and among the Sloan Group, the Spence Counterclaim Plaintiffs, and TLC.

109. The Sloan Counterclaim Defendants' repeated and persistent claims to be the definitive true board of TLC, coupled with their continued use of TLC trademarks and other TLC assets and other conduct as alleged herein, has and will cause actual damages and irreparable harm and damages to the Spence Counterclaim Plaintiffs, including reputational harm, for which they have no adequate remedy at law.

### FIFTH COUNTERCLAIM
### Abuse of Process
### (Spence Counterclaim Plaintiffs against Sloan Counterclaim Defendants)

110. The Spence Counterclaim Plaintiffs incorporate the allegations asserted in the preceding paragraphs of these counterclaims as if fully set forth herein.

111. The Sloan Counterclaim Defendants caused this action to be initiated and maintained, and have caused the filing of papers seeking a temporary restraining order and preliminary injunction, among other things, and have otherwise used the legal process in this Court and their commentary without this Court (under the guise of the litigation privilege) for ulterior purposes to serve their own interests, in a fashion that is a perversion of the legal process, such as to restrain Spence Counterclaim Plaintiffs' lawful and Constitutionally-protected right to express themselves and their opinions and beliefs freely, and in an attempt to further their fraud on the USPTO and attempted theft of Gerry Spence's intellectual property.

112. The Spence Counterclaim Plaintiffs have been damaged by the Sloan Group's unlawful conduct.

### SIXTH COUNTERCLAIM
### Trademark Cancellation and Civil Liability Under 15 U.S.C. §§ 1119 & 1120
### (Gerry Spence against TLC and Clary)

113. Counterclaimant Gerry Spence incorporates the allegations asserted in the preceding paragraphs of these counterclaims as if fully set forth herein.

114.     Only the owner of a mark may file an application to register the mark before the U.S. Patent and Trademark Office.

115.     At all relevant times until April 13, 2020, Gerry Spence was the owner and TLC was merely a licensee of Gerry Spence with respect to the use of the Thunderhead Ranch cattle brand mark.

116.     On or about Jan. 17, 2012, TLC—at the direction of Clary—filed an application before the USPTO to register the Thunderhead Ranch cattle brand mark, in which it falsely and knowingly misrepresented TLC to be the owner of the Thunderhead Ranch cattle brand mark and that no other person was authorized to use that mark in commerce, which it did with the intent that the USPTO acted upon that misrepresentation and issue a certificate of trademark registration.

117.     The USPTO relied on these misrepresentations when it issued to TLC U.S. Reg. No. 4,198,054.

118.     TLC, again at the direction of Clary and again without Gerry Spence's knowledge, later filed Section 8 and 15 affidavits with the USPTO on or about November 14, 2017, again making the knowing misrepresentations that TLC was the owner of the Thunderhead Ranch cattle brand mark and that no other person had the right to use that mark in commerce.

119.     The USPTO relied on TLC and Clary's misrepresentations in maintaining U.S. Reg. No. 4,198,054, which it otherwise would have cancelled.

120.     Because the application for registration and the subsequent renewal papers were not filed by the owner, U.S. Reg. No. 4,198,054 is *void ab initio* and must be cancelled.

121.     Additionally, because U.S. Reg. No. 4,198,054 was procured and maintained through fraud, it must be cancelled.

122. Furthermore, because U.S. Reg. No. 4,198,054 was procured by false or fraudulent declarations or representations made by TLC and Clary, and because Gerry Spence has suffered damages as a consequence thereof, TLC and Clary are liable to Gerry Spence for damages pursuant to 15 U.S.C. § 1120.

**SEVENTH COUNTERCLAIM**
**Civil Conspiracy**
**(Spence Counterclaim Plaintiffs against Sloan Counterclaim Defendants)**

123. The Spence Counterclaim Plaintiffs incorporate the allegations asserted in the preceding paragraphs of these counterclaims as if fully set forth herein.

124. The Sloan Counterclaim Defendants, together with one other or with TLC had a meeting of the minds as to one or more objects to be accomplished or courses of action to take, including the above described unlawful acts.

125. The Spence Counterclaim Plaintiffs have suffered damages as a result.

**PRAYER FOR RELIEF**

WHEREFORE, the Spence Counterclaim Plaintiffs request the Court enter Judgment in their favor and against the Sloan Counterclaim Defendants and TLC as follows:

a. Granting temporary, preliminary, and permanent injunctive relief enjoining the Sloan Counterclaim Defendants and each of their agents, servants, and employees, and all others aiding, abetting, or acting in concert therewith, from:

i. soliciting or accepting funds or donations under the auspices of being or being associated with TLC;

ii. using the name, voice or likeness of Gerry Spence or the Thunderhead Ranch cattle brand mark, or any confusingly similar mark, in connection with the promotion, advertising, solicitation of donations, or providing any goods or services;

iii.      otherwise committing any acts likely to confuse the public into believing that TLC as purportedly controlled by the Sloan Counterclaim Defendants is associated, approved by, affiliated or sponsored by Gerry Spence, in whole or in part, in any way;

iv.      using, exerting control over, depleting, or exploiting any TLC asserts (including but not limited to all TLC trademarks, finances, property, and all other TLC asserts) until such time as the State Court Action is resolved; and

v.      making any public communications or statements to the effect that the Sloan Counterclaim Defendants are definitively the true board of TLC or have the undisputed authority to act on behalf of TLC;

b.      Granting temporary, preliminary, and permanent injunctive relief enjoining TLC and each of its agents, servants, and employees, and all others aiding, abetting, or acting in concert therewith, from:

i.      using the name, voice or likeness of Gerry Spence or the Thunderhead Ranch cattle brand mark, or any confusingly similar mark, in connection with the promotion, advertising, solicitation of donations, or providing any goods or services;

ii.      otherwise committing any acts likely to confuse the public into believing that TLC as purportedly controlled by the Sloan Counterclaim Defendants is associated, approved by, affiliated or sponsored by Gerry Spence, in whole or in part, in any way;

c.      Awarding to the Spence Counterclaim Plaintiffs any and all damages and losses suffered by them, and all profits wrongfully gotten by the Sloan Counterclaim Defendants,

as a result of the Sloan Counterclaim Defendants' and TLC's conduct as set forth herein, and trebled pursuant to 15 U.S.C. § 1117 and applicable state law;

       d.     Awarding to the Spence Counterclaim Plaintiffs the costs of this action and reasonable attorneys' fee and costs, pursuant to 15 U.S.C. § 1117 and applicable state law;

       e.     Awarding to the Spence Counterclaim Plaintiffs pre-judgment and post-judgment interest on all moneys recovered by or awarded to them;

       f.     Ordering TLC and the Sloan Counterclaim Defendants to file with the Court and serve on Spence Counterclaim Plaintiffs' counsel a report setting forth the manner and form of their compliance with the Court's orders;

       g.     Ordering the cancellation of U.S. Trademark Registration No. 4,198,054; and

       h.     Granting such other and further relief as the Court deems just, equitable, and appropriate.

## JURY DEMAND

The Spence Counterclaim Plaintiffs demand a trial by jury on all issues so triable.

DATED:  December 2, 2020.

*/s/ Timothy P. Getzoff*
Bradley T. Cave, P.C. (Wyo. State Bar # 5-2792)
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
bcave@hollandhart.com
jspope@hollandhart.com

Timothy Getzoff (admitted *pro hac vice*)
HOLLAND & HART LLP
1800 Broadway, Suite 300

Boulder, COP 80302
Telephone: 303.473.2700
tgetzoff@hollandhart.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, JOHN ZELBST, REX PARRIS,
JOSEPH H. LOW AND KENT SPENCE

NORMAN A. PATTIS (admitted *pro hac vice*)
Pattis & Smith, LLC
383 Orange St.
New Haven, CT 06511
203.393.3017 (phone)
npattis@pattisandsmith.com

ATTORNEY FOR REX PARRIS

15752952_v6