IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br><br>    Plaintiff.<br><br>vs.<br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals,<br><br>    Defendants,<br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE<br><br>    Counterclaim Plaintiffs<br><br>vs.<br><br>THE TRIAL LAWYERS COLLEGE, JOHN SLOAN, JAMES R. CLARY, Jr., MILTON GRIMES, DANA COLE, MAREN CHALOUPKA, ANNE VALENTINE,<br><br>    Counterclaim and Third-Party Claim Defendants. | Civil Action No. 1:20-CV-00080-JMC |

**RESPONSE TO PLAINTIFF'S MOTION FOR *IN CAMERA* REVIEW**

R. Rex Parris and Beth Kushner respectfully submit this response and objection to the motion for *in camera* reviewed filed by the Plaintiff, The Trial Lawyers College, and the third-party Defendants, John Sloan, Milton Grimes, Maren Chaloupka, James R. Clary, Jr., Dana Cole, and Anne Valentine (collectively, the "Sloan Group"). Dkt. 170.

1

## INTRODUCTION

Attorney Beth Kushner was never identified as a witness on the Plaintiff's initial disclosures or any supplementation thereof, which is not surprising since she had virtually no involvement with the Trial Lawyers' College in the past twenty-seven years. She has not attended a TLC program since 1998. She has never taught at TLC. She has never donated money to TLC. Rather, as a partner in a large, institutional firm that represents corporations, she would not be eligible to participate in TLC events. She has some friends who are TLC alumni and she has stayed in casual touch with them. She does have a close friendship and a long-standing attorney-client relationship with Defendant Rex Parris.

After Ms. Kushner appeared in this lawsuit as counsel for the Spence Defendants, Plaintiff issued a document subpoena to Ms. Kushner, seeking documents that Plaintiff already has, and then having a process server effect service at her home on a religious holiday. As a result of the subpoena, Ms. Kushner learned that certain privileged communications between her and Rex Parris had inadvertently been produced in discovery. Pursuant to the protective order entered in this case, the documents were immediately clawed back. The Sloan Group never attempted to confer regarding these documents and simply filed this motion (having first emailed a letter directly to chambers). It did not provide the Court with Ms. Kushner's objections to its subpoena, which detail the attorney/client relationship with Mr. Parris and refute Plaintiff's factual assertions.

Typically, a party that challenges an assertion of privilege will analyze the documents at issue on an individual basis, although Plaintiff here makes no attempt to analyze any individual document.

The Court could simply deny the Sloan Group's motion for failing to confer. If, however, the Court considers the motion, the Affidavit and Declaration establish that Ms. Kushner has had

a longstanding attorney/client relationship with Mr. Parris and provided legal advice to him – some of which is contained in documents that were mistakenly produced and properly clawed back.

## FACTUAL BACKGROUND

Beth Kushner is a Wisconsin lawyer at the von Briesen Law Firm who was admitted pro hac vice on March 3, 2021 in this case on behalf of the Spence Defendants. **Affidavit of Beth Kushner, ¶ 1.** She attended the Trial Lawyers' College in 1994. *Id*. at ¶ 2. After her initial attendance, she attended a Trial Lawyers' College reunion at Thunderhead Ranch 1996 and a regional seminar in 1998. *Id*. at ¶ 2. She never taught at the Trial Lawyers' College or sought to teach there. *Id*. at ¶ 2. Since 1998, her only involvement with the Trial Lawyers' College was her status as an alumni and, along with hundreds of other alumni, being on its listserve. *Id*. at ¶ 3. Her involvement on the listserve was sparing, and she frequently unsubscribed or did not participate in listserve discussions. *Id*. at ¶ 3.

Kushner met Defendant Rex Parris in 1996 at the Trial Lawyers' College Reunion, and they formed both a personal and professional friendship. *Id.* at ¶¶ 4-6; **Declaration of Rex Parris, ¶ 3**. Because Parris maintained a national law practice, Kushner occasionally discussed cases with him and, in or about 2009, she began to provide him with legal advice. **Kushner,** at ¶ 4; **Parris, at ¶¶ 5-6**. Kushner ultimately became Paris's lawyer on multiple matters including professional ethics, conflicts of interest, litigation, corporate law, and investments. **Kushner,** at ¶ 5; **Parris, at ¶¶ 6-7**.

Beginning around March 2020, Parris consulted Kushner for legal advice about the Trial Lawyers' College and the developing dispute among board members. **Kushner,** at ¶ 7; **Parris, at ¶ 9**. Kushner provided that advice by telephone and email. **Kushner,** at ¶ 7. This was during the early days of the COVID pandemic, as well as a time of significant personal obligations for

Kushner, which included the passing of her father and the serious illness of her husband. She was caring for her ninety-seven-year-old father who lived near her and who entered hospice in May 2020. *Id*. at ¶ 8. Kushner spent every day with her father full time during his time in hospice. *Id*. at ¶ 8. When her father passed away in July 2020, Kushner became responsible for closing out his estate. *Id*. at ¶ 9. Shortly after concluding her father's estate, her husband underwent emergency open heart surgery, and she became responsible for caring for him as he commenced rehab. *Id*. at ¶¶ 9-10. After her husband had completed cardiac rehab, Kushner was able to devote more attention to this litigation and entered her appearance in March 2021. *Id*. ¶ 10. Prior to this time, however, she continued to provide legal counsel for Parris on this matter since March 2020. *Id*. at ¶ 10.

Three weeks after Kushner formally appeared in this case, an assistant for Plaintiff's counsel emailed Kushner asking if she would accept service of a subpoena issued on her. *Id*. at ¶ 12. Because Kushner was handling other matters for a colleague who was out with a family medical emergency, she could not respond to the assistant's email immediately. *Id*. at ¶ 13. Three days after she received the email, a process server came to her house on Good Friday to personally serve her with the subpoena, telling her that he had been instructed to serve her that day and at her home. *Id*. at ¶ 13.

Kushner promptly drafted and served objections in the form of a letter to Plaintiff's counsel. *Id*. at ¶ 14. Baffled as to why she would have been served with a subpoena, she then asked her co-counsel in this matter to provide her with all documents produced in this case in which her name appeared. *Id*. at ¶ 15. After review, she and co-counsel agreed that privileged documents containing attorney-client conversations between Kushner and Parris had inadvertently

4

been produced to Plaintiff's counsel during discovery. *Id.* at ¶ 15. In accordance with paragraph 12 of the Protective Order (ECF 91) she promptly clawed them back. *Id*. ¶ 15.

Kushner and her co-counsel did not claw back every communication between her and Parris, as some of the communications were purely of a personal or non-legal nature. *Id*. at ¶ 16. Instead, they clawed back only the few documents that they concluded genuinely reflected the requesting or providing of legal advice. *Id*. at ¶ 16.  Plantiff's counsel did not attempt to confer regarding its apparent objection to the clawbacks.  *Id*. at ¶ 20

After serving Kushner with the subpoena, Plaintiff then listed her as a witness for the first time on its witness list that was filed on April 26, 2021 (Dkt.  157).  The description for Kushner's supposed trial testimony includes matters in which she was never involved, such as the new Spence venture, and matters about which she has no knowledge, such as the supposed "confusion" experienced by other Trial Lawyer's College alumni.  In other words, out of what might be thousands of Trial Lawyers' College alumni, the Sloan Group picked for its witness list an alumnus whose last involvement in the Trial Lawyers' College was 1998 and who has been ineligible for involvement since then because she is largely a corporate defense lawyer. Plaintiff has never attempted to explain why it deems opposing counsel of record a necessary fact witness in this case.

## **LAW AND ARGUMENT**

**I.     The Court Should Decline To Consider The Sloan Group's Motion For *In Camera* Review Because The Sloan Group Has Violated Local Rules 7.1(b)(1)(A) and 37.1(b).**

At the outset, the Sloan Group's motion for *in camera* review violates Local Rules 7.1(b)(1)(A) and 37.1(b), which impose a duty on counsel to confer with each other in good faith before filing a non-dispositive motion in a civil action and before seeking the Court's intervention to resolve a discovery dispute. The Sloan Group and its counsel have not made any efforts to comply with this obligation. **Affidavit of Beth Kushner, ¶ 20**.  Instead, they first emailed a letter

directly to the Court's chambers attempting to raise this issue, then filed a non-dispositive motion for *in camera* review.

In this case, meeting and conferring in good faith is essential. Clawbacks are not unusual, which is why protective orders typically contain provisions for them. In document-intensive cases, parties will inadvertently produce documents for which privileges can be asserted. In some circumstances, inadvertent production is discovered immediately. In other circumstances, some time elapses before a party discovers inadvertent production as the result of a development in the litigation – i.e., the activity of its adversary.

Civil rules of procedure – including this Court's – typically follow a pattern that recognizes the practical reality of document production and minimizes the need for motion practice by requiring lawyers to confer in good faith to resolve disputes of what documents are privileged. Lawyers of good faith adhere to those rules, communicating with each other first to resolve a dispute before seeking the Court's assistance to resolve their disagreements. In many cases, the parties can reach an agreement to avoid or minimize the issues presented to the Court.

Rather than complying with the conferral rules, Plaintiff filed its motion that consists more of a smear editorial against Ms. Kushner than a meaningful analysis of the privilege dispute. The Sloan Group's motion contains no analysis of why the clawbacks are not warranted under privilege doctrine. It fails to analyze a single document or present a coherent legal argument as to why it is not privileged.

Based on the Sloan Group's failure to comply with an express local rule and the fact that the damage is now done—the inflammatory pleading is now part of the public record—the Court may simply deny the motion and determine whether further relief is appropriate. *See, e.g., Caruso v. Stobart*, 2018 WL 4677790, at *1 (D. Wyo. Jan. 8, 2018).

**II.    If the Court Considers this Motion, It Should Conclude that Ms. Kushner's Communications With Mr. Parris Are Privileged.**

Attorney-client relationships take all sorts of forms, and privilege law – be it state or federal – recognizes the practical reality of how a client may choose to avail himself of the services of a lawyer. *See Bistline v. Parker*, 918 F.3d 849, 864 (2019) ("An attorney-client relationship may arise without an express contract"); *Jackson State Bank v. King*, 844 P.2d 1093, 1095-96 (Wyo. 1993) ("The relationship of attorney and client is contractual in nature…. The contract may be an express contract, or it may be implied from the actions of the parties, such as, the furnishing of advice and assistance or even the awareness of the attorney of reliance on the relationship") *overruled on other grounds by Dockter v. Lozano*, 472 P.3d 362 (2020).  That is the case here — Mr. Parris has been consulting with Kushner for more than a decade.  Under those circumstances (and particularly when Ms. Kushner was caring for her father while he was in hospice), their communications were understandably informal.  In an attempt to smear opposing counsel, Plaintiff makes a number of unwarranted and illogical leaps — including suggesting that there was no attorney/client relationship before Ms. Kushner filed her appearance in this case. Doubtless, Plaintiff's counsel was representing Plaintiff before it filed its initial complaint, and no legal authority supports the proposition that an attorney-client relationship does not exist before an appearance is entered.

The core of Plaintiff's allegations appears to be that Ms. Kushner was acting as a conduit for Defendant Rex Parris to access the Trial Lawyers' College's alumni listserve to create confusion as to who controlled the Trial Lawyers' College and that she was acting in concert with Parris and others to promote a competing entity. Dkt. 170, p. 3. Not content with accusing opposing counsel of committing a tort, Plaintiff has also accused her of ethical violations under Wyo. R. State Bar, Att'y Cond. & Prac. 4.2. *Id*. at p. 5.  The supposed "ethical violation" is that Ms. Kushner

7

posted to the Trial Lawyers' College alumni listserve. For Plaintiff to suggest that posting to an alumni listserve run by Trial Lawyers' College is the same as engaging in an *ex parte* communication with Trial Lawyers' College itself is understandably not supported by any legal authority. The TLC listserve is like a social media platform, accessible to and used by hundreds of lawyers. A communication on the listserve is not by itself a communication with any particular participant, much less the hosting organization.

Lawyers acting in good faith could have looked at the communications and, perhaps, inquired of Ms. Kushner when she began to represent Mr. Parris. In this case, Ms. Kushner informed Plaintiff of that in her objections to the subpoena. Those objections, which detail the relationship with Mr. Parris, were not provided to this Court with Plaintiff's motion which, instead, advances arguments that are directly contrary to the information provided to Plaintiff by Ms. Kushner.

Attorney Kushner and Defendant Parris have provided a sworn Affidavit and Declaration detailing their longstanding attorney-client relationship – one that covers more than twelve years. **Kushner,** at ¶¶ 4-5; **Parris, at ¶¶ 5-7**. They have also confirmed that Defendant Parris asked Attorney Kushner for legal advice pertaining to the current dispute and that Attorney Kushner provided him with such advice since March 2020. **Kushner,** at ¶ 7; **Parris, at ¶ 9.** Attorney Kushner has also informed the Court that the only documents that she and Parris seek to claw back are those containing confidential communications between her and Rex Parris consisting of legal advice or requests for such advice. **Kushner** at ¶ 16.

Both federal and Wyoming law clearly establish that communications between an attorney and a client that provide legal advice are protected under the attorney-client privilege. *See Estate*

8

*of Bennet by Bennet v. Altec Indus., Inc.*, 2005 WL 8155489, at *2 (Dec. 16, 2005); Wyo. Stat. § 1-12-101(a)(1).

> Under federal law, a party who claims privilege must show that
>
> (1) the holder of the privilege is a client; (2) the person to whom the communication was made is an attorney; (3) the communication was made in connection with the person's role as an attorney; (4) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers (i.e. was confidential) for the purpose of securing legal advice, services, or assistance; and (5) the privilege has not been waived.

*Altec Indus., Inc.*, 2005 WL 8155489, at *2 (internal quotation marks and citation omitted).

The Sloan Group appears to dispute every element of this definition without providing any basis for its allegations. Attorney Kushner and Defendant Parris, however, provide ample proof of these elements. They both confirm that they have had a twelve-year attorney-client relationship. **Kushner,** at ¶¶ 4-5; **Parris, at ¶¶ 5-7**. They further confirm that Defendant Parris asked Attorney Kushner for legal advice pertaining to the current dispute much like a patient would go to a second surgeon for a second opinion and that Attorney Kushner provided him with such advice since March 2020. **Kushner,** at ¶ 7; **Parris, at ¶ 9.** Attorney Kushner further indicates that the only documents that Defendant Parris seeks to claw back are the ones that contained legal advice to Defendant Parris. **Kushner** at ¶ 16. Defendant Parris also explains that, since Attorney Kushner was a close personal friend as well as his lawyer, their professional communications were much more informal than those that would ordinarily occur between a lawyer and her client. **Parris**, at ¶ 8.

Wyoming law is even broader. It protects any communications between an attorney and a client that are made in an attorney-client relationship. Wyo. Stat. § 1-12-101(a)(1). Despite the Plaintiff's baseless attacks, it cannot refute that an attorney-client relationship existed between Parris and Kushner. In view of the affirmative representations by Kushner and Parris as to the

9

existence and nature of their long-standing attorney-client relationship, which extended to the dispute that gave rise to this case (**Kushner,** at ¶ 5; **Parris, at ¶¶ 6-7)**, it is unquestionable that Wyoming law protects the communications to which the Spence Defendants have claimed attorney client privilege.

For its final argument, Plaintiff resorts to a strained reading of this Court's protective order to argue that the Spence Defendants have waived their ability to claw back the documents because the clawback was not done "promptly." Dkt. 170, p. 5. While it is true that more than six months passed between the original production and claw back, none of these documents were ever raised, used, or cited in any filing, proceeding, or deposition that would call them to the attention of the attorneys. The Court's protective order does not contain a time frame in which to claw back and, when read in context, the term "promptly" most reasonably refers to the time the inadvertent production is first discovered and not when the original production was first made. Dkt. 170, p. 5. Here, within days of Kushner and Parris learning the documents had been produced, they exercised their rights to clawback under the protective order. Their clawback is not uncommon as documents are sometimes clawed back long after production, including during depositions. Thus, while there was a production in this case, the documents were not used in this case and their inadvertent production was only discovered as a result of the Sloan Group's decision to subpoena opposing counsel and her curiosity as to why it would do that.

When the Plaintiff targeted Ms. Kushner in discovery after she appeared in this lawsuit, she personally reviewed the prior production to see why. **Kushner, at ¶ 15.** That review of production revealed privileged documents that Attorney Kushner and her co-counsel immediately notified the Sloan Group that they were clawing back. *Id*. at ¶ 15. Thus, the record clearly reflects that Kushner and Parris have satisfied their obligations to be prompt under the Court's order.

10

Thus, the Court should find that the documents for which Mr. Parris and Ms. Kushner have claimed privilege are, in fact, protected by privilege and deny the Plaintiff's request to declare them non-privileged.

## **CONCLUSION**

This is a motion that never should have been brought, much less in the manner it was. The Court should deny it and determine whether further relief is warranted under the circumstances.

BY:

/s/ *Norman A. Pattis*

NORMAN A. PATTIS
Pattis & Smith, LLC
*Pro Hac Vice*
383 Orange Street, First FL.
New Haven, CT  06511
Tel. 203-393-3017
Fax 203-393-9745
npattis@pattisandsmith.com

Case 1:20-cv-00080-JMC   Document 171   Filed 05/14/21   Page 12 of 12

12


## CERTIFICATION

I hereby certify that on May 14, 2021, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

BY:

/s/ *Beth J. Kushner*