Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-Mail:  pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
James Gilbert (Admitted *Pro Hac Vice*)
Matthew Slaughter (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email: chris.ralston@phelps.com
         lindsay.calhoun@phelps.com
         james.gilbert@phelps.com
         matthew.slaughter@phelps.com

Attorneys for The Trial Lawyers College

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
CASPER DIVISION

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation <br><br> Plaintiff, <br><br> v. <br><br> GERRY SPENCES TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, a nonprofit corporation, and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals. <br><br> Defendants. | CIVIL ACTION NO. 1:20-cv-0080 <br> _____ <br><br> **JUDGE CARSON** <br><br> **MAGISTRATE JUDGE CARMAN** |

## MEMORANDUM IN SUPPORT OF MOTION TO
## EXCLUDE EXPERT TESTIMONY OF SCOTT CRAGUN

PLAINTIFF The Trial Lawyers College, ("Plaintiff" or "TLC"), respectfully moves the Court to exclude the proffered expert testimony of Scott Cragun, Defendants Gerry Spence Trial Institute, Gerald L. Spence, John Zelbst, Rex Parris, Joseph H. Low, and Kent Spence's proffered expert witness. Cragun's expert report contains no discernable methodology or opinions. Rather, Cragun's putative "opinions" are nothing more than cross examination and attestations of fact dressed up as expert testimony, and as such are unhelpful to the trier of fact and should be excluded.

### I.  BACKGROUND

By now the background facts of this case have been recited at length and need not be repeated herein. As such TLC will recite only those facts pertinent to this Motion. This action arises out of Defendants' violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) through their infringement of TLC's federally-registered trademarks, unfair competition, false designation of origin, passing off, and false advertising, as well as Defendants' violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; Defend Trade Secrets Act, 18 U.S.C. § 1836; and Wyo. Stat. Ann. § 40-24-101, *et seq.,* through their unauthorized access and misuse of TLC's confidential computer files. Defendants, both before and after their tenure as members of the TLC Board, employed TLC's federally-registered trademarks, intellectual property, and goodwill to create a competing entity and unfairly compete with TLC. Pursuant to the Court's scheduling order, TLC retained Tuan Pham, CFE, MBA of the accounting firm Postlethwaite & Netterville, APAC to perform an analysis of TLC's economic damages as a result of this wrongful conduct. Mr. Pham's analysis indicates that TLC has sustained lost profits in the amount of at least $665,400 as a result of Defendants' actions. Mr. Pham's report expressly states "The above estimate

1

assumes liability is proven in this matter, but I express no opinion with regard to liability."[1] Nevertheless, Defendants' own retained expert, Scott W. Cragun, spends the entirety of his report attacking the basis for Mr. Pham's liability assumption.[2] This report strays far beyond the permissible scope of expert testimony, and Mr. Cragun should be precluded from testifying at the trial of this matter.[3]

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Thus, expert testimony is permissible where the expert's "specialized knowledge" will assist the trier of fact, and their testimony is based on "sufficient facts or data" and "reliable principles and methods."

First, as a threshold issue, for a witness to testify as an expert, the witness must be qualified as such "by knowledge, skill, experience, training, or education." *Id.* Indeed, under *Daubert* and its progeny, an expert's opinion should be disallowed where it is not "within the reasonable confines" of the expert's subject area. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001).

Second, when considering the admissibility of expert opinion testimony, the district court

---

[1] Rec. Doc. 106, Expert Report of Tuan Pham, p. 11, previously filed under seal with the Court.

[2] Rec. Doc. 166, Expert Report of Scott Cragun, previously filed under seal with the Court.

[3] At the time of this filing, TLC has yet to take Mr. Cragun's deposition due to the parties' conflicting schedules. TLC continues to request available dates for Mr. Cragun's deposition prior to the discovery cutoff.

2

must ensure that the expert's reasoning and methodology underlying the testimony are scientifically valid and have been properly applied to the present case. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589, 593-95 (1993). "This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts." *Goebel v. Denver & Rio Grande W. R.R. Co*., 215 F.3d 1083, 1087 (10th Cir. 2000). In gauging an expert's reliability, the 2000 Advisory Committee Notes to Rule 702 of the Federal Rules of Evidence suggest that courts should consider "whether the expert is being as careful as she would be in her regular professional work outside of her paid litigation consulting." *See* FED. R. EVID. 702 Advisory Committee's Note (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (*Daubert* requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

Finally, in assessing admissibility, the court must determine whether an expert's opinions assist "the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony is within the juror's common knowledge and experience, and whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Garcia*, 635 F.3d 472, 476–77 (10th Cir. 2011) (quoting *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)). When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 970 (10th Cir. 2001).

## III. LAW & ARGUMENT

As noted above, TLC's damages expert Tuan Pham, following an analysis of TLC's financial data, opines that TLC has suffered at least $665,400 in lost profits in the form of decreased donations due to Defendants' unlawful acts.[4] While Mr. Cragun's report fails to specifically delineate the opinions he will offer at trial, his opinions appear to boil down to the following three points: (1) that TLC's decline in donations is attributable to factors other than Defendants' wrongful acts; (2) that TLC has not demonstrated donor confusion; and (3) that there are inconsistencies regarding individual donors' reasons for cancellations. Each of these putative "opinions" embraces an ultimate fact issue for the jury for which expert testimony is not permissible. Moreover, Mr. Cragun is not, and does not purport to be, an expert on nonprofit donations and the motivations of individual donors; accordingly, his testimony is not permissible. Finally, he employs no methodology of his own to arrive at an alternative theory for TLC's damages, rending his opinions inadmissible.

### A. Mr. Cragun's opinions are not helpful to the finder of fact and his proffered opinions are beyond his area of expertise

All of Mr. Cragun's putative "opinions" embrace issues of fact for the jury for which expert testimony is not required and which are beyond his area of expertise as an expert in valuation. It is axiomatic that expert testimony must be "helpful" to the jury in order to be admissible. Fed. R. Evid. 702; *see also Kumho Tire Co. Ltd.*, 526 U.S. at 147. Where "expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact." *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994). A party is not permitted to "elevate and advocate the value of individual evidence by having it recounted by an

---

[4] Rec. Doc. 106, Expert Report of Tuan Pham, p. 9.

4

expert." *iFreedom Direct Corp. v. First Tennessee Bank Nat. Ass'n*, No. 2:09-CV-205-DN, 2012 WL 3067597, at *3 (D. Utah July 27, 2012). Put differently, "[e]xpert testimony that is simply a 'summation' of the evidence or an attempt to make a 'closing argument' via an 'expert' should be excluded." *Id.* Yet that is precisely what Defendants would have Mr. Cragun do in this case.

*Rowe v. DPI Specialty Foods, Inc.*, is instructive. There, as here, an expert intended to offer opinions indicating that the opposing expert "did not consider many factors [the expert] believed to be relevant," and argued that the opposing expert's "assumptions about the case were either incomplete or incorrect." No. 2:13-CV-00708-DN-DJF, 2015 WL 4949097, at *5 (D. Utah Aug. 19, 2015), *aff'd,* 727 F. App'x 488 (10th Cir. 2018). In excluding such testimony, the district court found:

> An expert witness has no duty to prove causal links between incident and damages. An expert opines on facts which the expert assumes will be proven, and an expert can explain the bases for an opinion. But an expert **is not to opine on the weight of the facts or take a principal role in sifting, weighing and reciting them for the jury.**

*Id.* (emphasis added). The court went on to note that "[o]nly evidence can establish proof, only the jury can find facts and decide issues of causation, and only the attorneys in the case can argue about the meaning of the evidence." *Id.* Simply put, "it is necessarily the role of a damages expert to offer an opinion based only on assumptions because only the jury has the opportunity to conclude the factual issues in the case. Until a jury has found facts to resolve the factual issues presented to them, an expert has nothing other than assumptions on which economic analysis may be based."

Here, Mr. Cragun's CV indicates that he has expertise in "financial and litigation consulting" with a focus on "intellectual property damages analysis and calculations, including lost profit calculations, reasonable royalty determinations, and other intellectual property

5

quantitative analysis such as valuations."[5]  Despite this stated expertise, Mr. Cragun's expert opinions contain no quantitative analysis whatsoever; rather, the 27 pages of his report contain nothing more than an attack on whether TLC can prove that Defendants' bad acts were the ultimate *cause* of various donation cancellations and focuses principally on the motivations of individual donors, an area far beyond his stated expertise.  Indeed, Mr. Cragun's opinion is essentially distilled to his statement that "Mr. Pham has not properly accounted for TLC's donation decline being attributable to factors other than Defendants' alleged misuse of the Trademarks and Contact List; Mr. Pham has not shown that Defendants alleged misuse of the Trademarks and Contacts List resulted in donor confusion; and Mr. Pham's analysis of reasons why donations were cancelled is inconsistent with the information he relied upon."[6]  These opinions are just the type of causation opinions that courts have cautioned stray beyond the province of expert testimony and improperly invade the province of the jury.  Despite his purported expertise in "financial analysis and valuation," his expert report provides neither.  Accordingly, Mr. Cragun's testimony should not be allowed.

Mr. Cragun's opinions are based on the faulty assumption that Mr. Pham "**must** show the reduction of donations in 2020 was the result of actual confusion by the TLC donors that is attributable to Defendants' allege unlawful use of the Trademarks and Contacts List."[7]  This contention turns the purpose of expert testimony on its head.  Moreover, Mr. Cragun's opinions are based on the erroneous legal conclusion that only those damages tied narrowly to confusion as a result of Defendants' alleged misuse of the Trademarks and Contacts List can be recovered in

---

[5] Rec. Doc. 166, expert report of Scott Cragun, Exhibit 1, CV.

[6] Rec. Doc. 166, Expert Report of Scott Cragun,  p. 13 (emphasis assed).

[7] Rec. Doc. 166,  Expert report of Scott Cragun, p. 16.

this action.[8]  This is incorrect. In fact, TLC seeks recovery of damages for all of Defendants' wrongful actions, including Defendants' false and misleading actions related divisions in the TLC Board of Directors, eviction of TLC from Thunderhead Ranch, and fomenting uncertainty regarding the future of TLC.  This error further undercuts the admissibility of Mr. Cragun's opinions.  Even assuming that these factors motivated donor cancellations, they are all part and parcel of Defendants' effort to impermissibly pass off a new organization as TLC and unfairly compete with TLC.  Had Defendants simply left the TLC board and made clear to the world that they were no longer affiliated with TLC, these damages would not have occurred.  Instead, even after the Court's injunction, Defendants have persisted in their contention that they are the "true board" of TLC.  Indeed, as recently as last week, Defendant John Zelbst testified at his deposition that Defendants' competing college, currently operating as "The Spence Method" is "the same thing" as TLC, and stated on the record that he believes himself to be an officer of TLC despite a state court ruling to the contrary.[9]  In any event, whether these categories of damages are recoverable is ultimately a question for the Court and the jury, and not, as Defendants contend, properly the subject of expert testimony.

### B. Mr. Cragun opinions are not based on any methodology whatsoever; rather, his "analysis" amounts to nothing more than an impermissible summary of the evidence

Mr. Cragun's putative "opinion" regarding alleged inconsistencies in the reasons for donor cancellation is based on a misapprehension of the purpose of an expert witness, a misstatement of the reasons for which Mr. Pham offers a report, and further constitutes nothing more than an impermissible summary of evidence.  The proponent of expert testimony "must show that the

---

[8] Rec. Doc. 166, Expert Report of Scott Cragun, p. 13.

[9] The transcript of this deposition was not available as of the filing of this Motion.  TLC will supplement the record to include pertinent excerpts of this deposition transcript once it is available.

method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999).  While Mr. Cragun indicates that he is an expert in providing financial analysis and valuation, his purported analysis does not involve a single number, but rather tells the jury how it should weigh certain evidence and what causation conclusions it should arrive at from that evidence.  Indeed, though Mr. Cragun spends 10 pages of his expert report outlining putative "inconsistencies" in reasons for cancellations offered by various donors, this analysis seems to be based on his mistaken contention that Mr. Pham purports to analyze the reasons various reasons donors cancelled their donations.  He does not.  Rather, as Mr. Pham emphasized at his deposition, this data was obtained from TLC.[10]  Of course, Mr. Pham affirmed the reliability of this data by reviewing the underlying emails and vetted the data through conversations with TLC staff.[11]  Moreover, Mr. Pham took into account the fact that TLC staff had conversations with various donors who either clarified or supplied reasons for their cancellations over the phone—a fact which Mr. Cragun does not take into account.[12]  Of course, it is TLC—not Mr. Cragun or Mr. Pham—who is in the best position to provide the reasons that its donors have halted their donations.  Neither Mr. Pham nor Mr. Cragun have spoken to TLC's individual donors, and it would be entirely inappropriate for them to do so.  Of course, if TLC cannot prove these reasons to the jury's satisfaction at trial, Mr. Pham's opinions need not be considered.  It is not,

---

[10] Exhibit 1, Deposition of Tuan Pham, 90:18-23 ("That was prepared -- I don't know when it was prepared, but it -- I had no hand in preparing the documents as they were, okay, are the data as it is. It was just -- it was compiled data by whoever at TLC, I'm assuming Laurie Goodman, because she was the one who spoke knowledge to me about it.").

[11] *Id.,* 73:4-7 ("I received the data from them and . . . I went through a process of asking them questions about the e-mails and confirming whether it should be this way or that way").

[12] *Id.* 73:17-21 ("there were less e-mails than people because there were several phone calls, so there were phone calls in addition to the e-mails, and those -- I didn't audit those -- I wasn't on those calls, I think for obvious reasons why I shouldn't be on those calls.").

however, Mr. Cragun's place to tell the jury what conclusions it should draw from the evidence, thereby improperly giving subjects suited for Defendants' closing arguments and cross examination the imprimatur of expert testimony.

## IV. CONCLUSION

For the foregoing reasons, TLC respectfully requests that the Court preclude Defendants' expert, Scott Cragun, from testifying at the trial of this matter.

**[SIGNATURE PAGE FOLLOWS]**

9

Respectfully submitted,

**THE TRIAL LAWYERS COLLEGE**

 /s/ Christopher K. Ralston
Christopher K. Ralston, (La. Bar #26706)
(Admitted *pro hac vice*)
Lindsay Calhoun, (La. Bar #35070)
(Admitted *pro hac vice*)
James Gilbert, (La. Bar # 36468)
(Admitted *pro hac vice*)
Matthew Slaughter, (La. Bar #37308)
(Admitted *pro hac vice*)
Phelps Dunbar LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email:  ralstonc@phelps.com
           lindsay.calhoun@phelps.com
           james.gilbert@phelps.com
           matthew.slaughter@phelps.com

and

By:  /s/ Patrick J. Murphy
Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-mail:  pmurphy@wpdn.net
           zmason@wpdn.net

**ATTORNEYS FOR PLAINTIFF THE TRIAL LAWYERS COLLEGE AND THIRD PARTY DEFENDANTS JOHN SLOAN, MILTON GRIMES, MAREN CHALOUPKA, JAMES R. CLARY, JR., DANA COLE, AND ANNE VALENTINE**

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all counsel of record this 1st day of June, 2021.

/s/ *Christopher K. Ralston*
Christopher K. Ralston

PD.33765932.2