Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-Mail:  pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
James Gilbert (Admitted *Pro Hac Vice*)
Matthew Slaughter (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email: chris.ralston@phelps.com
        lindsay.calhoun@phelps.com
        james.gilbert@phelps.com
        matthew.slaughter@phelps.com

Attorneys for The Trial Lawyers College

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING
### CASPER DIVISION

| | | |
|---|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation | ) ) ) | CIVIL ACTION NO. 1:20-cv-0080 |
| Plaintiff, | ) ) | _____ |
| v. | ) ) | **JUDGE CARSON** |
| GERRY SPENCES TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, a nonprofit corporation, and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals. | ) ) ) ) ) ) ) ) ) | **MAGISTRATE JUDGE CARMAN** |
| Defendants. | | |

## TLC AND THE BOARD MEMBERS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Plaintiff The Trial Lawyers College ("Plaintiff" or "TLC") and Third Party Defendants John Sloan, James R. Clary, Jr. Milton Grimes, Dana Cole, Anne Valentine, and Maren Chaloupka[1] (collectively, the "Board Members") respectfully request that this Court grant their motion for summary judgment as to Defendants Gerry Spence ("Spence") and Rex Parris's ("Parris") counterclaims and third party demands.[2]  As explained below, Spence and Parris's claims suffer from a variety of factual and legal deficiencies, and TLC and the Board Members are entitled to summary judgment dismissing the counterclaims and third party demands with prejudice.

## I.      BACKGROUND

TLC is a nonprofit corporation dedicated to training and educating lawyers and judges who are committed to the jury system and to representing and obtaining justice for individuals.[3]  TLC is led by a Board of Directors.[4]  Since it began operations in August 1994 until May 8, 2020, TLC operated at the Thunderhead Ranch in Dubois, Wyoming, pursuant to a lease agreement with the Spence Foundation.[5]

On May 13, 2020, TLC filed this suit against Defendants alleging, *inter alia*, that Defendants had and continue to infringe on two federally-registered trademarks held by TLC.[6]

---

[1]  Third Party Defendants John Sloan, James R. Clary, Jr. Milton Grimes, Dana Cole, Anne Valentine, and Maren Chaloupka specifically note that they have moved to dismiss the claims against them for lack of standing and personal jurisdiction and for failure to state a claim, and that nothing contained in this Motion should be construed as a relinquishment or waiver of those rights or defenses as asserted.  *See* Rec. Docs. 103, 104, 120, 121.

[2]  *See* Rec. Doc. 108 ¶¶ 113-122.

[3]  Rec. Doc. 101 ¶¶ 2, 16.

[4]  *Id.* ¶ 2.

[5]  *Id.* ¶ 4.

[6]  *See* Rec. Doc. 1 ¶¶ 61-73.

PD.33703711.2

Relevant to this Motion is the mark that TLC holds pursuant to Registration Number 4,198,054 (the "'054 Mark"), registered August 28, 2012, consisting of a stylized design of a cloud with a bolt of lightning.[7]

TLC moved for a Temporary Restraining Order ("TRO") and a Preliminary Injunction related to Defendants' infringement of its trademarks.[8]  The Court granted TLC's TRO on May 26, 2020 and entered an Order regarding the same on May 27, 2020.[9]  The Court also granted in part TLC's Motion for Preliminary Injunction on June 16, 2020.[10]  However, Defendants violated the terms of the Court's Preliminary Injunction Order by continuing to infringe upon TLC's marks, including the '054 Mark.  On August 28, 2020, and after an evidentiary hearing, Magistrate Judge Carman recommended that the enjoined Defendants be held in contempt of Court for failing to abide by the Court's Preliminary Injunction Order.[11]

On December 2, 2020, Spence and Parris filed their First Amended Answer to Second Amended Complaint and Counterclaims/Third Party Claims, therein asserting seven counterclaims/third party demands against TLC and the Board Members for violations of the Lanham Act, wrongful appropriation of name and likeness, abuse of process, trademark cancellation, and civil conspiracy.[12]  However, based on the undisputed material facts, Spence and Parris cannot maintain any of their counterclaims/third party demands and, accordingly, TLC and the Board Members are entitled to summary judgment and dismissal of all such claims with prejudice.

---

[7] Rec. Doc. 101 ¶ 5(b); *see also id.*, p. 35.

[8] Rec. Docs. 2, 29, 30.

[9] Rec. Doc. 27.

[10] Rec. Doc. 46.

[11] Rec. Doc. 76, p. 20.

[12] *See* Rec. Doc. 108 ¶¶ 79-125.

The undisputed facts relevant to this motion involve three general topics—TLC's ownership of the '054 Mark; the composition of the TLC Board of Directors; and Spence's lack of any protectable mark under the Lanham Act or Wyoming law.  They are addressed in turn below.

## II.   LAW & ARGUMENT

### A.  Standard of review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13]  A fact is material if its existence or nonexistence might affect the outcome of the suit under governing law.[14]  An issue is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[15]

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[16]  "A movant who does not bear the burden of persuasion at trial may satisfy this burden by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim."[17]  "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant."[18]  "To satisfy this burden, the nonmovant must identify facts by reference to affidavits, deposition transcripts, or specific exhibits incorporated

---

[13] Fed. R. Civ. P. 56(a).

[14] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[15] *Becker v. Bateman*, 709 F.3d 1019, 1022 (quotations omitted).

[16] *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[17] *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal citations omitted).

[18] *Libertarian Party of N.M.*, 506 F.3d at 1309 (quotations omitted).

3

therein."[19]  The facts "must establish, at a minimum, an inference of the presence of each element

essential to the case."[20]  A movant is entitled to summary judgment when "the nonmoving party

has failed to make a sufficient showing on an essential element of her case with respect to which

she has the burden of proof."[21]

### B.  Spence's trademark cancellation claim (Count 6) fails because TLC owns the '054 Mark

In order to protect its intellectual property, in 2011 and 2012, TLC discussed, voted on,

applied to, and received from the USPTO a federal trademark registration for its signature

"thunderbolt and cloud" logo, as follows:

> Per Registration Number 4,198,054 (the '054 Mark"), registered August 28, 2012,
> TLC possesses a trademark consisting of a stylized design of a cloud with a bolt of
> lightning.[22]

As is self-evident from the face of the USPTO registration for the '054 Mark, TLC is the

owner of the "thunderbolt and cloud" logo.  TLC has maintained and used the '054 Mark in

interstate commerce since it was issued by the USPTO.[23]

### i.      Defendants' acknowledgement that TLC owns the '054 Mark

As an initial matter, Defendants, including Spence, have already admitted to this Court that

TLC is the owner of the '054 Mark.  At this Court's June 9, 2020 hearing on TLC's motion for

preliminary injunction, Spence and his co-defendants, through their counsel, represented that they

---

[19] *Savant Homes*, 809 F.3d at 1137 (citations and quotations omitted).

[20] *Id.* at 1137-38 (citations omitted).

[21] *Celotex*, 477 U.S. at 323.

[22] *See* USPTO Federal Registration, '054 Mark, attached hereto as Exhibit A.  Of course, TLC also owns a federally-registered trademark for "Trial Lawyers College," per Registration Number 4,197,908 (the "'908 Mark").

[23] Rec. Doc. 101 ¶ 6; *see also, e.g.,* TLC Graduate Logo, Warrior Magazine Cover, Fall 2019, Warrior '95 T-Shirt, attached hereto *in globo* as Exhibit B.

4

would be willing to stipulate that they would not further infringe upon TLC's Marks, including the

'054 Mark:

> In their response to [TLC's] motion, and confirmed at the hearing, Defendants stipulate that they will agree to the requested relief to the extent it conforms to the Temporary Restraining Order and not use [TLC's] trademarks in connection with any new or competing entity to Plaintiff.[24]

Defendant Parris further testified at the preliminary injunction hearing as follows:

> [Q]:  Mr. Parris, one of the trademarks that we've been discussing in this case is the cloud design with the lightning bolt.  Are you familiar with that design?
> [A]:  *Yes.  I was in the discussions with the board when we moved to trademark it and proceeded to get a trademark.*[25]

The Court credited this testimony in its order enjoining Defendants from infringing upon

TLC's Marks:

> According to Defendant Parris, the Board, *which included Gerry Spence*, decided to trademark the ranch's cattle brand as Plaintiff's symbol.  The pictures presented to the Court show that participants in the program had their picture taken in front of the artwork at the barn.  Plaintiff presented evidence that the '054 Mark has become associated with its goods and services.  Defendants cannot continue displaying the artwork depicting the '054 Mark.[26]

In other words, Spence, Parris, and their co-defendants have represented to this Court under

oath and through their counsel that Plaintiff is the owner of the '054 Mark.  There is absolutely no

evidence to credit Spence's recently-invented, blanket assertion that he granted a mere license to

TLC for the thunderbolt and cloud logo such that he somehow owns it to this day.[27]  There can be

no serious dispute that TLC is the owner of the '054 Mark, as Defendants themselves have

conceded.

---

[24] Rec. Doc. 46, p. 6.

[25] Rec. Doc. 47, June 9, 2020 Preliminary Injunction Hearing Transcript, 117:23-1 (emphasis added).

[26] Rec. Doc. 46, p. 16 (emphasis added).

[27] Rec. Doc. 108, Counterclaims ¶ 72.

ii.     **TLC's federal registration of the '054 Mark and Spence's participation in the same**

Similarly, there can be no serious dispute that, as a TLC Board member, Spence was a full participant in TLC's registration of the '054 Mark and knew at that time that TLC sought to (and did) register the thunderbolt and cloud logo. Indeed, all of the evidence contemporaneous to TLC's registration of the marks contradicts Spence's spurious counterclaim allegations.

On April 4, 2011, intellectual property attorney Allen Darden directed a letter to TLC regarding Mr. Darden's recommendations for TLC's intellectual property (the "April 4 Letter").[28] In the April 4 Letter, Mr. Darden details the process for obtaining registration for TLC-related intellectual property, including several TLC logos.[29]

TLC subsequently held a Board meeting at the Thunderhead Ranch in Dubois, Wyoming from July 7-9, 2011.[30] During that meeting, TLC, through its Board of Directors, *unanimously* voted to "adopt the recommendations of Allen Darden and employ him to move forward as set out in his letter . . . ."[31] Spence was among the Board members who voted unanimously to register the '054 Mark.[32]

On July 20, 2011, TLC sent a response letter to Mr. Darden (the "July 20 Letter"), wherein Mr. Clary, on behalf of TLC, advised Mr. Darden that: "[a]t the Trial Lawyers' College Board Meeting held on July 6 and 7, 2011, a motion to authorize the work you recommended in your recent letter was made, seconded and passed unanimously."[33] Mr. Clary sent a "carbon copy" of

---

[28] April 4 Letter, attached hereto as Exhibit C.

[29] *See id.*, p. 5.

[30] TLC Board Meeting Minutes, July 7-9, 2011, attached hereto as Exhibit D.

[31] *Id.*, p. 4.

[32] *Id.*, p. 1.

[33] July 20 Letter, attached hereto as Exhibit E.

6

that July 20 Letter via e-mail to Spence, as well as TLC's Executive Director Laurie Goodman and TLC's then-President Jude Basile.[34]

At a January 25, 2012 Board Meeting, Mr. Clary provided an update to the TLC Board on the registration status of the trademarks.[35] Mr. Clary reported to the Board that "[t]he process to trademark TLC is in the end stage," that he "anticipates that the trademark will be granted," and that "we [TLC] will trademark the LOGO too."[36] Spence indisputably attended this meeting, and in fact made several presentations throughout its course.[37]

Importantly, during his trademark presentation at the January 2012 Board Meeting, Mr. Clary advised the Board that the "meeting notebook contained documents related to this [trademark registration] process for each Board member to review."[38] That meeting notebook, which was provided to each Board member, establishes *unequivocally* that Spence received full notice that TLC intended to register (and indeed, was in the process of completing registration for) the thunderbolt and cloud logo as a trademark.[39] Specifically, the meeting notebook contained the Trademark Electronic Application System ("TEAS") filing receipt for TLC's logo, consisting of "a stylized design of a cloud with a bolt of lighting [sic]."[40] The TEAS filing receipt is dated January 17, 2012.[41] It is undisputed that Spence has known for at least *nine years* prior to his counterclaims that TLC intended to, and did in fact, register the thunderbolt design as TLC's

---

[34] *Id.*, p. 1.

[35] January 25, 2012 TLC Board Meeting Minutes, p. 6, attached hereto as Exhibit F.

[36] *Id.*

[37] *See id.*, pp. 1, 10.

[38] *Id.*, p. 6.

[39] *See* January 25, 2012 Meeting Notebook, Tab 9, pp. 7-8, attached hereto as Exhibit G.

[40] *Id.*

[41] *Id.*

trademark.[42]

In light of the foregoing, there is no dispute that Spence was provided a copy of the TEAS filing receipt for the '054 Mark bearing the thunderbolt and cloud logo on January 25, 2012 and that TLC and Clary accurately represented the subject of the '054 Mark to the Board as composed in 2012, including Spence. As discussed below, Spence's trademark cancellation claim is thus time-barred. Moreover, there is simply no support for the proposition that TLC or Clary made misrepresentations to the USPTO regarding TLC's ownership of the '054 Mark or that Spence was somehow misled as to precisely what was the subject of the '054 Mark. Spence's trademark cancellation claim thus fails.

i.     **Spence's trademark cancellation claim fails because it is time-barred**

Even if Spence's allegation that TLC and Clary made misrepresentations to the USPTO regarding the '054 Mark was accurate—which it is not—Spence's claim nonetheless must fail because it is time-barred. As federal district courts and courts of appeal across the nation have determined, where a party seeks to cancel a trademark under 15 U.S.C. §§ 1119 and 1120 on the ground that it was registered by fraud, as Spence does here, the Court applies the state's statute of limitations for fraud.[43] For instance, in this circuit, the U.S. District Court for the District of Colorado summarized that where it "is clear from the Complaint that Plaintiff alleges the defendants perpetrated a fraud on the Patent and Trademark Office in obtaining its mark, and that

---

[42] *Id.*

[43] *See Denver Urb. Homesteading, LLC v. Dervaes Inst.*, No. 13-cv-000917, 2014 WL 1243802, at *6 (D. Colo. Feb. 28, 2014), *report & recommendation adopted in part, rejected in part*, No. 13-cv-00917, 2014 WL 1247387 (D. Colo. Mar. 26, 2014); *see also Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1139-40 (9th Cir. 2010); *Royal Palm Props., LLC v. Pink Palm Props., LLC*, No. 9:17-cv-80476, 2018 WL 1138304, at *2 (S.D. Fla. Mar. 2, 2018); *Cabell v. Zorro Prods., Inc.*, No. 5:15-cv-00771, 2017 WL 2335597, at *10 (N.D. Cal. May 30, 2017); *D-D The Aquarium Soln. Ltd. v. Giesemann Lichttechnik und Aquaristik GmbH*, No. 1:14-cv-0846, 2015 WL 1516387, at *2 (E.D. Va. Apr. 1, 2015).

PD.33703711.2

Plaintiff was injured by the defendants' wrongfully obtaining the mark," then Colorado's statute of limitations for fraud applied.[44]

Here it is likewise clear from the counterclaims that Spence alleges that TLC and Clary perpetrated a fraud on the USPTO.[45]  Thus, Wyoming's four-year statute of limitations for fraud actions applies to Spence's trademark cancellation counterclaim.[46]  As discussed above, Spence had full knowledge of TLC's application to the USPTO to register the thunderbolt and cloud logo no later than January 25, 2012, and thus, the statute of limitations for his trademark claim expired no later than January 25, 2016.[47]  Of course, Spence did not file this counterclaim until December 2, 2020 and, thus, it is clearly time-barred.[48]

Further, federal statutory law provides that "[r]egistration of a mark on the principal register provided by this chapter . . . shall be constructive notice of the registrant's claim of ownership thereof."[49]  The '054 Mark was registered on August 28, 2012.[50]  Thus, even if Spence somehow did not have actual knowledge that TLC intended to and did register the thunderbolt and cloud logo as its trademark, despite his full participation in that process, he had constructive notice of TLC's ownership of the mark on August 28, 2012.[51]  Based on constructive notice, the statute

---

[44] *Denver Urb. Homesteading*, 2014 WL 1243802, at *6.

[45] Rec. Doc. 108, Counterclaims ¶ 119 ("The USPTO relied on TLC and Clary's misrepresentations in maintaining U.S. Reg. No. 4,198,054, which it otherwise would have cancelled."); *see also id.* ¶ 121 ("Additionally, because U.S. Reg. No. 4,198,054 was procured and maintained through fraud, it must be cancelled.").

[46] *See* Wyo. Stat. Ann. § 1-3-105(a)(iv)(D); *see also Denver Urb. Homesteading*, 2014 WL 1243802, at *6.

[47] Ex. G, January 25, 2012 Meeting Notebook, Tab 9, pp. 7-8; *see also* Wyo. Stat. Ann. § 1-3-105(a)(iv)(D).

[48] *See* Rec. Doc. 108.

[49] 15 U.S.C. § 1072.

[50] Ex. A, USPTO Registration '054 Mark.

[51] *See id.*

of limitations for Spence's trademark cancellation claim would have expired no later than August 28, 2016.[52]   For this additional reason, TLC and Clary are entitled to summary judgment on Spence's trademark cancellation claim (Count 6) and dismissal of that claim with prejudice.

ii.   **Spence's trademark cancellation claim (Count 6) fails because, on the undisputed material facts, TLC and Clary's representations to the USPTO were truthful**

As outlined above, there is no genuine dispute that Spence not only had notice as to the subject of TLC's thunderbolt and cloud logo registration no later than January 2012, but that he actively participated in that process as a TLC Board member throughout 2011 and 2012.[53]   Indeed, as a TLC Board member, Spence received a copy of the TEAS filing receipt for the thunderbolt and cloud logo on January 25, 2012.[54]   Accordingly, the uncontroverted evidence establishes that Spence knew in 2011 and 2012 that the thunderbolt and cloud logo was the subject of TLC's trademark registration, and thus all representations by TLC to the USPTO were truthful.   By contrast, there is no evidence supporting Spence's new allegation that TLC or Clary purportedly made misrepresentations to the USPTO.   Of course, Spence cannot maintain an action for trademark cancellation based on TLC and Clary's <u>truthful</u> representations to the USPTO, or even

---

[52] Wyo. Stat. Ann. § 1-3-105(a)(iv)(D); *see also Bank of Jackson Hole v. Cook GS Inv. Partners, LP*, No. 14-CV-234-R, 2017 WL 3449603, at *8 (D. Wyo. Jan. 30, 2017) ("By February 18, 2011, however, North Cache knew that BOJH had allegedly lied about North Cache's responsibility for remediation, and should have suspected that the appraisal value of the property was inflated as a result.   Just as the plaintiffs in *Adelizzi* could not avoid the statute of limitations on their intentional failure because their knowledge of the leak put them, at a minimum, on 'inquiry notice,' North Cache had a duty to reasonably investigate their entire transaction with BOJH and bring any claim within the relevant statute of limitations.   It would be inconsistent to allow North Cache to claim [it] relied heavily on BOJH to evaluate their purchase of the subject property, but not find [it] should have investigated BOJH further once they discovered BOJH allegedly lied to them about remediation costs on a $10 million property.") (citing *Adelizzi v. Stratton*, 243 P.3d 563, 567-68 (Wyo. 2010)).

[53] *See* Ex. July 2011 Board Meeting Minutes, p. 4; Ex. F, January 2012 Board Meeting Minutes, pp. 6-7; and Ex. G, January 2012 Board Meeting Notebook, Tab 9, pp. 7-8.

[54] *See* Ex. G, January 25, 2012 Board Meeting Notebook, Tab 9, pp. 7-8.

upon representations TLC and Clary believed to be truthful at the time.[55]  TLC and Clary are thus

entitled to summary judgment on Spence's claim for trademark cancellation and full dismissal of

that claim with prejudice.

### C.  Spence and Parris's Counterclaims for Violation of the Lanham Act (Count 4) and Abuse of Process (Count 5) have been entirely foreclosed by a decision in favor of TLC and the Board Members in Wyoming State Court

TLC and the Board Members are also entitled to summary judgment as to Counts 4 and 5

of Parris and Spence's counterclaims, which rely on their unsupportable assertion that "the Sloan

Group [i.e., each Board Member] has continued to make the false and misleading claim that they

constitute the definitive true board of TLC when in fact they are not . . . ."[56]  The bulk of Counts

4 and 5 of Parris and Spence's counterclaims rest upon this faulty premise, which has been

definitively rejected by the Laramie County District Court, Wyoming (the "Wyoming State

Court") in the case captioned *Gerald L. Spence, et al. v. The Trial Lawyers College*, Civ. Action

No. 193-124.[57]

Under a header in their counterclaims titled "The Sloan Group's False and Misleading

Claims as to Control of TLC," Parris and Spence supply pages worth of completely unfounded

allegations against TLC and the Board Members, thereby suggesting that they:

> have engaged in false and misleading descriptions and representations of fact
> regarding TLC and their affiliation with TLC by using TLC marks, controlling
> TLC's website, controlling TLC's listserv (and banning the Spence Counterclaim
> Plaintiffs from the same), controlling TLC's finances, making numerous public
> statements, and even filing and maintaining this instant lawsuit, all to falsely cloak

---

[55] *See Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, Ecumenical Ord.*, 702 F.3d 1279, 1291 (11th Cir. 2012) (" . . . Pace could not have intended to deceive the PTO in attesting to an oath that he believed was entirely accurate.").

[56] Rec. Doc. 108, Counterclaims ¶ 3.

[57] Moreover, as TLC and the Board Members have raised in their pending Motion to Dismiss Counterclaims, Spence and Parris lack standing to assert a claim under the Lanham Act regarding the constitution of the TLC Board.  *See* Rec. Doc. 121, pp. 17-18.

themselves as being the true board of TLC.[58]

Parris and Spence go on to assert that the election held at TLC's May 6, 2020 Board meeting, where Parris, Spence, and other Defendants were not re-elected to TLC's Board of Directors, was "a sham and unlawful under TLC Bylaws and state non-profit law," and that "there was no lawful process to remove any of the Spence Group members from the board."[59]   But again, these assertions and claims have now been entirely foreclosed by the Wyoming State Court in its recent ruling in TLC and the Board Members' favor on the parties' cross-motions for summary judgment.

Specifically, on April 13, 2021, the Wyoming State Court issued a thirty-two page opinion and determined that the Board Members—that is, John Sloan, James R. Clary, Jr., Milton Grimes, Dana Cole, Maren Chaloupka, and Anne Valentine—are indeed the "valid directors on the Trial Lawyers College Board of Directors."[60]   The Wyoming State Court further determined that "no deadlock existed at the May 6, 2020 meeting," and that "[t]he actions of the Sloan Group at the May 6, 2020 special board meeting were valid."[61]   The Wyoming State Court concluded that: "The TLC Board of Directors voted to reduce the number of directors required by the TLC *Bylaws* and elected new directors and officers, leaving the Sloan Group the controlling Board of Directors of TLC."[62]   In other words, not only is there no genuine issue of material fact with regard to Parris and Spence's specious Lanham Act and Abuse of Process claims based on the Board Members' truthful representation that they do in fact serve on the TLC Board, but that issue of law has already

---

[58] Rec. Doc. 108, Counterclaims ¶ 106; *see also* id. ¶¶ 63-70, 107-112.

[59] *Id.* ¶ 46.

[60] *See* Order Consolidating Cases, Granting In Part and Denying In Part Motions to Dismiss and For Summary Judgment and Granting Declaratory Relief (the "State Court Order"), p. 30 ¶ 59, attached hereto as Exhibit H.  This Court may take judicial notice of the Wyoming State Court's ruling.  *See Pace v. Swerdlow*, 519 F.3d 10967, 1072-73 (10th Cir. 2008).

[61] *Id.*, p. 30, ¶ 59.

[62] *Id.*, pp. 30-31, ¶ 59 (emphasis original).

been judicially decided against Spence, Parris, and their fellow former Board member co-Defendants.[63]

Stated otherwise, Spence and Parris's fourth and fifth counterclaims are extinguished by the doctrine of *res judicata*. Under Tenth Circuit law, the following elements must be satisfied to invoke the doctrine of *res judicata*:

> (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit.[64]

There is no question that these elements are satisfied here. First, the Wyoming State Court's grant of summary judgment in favor of the Board Members as to the lawfulness of the May 6, 2020 election and the composition of the TLC Board satisfies the first element, that is, a prior suit that ended with judgment on the merits.[65] Indeed, in the Wyoming State Court action, Spence and Parris have conceded that the State Court Order is the "law of the case."[66] Second, the parties to the two actions are not only in privity, but are identical, thanks to Spence and Parris's counterclaims.[67] Additionally, a party "has a full and fair opportunity to litigate if it is allowed to

---

[63] *See id.*

[64] *Nwosun v. Gen. Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997).

[65] *Taylor v. Casey*, 66 Fed. App'x 749, 753 n. 2 (10th Cir. 2003) ("[T]he district court in the first action granted summary judgment in favor of the defendant, resulting in a judgment on the merits to which res judicata would apply.").

[66] *See* Plaintiffs' Memorandum on Standing and Seeking Reconsideration or Other Consideration of Matters Previously Raised, filed in the Wyoming State Court action April 30, 2021, p. 3, attached hereto as Exhibit I ("The court has decided (1) that Mr. Cole and Ms. Chaloupka were board members entitled to vote at the May 6, 2020 board meeting, (2) that the election of directors held on May 6 resulted in the Sloan Group being elected (and the Spence Group being nominated but not elected), and (3) that the bylaws were amended on May 6 to reduce the number of directors (from a maximum of thirteen to a maximum of eleven). **Plaintiffs recognize that these rulings are now the law of the case.**") (emphasis added). This Court may take judicial notice of this filing in the Wyoming State Court action. *Pace*, 519 F.3d at 1072-73.

[67] *See* Rec. Doc. 108, p. 26 (naming John Sloan, Milton Grimes, Maren Chaloupka, James R. Clary, Jr., Dana Cole, and Anne Valentine as third party defendants and TLC as a counterclaim defendant); *see also* Rec. Doc. 101 (naming Gerald L. Spence, John Zelbst, Rex Parris, Joseph H. Low, and Kent

submit evidence to defeat a motion for summary judgment," as Defendants did in the Wyoming

State Court, and thus the fourth element is satisfied.[68]

Moreover, the third element is satisfied because Spence and Parris's fourth and fifth

counterclaims are based on the same "claims or legal theories of recovery that arise from the same

transaction, event, or occurrence."[69]  Specifically, the counterclaims are premised on Spence and

Parris's incorrect assertions that the Board Members have falsely held themselves out to be on the

TLC Board of Directors and falsely controlled TLC.[70]  In their Wyoming State Court Complaint,

Spence and Parris asked that court to, *inter alia*, "[d]eclare that [they and their co-plaintiffs] are

duly acting members of the Board of Directors of TLC," declare that Mr. Cole and Ms. Chaloupka

are not Board members, and "[r]emove each and every Individual Defendant from the Board of

Directors of TLC" on the basis of purported "fraudulent or dishonest conduct, or gross abuse of

authority or discretion, with respect to the corporation," or "who is engaged in activities contrary

to TLC's Mission Statement."[71]  In other words, in both cases, Spence and Parris asked the

respective courts to make rulings that require a preliminary determination as to who constitutes

the TLC Board—which issue has now been decided by the Wyoming State Court.[72]  There is no

question that the issues Spence and Parris raise in both the Wyoming State lawsuit and their

counterclaims in this action are based on the same occurrence or event.  Those issues have now

---

Spence as Defendants); Wyoming State Court Complaint, p. 1, attached hereto as Exhibit J (naming
Gerald L. Spence, John Zelbst, Rex Parris, Joseph H. Low, and Kent Spence as plaintiffs and TLC,
John Sloan, Milton Grimes, Maren Chaloupka, J.R. Clary, Jr., Dana Cole, and Anne Valentine as
Defendants).  This Court may take judicial notice of Complaint filed in the Wyoming State Court
action.  *Pace*, 519 F.3d at 1072-73.

[68] *Matosantos Comm. Corp. v. Applebee's Intern., Inc.*, 243 F.3d 1203, 1211 (10th Cir. 2001); *see also*
Ex. I, State Court Order (discussing throughout the evidence submitted).

[69] *Nwosun*, 124 F.3d at 1257.

[70] Rec. Doc. 108 ¶¶ 105-112.

[71] Ex. J, pp. 14-15.

[72] *See* Ex. H, State Court Order, pp. 30-31.

14

been decided against Spence and Parris in Wyoming State Court, and thus under the doctrine of *res judicata*, their fourth and fifth counterclaims, premised on their theory that the Board Members somehow are not proper Board Members, fail as a matter of law.

Based on the Wyoming State Court's definitive ruling, there is simply no way for Parris and Spence to maintain their claims for violation of the Lanham Act based on the Board Members truthfully representation that they constitute the TLC Board (Count 4) or for Abuse of Process for rightly functioning as the TLC Board (Count 5).[73]  TLC and the Board Members are entitled to summary judgment on these claims.

### D. Spence's claims for violations of federal and state law (Counts 1, 2, and 3) for TLC and the Board Members' alleged use of his name, image, likeness, and cattle brand also fail as a matter of law

Under counterclaim Counts 1, 2, and 3, Spence claims that TLC and the Board Members misused his name, image, likeness, and cattle brand after the Board schism.[74]  As extensively discussed in TLC and the Board Members' pending Motion to Dismiss, Spence cannot maintain these claims against TLC and the Board Members because: (1) the fact of Spence's historical affiliation with TLC is accurate (and has been accurately depicted by TLC);[75] (2) there are no facts suggesting that Spence has suffered a commercial injury due to TLC or the Board Members' conduct;[76] (3) there is no evidence that any person has been confused by TLC's accurate description of Spence's historical affiliation with TLC;[77] and (4) the handful of Facebook videos of Spence, which were only accessible by searching for them on Facebook (and are no longer

---

[73] Accordingly, TLC and the Board Members will be the prevailing party as to Parris and Spence's fourth counterclaim and will move for an award of attorneys' fees after summary judgment is granted on this claim, and all other Lanham Act claims decided in TLC and the Board Members' favor.

[74] Rec. Doc. 108 ¶¶ 79-104.

[75] Rec. Doc. 121, pp. 11-14.

[76] *Id.*, p. 15.

[77] *Id.*, pp. 15-16.

available), and the other images pasted into Spence's Counterclaims do not constitute "commercial advertising or promotion."[78] Accordingly, for those reasons set forth in TLC and the Board Members' pending Motion to Dismiss, Counts 1, 2, and 3 of Spence's Counterclaims should be dismissed with prejudice.

Further, these Counterclaims fail for the additional reason that the Lanham Act does not afford Spence protection (or a cause of action) for his name, image, or likeness, the term "Thunderhead Ranch" or the purported "cattle brand" that he appears to refer to as interchangeable with the '054 Mark.[79]  Moreover, even if he could assert such claims, there is no evidence that Spence has suffered any alleged damages as a result.  TLC and the Board Members are entitled to summary judgment as to Counts 1, 2, and 3 of Spence's counterclaims.

> i. **The Lanham Act does not provide wholesale protection for any and all instances of Spence's name, image, or likeness**

In his first and second counterclaims under the Lanham Act, Spence alleges that TLC and the Board Members "are attempting to capitalize on the fame and reputation of Gerry Spence and

---

[78] *Id.*, pp. 16-17; *see also* Deposition Transcript of Laurie Goodman, 77:2-15, attached hereto as Exhibit K ("I was made aware of that [historic videos of Gerry Spence accessible through TLC's Facebook page]. I'm not a – I'm not a Facebook user, so I'm not familiar with a lot of those different – you know, that mechanism. But I – once they made us aware of it, your clients, I went and I saw that if you did a search on our Facebook page under a video tab, there were still some cached videos that had not been removed, so I instructed my director of communications to remove all of those."); *see also id.* 77:25-78:2 ("They [the Facebook videos] weren't on the front. I mean, it wasn't an obvious apparent thing. You have to search for them."); 79:25-80:1 and 80:4-11 ("I know we never used them [the Facebook videos] for active outreach, Tim. … We didn't use those videos for outreach ever since that letter got sent. We do use our Facebook page. That's where we post – on the home page, there's pictures that are posted, activities, notices about upcoming courses, notices of our podcast. It is for outreach but we didn't use – since that letter, we never used any of Gerry's videos for any outreach.").

[79] To the extent that Spence intends to suggest the cattle brand is interchangeable with the '054 Mark, Spence's argument fails for the same reason that his trademark cancellation theory fails—that is, because TLC is the owner of the '054 Mark and only obtained a federal registration for that Mark after the Board, including Spence, voted unanimously to do so. In an effort to be efficient, TLC and the Board Members do not repeat those arguments here, but maintain that those portions of Spence's first, second, and third counterclaims based on the "cattle brand" should be dismissed for the same reasons as set forth in the section addressing trademark cancellation.

use Thunderhead Ranch cattle brand mark and his name, voice, or likeness to convey to the legal community that there exists an affiliation or association with Gerry Spence" and that they are "causing TLC to misrepresent itself and the nature, characteristics, and quality of their services as being approved by or affiliated with Gerry Spence, when it is not."[80]  Of course, this is untrue. TLC and the Board Members have gone to great lengths to emphasize to the public that Spence is no longer affiliated with TLC.[81]  But even accepting Spence's premise for the moment, he cannot claim Lanham Act protection over all images depicting him, all uses of his name, or over the term "Thunderhead Ranch."

First, Spence has presented no evidence that he has registered his name, image, or likeness, or the term "Thunderhead Ranch" as a trademark.  Accordingly, Section 43(a) of the Lanham Act—"which provides a federal cause of action for infringement of an unregistered trademark"— governs, and Spence must establish that his name, image, and likeness, and the term "Thunderhead Ranch," are entitled to such protection.[82]

To qualify for protection, "a mark must be capable of distinguishing the applicant's goods from those of others."[83]  "The essence of a trademark is a designation in the form of a distinguishing name, symbol or device which is used to identify a person's goods and distinguish them from the goods of another."[84]  "Not every word, name, symbol or device qualifies as a protectable mark; rather, it must be proven that it performs the job of identification, *i.e.*, to identify

---

[80] Rec. Doc. 108 ¶ 83, 94.

[81] *See* TLC Website, Board Update dated May 15, 2020, pp. 4-5 (emphasizing TLC's actions in response to Spence's request that it cease and desist from using Spence's name and image), attached hereto as Exhibit L.

[82] *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 921-22 (6th Cir. 2003) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 595 U.S. 763,768 (1992)).

[83] *Taco Cabana*, 505 U.S. at 768.

[84] *ETW Corp.*, 332 F.3d at 921-22 (citing *Taco Cabana*, 505 U.S. at 768).

one source and to distinguish it from other sources.  If it does not do this, then it is not protectable as a trademark."[85]  "A trademark, unlike a copyright or patent, is not a 'right in gross' that enables a holder to enjoin all reproductions."[86]  Where a litigant, such as Spence, "has never registered the [allegedly protected terms] with the United States Patent and Trademark Office, it is his burden to demonstrate that it is protectable under § 43(a)."[87]

In *ETW Corp. v. Jireh Pub., Inc.*, the U.S. Court of Appeals for the Sixth Circuit considered and rejected a claim similar to those Spence asserts here.  Specifically, in that case "ETW ha[d] registered [Tiger] Woods's name as a trademark, but it [had] not registered any image or likeness of Woods."[88]  Nonetheless, "ETW claim[ed] protection under the Lanham Act for any and all images of Tiger Woods."[89]  The Sixth Circuit determined such a claim to be "untenable."[90]  It went on to opine:

> ETW asks us, in effect, to constitute Woods himself as a walking, talking trademark.  Images and likenesses of Woods are not protectable as a trademark because they do not perform the trademark function of designation.  They do not distinguish and identify the source of goods.  They cannot function as a trademark because there are undoubtedly thousands of images and likenesses of Woods taken by countless photographers, and drawn, sketched, or painted by numerous artists, which have been published in many forms of media, and sold and distributed throughout the world.  No reasonable person could believe that merely because these photographs or paintings contain Woods's likeness or image, they all originated with Woods.[91]

In sum, the Sixth Circuit held that "as a general rule, a person's image or likeness cannot function

---

[85] *Id.* (citing J. Thomas McCarthy, Mccarthy On Trademarks and Unfair Competition, § 3:1 (2002)).

[86] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 35 (1st Cir. 1989) (citing *Univ. of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co.*, 703 F.2d 1372, 1374 (Fed. Cir. 1983)) (internal alterations omitted).

[87] *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216-17 (10th Cir. 2004) (internal citations omitted).

[88] *ETW Corp.*, 332 F.3d at 921.

[89] *Id.* at 922.

[90] *Id.*

[91] *Id.*

as a trademark."[92]

First, unlike Woods, Spence has not registered his name as a trademark. Moreover, Spence has provided no evidence that his name or likeness function independently as source identifiers— nor can he. Just as in *ETW*, there are presumably hundreds or thousands of images of Spence captured by TLC alumni, faculty members, clients, and even family members. Just as was the case with Tiger Woods, it is simply not reasonable to believe that all such images originated with Spence. Indeed, if Tiger Woods, one of the most famous individuals on the planet, cannot establish that his image or likeness functions as a source distinguisher, certainly Gerry Spence, who is not the only skilled and talented trial lawyer of his era, cannot. Like Woods, Spence cannot function as a "walking, talking trademark," and thus he does not possess a trademark in his image or likeness.[93] Accordingly, he cannot maintain a Lanham Act claim against TLC and the Board Members on that basis.

Spence's name fares no better under the Lanham Act. As a general matter, "personal names, which consist of a combination of a surname and a first name, 'are regarded as descriptive terms.'"[94] "Thus, to establish trademark rights to an unregistered, common law personal name mark, a plaintiff must show the personal name has acquired distinctiveness, *i.e.*, a secondary meaning."[95] "Secondary meaning exists only if most consumers have come to think of the word as not descriptive at all but as the name of the product or service."[96] "A plaintiff may establish secondary meaning through the use of direct evidence, such as consumer surveys or testimony

---

[92] *Id.*

[93] *See id.*

[94] *Shottland v. Harrison*, No. 11-cv-20140, 2012 WL 2814350, at *9 (S.D. Fla. July 10, 2012) (quoting *McCarthy on Trademarks* § 13.2) (citing *Tana v. Dantanna's*, 611 F.3d 767, 774 (11th Cir. 2010)).

[95] *Id.* (citations omitted).

[96] *Donchez*, 392 F.3d at 1218 (internal citations and alterations omitted).

19

from consumers."[97]   Secondary meaning for a name can also be established by presenting circumstantial evidence regarding:

> (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture.[98]

Spence has presented no evidence that his name has acquired secondary meaning on its own, nor has he even clarified what product or service his name is intended to identify.  Rather, the evidence adduced to date indicates that if Spence's name is at all recognizable to the general public—and there is no evidence that it is—it is through its historic affiliation with *TLC*.  Indeed, Defendant Low testified consistently throughout his deposition that he viewed the Trial Lawyers College and "Gerry Spence's Trial Lawyers College" to signify the same source.[99]  But of course, TLC, not Spence, owns the "Trial Lawyers College" trademark,[100] so any suggestion that his name functions as a source identifier for TLC does not meet Spence's burden to show that his name identifies some product or service that he owns or with which he is otherwise affiliated.  Spence has not come close to meeting his burden of establishing that his unregistered personal name carries a secondary meaning identifying a good or service specific to him, such that he can assert claims under the Lanham Act.

---

[97] *Id.*

[98] *Id.* (citations omitted).

[99] *See* Deposition Transcript of Joseph H. Low IV, Vol. I, 230:8-14, attached hereto as Exhibit M ("[Q]: So, were you creating board officer – board officer positions for the newly created entity, Gerry Spence's Trial Lawyers College at Thunderhead Ranch, or were you purporting to create new officers for Trial Lawyers College?  [Low]:  Yes, we're still on the board for Gerry Spence's Trial Lawyers College, the same one that's been in existence since its inception in '94.  So, it's my understanding what we were doing is were continuing on Gerry Spence's Trial Lawyers College and creating new officers, given the vacancies."); *see also, e.g., id.* 45:11-13; 48:14-16; 99:10-24; 200:5-13; 220:15-221:4; 221:10-12.

[100] *See* USPTO '908 Mark Registration, attached hereto as Exhibit N.

The same is true of the term "Thunderhead Ranch."  As Spence concedes, TLC operated at the Thunderhead Ranch for 25 years prior to its eviction by Spence in April 2020.[101]  After multiple decades of operation there, it is much more likely that the words "Thunderhead Ranch" identify *TLC*'s source of goods and services, not Spence as an individual.  But even so, under Tenth Circuit law, the geographic descriptor "Thunderhead Ranch" does not, alone, warrant protection under the Lanham Act.[102]  As the Tenth Circuit has opined:

> We decline to extend unwarranted service mark protection to VA [for the word "Vail"] on what the record tells us is first and foremost a geographical term describing a ski destination in the Colorado Rockies. Such extension would imperil the countless number of retailers, merchants, and innkeepers in and around Vail who use the town's name to promote their wares and services.[103]

In short, Spence does not maintain trademarks (unregistered or otherwise) in his name, image, or likeness, or in the term "Thunderhead Ranch," and cannot maintain claims for the same.

Finally, as set forth in TLC and the Board Members' pending Motion to Dismiss, Spence has failed to allege—let alone establish with facts and evidence—that he has suffered any damages as a result of TLC and the Board Members' purported actions.[104]  The U.S. Supreme Court has held that to allege a claim under Section 43(a) of the Lanham Act, as Spence attempts to do here, a plaintiff "must allege an injury to a commercial interest in reputation or sales."[105]  Indeed, based on Supreme Court precedent, Spence does not fall within the "zone-of-interests" protected by the Lanham Act, and therefore lacks the ability to assert such a claim.[106]  Here, there are no facts to suggest that Spence has suffered damage as a result of TLC and the Board Members' alleged use

---

[101] *See* Rec Doc. 108, Counterclaims ¶¶ 29, 34.

[102] *See Vail Assocs., Inc. v. Vend-Tel.Co.*, 516 F.3d 853, 873 (10th Cir. 2008).

[103] *Id.*

[104] *See* Rec. Doc. 121, p. 15.

[105] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014).

[106] *See id.*

of his name, image, likeness, cattle brand, or the term "Thunderhead Ranch."  In fact, Spence's own expert offered <u>no</u> opinions on <u>any</u> damages allegedly suffered by Spence or his co-defendants related to this matter.[107]  Spence's failure to present any evidence of damages is fatal to his Lanham Act claims.

For the foregoing reasons, TLC and the Board Members are entitled to summary judgment on Spence's first and second counterclaims, and they should be dismissed with prejudice. Moreover, as outlined above and in TLC and the Board Members' pending Motion to Dismiss, there is no authority to suggest that Wyoming recognizes a tort for misappropriation of name and likeness.[108]  Thus, TLC and the Board Members are likewise entitled to summary judgment as to Spence's third counterclaim, which this Court should dismiss with prejudice.

### E.  Spence and Parris's civil conspiracy claim (Count 7) likewise fails

Finally, TLC and the Board Members are entitled to summary judgment on Spence and Parris's seventh counterclaim for civil conspiracy.  Under Wyoming law, "a plaintiff cannot claim civil conspiracy or punitive damages without an underlying cause of action in tort."[109]  As set forth above, TLC and the Board Members are entitled to summary judgment as to <u>all</u> of Spence and Parris's counterclaims.  Accordingly, Spence and Parris assert no viable underlying torts, and their civil conspiracy claim fails as a matter of law.

---

[107] *See generally* Rec. Doc. 166 (under seal).

[108] *See* Rec. Doc. 121, pp. 16-17.

[109] *White v. Shane Edeburn Const., LLC*, 285 P.3d 949, 958 (Wyo. 2012) (citing *Cent. Wyo. Med. Lab., LLC v. Med. Testing Lab, Inc.*, 43 P.3d 121, 126 (Wyo. 2002)).

PD.33703711.2

## III.   CONCLUSION

Based on the undisputed material facts and the foregoing law, TLC and the Board Members respectfully requests that the Court grant this Motion for Summary Judgment and dismiss with prejudice the entirety of Spence and Parris's Counterclaims and Third Party Demands.

**[SIGNATURE PAGE FOLLOWS]**

Respectfully submitted,

**THE TRIAL LAWYERS COLLEGE**

*/s/ Christopher K. Ralston*

Christopher K. Ralston, (La. Bar #26706)
(Admitted *pro hac vice*)
Lindsay Calhoun, (La. Bar #35070)
(Admitted *pro hac vice*)
James Gilbert, (La. Bar # 36468)
(Admitted *pro hac vice*)
Matthew R. Slaughter, (La. Bar # 37308)
(Admitted *pro hac vice*)
Phelps Dunbar LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: ralstonc@phelps.com
        lindsay.calhoun@phelps.com
        james.gilbert@phelps.com
        matthew.slaughter@phelps.com

and

By: /s/ Patrick J. Murphy
Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE,
P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-mail:  pmurphy@wpdn.net
          zmason@wpdn.net

**ATTORNEYS FOR PLAINTIFF THE TRIAL LAWYERS COLLEGE AND THIRD PARTY DEFENDANTS JOHN SLOAN, MILTON GRIMES, MAREN CHALOUPKA, JAMES R. CLARY, JR., DANA COLE, AND ANNE VALENTINE**

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all counsel of record this 1st day of June 2021.

_/s/ Christopher K. Ralston_____
Christopher K. Ralston