

**FILED**

2:40 pm, 6/30/21
**U.S. Magistrate Judge**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

THE TRIAL LAWYERS COLLEGE, a
nonprofit corporation,

                Plaintiff,

vs.

GERRY SPENCE'S TRIAL LAWYERS
COLLEGE AT THUNDERHEAD RANCH, a
nonprofit corporation; GERALD L. SPENCE;
JOHN ZELBST; REX PARRIS; JOSEPH H.
LOW; and KENT SPENCE,

                Defendants.

Case No:  1:20-CV-00080-JMC-MLC

---

### ORDER ON DEFENDANTS' RULE 26(b)(5) BRIEFING

**THIS MATTER** comes before the Court upon Gerald L. Spence, Rex Parris, Joseph H. Low, John Zelbst and Kent Spence (collectively the "Spence Defendants") *Brief in Support of the Spence Defendants' Rule 26(b)(5) Notice* [ECF Doc. 190], which was filed on June 4th, 2021. The Trial Lawyer College ("Plaintiff") responded on June 9th, 2021. ECF Doc. 193. The briefing was expected by the Court. On May 28th, 2021, the Court held an informal discovery conference focused on this very issue. Following the informal discovery conference, the Court scheduled briefing deadlines on this issue. ECF Doc. 175. Having now reviewed all filings and being fully apprised of the facts and circumstances of this issue, the Court finds the following:

### Background

Before the Court is another discovery dispute arising between the parties. At issue here is a subpoena issued by Plaintiff to Mr. Lee Jody Amedee. Mr. Amedee is a non-party to this action. Plaintiff served Mr. Amedee with a subpoena *duces tecum* on March 30, 2021 and specified April

14, 2021 as the deadline for compliance. On April 13, 2021 Mr. Amedee served objections to the subpoena, but the Spence Defendants did not object to Mr. Amedee's subpoena at that time. Eventually, on May 27, 2021, Mr. Amedee produced some 9,000 documents through his independent counsel. Immediately after Mr. Amedee's production, Spence Defendants objected on the basis that some of the information was privileged.

Spence Defendants argue that during Mr. Amedee's positions as a board member of Plaintiff and a board member of the Gerry Spence Method, he was involved in privileged conversations and received legal advice, along with Spence Defendants, concerning this litigation. Because of his involvement in both entities, Spence Defendants believe the attorney-client privilege, Word Product Doctrine and mediation privilege applies to Mr. Amedee's production. To the extent Plaintiff argues such privileges have been waived, Spence Defendants claim the common interest and joint defense exceptions control.

Plaintiff first responds with a procedural argument, in that Spence Defendants waited nearly two months after service of the third-party subpoena to raise their objection. According to Plaintiff, that is a clear violation of Federal Rule of Civil Procedure 45(d)(2)(B) and counter to applicable case law. Next, Plaintiff contends that Mr. Amedee is not subject to any of the privileges Spence Defendants claim he is, and even if he is those privileges have been waived. Finally, Plaintiff finds little merit in Spence Defendants' argument that the common interest and joint defense exceptions circumvent the alleged waiver.

### Analysis

### 1.  Federal Rule of Civil Procedure 45(d)(2)(B)

Plaintiff first argues the Court should deny Spence Defendants' requests due to their procedural failure to timely object to the third-party subpoena. Federal Rule of Civil Procedure 45 governs

subpoenas *duces tecum* for the production of documents with or without the taking of a deposition. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). One of the purposes of Rule 45 is to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties. *Id.* Upon receiving a subpoena, the recipient must comply with the request, provide clear objections to the request, or seek to quash or modify the request.

Specifically, Federal Rule of Civil Procedure 45(d)(2)(B) states that, "[a] person commanded to produce documents… may serve on the party or attorney designated in the subpoena a written objection[.] The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). Further, "[o]n timely motion, the court… must quash or modify a subpoena that: i) fails to allow a reasonable time to comply, ii) requires a person to comply beyond the geographical limits specified in Rule 45(c), iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies, or iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Ample authority exists holding that timeliness means within the specified compliance period, so long as that period is of reasonable duration. *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953CIV, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008).[1]

Ordinarily, a party may not object to a subpoena *duces tecum* served on a non-party, but rather, must seek a protection order or file a motion to quash. *Moon*, 232 F.R.D. at 636. Even then, a party only has standing to attack the third-party subpoena if it has a personal right or privilege in the

---

[1] *See Dexter v. Cosan Chem. Corp.*, No. 91–5436, 2000 U.S. Dist. LEXIS 22134, at *7–8 (D.N.J. Oct. 24, 2000) (motion to quash filed on September 21, 2000, two days after September 19, 2000 return date, was untimely and therefore denied); *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y.2002) (motion to quash should be brought before date of deposition commanded by subpoena); *Allender v. Raytheon Aircraft Co.*, 220 F.R.D. 661, 665 (D.Kan.2004) (return date for production subpoena had already passed so motion to quash was untimely); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F.Supp.2d 270, 278 (D.D.C.2002) (motion made several months after compliance date untimely).

3

subject matter of the subpoena or a sufficient interest in it. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979). In order to protect said rights, privileges or interests, Rule 45 requires all parties to the lawsuit be given a copy of the subpoena before it is served in order to put the parties on notice. *See* Fed. R. Civ. P. 45(a)(4).

In this matter, the Court does not face objections from Spence Defendants or a motion to modify or quash. Rather, the Spence Defendants have effectively done nothing about the third-party subpoena and instead waited until the third-party produced documents almost two months after service. Mr. Amedee was served with the subpoena at issue on March 30, 2021 and given until April 14, 2021 to comply. Spence Defendants were notified pursuant to Rule 45(a)(4) and have known since March 30, 2021 what exactly Plaintiff was requesting from Mr. Amedee. It is abundantly clear Spence Defendants were worried about what Mr. Amedee might produce, so much so they reached out to his attorney and discussed concerns over privilege. The Court now, in late June, is addressing Spence Defendants' concerns after production has already been provided.

Plaintiff's argument has merit, and if not for Honorable Judge Carson's order postponing all existing deadlines [ECF Doc. 201], the Court would likely end its analysis here. Why Spence Defendants did not attempt to quash a subpoena aimed at an individual they consider to be a director of a named defendant in this case is beyond the understanding of this Court. However, it appears one of the reasons they failed to properly navigate Rule 45 is because Mr. Amedee, and all other non-parties served with similar subpoenas, had timely objected. Those timely objections, according to Spence Defendants, were coordinated and calculated responses from parties with similar interests. Such an argument leads directly into Spence Defendants' privilege claims. The Court finds it best to address the substantive issues.

## 2. Attorney Client Privilege/ Work Product Doctrine

Next, the Court must determine whether the attorney-client privilege applies. In federal court, federal common law "governs a claim of privilege" regarding a federal claim or defense. *See* Fed. R. Evid. 501. The burden of establishing the applicability of the attorney-client privilege rests on the party seeking to assert it. *In re Grand Jury Proc.*, 616 F.3d 1172, 1183 (10th Cir. 2010). The party must bear the burden as to specific questions or documents, not by making a blanket claim. *Id.* The privilege must be strictly constructed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth. *Id.* (citing *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)).

The attorney-client privilege is meant to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1243 (D. Wyo. 2016). To establish application of the attorney-client privilege, the party claiming the privilege must prove there was: (1) a communication, (2) between privileged persons, (3) made in confidence, and (4) for the purpose of seeking, obtaining, or providing legal assistance. *Id.* Privileged persons include attorneys, clients, and "any of their agents that help facilitate attorney-client communications or legal representation. *Id.*

Also, the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege. *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir.1995)). Rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client[.]" *Id.* (citing *United States v. Johnston*, 146 F.3d 785, 794 (10th

Cir.1998)).

The position held by Spence Defendants is simple enough; Mr. Amedee was, and is, at all times a director of either Plaintiff or the Spence Method. They argue that as a director of a corporation, pursuant to the seminal *Upjohn* case, the documents and conversations concerning Mr. Amedee and other directors squarely fit within attorney-client privilege. Plaintiff disagrees, it points out that that the Spence Method did not exist until April 2021 and still today does not have an elected board of directors.

First, the Court must point out the obvious fact that Mr. Amedee has never been a director of Plaintiff. Any argument that he has, or an argument that he was a director of some "faction" related to Plaintiff, has been foreclosed by the Honorable Judge Campbell. ECF Doc. 155-1. Next, and equally as obvious, it must be pointed out that the Spence Method did not exist until two months ago. ECF Doc. 193-2. At the informal discovery conference held on June 8, 2021, Spence Defendants told the Court the Spence Method was a "shell" and had not done much of anything in its short existence. Further, as far as the Court is aware, even today the newly formed Spence Method does not have a board of directors, although the Spence Defendants claim a group of people have been "acting as directors". ECF Doc. 190-3. It is clear, any argument of privilege based on Mr. Amedee's role as a director is legally baseless. An entity does not have directors if directors have not been elected. Likewise, an entity does not have directors if the entity doesn't exist. No privilege can attach to communications to phantom directors.

However, the Court understands that not just directors are protected by corporate attorney-client privilege, but some employees may also be subject to the privilege. Again, the Court runs into similar problems. First, although their burden, Spence Defendants do not argue Mr. Amedee was an employee or explain how he might have been an employee for an entity that did not exist

when the subpoena was issued. Second, even if they had argued he was an employee covered by the privilege, "… disclosure to a corporation's own employee may constitute waiver of privilege if the employee does not need to know the information." *Derma Pen, LLC v. 4EverYoung Ltd.*, No. 2:13-CV-729-DN-EJF, 2014 WL 2515765, at *1 (D. Utah June 4, 2014) (citing *Schwarz Pharma., Inc. v. Teva Pharm. USA, Inc.,* No. 01–4995(DRD), 2007 WL 2892744, at *4 (D.N.J. Sept. 27, 2007)). Spence Defendants certainly have not explained why Mr. Amedee needed to have the documents he has or why he needed to be a part of the allegedly privileged conversations. Lastly, if Mr. Amedee was a director or an employee, Spence Defendants have also failed to explain why he is represented by independent counsel and why Spence Defendants' counsel has apparently had no specific communications with Mr. Amedee.

Mr. Amedee is not a party to these proceedings, is independently represented by counsel not associated with this matter and he has stated to Plaintiff that he has no affiliation with Spence Defendants or the Spence Method. ECF Doc. 193-6. While it is unlikely he has *no* affiliation with Spence Defendants, considering he is listed as senior faculty on their website, it is fair to say the Spence Defendants have misinterpreted their relationship with Mr. Amedee. The Spence Defendants suggest, without explaining how Mr. Amedee actually has an attorney-client relationship with any of Spence Defendants' attorneys, that because he was privy to their conversations with their attorney and provided privileged documents that he is bound by attorney-client privilege. The Court disagrees.

Spence Defendants' have failed to carry their burden of establishing the applicability of the attorney-client privilege. If Spence Defendants had respected the formalities of a non-profit corporation, and actually created the entity and had correctly made Mr. Amedee a director, the Court would have had no question as to the applicability of privilege. Instead, the Court has

received argument from the Spence Defendants based entirely on how a corporation's directors are protected by corporate attorney-client privilege... despite the fact their corporation didn't exist and has appointed no directors. Further, the Court fails to see how Mr. Amedee has an attorney-client relationship with any of Spence Defendants' counsels. Instead, he is a third-party, who claims to have no affiliation with the Spence Defendants, that was included in conversations about this litigation and is in possession of documents and information that were at one time thought to be privileged.

Disclosure of otherwise privileged documents and information may sometimes operate as a waiver to protection. When a communication or document between a lawyer and client is disclosed to a third party the applicable privilege is waived and the communication or document is open to discovery. *Hedquist*, 215 F. Supp. at 1246 (D. Wyo. 2016). However, the common-interest doctrine, which "can only exist where there is an applicable underlying privilege," acts as an exception to waiver of the attorney-client privilege. *Id.* (citing *Metro Wastewater Reclamation Dist. v. Cont'l Cas. Co.*, 142 F.R.D. 471, 478 (D. Colo. 1992) and *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2191JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12, 2006)). Likewise, the joint defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege. *W. Fuels Ass'n, Inc. v. Burlington N. R. Co.*, 102 F.R.D. 201, 203 (D. Wyo. 1984). "An exception to the general rule that disclosure to a third party of privileged information thereby waives the privilege, a joint defense privilege cannot be waived without the consent of all parties who share the privilege." *In re Blinder, Robinson & Co., Inc.*, 140 B.R. 790, 795 (D. Colo. 1992) (citing *In re Grand Jury Subpoenas 89–3 & 89–4*, 902 F.2d 244, 248 (4th Cir.1990)).

Neither the common-interest doctrine or the joint defense privilege applies in this situation. The Court has found there is no applicable attorney-client privilege between Mr. Amedee and any of the Spence Defendants. Because there is no underlying privilege applicable, the exceptions cannot be extended to Mr. Amedee's production. Defendants argue the joint defense privilege should apply because Mr. Amedee may perhaps be a co-defendant someday, the Court disagrees. He was served with a Rule 45 subpoena and this late into the litigation the Court does not believe there are prospective defendants out there just waiting for Plaintiff to name them.

Finally, the Work Product Doctrine argument suffers a similar fate. Where attorney-client privilege protects communication and seeks to encourage candid conversation between attorney and client, the work-product doctrine is to protect against the disclosure of an attorney's mental impressions, strategies, and theories. *Sinclair Wyoming Ref. Co. v. A&B Builders, Ltd.*, No. 15-CV-91-ABJ, 2017 WL 10309305, at *4 (D. Wyo. Oct. 24, 2017). Generally, when a communication or document between a lawyer and client is disclosed to a third party, the applicable privilege—the attorney-client privilege or work -product doctrine—is waived and the communication or document is open to discovery. *Id.* at 5. As the Court has already made clear, Spence Defendants have failed to establish how Mr. Amedee has a client-attorney relationship with any of their counsels. Because Mr. Amedee is a third-party, the same disclosure that constitutes a waiver for purposes of the Court's attorney-client privilege analysis constitutes a waiver for work product purposes.

The disclosure of sensitive mediation related documents, communications and information is of great concern to the Court. In federal court, federal common law "governs a claim of privilege" regarding a federal claim or defense. *See* Fed. R. Evid. 501. Because this matter concerns a federal question, Wyoming's statute concerning mediation privilege is irrelevant. However, for purposes

of completing the ongoing mediation in this matter, it is imperative any communications or documents directly concerning the mediation is not disclosed to Plaintiff. The Court, and the parties themselves, have spent many hours in an effort to mediate this matter. Allowing discovery, in this circumstance, of mediation information would render both the time spent and costs associated with the mediation meaningless. The Court agrees with Plaintiff that any privilege connected to the documents or information has been waived. However, that does not remove the Court's discretionary right to control and shape discovery.

With that said, the Court will not grant Plaintiff access to any such information. This does not give Spence Defendants the right to unilaterally deem something mediation related. Spence Defendants must provide the Court any document or communication they believe should be withheld due to its connection to the ongoing mediation. The Court will conduct an *in-camera* review and will decide what shall be produced.

### Conclusion

The Spence Defendants have failed to meet their burden of establishing that Mr. Amedee was subject to any claim of attorney-client privilege. Mr. Amedee is a third party in control of privileged documents and was involved in privileged conversations. Such constitutes a waiver of any privilege that may have attached to those documents and communications. Also, because there is no attorney-client privilege between Mr. Amedee and the Spence Defendants' counsels, any exception to waiver is inapplicable.

Further, Spence Defendants must produce any documents or communications they believe to be related to the mediation in this matter to the Court **on or before July 9, 2021**, for an *in-camera* review. The Court will review the submission and determine which in fact relate to the ongoing mediation. Plaintiff shall not have access to those documents and communications.

**IT IS SO ORDERED.**

DATED this 30th day of June 2021

MARK L. CARMAN
UNITED STATES MAGISTRATE JUDGE