| | |
|---|---|
| Bradley T. Cave, P.C. (Wyo. State Bar # 5-2792) <br> Jeffrey S. Pope (Wyo. State Bar # 7-4859) <br> HOLLAND & HART LLP <br> 2515 Warren Avenue, Suite 450 <br> P.O. Box 1347 <br> Cheyenne, WY 82003-1347 <br> Telephone: 307.778.4200 <br> bcave@hollandhart.com <br> jspope@hollandhart.com | Beth J. Kushner (admitted *pro hac vice*) <br> von BRIESEN & ROPER, s.c. <br> 411 East Wisconsin Avenue, Suite 1000 <br> Milwaukee, WI 53202 <br> Telephone: 414-287-1373 <br> bkushner@vonbriesen.com <br><br> ATTORNEYS FOR DEFENDANTS GERRY SPENCE TRIAL INSTITUTE, GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW AND KENT SPENCE |
| Timothy Getzoff (admitted *pro hac vice*) <br> HOLLAND & HART LLP <br> 1800 Broadway, Suite 300 <br> Boulder, CO 80302 <br> Telephone: 303.473.2700 <br> tgetzoff@hollandhart.com <br><br> ATTORNEYS FOR DEFENDANTS GERRY SPENCE TRIAL INSTITUTE, GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW AND KENT SPENCE | NORMAN A. PATTIS (admitted *pro hac vice*) <br> Pattis & Smith, LLC <br> 383 Orange St. <br> New Haven, CT 06511 <br> 203.393.3017 (phone) <br> npattis@pattisandsmith.com <br><br> ATTORNEY FOR REX PARRIS |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, <br><br>     Plaintiff. <br><br> vs. <br><br> GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, <br><br>     Defendants, <br><br> GERALD L. SPENCE and REX PARRIS <br><br>     Counterclaim Plaintiffs <br><br> vs. <br><br> THE TRIAL LAWYERS COLLEGE, JOHN SLOAN, JAMES R. CLARY, Jr., MILTON GRIMES, DANA COLE, MAREN CHALOUPKA, ANNE VALENTINE, <br><br>     Counterclaim and Third-Party Claim Defendants. | Civil Action No. 1:20-CV-00080-JMC |

**MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANTS' RULE 26(B)(5) BRIEFING (ECF 204)**

**I.     INTRODUCTION**

Plaintiff should not get access to privileged information based on the false representations of its counsel. Before receiving any documents in response to a subpoena served on non-party Lee Jody Amedee, Plaintiff's counsel assured Mr. Amedee that they (1) were aware that Mr. Amedee possessed documents protected by the attorney-client and work product privilege, (2) recognized their ethical obligations and would make every effort not to review any such privileged documents, and (3) were receiving documents *only because Plaintiff's counsel had provided these assurances to Mr. Amedee.*

The very day Mr. Amedee produced his documents to Plaintiff's counsel, however, Plaintiff reversed course, claimed that *none* of Mr. Amedee's documents were protected by any privilege, and insisted on examining all of Mr. Amedee's documents without restriction. The Spence Defendants immediately submitted two Rule 26(b)(5) notices to claw back the privileged documents and the Magistrate Judge ordered briefing on the issue. He ultimately ordered that Mr. Amedee did not share a privilege with the Spence Defendants, and that the Spence Defendants' sharing of its privileged and work product information with Mr. Amedee constituted a waiver. See ECF 204.

This analysis was clearly erroneous and contrary to law. The Magistrate Judge incorrectly analyzed and misapplied the common interest doctrine. He wrongly assumed that Mr. Amedee and the Spence Defendants needed to share a collective privilege for the doctrine to apply. Likewise, he erred in retroactively stripping the Spence Defendants and Mr. Amedee of a shared privileged. For the reasons discussed below, this Court should reverse the Magistrate Judge's order (ECF No. 204) and give full force and effect to the Spence Defendants' Rule 26(b)(5) notices that identified and clawed back all privileged documents Mr. Amedee produced in response to the subpoena issued by Plaintiff.

1

A.     **BACKGROUND FACTS**

1.     **Plaintiff's Subpoena to Mr. Amedee**

In July 2020, the Spence Defendants convened a Special Meeting of the Board of Directors of the Trial Lawyers College, pursuant to their pending claim and legal position that they were still on the TLC Board ("the Spence TLC Board"). (Declaration of Rex Parris ¶6, attached as Exhibit A.)[1] At the time of that meeting, this Court already had entered its Preliminary Injunction against several of the Spence Defendants (ECF 46), ordering inter alia that the Spence Defendants could not "purport definitively to be Plaintiff's true Board unless and until such time as the state court makes a ruling to that effect" yet were permitted to "reference or describe their claimed, but not judicially recognized, status as set forth in the ongoing state court litigation to challenge control of the board." (ECF 46 at 19.)

At the July, 2020 meeting, Mr. Amedee was elected to the Spence TLC Board. (Parris Decl. ¶6). Shortly thereafter, Plaintiff filed contempt motions against three of the Spence Defendants for noticing and conducting elections for the Spence TLC Board in an alleged violation of a preliminary injunction. (ECF 51, 52, 53). The Spence TLC Board, which included the five Spence Defendants and Mr. Amedee, sought and received counsel from Spence Defendants' counsel on the questions of whether they could continue to be board members of TLC, what they could say about that, who they could say it to, what actions they could take in relation to TLC, and various other issues. (Parris Decl. ¶¶8,9). The advice given to the Spence Defendants on these issues necessarily needed to be shared with the newly-elected Spence TLC

---

[1] The Declarations of Rex Parris and Beth Kushner, cited herein, were previously filed with the Court in connection with the briefing underlying the Order ECF 204. They are submitted again with this Motion for ease of reference.

Board members, including Mr. Amedee, since they all were in the same boat as decision-makers of the Spence TLC Board who needed to know what they were legally entitled to do or not do as the Spence TLC Board and targets of this litigation. (*Id.*)

Later in 2020, this same group set aside any further actions regarding the Spence TLC Board and continued their efforts to develop trial training seminars under a new name, "The Gerry Spence Method." (Parris Decl ¶¶ 10,11). In January 2021 this same group began work on planning and developing a three-week trial training seminar to be held at the Thunderhead Ranch in August 2021, under the name The Gerry Spence Method.[2] (*Id.*) In April 2021, the group formally incorporated the Gerry Spence Method as a 501(c)(3). entity. (*Id.* ¶12). Each of the Spence Defendants and the members of the Spence TLC Board, including Mr. Amedee, have been jointly working to develop and promote the Gerry Spence Method since the name was first used in 2020, using the Gerry Spence Method as a d/b/a before it was incorporated. (*Id.* ¶10-13)

As soon as the Spence TLC Board members began work on the Gerry Spence Method, TLC began taking discovery through written interrogatories, document requests, and deposition questioning regarding the Spence Method—what it is, what it is doing, how it is doing it, who is involved, what trial training programs will it present, what trademarks will it use, and other particulars. (*Id.*¶14-15.) Plaintiff has also accused the Gerry Spence Method of making false and misleading statements on its website. (*Id.*). Based on TLC's prior litigation tactics against the Spence TLC board, its discovery, and implicit threats directed at the Spence Method, it is clear that all the directors of the Gerry Spence Method, including Mr. Amedee, are at risk of litigation from TLC, either in this current action or a new action that TLC may bring. (*Id.*)

---

[2] The timing of this competing trial training course was the impetus for the Spence Defendants' Motion to Postpone the trial date of this action (ECF 142), which the Court granted (ECF 201).

TLC began acting on these threats when in late March 2021, it issued substantially identical subpoenas to all the non-party Spence TLC Board members (including Mr. Amedee), seeking documents relating to their involvement with TLC and their involvement in the upcoming three-week program at the Thunderhead Ranch. (Declaration of Beth Kushner ¶¶ 3-4, attached as Exhibit B.) Because the Spence Method directors received substantially the same subpoena, and because the subpoenas requested documents that involved all the Spence Defendants as well as the Spence Method directors (including privileged communications), the Spence Defendants and Spence Method directors sought and received legal advice regarding the appropriate response to the subpoena. (*Id.* ¶3-6.)

On April 13, 2021, Mr. Amedee served objections to his subpoena pursuant to Rule 45(d)(2)(B), including objections to all document requests "that call for attorney/client communications, work product, or any other information or documents protected by any privilege or immunity." (*Id.* ¶9.) Mr. Amedee requested that counsel for the Spence Defendants first review the documents for privilege prior to production, which Plaintiff's counsel refused. (*Id.* ¶¶13-14.)  After further discussions, Plaintiff's counsel provided several representations and assurances to Mr. Amedee's counsel (Tim Heche) regarding the privilege issue, which Mr. Heche documented in an email sent to Plaintiff's counsel prior to producing documents. In his email, Mr. Heche explicitly reiterated the privilege issue:

> There are over 9,000 documents contained in the database. More than likely contained therein are documents that your firm is not entitled to receive and/or examine. Mr. Amedee has candidly informed you that he has communicated, he believes appropriately, by counsel for the defendants who were concerned that he may be turning over documents there are subject to various privileges, whether they be attorney-client, work product, trademark secrets, or any other privileges that should prevent your firm from receiving and/or examining these documents. Mr. Amedee initially proposed an idea that they'd be provided to opposing counsel first

4

> so they could determine which documents are subject to objection and eventually have the Court decide. However you strenuously objected to this proposal so Mr. Amedee is willing to provide them to you first but only because he's relying on the following assertions made to us by you in our telephone conversation of May 25,2021:
>
> a) you and your Firm are aware of the privilege issues and your ethical obligations and have no desire to examine documents that are subject to any privileges and will make every effort not to do so; …
>
> Only because you have provided these assurances we will send you these documents. If you and your firm has decided not to or no longer to provide these assurances please let us know before we send you these documents.

(Email from Tim Heche to Matthew Slaughter (May 27, 2021) (Ex. 2 to Kushner Decl)

After receiving no clarification or corrections from Plaintiff's counsel, Mr. Heche then produced over 9,000 files of documents on May 27, 2021, which were produced to Plaintiff's counsel and the Spence Defendants' counsel at the time same. Due to Plaintiff's counsel's insistence and assurances as reflected above, the production was made without any prior privilege review by the Spence Defendants. (Kushner Decl. ¶¶14-15.)

The documents produced by Mr. Amedee included privileged attorney/client communications, work product, and confidential mediation discussions and strategy from the Spence Defendants. (*Id*. ¶16) Even though Mr. Amedee made clear that privileged documents likely were in his production and could not be examined or used by Plaintiff, and contrary to Plaintiff's counsel's assurance they would not attempt to do so, Plaintiff's counsel immediately disavowed the representations made to Mr. Meche and took the position that nothing produced by Mr. Amedee was privileged.

### B. The Spence Defendants' Rule 26(b)(5) Notice and the Magistrate's Ruling.

Recognizing that Mr. Amedee's production earlier that day included hundreds of pages of privileged documents, the Spence Defendants immediately sent two Rule 26(b)(5) notices to Plaintiff's counsel. (*Id.* ¶16.) The Magistrate Judge then ordered the parties to brief the issues raised in those notices, further ordering Plaintiff's counsel not to review any of the Amedee documents until a privilege log was created. (ECF 175)

The Spence Defendants argued Mr. Amedee was an elected member of the Spence TLC Board and therefore had the privilege that extended to the board. (ECF No. 190 at 10-12.) The Spence Defendants also argued that Mr. Amedee shared a common interest with the Spence Defendants that prevented the waiver of the privilege. (*Id.* at 13-15.) Plaintiff took the opposite position, claiming Mr. Amedee was never a member of the Spence TLC board and lacked a common interest to support the exception. (ECF No. 193.)

Magistrate Judge Carman ruled that Mr. Amedee had no attorney-client privilege as a board member of TLC because, approximately nine months after Mr. Amedee's July 2020 election, the Wyoming state court issued an order that none of the Spence Defendants were TLC board members as of an earlier, May 6, 2020 election. (ECF No. 204 at 6.) Finding Mr. Amedee was never a board member of TLC, the Magistrate Judge concluded the common interest doctrine also did not apply in this case[3]. (*Id.* at 6-9.) The Spence Defendants requested a stay of

---

[3] The Magistrate Judge also questioned the Spence Defendants' decision not to move to quash the subpoena. However, Mr. Amedee had already issued timely objections to the subpoena pursuant to Rule 45(d)(2)(B), including objections based on privilege and work product, which automatically stayed any production by Mr. Amedee absent a court order. A further motion to quash by the Spence Defendants was unnecessary. Moreover, had Plaintiff's counsel abided by their express assurances to Mr. Amedee, the documents would have been clawed back pursuant to the 26(b)(5) notices, and none of this motions practice would have been necessary.

Judge Carman's order pending resolution of this Motion, which Judge Carman granted. (ECF Nos. 206 and 207.)

## II.  STANDARD OF REVIEW

A magistrate judge's nondispositive order can be set aside if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a); U.S.D.C.L.R. 74.1(a). Under the clearly erroneous standard, the district court can overturn the magistrate's order if it has a definite and firm conviction that an error has occurred. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). Under the contrary to law standard, the district court conducts a plenary review of the magistrate judge's purely legal determinations, setting aside the magistrate judge's order if it applied an incorrect legal standard. *Wyoming v. United States Department of Agriculture*, 239 F.Supp.2d 1219, 1236 (D. Wyo. 2002) (citations omitted).

## III.  ARGUMENT

**A.  The Magistrate Judge's conclusion that the common interest doctrine did not apply is clearly erroneous because it overlooked the attorney-client privilege among the Spence Defendants.**

The Magistrate Judge correctly pointed out that the common interest doctrine requires an underlying privilege. *See Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1245-46 (D. Wyo. 2016). But the judge appears to have taken this to mean that the Spence Defendants and Mr. Amedee must all share an attorney-client privilege for the common interest doctrine to apply. In particular, the magistrate limited his analysis to the question of whether the Spence Defendants and Mr. Amedee shared a privilege as board members of TLC, board members of the Spence Method, or as employer-employee. (ECF No. 204 at 6-8.) Once the Magistrate concluded no shared privileged existed, he did not further consider the common interest doctrine. (*Id.* at 8.)

But the common interest doctrine does not require a shared privilege among all parties. On the contrary, it presumes that one party to the privileged communication is a third party who

7

is outside the scope of the underlying privilege, which would normally constitute a waiver by sharing privileged information with the third party. *Id.* The common interest doctrine looks to whether the privilege-holder and the third party share a common interest—not a shared privilege. If the privilege holder and the third party share a common interest, the disclosure to the third party does not constitute a waiver. *Id.* (citations omitted). For the common-interest doctrine to apply, "'most courts . . . insist that the two [or more] parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter.'" *Id.* The interest in securing legal advice must be more than merely similar, it must be identical. *Id.*

The Magistrate Judge essentially ended his analysis where it should have begun—concluding that Mr. Amedee was a third party who did not share a privilege with the Spence Defendants and then ruling against defendants as a result. Had the Magistrate Judge then applied the test for a common interest doctrine between the Spence Defendants and Mr. Amedee, he should have found the doctrine applicable to these facts.

No one questions the five individual Spence Defendants enjoy an attorney-client privilege among themselves and their counsel *regardless* of their status as board members. Each of them has retained the various undersigned counsel in a joint defense endeavor. This extends the privilege to all of them. *See W. Fuels Ass'n v. Burlington N.R.R. Co.*, 102 F.R.D. 201, 203 (D. Wyo. 1984) (explaining "[t]he joint[-]defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege"). Therefore, an underlying attorney-client privilege exists as a basis to determining whether the common interest

doctrine applies to non-party Mr. Amedee, making the magistrate's contrary finding wrong as a matter of law and clearly erroneous.

Had the Magistrate properly analyzed whether Spence Defendants and Mr. Amedee shared a common interest, he should have considered they: 1) acted jointly as purported board members of Spence TLC in view of the risks and obligations created by this litigation, including the preliminary injunction order and Plaintiff's multiple contempt claims; and 2) acted jointly in furtherance of the Gerry Spence Method, which continued their joint endeavor of developing a trial training program and responding to Plaintiff's threats toward, discovery to, and potential claims against the individuals who were operating as the Gerry Spence Method. These interests between the Spence Defendants and Mr. Amedee are identical, the legal advice related to these shared interests, and the sharing of this legal advice was done to advance their shared interest in these matters. *See Hedquist,* 215 F. Supp. 3d at 1245-46.

Although Mr. Amedee is not a named party, he purportedly was elected to the Spence TLC Board in July 2020, early in this litigation. *See In re Santa Fe Int'l Corp.,* 272 F.3d 705, 712 (5th Cir. 2001) (common interest privilege applies to co-defendants in actual litigation and to *potential* co-defendants in anticipated litigation).[4] Because of this litigation (including the Court's preliminary injunction order and Plaintiff's multiple contempt claims), the Spence TLC Board, which included the five Spence Defendants as well as Mr. Amedee, sought and received advice from their lawyers on the questions of whether they could continue to be board members

---

[4] *See also United States v. AT&T,* 642 F.2d 1285, 299 (D.C. Cir. 1980) ("[C]ommon interests' should not be construed as narrowly limited to co-parties. So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of trial preparation efforts."); *Cooey v. Strickland,* 269 F.R.D. 643 (S.D. Ohio 2010) (it is not necessary that a common legal interest be derived from legal action in order for the common-interest doctrine to apply).

of TLC, what they could say about that, who they could say it to, what actions they could take in relation to TLC, and various other issues. The Spence TLC Board (including Mr. Amedee) all needed to receive this legal advice because, as purported members of the Spence TLC Board, they each needed to know what they were legally entitled to do or not do as the Spence TLC Board and targets of this litigation. Similarly, in view of the Court's Preliminary Injunction order and Plaintiff's multiple claims of contempt of the same, they all needed legal advice regarding the risks and duties as members of the Spence TLC Board, which were the same for all of them.

In addition to Mr. Amedee's shared duties and potential legal exposure as a member of the Spence TLC Board, the Spence Defendants and Mr. Amedee share a common interest in their promotion and development of the Spence Method, which became a target for Plaintiff as soon as those efforts became public. TLC has taken extensive discovery through written interrogatories, document requests, and deposition questioning regarding the Spence Method—what it is, what it is doing, how it is doing it, who is involved, what trial training programs will it present, what trademarks will it use, and other particulars. Based on TLC's prior litigation tactics against the Spence TLC board and its discovery and implicit threats directed at the Spence Method, all of those involved with the Spence Method are at risk of litigation by TLC. *See Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84 (E.D.N.Y. 1981) (finding the parties' common interest in using the work product in litigation is one of the clearest indications against waiver.)

The subpoena to Mr. Amedee and Plaintiff counsel's bait and switch to encourage Mr. Amedee to produce documents confirms the risks to which Mr. Amedee was exposed. Because all non-parties involved with the Spence Method received substantially the same subpoena, and because the subpoenas requested documents that involved the Spence Defendants and all

10

activities concerning the Spence Method, the Spence Defendants and the non-parties including Mr. Amedee shared the identical interest in obtaining legal advice regarding the appropriate response to the subpoena. *See Stix Prods., Inc. v. United Merchants & Mfrs. Inc.*, 47 F.R.D. 334, 338 (S.D.N.Y. 1969) (finding no waiver occurred when a customer shared his attorney's legal opinion regarding patent validity with the plaintiff's attorney because the customer had an economic stake in the litigation since he, too, was potentially liable to the defendant for patent infringement.)

Importantly, the common interest doctrine applies regardless of Mr. Amedee or the Spence Defendants status as board members. The doctrine does not require a formal association between the party or parties with the privilege and a third-party. *See Kneeland v. Nat'l Collegiate Athletic Ass'n*, 650 F. Supp. 1076, 1087 (W.D. Tex. 1986), *rev'd on other grounds*, 850 F.2d 224 (5th Cir. 1988) (privilege assumed to apply to unincorporated associations). Instead, it simply requires the commonality of purpose. *See Hedquist,* 215 F. Supp. 3d at 1245-46.

The identical interests of the Spence Defendants and Mr. Amedee, regarding first the Spence TLC Board and later the Spence Method, created a legal common interest between them. As a result, the sharing of privileged and work product information pertaining to these common interests with Mr. Amedee did not waive the Spence Defendants' privileges over those communications and information. By extension, the claw-back request by the Spence Defendants made pursuant Rule 26(b)(5) should have been upheld.

> **B.   The Magistrate Judge's conclusion that the Spence Defendants and Mr. Amedee lacked a shared attorney-client privilege is clearly erroneous.**

While a correct analysis of the common interest doctrine should result in a reversal of the magistrate's order, this Court also should reverse the Magistrate Judge's conclusion that Mr. Amedee lacked a shared privilege with the Spence Defendants. The Spence Defendants and Mr.

11

Amedee shared a privilege as members of the Spence TLC Board, which allows claw back of the produced documents. The Magistrate found "[i]t is clear that any argument of privilege based on Mr. Amedee's role as a director is legally baseless." (ECF No. 204 at 6.) The Magistrate based this decision on the Wyoming state district court's order of April 13, 2021, holding that the Spence Defendants were not board members after May 6, 2020.[5] (*Id.* at 6.)

The Magistrate Judge's conclusion is based on clearly erroneous analysis. When evaluating a claim of privilege, courts should analyze the claim of privilege at the time the communication was made. *In re McKesson HBOC, Inc. Sec. Litig.*, Nos. C-99-20743 RMW, 1123, 1125, 1127, 1136, C-00-20030 RMW, 233, 234, 2005 U.S. Dist. LEXIS 7098, at *26-27 (N.D. Cal. Mar. 31, 2005). At the time the Spence TLC Board received legal advice, the Spence Defendants and Mr. Amedee were acting under their belief that they were duly-elected members of the Spence TLC board because the Wyoming state district court had not ruled.[6] At the time, the Spence Defendants and Mr. Amedee's legal position was that they were the true lawful board for TLC. The Magistrate Judge decided that when the Wyoming state court judge ruled on this issue on April 13, 2021, this *retroactively* stripped the Spence TLC Board members of sharing a privilege or a common interest. The Magistrate Judge's ruling on this point is contrary to law.

---

[5]The Magistrate Judge also claimed the Spence Method was "a shell" that had not come into existence until a few months before the discovery dispute began. This assertion is clearly erroneous, as the statement referenced by the Magistrate Judge pertained to the entity Gerry Spence Trial Lawyers College at Thunderhead Ranch ("GSTLC"), one of the named defendants in this action.  This is confirmed in the motion to compel briefing that arose from the informal discovery referenced by the Magistrate Judge. *See* ECF 205 at 2. The Gerry Spence Method, on the other hand, has never been a "shell" and instead is actively engaged in promoting and hosting its upcoming three-week college, as reflected on its website www.gerryspencemethod.com.

[6] The state court ruling was interlocutory and not a final judgment. The state case remains on-going, and the time to appeal this order from the state court action has not yet begun to run.

*See In re Auclair*, 961 F.2d 65, 71 (5th Cir. 1992) (rejecting a retroactive recharacterization of the attorney-client relationship and privilege).

What matters is that at the time the privileged discussions occurred, the Spence Defendants and Mr. Amedee believed themselves the true board and were litigating that question in state court. This Court's preliminary injunction restricting what could be said publicly about the pending state court issues confirms the fact that the Spence Defendants held this belief. Therefore, Mr. Amedee should have enjoyed the privilege that extends to board members and their counsel. *See Upjohn Company v. United States*, 449 U.S. 383, 389 (1981); *Gottlieb v. Wiles*, 143 F.R.D. 241, 246 (1992). Likewise, a privilege would exist that would support the application of the common interest doctrine.

On the other hand, affirming the order below represents a real threat to the purposes of the attorney-client privilege—encouraging frank discussions between client and counsel. *Upjohn*, 449 U.S. at 390. If in these types of cases, where boards members are split, the winner can maintain its attorney-client privilege and the loser cannot, both sides would be restricted if not precluded from frank discussions with counsel. The magistrate's outcome-based analysis also makes it impossible for anyone to know if communications would be privileged before a court rules, likely wreaking havoc on discovery. Put another way, had the Wyoming state district court ruled in favor of the Spence Defendants, finding that they were the true board and the current TLC members were not, then the Plaintiff TLC's board members would have been stripped of any privilege over their discussions with counsel—an outcome with which Plaintiff would surely disagree.

### C.  Plaintiff should be estopped from denying the privileged nature of these documents.

The Magistrate Judge further erred by not considering Plaintiff counsel's multiple assurances to Mr. Amedee as documented in the email provided by his attorney Tim Meche that induced them to produce privileged documents. This is a clear error of law because Plaintiff should not obtain the benefit of their false assurances by obtaining access to privileged documents that they never otherwise would have received. Plaintiff and its counsel should be estopped from taking a contrary position before this Court, under the well-known elements of estoppel: "(1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement." *Eureka Water Co. v. Nestle Waters N. Am., Inc.*, 690 F.3d 1139, 1156 (10th Cir. 2012).

All four elements are met here.  Plaintiff's counsel represented that they were "aware of the privilege issues and your ethical obligations and have no desire to examine documents that are subject to any privileges and will make every effort not to do so." (Ex. 3 at 2.) There can be no question Plaintiff's counsel knew that Mr. Amedee and his counsel would reply upon that statement—that is why he made it. It was reasonable for Mr. Amedee and his counsel to rely upon the promise for the same reason and it certainly worked to his detriment because Plaintiff's counsel seized it as a chance to induce waiver of the attorney-client privilege. (*See id.* at 2-3.) The only way to stop the injustice and hardship that followed—potential waiver of the privilege—is to enforce the original assurances and allow claw back of the privileged documents.

### IV.  CONCLUSION

The Magistrate Judge's incorrect analysis would allow Plaintiff access to litigation strategy, litigation advice, and other clearly privileged communications of the Spence

14

Defendants. Such an outcome not only is legally incorrect and factually unsupported, it would severely and unjustly prejudice the Spence Defendants. Therefore, the Spence Defendants request the Court reconsider and reverse the magistrate's ruling in ECF No. 204.

DATED:  July 14, 2021

*/s/ Timothy P. Getzoff*
Bradley T. Cave, P.C. (Wyo. State Bar # 5-2792)
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
bcave@hollandhart.com
jspope@hollandhart.com

Timothy Getzoff (admitted *pro hac vice*)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, COP 80302
Telephone: 303.473.2700
tgetzoff@hollandhart.com

Beth J. Kushner (admitted *pro hac vice*)
von Briesen & Roper, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414.287.1373
bkushner@vonbriesen.com

ATTORNEYS FOR DEFENDANTS GERRY SPENCE'S TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW AND KENT SPENCE

Norman A. Pattis (admitted *pro hac vice*)
Pattis & Smith, LLC
383 Orange St.
New Haven, CT 06511
203.393.3017 (phone)
npattis@pattisandsmith.com

ATTORNEY FOR R. REX PARRIS