Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-Mail:  pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
James Gilbert (Admitted *Pro Hac Vice*)
Matthew Slaughter (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email: chris.ralston@phelps.com
          lindsay.calhoun@phelps.com
          james.gilbert@phelps.com

Attorneys for The Trial Lawyers College

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
CASPER DIVISION

| | | |
|---|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation | ) ) ) | CIVIL ACTION NO. 1:20-cv-0080 |
| Plaintiff, | ) ) | |
| v. | ) ) | _____ |
| GERRY SPENCES TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, a nonprofit corporation, and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals. | ) ) ) ) ) ) ) ) ) ) | **JUDGE CARSON**  **MAGISTRATE JUDGE CARMAN** |
| Defendants. | | |

**TLC'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANTS' RULE 26(B)(5) BRIEFING**

Plaintiff, The Trial Lawyers College ("TLC" or "Plaintiff"), through undersigned counsel, respectfully submits this Opposition to the Motion for Reconsideration of Order on Defendants' Rule 26(B)(5) Briefing (Rec. Doc 211) submitted by Defendants Gerald L. Spence, Rex Parris, Joseph H. Low, John Zelbst, and Kent Spence ("Defendants") regarding the allegedly privileged status of documents produced by third party Lee "Jody" Amedee in response to a subpoena *duces tecum* issued by TLC. Defendants' Motion should be denied because they can point to no error in Magistrate Judge Carman's ruling, much less an error that is "clearly erroneous or contrary to law" so as to warrant reconsideration of this interlocutory discovery order.

In short, Defendants' Motion is premised on their revisionist history with regard to both (1) conversations between Mr. Amedee, his counsel, and counsel for TLC (to which Defendants were not parties) and (2) demonstrably false contentions regarding Mr. Amedee's putative membership on the board of TLC and the formation and operation of the "Spence Method" entity. In the meantime, despite the Magistrate Judge's orders, Defendants have to date failed to produce useable versions of the documents contained in the Amedee production over which they do not claim a privilege, and have failed to produce a sufficiently detailed privilege log that would permit Plaintiff to cull out the claimed privileged documents from the version of the Amedee production in its possession. In sum, Defendants' machinations have entirely forestalled Plaintiff's review of the Amedee production. The Court should put a stop to this discovery gamesmanship and affirm the Magistrate's ruling.

**BACKGROUND**

**A. Service of the subpoena *duces tecum* on Mr. Amedee**

The present dispute arises out of a subpoena *duces tecum* issued by TLC to non-party Jody

1

Amedee and Mr. Amedee's May 27, 2021 production of some 9,000 documents in compliance with TLC's subpoena.  The subpoena TLC issued to Mr. Amedee was served on Defendants on March 30, 2021 and specified April 14, 2021 as the deadline for compliance.[1]  Mr. Amedee also was served with the subpoena on March 30, 2021.[2]  On April 13, 2021, Mr. Amedee served boilerplate objections to the subpoena.[3]  Importantly, Defendants raised *no objection* to this third party subpoena during the 14 day objection period set forth in Rule 45.  On May 20, 2021, after rescheduling the conference several times to accommodate Mr. Amedee, counsel for TLC held discovery conferences with Mr. Amedee's counsel pursuant to Rule 37.

At the May 20, 2021 conference, Mr. Amedee's counsel agreed to produce documents responsive to the request.[4]  However, on May 25, 2021, Mr. Amedee and his counsel called TLC's counsel to inform them that Defendants' counsel Ms. Kushner contacted Mr. Amedee threatening legal action if Mr. Amedee produced documents pursuant to the subpoena "to which [TLC] was not entitled."[5]  Despite Defendants' representations to this Court, at that time, Mr. Amedee clearly stated that he has **"no affiliation with Defendants or their competing entity."**[6]  Mr. Amedee

---

[1] *See* Rec. Doc. 193-7 (Subpoena *Duces Tecum* issued to Lee "Jody" Amedee, attached as Exhibit G to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice); Rec. Doc. 193-8 (Email to Defendants' counsel Tim Getzoff and Beth Kushner dated March 30, 2021 attaching service copy of subpoena to Mr. Amedee, attached as Exhibit H to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[2] Rec. Doc. 193-9 (Proof of Service on Lee "Jody" Amedee, attached as Exhibit I to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[3] *See* Rec. Doc. 193-10 (Mr. Amedee's Objections, attached as Exhibit J to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[4] *See* Rec. Doc. 193-6 (Exhibit 1 to Slaughter Declaration, May 20, 2021 email exchange between counsel for TLC and counsel for Mr. Meche, attached as Exhibit F to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[5] *See* Rec. Doc. 193-6 (Exhibit 2 to Slaughter Declaration, May 25, 2021 email exchange between counsel for TLC and counsel for Mr. Meche, attached as Exhibit F to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[6] Rec. Doc. 193-6 (Slaughter Declaration ¶ 10, attached as Exhibit F to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

PD.34657608.2

expressed his desire not to be involved in this matter and to produce documents to be done with his obligations under Rule 45 and Ms. Kushner's threats.[7]

TLC's counsel represented to Mr. Amedee and his counsel that, in the abstract, TLC was of course not seeking documents subject to privilege.[8] After Mr. Amedee relayed to TLC's counsel that Ms. Kushner had advised him of an existing privilege, TLC's counsel inquired as to what privilege he was referring.[9] Mr. Amedee was unable to articulate a specific privilege.[10] Moreover, when specifically asked how he, as a third party, held a privilege in common with Defendants, Mr. Amedee again could offer no answer.[11]

Based on the foregoing, and due to Mr. Amedee's representations that he was not affiliated with Defendants or their competing entity (and the objective fact that there is no applicable board with which he could be affiliated during the relevant time frame), TLC's counsel indicated that there was *no basis* to apply a blanket privilege to documents in Mr. Amedee's possession.[12] Defendants' repeated contention (concerning a conversation in which they did not participate) that counsel for TLC agreed to screen the documents produced by Mr. Amedee for an unspecified privilege possessed by Defendants is not only false, it belies common sense, as any such privilege would be waived by intentionally and voluntarily producing such documents to TLC.[13] To the extent Mr. Amedee possessed any privilege himself, he waived it by voluntarily producing documents to TLC without reviewing them for privilege in the nearly two months the subpoena

---

[7] *Id.* at ¶ 11.

[8] *Id.* at ¶ 12.

[9] *Id.* at ¶ 13.

[10] *Id.*

[11] *Id.* at ¶ 14.

[12] *Id.* at ¶ 15.

[13] *Id.* at ¶ 18.

PD.34657608.2

was in his possession.  Certainly Mr. Amedee—an attorney himself who also *hired* an attorney to represent him as specifically related to this subpoena—is aware of the bounds of the attorney-client privilege and the potential for waiver of that privilege.

Further, to the extent Defendants possessed any privilege with regard to the documents in question, they waived such an assertion by failing to timely lodge appropriate objections.  In any event, Mr. Amedee and his counsel were ultimately unable to sufficiently explain how documents in his possession were privileged.[14]  Instead, Mr. Amedee and his counsel stated that he was caught in the middle of an unwanted fight and contemplated producing the documents to both parties.[15]  TLC's counsel explained to Mr. Amedee and his counsel that it was improper for Defendants' counsel to interfere with a third-party subpoena by first screening the documents to determine what documents Defendants believed the opposing party was entitled to under the subpoena.[16]  Accordingly, on May 27, 2021, Mr. Amedee through his counsel produced responsive documents as agreed upon at the Rule 37 conference.

Almost immediately, Defendants, through their counsel Ms. Kushner, objected to Mr. Amedee's production on the basis of privilege.  The very next day, Ms. Kushner sent an e-mail to TLC's counsel informing them for the first time—approximately two months after the subpoenas were issued and after extensive discovery conferences between TLC's counsel and the subpoena recipients—that she now represents the other third party subpoena recipients in this case, that is, Adrian Baca, Haytham Faraj, Hunter Hillin, and Sylvia Torres-Guillen.[17]  Notably, she did not

---

[14] *Id.* at ¶ 16.

[15] *Id.* at ¶ 17.

[16] *Id.* at ¶ 19.

[17] Rec. Doc. 193-11 (E-mail to Beth Kushner to TLC's counsel dated May 28, 2021, attached as Exhibit K to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

state that she represents Mr. Amedee.[18]  The parties briefed the issue to the Magistrate Judge, who

ruled in TLC's favor, finding in a detailed and well-reasoned order that there was no privilege

applicable to documents in Mr. Amedee's possession.[19]  Defendants now appeal that ruling to the

District Court.

### B. Defendants' contradictory representations regarding their purported Board memberships undercuts their assertion of privilege

To support their dubious claims of privilege, Defendants claim simultaneously that they

and Mr. Amedee were all members of the TLC board and that they were all board members of

their most recently-concocted entity, the "Spence Method."  This represents the latest installment

in Defendants' efforts throughout this litigation to play fast and loose with both corporate

formalities and attorney-client representations to suit their immediate interests, all while ignoring

that the Wyoming State Court has now held that Defendants were not legitimate members of the

TLC board after May 6, 2020[20] and that the Spence Method was not created until April of 2021.[21]

Indeed, Defendant Zelbst testified the day before Mr. Amedee made his document production that

*no one* had yet been elected to the board of that recently-incorporated organization.[22]  Given Mr.

Zelbst's testimony, Defendants' argument that Mr. Amedee is a Spence Method board member is

---

[18] *Id.*

[19] Rec. Doc. 204.

[20] *See* Rec. Doc. 193-1 ("Order Consolidating Cases, Granting in Part and Denying in Part Motions to Dismiss and for Summary Judgment and Granting Declaratory Relief," *Spence v. Trial Lawyers College*, Civil Action No. 193-124 in the 1st Judicial District Court for the County of Laramie, State of Wyoming, April 13, 2021, attached as Exhibit "A" to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[21] *See* Rec. Doc. 193-2 (Spence Method Registration, filed with the Wyoming Secretary of State on April 22, 2021, attached as Exhibit "B" to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[22] *See* Rec. Doc. 193-3 (Transcript Excerpts from Deposition of John Zelbst, May 26, 2021, attached as Exhibit C to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice, at 202:17-18 ("I don't know that we ever elected them to Gerry Spence Method"); 233:7-8 ("I don't think [the Gerry Spence Method has] elected all the board members at this point"); and 255 ("Well, as I have told you, we have not elected anybody")).

unsupported and bewildering.

In the course of discovery, TLC conducted several depositions of Defendants, many of which are relevant to the facts brought into issue by Defendants' objections here. Defendants' statements in several of these depositions revealed that each of the Defendants deposed to date continued to hold themselves out as TLC board members long after the May 6, 2020 TLC board meeting and that the GSTLC/GSTI entity purportedly formed by Defendants *prior to* their departure from TLC never took any actions or had any interest to be furthered.[23] Most recently, on May 26, 2021—long after the instant subpoena was propounded—TLC took the deposition of John Zelbst, who made it clear that neither Defendants nor Mr. Amedee are board members for the "Spence Method" entity, which had not yet elected any board members at all. Zelbst identified a list of individuals, stating that "Ultimately they will be all board members. They all—I don't know that we ever elected them to Gerry Spence Method, but they are going to be board members."[24] He was unable to confirm whether the "Spence Method" entity had even been formed at that point, answering only "I feel like it has."[25] When asked whether certain individuals were on the board of the "Spence Method" entity, Zelbst reiterated "Well, as I have told you, we have not elected anybody."[26] His responses made it clear that even if the newly-formed "Spence Method" entity existed during the time period covered by Mr. Amedee's document production, it had *no* board members whatsoever.

---

[23] Rec. Doc. 193-4 (K. Spence Transcript at 326:14-22, attached as Exhibit D to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[24] Rec. Doc. 139-3 (Zelbst Deposition at 202:16-19, attached as Exhibit C to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[25] *Id*. at 233:9-11.

[26] *Id*. at 255:22-25.

## LAW AND ANALYSIS

Defendants cannot meet their heavy burden of demonstrating that the Magistrate Judge's order should be reconsidered by the District Court.  In reviewing a pretrial nondispositive order by a magistrate judge, such a ruling can only be set aside if it is "clearly erroneous or contrary to law."[27]  Under the clearly erroneous standard, the district court must affirm the magistrate judge's ruling unless it "on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[28]  Indeed, "because a magistrate judge is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will overrule the magistrate judge's determination only if this discretion is clearly abused."[29] Under the "contrary to law" standard, the district court conducts a plenary review of the magistrate judge's purely legal determinations, setting aside the magistrate judge's order only if it applied an incorrect legal standard.[30] In short, "it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge."[31]  Defendants cannot meet that burden here.

### A. Defendants' Motion for Reconsideration fails to address the Magistrate Judge's finding that their objections were waived because they "failed to properly navigate Rule 45" and promptly object to the subpoena

Defendants' Motion entirely fails to address the fact that the Magistrate Judge found, as a preliminary matter, that Defendants had waived any objection they might have to the Amedee subpoena due to their failure to timely move to modify or quash the subpoena.[32]  As the Magistrate

---

[27] Fed. R. Civ. P. 72(a).

[28] *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).

[29] *Hinsdale v. City of Liberal*, 981 F.Supp. 1378, 1379 (D. Kan. 1997).

[30] *Wyoming v. U.S. Dep't of Agriculture*, 239 F.Supp.2d 1219, 1236 (D. Wyo. 2002) (citing Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE § 3069, at 350 (1997 & Supp. 2002)).

[31] *Id*. at § 3069, at 350-51; *see also Hayes v. Wooodford*, 301 F.3d 1054, 1067 n. 8 (9th Cir. 2002).

[32] Rec. Doc. 204 at 4.

Judge correctly noted, Defendants were properly given notice of the subpoena to Mr. Amedee on March 30, 2021, as required by Rule 45, and thereafter waited until the third party produced documents almost two months after service to raise the issue with the Court.[33]  The Magistrate Judge specifically noted that Plaintiff's argument with regard to the untimeliness of Defendants' objection "has merit," and that it was "beyond the understanding of this Court" as to why Defendants made no effort to quash the subpoena.[34]  Defendants' failure in this regard is particularly egregious given that all Defendants are licensed attorneys who are, in turn, represented by counsel from three separate law firms.  Moreover, they cite to no authority indicating that Mr. Amedee's objections to the subpoena are somehow sufficient to preserve Defendants own, independent objections.  Simply put, there is no basis for this Court to excuse Defendants' noncompliance with the most basic strictures of Rule 45.  Defendants' complete failure to address this procedural basis upon which the Magistrate Judge denied their motion is cause alone to deny their request for reconsideration.[35]

## B.  The Magistrate Judge correctly applied the analysis of the common interest doctrine

Defendants' contention that the Magistrate Judge somehow overlooked the shared privilege between the Spence Defendants is flatly contradicted by the plain language of the order.  Indeed, the Court *specifically rejected* Defendants' contention that the joint defense privilege should apply because "Mr. Amedee may perhaps be a co-defendant someday."[36]  The conclusion necessarily follows from the Tenth Circuit's requirement that, for the privilege to apply, there must be an *identical* legal interest between the parties seeking to invoke it.   Simply put, Defendants'

---

[33] Rec. Doc. 204, p. 4.

[34] *Id.*

[35] *See* Fed. R. Civ. Proc. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").

[36] Rec. Doc. 204, p. 9

reliance on common interest privilege is misguided—although Defendants note that "all circuits" applying the common interest doctrine require the parties to have a "sufficiently close, legal interest in common in exchanging privileged communications," they neglect to specify that in the Tenth Circuit, the parties must have an ***identical*** legal interest.[37]  Even a "shared desire" to see the "same outcome" in a legal matter is insufficient to establish common interest or joint defense privilege,[38] and "a concern shared by parties regarding litigation does not establish by itself that the parties held a common interest."[39]  As courts in this circuit have noted, this privilege "is designed to protect communications between co-defendants or co-litigants, not a company attempting to chill its employee witnesses from communicating with its adversary's lawyer."[40]

In addition to being factually unsupported, Defendants' claim that Mr. Amedee and Defendants "acted jointly as purported board members of Spence TLC" and that they "acted jointly in furtherance of the Gerry Spence Method" is insufficient, even if true, to establish the existence of common interest privilege.  Because the common interest privilege attaches only to communications that would otherwise be covered by attorney-client privilege and thus necessarily involves a *legal* interest, the claim of an identical interest from a business standpoint is absolutely meaningless.  Furthermore, Defendants cannot claim that Mr. Amedee possessed an identical interest "from a legal standpoint" when he was neither a TLC board member nor a "Spence

---

[37] *See United States v. Hudson*, No. 13-20063-01-JWL, 2013 WL 4768084 at *2 (D. Kan. Sept. 5, 2013) (citing *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1127–28 (9th Cir. 2012)).

[38] *Id.* (citing *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230–31 (D.N.J. 1992) (community of interest exists where different persons or entities have "an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice;" nature of interest must be identical, not similar) (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)).

[39] *Lawson v. Spirit Aerosystems, Inc.*, 410 F. Supp. 3d 1195, 1210 (D. Kan. 2019) (quoting *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 473 (S.D.N.Y. 2003).

[40] *Roe v. Cath. Health Initiatives Colorado*, 281 F.R.D. 632, 638 (D. Colo. 2012).

9

Method" board member and therefore shared no common legal interest with Defendants at all.[41] Even if Defendants' shifting view on corporate formalities is accepted for purposes of argument, Mr. Amedee *still* would not share the common interest privilege with Defendants because he is a non-party and thus does not share an identical legal position with Defendants.  Mr. Amedee himself appears to agree with TLC on his point, as he repeatedly disclaimed an affiliation with Defendants in his discovery conference with TLC's counsel.[42]  Tellingly, at no point during the briefing on Defendants' 11th hour objection to the subpoena has Mr. Amedee offered any testimony, by affidavit or otherwise, indicating that he believes he shares a common interest of any kind with Defendants.

The out-of-circuit cases cited by Defendants in support of their claim that the Magistrate Judge somehow erred are inapposite.[43]  For example, in *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001), the Fifth Circuit in fact *rejected* the applicability of the joint defense privilege, specifically noting that "because the privilege is 'an obstacle to truthseeking,' it must 'be construed narrowly to effectuate necessary consultation between legal advisers and clients.'"  Similarly, in *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010), the Court specifically noted that "the doctrine applies only when all attorneys and clients have agreed to take a joint approach in the matter at issue" and that the privilege "applies only to protect communications regarding the common interest and intended to further that interest."  That is plainly not the case here, where

---

[41] As noted above, Mr. Amedee was *never* a member of the TLC board and Defendants ceased to be TLC board members after May 6, 2020; the Spence Method entity was not formed until April 2021 and at least as of Mr. Zelbst's May 26, 2021 deposition, had not elected board members at all; and based on Defendants' representations, GSTLC/GSTI entity never pursued any action in which Defendants and Mr. Amedee might share an interest.

[42] Rec. Doc. 193-6 (Slaughter Declaration ¶ 19, attached as Exhibit F to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[43] Indeed, Defendants' citation to the 35 year-old case of *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 650 F. Supp. 1076, 1087 (W.D. Tex. 1986) is curious, as that case contains no discussion whatsoever of the joint defense or common interest privilege.

PD.34657608.2

Amedee, through his own counsel, has made a significant document production over the vigorous objection of Defendants' counsel.  Indeed, as the Magistrate Judge aptly noted:

> Spence Defendants certainly have not explained why Mr. Amedee needed to have the documents he has or why he needed to be a part of the allegedly privileged conversations. Lastly, if Mr. Amedee was a director or an employee, Spence Defendants have also failed to explain why he is represented by independent counsel and why Spence Defendants' counsel has apparently had no specific communications with Mr. Amedee. Mr. Amedee is not a party to these proceedings, is independently represented by counsel not associated with this matter and he has stated to Plaintiff that he has no affiliation with Spence Defendants or the Spence Method.[44]

As the Magistrate made clear, Defendants and Mr. Amedee do not share a sufficient legal interest to justify application of the joint defense privilege.

To establish a common interest or "joint-defense" privilege, Defendants are required to demonstrate (1) the documents were made in the course of a joint-defense effort; and (2) the documents were designed to further that effort.[45]   Here, Defendants have failed to meet the elements of a properly-asserted joint-defense privilege because they fail to produce any evidence, express or implied, of a joint-defense agreement with Mr. Amedee, and they fail to show how the documents at issue here furthered any putative joint-defense strategy.  At most, Defendants have alleged that Mr. Amedee's document production may include communications regarding *their own* litigation strategy.  However, because they are unable to demonstrate that Mr. Amedee possesses an identical legal interest, Defendants have failed to show that such communications could potentially further any sort of joint-defense.

---

[44] Rec. Doc. 204, p. 7.

[45] *See In re Grand Jury Proceedings*, No. 97-3389 (10th Cir. Aug. 31, 1998) (citing *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989); *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997); *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989) (noting that the "joint-defense privilege" is more properly labeled a "common interest rule")).

PD.34657608.2

C. **The record clearly establishes that Defendants and Mr. Amedee lack a shared privilege**

In their Motion, Defendants again double down on the contention that they share a privilege with Mr. Amedee. As a factual matter, this argument—premised on factual contentions with regard to Mr. Amedee's putative status as a board member of either TLC or the Spence Method—was considered and squarely rejected by the Magistrate Judge. Accordingly, the District Court may only reverse this determination if left with a "definite and firm conviction that a mistake has been committed." Defendants contend that Mr. Amedee was allegedly receiving legal advice from counsel for Defendants in his capacity as "a director of the Spence Method and a former director of the Spence TLC Board."[46] Defendants' claims therefore rely on Mr. Amedee's spurious role as either (1) a TLC board member, which is demonstrably inapplicable, because he has never served on the TLC board (and because Defendants' counsel does not represent TLC in any capacity); or (2) a Spence Method board member, an admittedly nonexistent position with an entity with which Mr. Amedee expressly disclaimed any affiliation, and which did not even exist at the time the subpoena was propounded.[47] The Magistrate Judge plainly found that the facts do not support a finding of board membership in either instance.

With regard to Mr. Amedee's putative membership on the board of TLC, the Magistrate Judge did not rule that the Wyoming state court's order retroactively stripped Defendants or the third parties of some sort of privilege. Rather, as a factual matter, such a privilege *never existed* because Defendants' removal from the TLC board was proper *at the time it* occurred. Such a conclusion does not mean that Defendants cannot maintain their own attorney-client privilege with

---

[46] *See* R. Doc. 190 at p. 12. It is unclear what entity Defendants' reference to the "Spence TLC Board" encompasses.

[47] *See* Rec. Doc. 193-3 (Deposition of John Zelbst, 202:17-19, attached as Exhibit C to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

their retained counsel—it means that there is simply no shared board membership with third parties that would extend such privilege to those third parties. Defendants cite to no authority that support the proposition that a mistaken belief as to a legal association among parties can give rise to a privilege where none otherwise exists.  Taken to its logical conclusion, Defendants argument would allow any party who shares privileged documents with a third party to cloak those documents with privilege based on nothing more than the assertion that he believed himself to share a privilege with that third party.[48]  Indeed, if anything Defendants knew they were NOT judicially recognized as the Board, and in fact this Court had specifically ordered them *not* to represent the same.[49]  The sham election by which Defendants contend Mr. Amedee was made a putative member of the TLC board was in and of itself a violation of this Court's preliminary injunction order, and cannot serve as the basis for a claimed privilege.[50]

Likewise, Defendants' contention that membership on the board of "the Spence Method" can somehow create a privilege is belied by the simple fact that that entity did not exist and had no officers for the time pertinent to the subpoena.  As the Magistrate correctly observed:

> If Spence Defendants had respected the formalities of a non-profit corporation, and actually created the entity and had correctly made Mr. Amedee a director, the Court would have had no question as to the applicability of privilege. Instead, the Court has received argument from the Spence Defendants based entirely on how a corporation's directors are protected by corporate attorney-client privilege... despite the fact their corporation didn't exist and has appointed no directors.

---

[48] Defendants contention that TLC's position means that "had the Wyoming state district court ruled in favor of the Spence Defendants, finding that they were the true board and the current TLC members were not, then the Plaintiff TLC's board members would have been stripped of any privilege over their discussions with counsel" is a straw man argument, as it ignores the fact that the TLC board members are *all represented by the same counsel as parties to this litigation*.  Mr. Amedee, by contrast, is a third party, represented by his own counsel, who Defendants invited to share in ostensibly privileged communications. This distinction is apparently lost on Defendants.

[49] Rec. Doc. 46, Order Granting in Part and Denying in Part Plaintiff's Motion for Preliminary Injunction, p. 19 (prohibiting Defendants from actions whereby they "purport definitively to be Plaintiff's true Board unless and until such time as the state court makes a ruling to that effect").

[50] *Id.*

Defendants' contention that these fabricated board memberships somehow override Mr. Amedee's status as a third party has no basis in fact, and their reliance on attorney-client and work-product privilege is sorely misplaced as a result. The Court should affirm the Magistrate Judge's finding that Mr. Amedee shares no privilege with Defendants.

**D. Defendants' unsupported, spurious allegations as to the content and nature of communications in which they did not participate should be flatly rejected by the Court.**

In their final attempt to forestall Plaintiff's review of the Amedee production, Defendants again trot out their nonsensical contention—rejected by the Magistrate—that counsel for TLC somehow agreed to screen the documents produced by Mr. Amedee for an unspecified privilege possessed by Defendants. This contention is not only false, it belies common sense, as any such privilege would be waived by intentionally and voluntarily producing such documents to TLC, and any such "screening" of allegedly privileged documents would involve TLC reviewing the very documents Defendants contend TLC should not possess.[51] Defendants go so far as to misleadingly quote from an email written by Mr. Amedee's counsel as though it is a direct quote from Plaintiff's counsel—a flagrantly misleading tactic which should not be condoned by the Court.[52] The fact remains that Defendants' argument rests on hearsay and speculation regarding the contents of a phone call in which they did not participate. In any event, the Magistrate Judge plainly found that these alleged "assurances" did not exist, a factual finding which the District Court should not disturb.[53]

Moreover, Defendants' belated attempt to invoke promissory estoppel should be rejected by the Court for the simple reason that they lack standing to assert such a claim. Defendants'

---

[51] Rec. Doc. 193-6 (Slaughter Declaration ¶ 18, attached as Exhibit F to Plaintiff's original Opposition to Defendants' Rule 26(b)(5) Notice).

[52] Rec. Doc. 211 at 15.

[53] *See Wyoming*, 239 F.Supp. 2d at 1236.

argument rests on a (fictional) promise allegedly made by Plaintiff's counsel to *Mr. Amedee*—not Defendants.  Defendants at no point allege that *they* took any action in reliance on this putative promise.[54]  Having alleged no change in position in reliance on this "promise," they cannot now invoke estoppel to forestall Plaintiff's review of documents properly produced by a third party in response to a subpoena.

## CONCLUSION

For the foregoing reasons, TLC respectfully prays that this Honorable Court DENY Defendants' requests for reconsideration of the Magistrate Judge's order.

---

[54] *See I.G. by & through Grunspan v. Jefferson Cty. Sch. Dist. through Bd. of Educ. for Jefferson Cty. Sch. Dist.,* 452 F. Supp. 3d 989, 1000 (D. Colo. 2020) (rejecting claim for promissory estoppel where plaintiff had not relied on alleged promise).

15

Respectfully submitted,

**THE TRIAL LAWYERS COLLEGE**

*/s/ Christopher K. Ralston*
Christopher K. Ralston, (La. Bar #26706)
(Admitted *pro hac vice*)
Lindsay Calhoun, (La. Bar #35070)
(Admitted *pro hac vice*)
James Gilbert, (La. Bar # 36468)
(Admitted *pro hac vice*)
Matthew Slaughter, (La. Bar # 37308)
Phelps Dunbar LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: ralstonc@phelps.com
        lindsay.calhoun@phelps.com
        james.gilbert@phelps.com
        matthew.slaughter@phelps.com

and

Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE,
P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-mail:  pmurphy@wpdn.net
        zmason@wpdn.net

**ATTORNEYS FOR PLAINTIFF THE TRIAL
LAWYERS COLLEGE AND THIRD PARTY
DEFENDANTS JOHN SLOAN, MILTON
GRIMES, MAREN CHALOUPKA, JAMES
R. CLARY, JR., DANA COLE, AND ANNE
VALENTINE**

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all counsel of record this 28th day of July, 2021.

*/s/ Christopher K. Ralston*