# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marie Strong*

Acting United States Register of Copyrights and Director

**Registration Number**

**TX 8-891-118**

**Effective Date of Registration:**
August 11, 2020
**Registration Decision Date:**
August 27, 2020

---

## Title

| | |
|---|---|
| **Title of Work:** | Trial Lawyers College Skill Outlines – Version 1 |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2019 |
| **Date of 1st Publication:** | January 01, 2020 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| • **Author:** | The Trial Lawyers College |
| **Author Created:** | text |
| **Work made for hire:** | Yes |
| **Citizen of:** | United States |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | The Trial Lawyers College<br>P.O. Box 1249, Laramie, WY, 82073, United States |

## Rights and Permissions

| | |
|---|---|
| **Organization Name:** | Phelps Dunbar LLP |
| **Name:** | Warner J. Delaune |
| **Email:** | warner.delaune@phelps.com |
| **Telephone:** | (225)346-0285 |
| **Address:** | 400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802 United States |

## Certification

**EXHIBIT C**

**Name:** Warner J. Delaune
**Date:** August 11, 2020
**Applicant's Tracking Number:** 28459-2

# THE TRIAL LAWYERS COLLEGE

# SKILLS OUTLINE – VERSION 1

## Voir Dire

1. Identify those matter(s) that trouble you about the case
2. Explore your personal feelings about the matter(s) that trouble you
3. Determine why you are troubled
4. Share your feeling(s) about the matter(s) with the jury
5. Invite the jury to share their feelings about the matter with you
6. Accept (honor) the gifts the jury gives you
7. Continue to share your feelings and invite the jury to share theirs

NOTES:

Nowhere in these steps is there a direction for the protagonist/lawyer to exhume and share a <u>story</u> about their past with jurors. The direction is to share <u>feelings</u>.

- The great likelihood is that the protagonist/lawyer will not have a personal story that is meaningfully similar to the trauma that the criminal or civil client is experiencing. Being accused of cheating on a test in 3rd grade, for example, is not comparable to being accused of murder. If the protagonist says "I remember how it felt to be falsely accused of cheating on a test, has anyone else had that experience … now can you imagine how it feels to be my client who is accused of murder," the result is for jurors to differentiate themselves from the client, not to connect to the client. Lesson: don't search for stories. Most people won't have one that fits, and trying to find one that fits will backfire.
- <u>Feelings</u> are what we need to share, and what we need to invite jurors to share. Our brother John Naizby teaches that we should be courageous to admit, and share, our feelings about the case or the issue in the case. "I detest child molesters." "I don't understand why someone would confess to a crime he didn't commit." "I myself wonder if some people are faking their injuries for attention."
- Encourage your student to listen to jurors with that third ear, and to reverse roles with jurors. Use psychodramatic tools to help your student hear their jurors.
- Listen. Listen. **Listen.**

**Opening Statement**

Goal:  Foster the jury's emotional connection with the client's story.

1. Find the trust relationship.
2. Explore, develop, and express the trust relationship.
3. Find the plan and motive to betray the trust.
4. Show the betrayal.
5. Show the damage of the betrayal.
6. Incite the action to avenge the betrayal.

Teaching this method includes the use of psychodramatic tools including:

- Soliloquy
- Scene setting
- Role reversal and doubling
- Chair back
- Magic mirror
- Empty Chair

Also see Maren Chaloupka's <u>Warrior</u> article summarizing Gerry's and senior staff's guidance and caution on the use of first-person presentations in opening statement, and on how to correctly teach the use of first-person presentations to new students.

PD.29482416.1                                                            Copyright © 2019  The Trial Lawyers College
                                                                                                    ALL RIGHTS RESERVED

**Direct Exam**

Goal:  Tell the STORY through the witness

Teach students to prepare their direct examination, and to identify facts and feelings to explore on direct examination, using psychodrama tools of role reversal, scene-setting, reenactment, and soliloquy, among others.  Through these methods, students may learn perspectives that help them determine which witness can be used to tell different parts of the client's story.

Teach students how to TELL a story (with villains and betrayal and need for justice.)

1. Know your case and know what scenes you want selected witnesses to tell, in order to tell and further your client's story.  (For example: present the scene of betrayal, or events the jury needs to "see" that they wouldn't otherwise understand from simply a verbal presentation, etc.)

2. Set the scene that the lawyer wishes to present in a way that the lawyer could do it in the courtroom.  This may be through words only, or may be shown physically by the witness off of the stand or by the lawyer with the witness' guidance.

3. Encourage the witness or client to tell the story in the present tense as lawyer guides them through that specific event.

4. Then, work with your witness so they can explain from the witness stand (or off the witness stand) what is happening in the present tense in the re-enacted scene.  Touch all of the senses: sight, hearing, feeling, taste and smell.

Remember that not every direct examination requires an off-the-witness stand demonstration; and even if an off-the-witness stand demonstration would help the jury understand what happened, a judge may not allow it. Thus the lawyer should be prepared to present a compelling story through direct examination even if the judge requires the witness to stay on the stand and the lawyer to stay at a podium, and/or even if there is not a dramatic action scene to reenact.

Copyright © 2019  The Trial Lawyers College
ALL RIGHTS RESERVED

**Cross-Examination**

**Goal: Tell your client's story again, through identifying with and understanding the opposing witness**

I. What is the Witness' Story?
   A. Reverse roles with the witness
   B. Use psychodramatic tools to explore what the witness is afraid of/motivated by/trapped by. For example:
      i. Doubling
      ii. Empty chair
      iii. Encounter (another group member takes the empty chair; use role reversal so that the protagonist is producing content, then hearing it and responding to it)
      iv. Chair back
      v. Reenactment/scene-setting (explore what the witness' thoughts and feelings were in the moment)
      vi. Surplus reality

II. What is the Witness' Role in the Client's Story?
   A. If the client and the witness have had a direct encounter, consider reenacting that scene to explore the witness' thoughts and feelings about the client in that moment and afterward
   B. If the client and the witness have not had a direct encounter, consider other ways to develop the witness' feelings about the client using psychodramatic tools.

III. Tell a piece of the story you have explored
   i. Ask the student to identify one piece of the story just explored with the group that he or she would like to tell
   ii. Having identified the piece of the story they would like to work on, the student can now try cross-examining the witness in a manner that tells that piece of the story (as opposed to a cross-examination that is just a "series of points").
   iii. Invite other students to identify, and cross-examine on, another piece of the story.

**PLEASE DO NOT USE THE TERM "SOFT CROSS."** The TLC cross-examination method does not depend on tone of voice or a contrived effort to "be nice." It is a method of learning and telling a story that applies whether the witness is sympathetic or aggressively hostile.

Copyright © 2019 The Trial Lawyers College
ALL RIGHTS RESERVED

a. If a protagonist has an inappropriately hostile tone and focusing him or her on telling a story does not alleviate the hostility, use psychodramatic and sociometric tools to help him or her recognize the problem. For example:
   i. Check in with the group – let students, in role as jurors, share how the protagonist makes them feel
   ii. Mirror (protagonist may watch a classmate replicate the inappropriate tone)
   iii. Role reversal with a juror (protagonist may sit as a juror as a classmate replicates the inappropriate tone)
   iv. Role reversal with the witness
   v.

**PLEASE DO NOT TELL STUDENTS "IT DOESN'T MATTER WHAT THE WITNESS SAYS."** While it may happen once or twice in a cross-examination that the truth is so evident that the witness' denial hurts the witness' credibility, we should not encourage students to believe that all of their questions matter more than all of the answers, for a few reasons:

a. As jury instructions emphasize, the lawyer's questions are not evidence. We cannot lose sight of our responsibility to try to get admissions.
b. If the witness is repeatedly and consistently telling the lawyer that he or she is wrong through a series of questions, the jurors will eventually conclude that the lawyer doesn't know what he or she is talking about.
c. If we quit listening to the witness, we will miss gifts in the witness' answers.

Copyright © 2019  The Trial Lawyers College
ALL RIGHTS RESERVED

**Final Argument**

1. Reverse roles with the plaintiff (civil case) and/or the accused (criminal case)
2. In role as the plaintiff or accused, give a short soliloquy about his/her story, how he/she trusted and what it is like to live with the betrayal and harm from the betrayal.  (Doubles can be used here to keep the group engaged.)
3. Feel the righteous indignation/ethical anger as an advocate for the victim or accused
4. Reverse roles with the villain and, from that role, give a short soliloquy about how he/she betrayed the plaintiff/accused.  (Again, doubles can be used here.)
5. Protagonist then reverses roles with plaintiff/accused again and, in that role, hears another group member restate the villain's soliloquy and feels how the plaintiff/accused must feel throughout trial.
6. Move protagonist into the argument (whether in role or speaking as lawyer), focusing on the behavior of the villain in the trial, *i.e.*, lying to the jury, misrepresenting the truth in order to get the conviction or avoid liability, etcetera.
7. Determine the justice you want
8. Ask the jury for the justice you want
9. Create a vision of a better person creating a better tomorrow
10. Transfer the lawyer's responsibility for the client to the jury

Copyright © 2019  The Trial Lawyers College
ALL RIGHTS RESERVED

# TLC Teaching Methods

**Discovering The Story**

1. This is a discovery tool, not a trial preparation skill. The goal is to help the protagonist identify emotional content and important facts, that he or she can then develop evidence to support in pretrial investigation/discovery. It is a different skill, with different goals, from the TLC methods of teaching trial skills such as opening statement and direct examination, even if each of those skills can use some of the same psychodramatic tools (i.e., reenactment, soliloquy, doubling, etcetera).

2. Be mindful that "reenactment" is not synonymous with "Discovering the Story." Reenactment (*i.e.*, showing and exploring something that actually happened) is one of many psychodramatic tools that can be used to discovery the story; it is not the only psychodramatic tool that can be used. Surplus reality scenes, encounters (with another person in the chair or with an empty chair), and many other psychodramatic tools are available for this skill.

3. In Discovering the Story, the group explores students' cases in action. Students define their stories with a "headline" description, and the leader picks a compelling story and explains his or her choice. The leader invites the group to suggest scenes based on their curiosity, which is a projection of what jurors would want to learn in order to make their decision at trial. Leader selects a scene and begins to direct, soliciting involvement from the group to participate in the scenes, identify themes and share in role what they believe the characters in the story may be feeling. At the completion of the exercise, have the group identify who they would have liked to have learned more from, what was missing, what surprised them about the story, etcetera.

   **Do not have students direct the exercise. They are new to these methods (many have never even attended a Regional) and should not be getting comfortable with basic directing skills while also directing a goal-focused Discovering The Story exercise.**

4. Work with the group to discuss how/why they choose the scenes they chose, how they know when to move on to another scene and why, and what makes them move to explore deeper feelings/motivations in a character in the story. The information revealed will help the lawyer identify avenues for pretrial investigation and discovery, to try to develop evidence to support the intuitive questions of the group; and to develop sequencing of the opening statement, the way in which direct and cross examinations are organized, the order of proof and the closing argument.

Please also see Colby Vokey's excellent outline for teaching Discovering The Story.

PD.29482416.1    Copyright © 2019  The Trial Lawyers College
ALL RIGHTS RESERVED