Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail:   pmurphy@wpdn.net


Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
James Gilbert (Admitted *Pro Hac Vice*)
Matthew R. Slaughter (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email:   chris.ralston@phelps.com
           lindsay.calhoun@phelps.com
           james.gilbert@phelps.com
           matthew.slaughter@phelps.com


Attorneys for The Trial Lawyers College, John Sloan,
Milton Grimes, Maren Chaloupka, James R. Clary, Jr.,
Dana Cole, and Anne Valentine

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
CASPER DIVISION

| | | |
|---|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation | ) ) ) | |
| | ) | CIVIL ACTION NO. 1:20-cv-0080 |
| Plaintiff, | ) ) | |
| v. | ) ) | _____ |
| | ) | **JUDGE CARSON** |
| GERRY SPENCES TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, a nonprofit corporation, and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE and DANIEL AMBROSE, individuals, and GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC., a nonprofit corporation | ) ) ) ) ) ) ) ) ) ) ) ) ) | **MAGISTRATE JUDGE CARMAN** |

Defendants.

## MEMORANDUM IN SUPPORT OF TLC'S MOTION TO DISQUALIFY ATTORNEY BETH KUSHNER AS TRIAL COUNSEL FOR DEFENDANTS

Plaintiff, The Trial Lawyers College ("TLC"), through undersigned counsel, respectfully submits this Memorandum in Support of its Motion to Disqualify Attorney Beth Kushner as Trial Counsel for Defendants.[1]

### INTRODUCTION

From the outset of this litigation—and in fact as this litigation was imminent—Defendants' now-enrolled counsel, Beth Kushner, has engaged in unethical and improper behavior that warrants her disqualification. From April 2020 to March 2021, Ms. Kushner covertly maintained

---

[1] Numerous cases have held that motions to disqualify or for other relief related to the conduct or ethical violations of counsel fall within a magistrate's authority under 28 U.S.C. § 636(b). *Hammond v. City of Junction City, Kansas*, 167 F. Supp. 2d 1271, 1288–89 (D. Kan. 2001) (collecting cases).

access to TLC's listserv communications without revealing her involvement as counsel to the Defendants, who had been removed from the listserv due to their violations of TLC's policies against promoting competing trial skills programs. During that time, Ms. Kushner acted in concert with Defendants to create confusion among the TLC alumni base about the distinction between TLC and the Defendants' entity. Contemporaneous with her access to the TLC listserv, Ms. Kushner posted to Defendants' competing listserv, where she failed to disclose her role as counsel but sought to persuade recipients of her messages that Defendants were in the right in this dispute.

Ms. Kushner also improperly and misleadingly advised TLC that she represents certain third-party subpoena recipients who later disclaimed her representation. Moreover, Ms. Kushner threatened to sue a third-party subpoena recipient to prevent him from producing responsive documents. For these and the following reasons, TLC respectfully requests that the Court disqualify Ms. Kushner from serving as trial counsel for Defendants. This disqualification will not cause any undue hardship to Defendants, because Defendants are represented by multiple other, active counsel that can serve at trial. Indeed, eight months after her enrollment in this matter, Ms. Kushner has not taken a single deposition or signed a single pleading on Defendants' behalf.

## LEGAL STANDARD

"It is well-established that ordinarily 'the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge,' and is thus a matter of judicial discretion."[2] The Tenth Circuit has explained:

> Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying

---

[2] *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) (citing *Redd v. Shell Oil Co.*, 518 F.2d 311, 314 (10th Cir. 1975)).

PD.34036726.7

standards developed under federal law. Therefore, motions to disqualify are governed by the ethical rules announced by the national profession and considered "in light of the public interest and the litigants' rights."[3]

The Wyoming Rules of Professional Conduct mirror the ABA Model Rules of Professional Conduct—the rules that reflect the national standard to be used in ruling on disqualification motions.[4] In fact, Wyoming Rules 3.7, 4.1, 4.2, and 8.4 do not differ from the ABA Rule in any respect material to this case. *See* ABA Model Rule 3.7, 4.1, 4.2, and 8.4. The relevant rules of professional conduct state as follows:

> Rule 3.7. Lawyer as Witness
> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>> (1) the testimony relates to an uncontested issue;
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>> (3) disqualification of the lawyer would work substantial hardship on the client.

> Rule 4.1: Truthfulness in Statements to Others
> In the course of representing a client a lawyer shall not knowingly:
>> (a) make a false statement of material fact or law to a third person; or
>> (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

> Rule 4.2. Communication with Person Represented by Counsel
> In representing a client, a lawyer shall not communicate about the subject of the representation with a person or entity the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order
>> . . . .
> Cmt. 7. In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises,

---

[3] *Id.* at 1383 (quoting *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) and citing *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), *cert. denied sub nom. Northwest Airlines, Inc. v. American Airlines*, 507 U.S. 912 (1993)).

[4] *See Black Card, LLC v. Visa U.S.A., Inc.*, No. 15-CV-27-S, 2015 WL 11090695, at *3 (D. Wyo. Aug. 3, 2015) ("'[T]he Wyoming Rules of Professional Conduct at issue in this case mirror the Model Rules."); *see also United States v. Elliott*, 684 F. App'x 685, 691-92 (10th Cir. 2017) ("Wyoming's version of Rule 4.2 has generally tracked the American Bar Association's version.").

4

directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

Rule 8.4. Misconduct.
 It is professional misconduct for a lawyer to:
  (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
  (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
  (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
  (d) engage in conduct that is prejudicial to the administration of justice.[5]

In addition to the Wyoming Rules of Professional Conduct and Federal Rule of Civil Procedure 11, the United States District Court for the District of Wyoming Local Rules have also adopted Standards of Attorney Conduct as follows:

(1) Attorneys shall at all times exercise professional integrity, candor, diligence and utmost respect to the legal system, judiciary, litigants and other attorneys.

(2) Attorneys shall extend to opposing counsel cooperation and courteous behavior at all times and shall not arbitrarily or unreasonably withhold consent to opposing counsel's reasonable requests for cooperation or scheduling accommodations.

(3) Attorneys shall treat each other, the opposing party, the Court and members of the court staff with courtesy and civility, and conduct themselves in a professional manner at all times.

(4) A client has no right to demand that attorneys abuse the opposite party or indulge in offensive conduct. An attorney shall always treat adverse witnesses and suitors with professionalism, fairness and due consideration.[6]

"Attorneys whose conduct does not comport with these rules may be subject to discipline by the

---

[5] WYO. RULES OF PROF'L CONDUCT FOR ATTORNEYS AT LAW, R. 3.7, 4.1, 4.2, 8.4 (Wyo. Bar Ass'n 2019).

[6] *See* L.R. 84.1(a).

Court."[7] Ms. Kushner has engaged in activities which implicate each of the above-referenced Rules of Professional Responsibility and the Local Rules of this Court.

## LAW AND ARGUMENT

Ms. Kushner's conduct to date has violated multiple Rules of Professional Responsibility and warrants her disqualification. To begin, Ms. Kushner communicated with TLC without disclosing her identity as counsel and covertly maintained access to TLC's private listserv so that she could monitor TLC's actions which might pertain to this litigation. As a result of Ms. Kushner's behavior, Defendants have been privy to conversations on the TLC listserv which concern topics at issue in this litigation and related litigation filed by the Defendants in Wyoming state court. Ms. Kushner also utilized her listserv access to further the Defendants' objective to cause confusion between TLC and their newly formed entity, Gerry Spences Trial Lawyers College at the Thunderhead Ranch ("GSTLC"), and to promote Defendants' positions on a number of litigation-related topics, all without disclosing her role as counsel. Moreover, Ms. Kushner has made material misrepresentations concerning her representation of several third party subpoena recipients, which interfered with TLC's ability to obtain responsive materials from them. Most egregiously, Ms. Kushner threatened to sue a third-party subpoena recipient and his counsel if he complied with TLC's subpoena—conduct that is certainly improper and sanctionable.[8] As a result

---

[7] *See* L.R. 84.1(b).

[8] *See EEOC v. Bok Financial Corp.*, No. 11-cv-1132, 2012 WL 12841484, at *1, *5 (D. N.M. Nov. 20, 2012) (granting and denying in part a motion to quash subpoenas on nonparties in which the court noted that moving counsel "in an amazing show of chutzpah…contacted the recipients and told them not to comply with the subpoenas," and finding such conduct "improper"); *Handloser v. HCL Am., Inc.*, No. 19-cv-01242-LHK, 2020 WL 6205214 at *5 (N.D. Cal. Oct. 22, 2020) (holding party's use of extra-judicial means to persuade third party to withhold production of documents constituted "improper interference with plaintiffs' subpoena"); *Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788 (E.D. Pa. 2012) (concluding counsel acted in willful bad faith by sending letters to subpoenaed third-parties advising them not to respond and imposing sanctions); *see also* R. Doc. 193-6, ¶ 9, Slaughter Declaration filed in Opposition to Common Interest Brief.

PD.34036726.7

of Ms. Kushner's repeated improper conduct, TLC requests that she be disqualified from serving as counsel of record in this action.

### I.      Ms. Kushner's Actions Related to the TLC and GSTLC Listservs Warrant Her Disqualification

TLC maintains several listservs, which operate using confidential and proprietary contact information, including email addresses, of its alumni and other individuals. TLC uses these listservs to maintain a connection with its alumni and to allow them to communicate about TLC's services, events, and other topics of interest. Following the Board schism that precipitated this litigation, TLC's listserv became a hub for communications concerning the events which transpired and the identity of the "true" TLC Board. By April 27, 2020, TLC removed the individual Defendants from its listserv so that they could not utilize the listserv to further confuse TLC and their newly-created entity, GSTLC.[9]

TLC has learned through discovery that Ms. Kushner maintained her access to the TLC listserv without disclosing her identity as counsel for Defendants, despite her knowledge that TLC had removed the individual Defendants from the listserv. Ms. Kushner deceptively maintained her access to TLC's listserv so that she could send and receive messages on the listserv and act as Defendant Parris' self-described "mole."[10] Documents produced in discovery show that Ms. Kushner corresponded with Defendant Parris regarding communications intended to (and which did) reach the TLC listserv.[11] As this Court has seen, these emails establish that, after meticulous planning as to the substance of postings with Parris *off* the listserv, Ms. Kushner then posted to the

---

[9] As this Court is well aware, Defendants later changed the entity's name to Gerry Spence's Trial Institute. Defendants now operate yet *another* Wyoming nonprofit organization called the Gerry Spence Method, which was recently added as a Defendant. All of the entities appear to have been created for similar purposes, that is, to operate a trial skills program that competes with TLC.

[10] *See* Exhibit A (May 3, 2020 email from Beth Kushner to Rex Parris stating "Well I am your mole").

[11] *See* R. Doc. 170.

TLC listserv as Parris's conduit, in a joint effort to sow additional confusion among the TLC alumni group.[12] For example, after Mr. Parris edited her initial message,[13] Ms. Kushner posted messages on the listserv to which she already knew the answers (or could easily ascertain from her clients) including:

> Hi, everybody—I wanted to forward some material about TLC to a young lawyer and went to the website. It looks like Gerry is not involved? Has something happened with him or is this because programs are being pushed off due to COVID19? I don't mean to a busybody and I am very much on the outskirts of Ranch stuff, so sorry if I am overstepping here. My concern is whether Gerry is alright. If someone knows, can you advise?[14]

Ms. Kushner crafted this message with the input of Defendant Parris, telling him to "note the annoying and needless question marks. I think they add a nice touch of girlish sincerity."[15] However, Ms. Kushner was not in fact posing any sincere questions, but was instead directing a communication to TLC and its alumni with the malicious intent to cause harm to TLC.

Other communications Ms. Kushner posted to the listserv reveal that she attempted to distance Parris from the newly formed entity, GSTLC, despite the fact that Parris himself claimed elsewhere to be Mr. Spence's "hand-picked successor" to head TLC.[16] As alumni posted on the listserv in search of information about who Mr. Spence had chosen as his successor, as well as Spence's authority to "appoint" a successor, Parris's name came up repeatedly. In response, Ms.

---

[12] *See* Exhibit B (April 27, 2020 email correspondence between Beth Kushner and Rex Parris).

[13] *See* Exhibit C (April 23, 2021 email correspondence between Rex Parris and Beth Kushner) (Mr. Parris noting to Ms. Kushner that he "made one small change" to her draft message).

[14] *See* Exhibit C (April 23, 2021 email correspondence between Rex Parris and Beth Kushner).

[15] *See* Exhibit C (April 23, 2021 email correspondence between Rex Parris and Beth Kushner).

[16] *See* R. Doc. 46 at 17 ("Plaintiff referenced an interview that Defendant Parris and Defendant Low gave to Dan Ambrose, one of Plaintiff's alumni, on April 30, 2020. In that interview, Low states that 'Rex [Parris] has been selected, hand-picked, as it is, by Gerry Spence to further on and actually be the new leadership of Gerry Spence's Trial Lawyers College at Thunderhead Ranch.'").

8

Kushner posted to the listserv denying that Parris was an "heir or successor or anything of the sort."[17] When questions arose on the listserv about the authority of two factions of the Board, Ms. Kushner went on to suggest to the listserv that "people do not need to worry about the corporate governance aspects of something that didn't happen."[18] Ms. Kushner's untruthful disavowal of Parris's involvement with GSTLC echoes Parris's own testimony to this Court, which was directly contradicted by evidence and rejected by the Court—thus underscoring the extent of their collusion.[19]

Discovery has also revealed that, while acting as his counsel, Ms. Kushner strategized with Parris to ensure that the content of her posts to the listserv did not reveal her association with him so that TLC would not "freeze [her] out" of the listserv, as it had done to Parris and the other Defendants due to their violations of TLC's policies.[20] Ms. Kushner explained to Parris that, with respect to her communications on the listserv, she "was careful not to put in anything that I wouldn't know from other sources or that wouldn't be widely known."[21] Ms. Kushner strategically maintained distance from her client with respect to the TLC listserv, stating to Parris, "I am more valuable to you that way."[22] Leaving absolutely no question as to Ms. Kushner's and Parris's intention regarding her undisclosed presence on the listserv, Ms. Kushner wrote to Parris on

---

[17] *See* Exhibit D (May 3, 2020 email from Beth Kushner to Trial Lawyers College Alumni List).

[18] *Id.*

[19] *See* R. Doc. 46 at 17-19 n. 3 ("Parris further testified that he was not a member of a board or an officer of the new nonprofit. He further testified he did not hold any position with the new nonprofit. When the Court asked Defendant to clarify that his testimony was that he has nothing to do with the new entity, Defendant Parris said, 'That's correct.' He continued that he 'never actually thought [the new entity] was going to do anything.' The Court continued: 'I want the record to be clear, just because you think the entity hasn't done anything doesn't mean you haven't been aware of it and it wasn't sitting there just in case somebody needed an entity.' Parris responded: 'I have not had anything to do with that entity.'").

[20] *See* Exhibit B (April 27, 2020 email correspondence between Beth Kushner and Rex Parris).

[21] *See* Exhibit A (May 3, 2020 email from Beth Kushner to Rex Parris).

[22] *See* Exhibit B (April 27, 2020 email correspondence between Beth Kushner and Rex Parris).

9

separate occasions: "I am your mole,"[23] and "[o]h, I'm lurking."[24]

 Ms. Kushner's unprofessional conduct was not limited to her posts to the TLC listserv. At the same time that information (and misinformation) regarding the schism was reaching TLC's listserv, it was also being discussed on a "gaggle" listserv with the email address gerry.spence.college@gaggle.email, and titled "Gerry Spence's Trial Lawyers College" (the "GSTLC listerv"). In response to the discussion unfolding on the GSTLC listserv, Ms. Kushner sent a long post dated May 13, 2020 (the same day that this action was filed) outlining her views on the pending state and federal actions involving TLC, and clearly siding against the so-called "Sloan Group," *i.e.*, TLC and its Board of Directors.[25] Although she now claims to have already represented Parris and the other Spence Defendants on that date, in her May 13, 2020 post, Ms. Kushner does not reveal her alleged representation to recipients of e-mails on the GSTLC listserv. Ms. Kushner's post had direct consequences for TLC. In response to it, a TLC alumnus named Michael D. Carter wrote to that Listserv:

> Beth's analysis makes it pretty clear which side is sleazy. I stopped my TLC monthly donation because I don't want it going to those who took $5 mill and ran away while attacking the person responsible for it all. Absolutely shameful misconduct.[26]

 Mr. Carter's post thus makes absolutely clear that TLC lost donations from its alumni as a direct result of Ms. Kushner's postings to the GSTLC Listserv—all without Ms. Kushner ever revealing her role as Defendants' counsel to recipients of posts to the GSTLC listserv. Through her listserv posts, Ms. Kushner chose not only to insert herself in the middle of the facts giving

---

[23] *See* Exhibit A (May 3, 2020 email from Beth Kushner to Rex Parris).

[24] *See* Exhibit E (May 17, 2020 email from Beth Kushner to Rex Parris).

[25] *See* Exhibit F (May 13, 2020 email from Beth Kushner to Gerry Spence Trial Lawyer's College) at p. 2.

[26] *See id.* at p. 1.

rise to this dispute, but actually went out of her way to interfere with the public's perception of what was occurring between TLC and GSTLC. Ms. Kushner's conduct caused direct damages to TLC and is completely inappropriate for counsel to parties to this case.

Ms. Kushner did not limit her postings to the GSTLC listserv to the days immediately following the filing of this action. On August 5, 2020, she posted yet another lengthy message outlining her long friendship with Parris in the context of the unfolding litigation.[27] Despite offering a detailed portrait of that friendship, Ms. Kushner did not disclose her role as counsel to Parris or the other Spence Defendants. In fact, she stated that she has "stayed out of the TLC dispute," that she is "not involved with TLC," and then encouraged those seeking an "'outsider' perspective" to ask her for it.[28] Ms. Kushner's statements are flatly incompatible with her role as counsel to the Spence Defendants. She has neither "stayed out of the TLC dispute" nor maintained an "outsider" status. As has shown to be a consistent pattern, her August 5, 2020 GSTLC listserv posts misleads the public as to the facts underlying this dispute and her role within it.[29]

Ms. Kushner's conduct involving the TLC and GSTLC listservs warrants her disqualification as counsel of record in this action because it violates multiple Rules of Professional Conduct, including rules 3.7, 4.1, 4.2, and 8.4. By her conduct, Ms. Kushner communicated with a represented party, TLC, about the subject matter of the dispute. Ms. Kushner also acted in concert with the Defendants by posting on the listserv and is therefore a witness in this case. Ms. Kushner's actions had direct and material consequences for TLC with its alumni

---

[27] *See* Exhibit G (August 5, 2020 email from Beth Kushner to Gerry Spence's Trial Institute) at pp. 1-2.

[28] *See* Exhibit F (May 13, 2020 email from Beth Kushner to Gerry Spence Trial Lawyer's College) at p. 2.

[29] Notably, Defendant John Zelbst responds favorably to Ms. Kushner's post on the listserv and states: "I hope to meet up with you someday." *Id.*, p. 1. Of course, despite Mr. Zelbst's suggestion that they had never met as of that date, Ms. Kushner now claims she represented Mr. Zelbst at that time and has made privilege assertions on that basis. Mr. Zelbst's comment either attempts to further hide Ms. Kushner's role as counsel or indicates that he did not have a relationship with her at that time.

donations. At the very least, Ms. Kushner's conduct involved deceit and misrepresentation and was prejudicial to the administration of justice. As such, she should be disqualified.

### A.  Ms. Kushner Violated Rule 3.7

Ms. Kushner should be disqualified because she is a material witness to this litigation, insofar as she acted in concert with the Defendants and acted as both a conduit for Defendant Parris and a direct agent to sow additional confusion among the TLC alumni base. Rule 3.7 prohibits a lawyer from serving as an advocate when the lawyer is a fact witness to the matter.[30]

Ms. Kushner's attestation that she has served as legal counsel for Parris in this matter "from its inception" confirms that, at the time she posted on the TLC listserv, Ms. Kushner represented parties to this lawsuit.[31] Despite her knowledge that Parris had been removed from TLC's private listserv, Ms. Kushner made posts on TLC's listserv as a self-proclaimed "mole" for Parris.[32] Ms. Kushner also made several posts to the GSTLC Listserv where she did not disclose her role as counsel and caused at least one alumnus to suspend his donations to TLC.[33] Ms. Kushner's posts were aimed to stir up confusion between TLC and the Defendants' newly-formed entity GSTLC and encourage sympathy for Defendants' position. As such, Ms. Kushner acted in concert with the Defendants and as a conduit for Parris. Because of her involvement with the listservs, Ms. Kushner will likely be called as a witness in this action and has been identified as a witness by TLC. As such, she should be disqualified.

### B.  Ms. Kushner Violated Rule 4.1

In addition to acting in concert with the Defendants to create confusion about the "true"

---

[30] WYO. RULES OF PROF'L CONDUCT FOR ATTORNEYS AT LAW, R. 3.7 (Wyo. Bar Ass'n 2019).

[31] Affidavit of Beth Kushner, R. Doc. 190-4, ¶ 2.

[32] *See* Exhibit A (May 3, 2020 email from Beth Kushner to Rex Parris stating "Well I am your mole")

[33] Exhibit F (May 13, 2020 email from Beth Kushner to Gerry Spence Trial Lawyer's College).

PD.34036726.7

Board of TLC, Ms. Kushner also stealthily maintained access to the TLC listserv and posted to the GSTLC listserv without disclosing her identity as counsel for the Defendants. This Court has previously described that "[t]he individuals on [TLC's] listserv retain the privilege to communicate through it because of their association with Plaintiff."[34] Ms. Kushner was aware that TLC had removed each of the individual Defendants, and their associates, from its listserv, due to their improper actions in competition with TLC. Yet Ms. Kushner surreptitiously maintained her access to the listserv by failing to disclose her identity or her association with the Defendants. She also made several posts to the GSTLC listserv in which she did not disclose her role as counsel but nonetheless attempted to persuade others to her pro-Spence Group perspective.

Rule 4.1 establishes that it is professional misconduct for a lawyer to fail to disclose a material fact to a third person when the disclosure is necessary to avoid assisting a fraudulent act by a client.[35] Further, Comment [1] explains that misrepresentations include "partially true but misleading statements or omissions that are the equivalent of affirmative false statements."[36] Ms. Kushner's posts to the TLC and GSTLC listservs, which perpetuated the Defendants' violation of intellectual property law by increasing the confusion between TLC and GSTLC, were *deliberately crafted* to hide her association with Defendants. In fact, Ms. Kushner suggested to Parris that she should craft her posts to disassociate herself from him so that she would not be detected or removed from the listserv.[37] Ms. Kushner's conduct is particularly egregious considering that the substance

---

[34] R. Doc. 194 at p. 9.

[35] WYO. RULES OF PROF'L CONDUCT FOR ATTORNEYS AT LAW, R. 4.1 (Wyo. Bar Ass'n 2019).

[36] *Id.*, cmt. 1.

[37] *See* Exhibit B (April 27, 2020 email correspondence between Beth Kushner and Rex Parris) (discussing posting in a way so that she would not be "fr[ee]ze[d] out"); Exhibit A (May 3, 2020 email from Beth Kushner to Rex Parris) (describing how she "was careful not to put in anything that I wouldn't know from other sources or that wouldn't be widely known").

PD.34036726.7

of her communications to the TLC and GSTLC listservs furthered Defendants' infringing and tortious conduct, caused direct damage to TLC, and omitted a material fact—that of her close connection to the Defendants by serving as their counsel. As such, Ms. Kushner's conduct in failing to disclose her identity while posting to the TLC listserv violates Rule 4.1

### C.  Ms. Kushner Violated Rule 4.2

As counsel for Defendants, Ms. Kushner was aware that TLC had itself retained counsel to represent it in this matter. Indeed, she even commented publicly on the litigation.[38] Nevertheless, Ms. Kushner made several posts to TLC's listserv and received communications from TLC which it posted on its listserv, acting through its directors. This Court has previously recognized:

> [TLC's] Listserv is owned and managed by Plaintiff exclusively. The individuals on the Listserv retain the privilege to communicate through it because of their association with Plaintiff. Further, every communication sent via the Listserv makes its way to the very individuals that make up the entity that is Plaintiff. As such, the Listserv is more akin to a marketing tool, which is owned, managed, and controlled by Plaintiff.
>
> That means Kushner was using a marketing tool of Plaintiff's to communicate with Plaintiff Listserv subscribers as well as the Plaintiff's Board.

Rule 4.2 establishes that it is professional misconduct for a lawyer to communicate with a party the lawyer knows to be represented by counsel about the subject matter of the representation.[39] When the represented party is an organization, the Rule prohibits communications with persons who supervise or direct the organization, such as its Board of

---

[38] *See, e.g.,* Exhibit H (voluminous email correspondence dated May 14, 2020 between Ms. Kushner and TLC listserv recipients) at pp.1-5 (regarding her views on the litigation, without disclosing her role as Defendants' counsel); Exhibit I (May 15, 2021 email from Ms. Kushner to the TLC alumni listserv) (opining at length on the state and federal court cases, then forwarding the thread to Parris).

[39] WYO. RULES OF PROF'L CONDUCT FOR ATTORNEYS AT LAW, R. 4.2 (Wyo. Bar Ass'n 2019).

14

Directors.[40]

Not only did Ms. Kushner's posts to the TLC listserv make their way to the members of the TLC Board, but Ms. Kushner also acted as a self-described "fly on the wall" to any communications posted to the listserv by the Board of Directors of TLC about this litigation.[41] As such, Ms. Kushner was privy to every post from TLC regarding the facts and circumstances underlying the various pieces of litigation in this matter and in related litigation in other jurisdictions. Ms. Kushner should be disqualified for communicating with TLC, a represented party, about the subject matter of the representation. The fact that she did so deceptively makes disqualification especially warranted.

### D.  Ms. Kushner Violated Rule 8.4

At the very least, Ms. Kushner's failure to disclose her identity as counsel for Defendants when she posted and maintained access to the TLC and GSTLC listservs violated Rules 8.4(c) and 8.4(d). Those rules establish that it is professional misconduct for a lawyer to engage in conduct: (1) involving dishonesty, fraud, deceit or misrepresentation and/or (2) that is prejudicial to the administration of justice.[42] Ms. Kushner's activities on the TLC listserv involved all of those prohibited elements. Ms. Kushner's failure to identify herself as counsel for the Defendants while posting on the TLC and GSTLC listservs (and acting in concert with the Defendants as a conduit for Parris) were dishonest misrepresentations. Ms. Kushner deceived TLC and the individuals on the TLC and GSTLC listservs to believe that she had no connection or association with Defendants

---

[40] *See* Cmt. 7 to ABA MODEL RULE OF PROFESSIONAL CONDUCT 4.2.

[41] *See, e.g.,* Exhibit J (April 27, 2020 email from TLC Executive Director Laurie Goodman on behalf of TLC President John Sloan to TLC listservs regarding TLC's eviction from Thunderhead Ranch); *see also* Exhibit K, pp. at 1-2 (May 17, 2020 e-mail from Ms. Goodman to TLC's alumni listserv regarding, *inter alia*, "TLC's suit to protect our trademark," forwarded by Ms. Kushner to Mr. Parris).

[42] WYO. RULES OF PROF'L CONDUCT FOR ATTORNEYS AT LAW, R. 8.4 (Wyo. Bar Ass'n 2019).

when, in fact, she was serving as counsel to the Defendants. Moreover, Ms. Kushner's conduct interfered with the administration of justice with respect to the facts at issue in this proceeding. Ms. Kushner's intentionally deceiving posts to the TLC and GSTLC listservs and her misrepresentations of identity to maintain access to the private TLC listserv, where she could send and receive communications involving TLC and the topics at issue in this litigation, clearly violated Rule 8.4.

## II.     Ms. Kushner's Actions with Respect to Third-Party Subpoena Recipients Warrant Her Disqualification

In addition to her deceitful and inappropriate conduct related to the TLC and GSTLC listservs, Ms. Kushner has also inappropriately and unethically interfered with the responses to third party subpoenas that TLC issued, has threatened a third-party subpoena recipient in an effort to convince him not to comply with the subpoena, and has deliberately misled TLC to believe that she represents all of the third-party subpoena recipients. As this Court is well aware, Defendants claim that they nominated and elected to the TLC Board third parties Hunter Thomas Hillin, Lee "Jody" Amedee III, Haytham Faraj, Sylvia Torres-Guillen, and Adrian Baca.[43] Correspondingly, TLC issued third party subpoenas to Hillin, Amedee, Faraj, Torres-Guillen, and Baca (collectively, the "Subpoena Recipients") for responsive documents related to Defendants' improper promotion of themselves and the Subpoena Recipients as members of the TLC Board. In turn, Ms. Kushner interfered with those subpoena responses by: (1) threatening Mr. Amedee with legal action if he produced responsive documents and (2) misleading TLC about the scope of her representation of the Subpoena Recipients. Ms. Kushner's conduct with respect to the Subpoena Recipients provides further justification for her disqualification.

---

[43] R. Doc. 108 at ¶¶ 22-27.

PD.34036726.7

## A.  Ms. Kushner Threatened a Third-Party Subpoena Recipient

After Mr. Amedee served boilerplate objections to the subpoena, which were coordinated by Ms. Kushner, counsel for TLC conducted a Rule 37 discovery conference with counsel for Mr. Amedee on May 20, 2021. During the conference, Mr. Amedee's counsel agreed to produce documents responsive to TLC's requests.[44] However, on May 25, 2021, Mr. Amedee and his counsel called counsel for TLC to inform them that Ms. Kushner had contacted Mr. Amedee, threatening legal action if Mr. Amedee produced documents pursuant to the subpoena to which TLC was "not entitled."[45] This egregious conduct warrants her disqualification and sanctions.

### i.  This Conduct Is Sanctionable

Courts routinely sanction attorneys who reach out to third-party subpoena recipients to discourage them from responding to a lawfully issued subpoena. In *Price v. Trans Union, L.L.C.*, the court noted, "[n]owhere in the Rule is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command. Yet, that is exactly what happened here . . . The violation is clear and it is sanctionable."[46] Similarly, in *EEOC v. Bok Financial Corp.*, the District of New Mexico noted that "in an amazing show of chutzpah . . . [counsel] contacted the recipients and told them not to comply with the subpoenas."[47] The District of New Mexico went on to describe such conduct as "improper" and "likely a sanctionable act."[48]

Moreover, in *Fox Industries, Inc. v. Gurovich*, the court found an attorney's "letters to the

---

[44] R. Doc.193-6, ¶ 7.

[45] *Id.* at ¶ 9.

[46] 847 F. Supp. 2d 788, 794 (E.D. Pa. 2012).

[47] No. 11-cv-1132, 2012 WL 12841484, at *1 (D. N.M. Nov. 20, 2012).

[48] *Id.* at *5.

17

non-parties directing them not to respond to the subpoenas [were] 'clear evidence' of his bad faith and vexatious behavior, evincing a deliberate effort to usurp the authority of the court."[49] That court also awarded sanctions against the attorney. And in *Handloser v. HCL America, Inc.,* the court sanctioned a party who communicated with a third-party subpoena recipient, reviewed the intended production in response to the subpoena, and discouraged the third-party from responding.[50] The *Handloser* court found the party's use of extra-judicial means to persuade the third party to withhold the production of documents constituted "improper interference with plaintiffs' subpoena" which warranted sanctions.[51] Thus, as the foregoing case law illustrates, not only were the responses that Ms. Kushner coordinated "the kind of objections you know you can't make in federal court,"[52] but also, her behavior in threatening Mr. Amedee, contacting the third-party subpoena recipients and coordinating the responses was improper and sanctionable.

### ii.     Ms. Kushner Violated Rule 8.4

Ms. Kushner's egregious conduct of threatening a third-party subpoena recipient violates Rule 8.4, which provides: "it is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."[53] It is clearly established that it is improper for an attorney to contact a third-party subpoena recipient to discourage him/her from responding to a lawfully issued subpoena. Courts routinely sanction attorneys who interfere with a third-party's response to a subpoena by contacting the third party and telling them not to respond.[54] Here, not

---

[49] No. 03-cv-5166, 2006 WL 2882580 at *10 (E.D.N.Y. Oct. 6, 2006).

[50] No. 19-cv-01242-LHK, 2020 WL 6205214 at *5 (N.D. Cal. Oct. 22, 2020).

[51] *Id.*

[52] *See* Exhibit L (June 17, 2021 Hearing Transcript on Motion to Transfer, *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, No. 21-ca-484 (W.D. Tex.)) at 9:9-11.

[53] WYO. RULES OF PROF'L CONDUCT FOR ATTORNEYS AT LAW, R. 8.4 (Wyo. Bar Ass'n 2019).

[54] *See Price*, 847 F. Supp. 2d at 794 (awarding sanctions when attorney contacted third-party subpoena recipients and advised them not to respond); *Fox Indus., Inc.*, 2006 WL 2882580 at *10 (awarding

only did Ms. Kushner improperly contact Mr. Amedee and his counsel, she went so far as to *threaten legal action* if he responded to the lawfully issued subpoena. Such action clearly violates Rule 8.4, insofar as it interferes with the administration of justice, and it warrants Ms. Kushner's disqualification from this action.

### B.  Ms. Kushner Misrepresented to TLC That She Represented the Subpoena Recipients

In addition to threatening Mr. Amedee, Ms. Kushner also misrepresented to TLC that she represented Mr. Hillin and the other Subpoena Recipients, with the exception of Mr. Amedee. Specifically, on May 28, 2021, Ms. Kushner advised that she was "now representing each of the third party witnesses," except for Amedee, and instructed that TLC "will not have further communications with any of Messrs. Baca, Hiller [*sic*], or Faraj, or with Ms. Torres-Guillen."[55] Ms. Kushner's representation to TLC regarding her purported clients prevented counsel for TLC from communicating with them further. Ms. Kushner's assertion was particularly harmful with regard to the subpoena issued to Ms. Torres-Guillen, herself an attorney, who had agreed to make a limited document production to TLC just days before.[56]

Curiously, although Ms. Kushner advised that she represents each of the Subpoena Recipients, she has played no role in the proceedings TLC initiated in various states to compel responses to the subpoenas. In fact, each of the Subpoena Recipients except Mr. Hillin hired an

---

sanctions and concluding an attorney's "letters to the non-parties directing them not to respond to the subpoenas [were] 'clear evidence' of his bad faith and vexatious behavior, evincing a deliberate effort to usurp the authority of the court."); *see also Handloser*, 2020 WL 6205214 at *5 (sanctioning a party who communicated with a third-party subpoena recipient, reviewed the intended production in response to the subpoena, and discouraged the third-party from responding).

[55] *See* Exhibit M (May 28, 2021 E-mail from Beth Kushner to TLC's attorneys Chris Ralston, Matthew Slaughter, and Lindsay Calhoun).

[56] *See* Exhibit N (June 1, 2021 E-mail from Matthew Slaughter to Beth Kushner memorializing substance of discovery conference with Ms. Torres-Guillen).

PD.34036726.7

attorney other than Ms. Kushner to represent them regarding enforcement of the subpoena.

Mr. Hillin's potential attorney-client relationship with Ms. Kushner appears to be more complicated.[57] Initially, Mr. Hillin unequivocally disclaimed that Ms. Kushner represented him with respect to the motion to compel his subpoena response in the Western District of Texas. Mr. Hillin, who is an attorney, appeared *pro se* and submitted that he was "not represented in [the] matter by Ms. Beth Kushner, who has made no appearance on behalf of the Respondent [Mr. Hillin]."[58] Mr. Hillin also represented in open court to Judge Mark Lane that Ms. Kushner did not in fact represent him for the purposes of his responses to TLC's subpoena issued to him.[59] Further, Mr. Hillin argued that the motions to compel and to transfer should be denied on procedural grounds because TLC had not conducted a discovery conference with him prior to the hearing. However, TLC made multiple attempts to conduct a discovery conference with Ms. Kushner, who it believed represented Mr. Hillin.[60] In fact, TLC could not communicate with Mr. Hillin directly because of Ms. Kushner's purported representation of him. Only after TLC's Motion to Transfer its Motion to Compel Mr. Hillin's subpoena response to this Court was granted did Ms. Kushner attempt to enroll on Mr. Hillin's behalf.[61] But mysteriously, Ms. Kushner did not appear at this Court's hearing on TLC's Motion to Compel as to Mr. Hillin.[62] Indeed, *no one* appeared on Mr.

---

[57] *See The Trial Lawyers College v. Gerry Spence's Trial Lawyers College at Thunderhead Ranch, et al.*, No. 21-mc-0155, R. Doc. 36 at 2 (noting "some confusion" about Mr. Hillin's counsel).

[58] *See* Exhibit O, (*The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 21-ca-484 (W.D. Tex.), Notice of Appearance, R. Doc. 5).

[59] *See* Exhibit L (June 17, 2021 Hearing Transcript on Motion to Transfer, *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, No. 21-ca-484 (W.D. Tx.) at 4:2-5:9; 11:16-11:18).

[60] R. Doc.193-6; *see also* Ex. M (May 28, 2021 E-mail from Beth Kushner to TLC's attorneys Chris Ralston, Matthew Slaughter, and Lindsay Calhoun).

[61] *See The Trial Lawyers College v. Gerry Spence's Trial Lawyers College at Thunderhead Ranch, et al.*, No. 21-mc-0155, R. Doc. 18.

[62] *See id.*, R. Doc. 32.

PD.34036726.7

Hillin's behalf, thus once again raising serious questions about the true nature of Mr. Kushner's purported attorney-client relationship with Mr. Hillin.[63] Ms. Kushner's games and misrepresentations warrant action by the Court.

### i. Ms. Kushner Violated Rule 4.1

Ms. Kushner's statement to TLC that she represents *each* of the Subpoena Recipients, with the exception to Mr. Amedee, violates Rule 4.1 because it was a false statement of material fact. Although Ms. Kushner has now enrolled on behalf of Mr. Hillin with respect to the motion to compel before *this* Court, the statements of Mr. Hillin to the Western District of Texas confirm that he was not represented by Ms. Kushner *at the time* she misleadingly advised TLC of her representation. Moreover, she has never acted as counsel for the remaining Subpoena Recipients in any of the proceedings related to enforcement of those subpoenas.

TLC was prejudiced by Ms. Kushner's false statement. As a result of Ms. Kushner's misleading assertion about her representation, TLC ceased communicating with the Subpoena Recipients, including Mr. Hillin. However, Mr. Hillin later took the position that TLC's motion to compel and to transfer should be rejected because TLC had failed to meet and confer *with him*; instead, TLC had attempted to meet and confer with Ms. Kushner based on her representation that she served as Mr. Hillin's counsel. Ms. Kushner's material misrepresentation about the scope of her representation of Mr. Hillin is further evidence of her nefarious deeds and provides further reason to disqualify her.

Additionally, as outlined above, Ms. Kushner used her purported role as counsel for Ms. Torres-Guillen as a sword to destroy Ms. Torres-Guillen's agreement to produce documents to TLC—an interference that led to no further discussions or negotiations with Ms. Kushner

---

[63] *See id.*

regarding the production, but simply delayed it for two months after Ms. Torres-Guillen's enrolled counsel eventually honored her original commitment to produce documents. In the context of a Motion to Compel another Subpoena Recipient, this Court noted the increased burdens (on both TLC and the Court) imposed by the failure to meaningfully confer about the subpoena responses— a failure which was largely driven by Ms. Kushner's statement that she represented each of the Subpoena Recipients and her subsequent refusal to meet and confer.[64] Ms. Kushner's false statement caused TLC to expend unnecessary time and resources chasing down the truth regarding the Subpoena Recipients' legal representation and holding unnecessary, duplicative discovery conferences.

### ii.     Ms. Kushner Violated Rule 8.4

Ms. Kushner's misrepresentation about the scope of her representation of the Subpoena Recipients constitutes conduct involving dishonesty, deceit, and misrepresentation, and that is prejudicial to the administration of justice. At least one learned treatise has explained, "A lawyer who purports to represent a party without authorization violates Rule 8.4(d)."[65] By misleading TLC to believe that she represented all of the Subpoena Recipients, each of whom is an attorney, Ms. Kushner interfered with TLC's progress towards agreement with each of the Subpoena Recipients about their response to the subpoenas. Unable to communicate directly with the Subpoena Recipients, and unable to conduct a discovery conference with Ms. Kushner because of her steadfast refusal to participate, TLC was forced to file four individual motions to compel the responses of the Subpoena Recipients. Her conduct was thus not only dishonest and deceiving, it

---

[64] *See The Trial Lawyers College v. Gerry Spence's Trial Lawyers College at Thunderhead Ranch, et al.*, No. 21-mc-0155, R. Doc. 36 at 15-16.

[65] *See* ANN. MODEL RULES OF PROF'L CONDUCT, American Bar Association (Bennett & Gunnarsson, eds. 9th ed. 2019).

also interfered with the administration of justice, unnecessarily multiplied these proceedings and needlessly expended judicial resources.

## CONCLUSION

Ms. Kushner should be disqualified from acting as counsel for the Defendants. Prior to her formal enrollment in this matter, Ms. Kushner acted in concert with the Defendants and as a conduit for Parris to post on the TLC listserv. Ms. Kushner's posts to the TLC and GSTLC listservs contributed to the confusion between TLC and GSTLC and furthered the Defendants' violations under the Lanham Act. Moreover, Ms. Kushner threatened a third party subpoena recipient in an attempt to prohibit him from responding to TLC's lawfully issued subpoena. Ms. Kushner also misrepresented the scope of her representation of other third party subpoena recipients and refused to conduct a discovery conference, inhibiting TLC's efforts to reach agreement with the Subpoena Recipients she purportedly represented and necessitating TLC to file four individual motions to compel, an opposition to a third party's motion to quash, and five motions to transfer those motions. For these and all of the foregoing reasons, TLC urges the Court to disqualify Ms. Kushner as well as impose sanctions for her egregious misconduct, deception, and flagrant violations of the Rules of Professional Conduct.[66]

Respectfully submitted,

**THE TRIAL LAWYERS COLLEGE**

---

[66] Should the Court grant the instant motion and award TLC attorneys' fees and costs, TLC will promptly submit a Motion to Set Attorneys' Fees and Costs and will consult with Defendants regarding the amount of those attorneys' fees pursuant to Local Rule 54.3.

PD.34036726.7

/s/ Christopher K. Ralston

Christopher K. Ralston, (La. Bar #26706)
(Admitted *pro hac vice*)
Lindsay Calhoun, (La. Bar #35070) (Admitted *pro hac vice*)
James Gilbert, (La. Bar # 36468) (Admitted *pro hac vice*)
Matthew R. Slaughter, (La. Bar # 37308)
(Admitted *pro hac vice*)
Phelps Dunbar LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: ralstonc@phelps.com
      lindsay.calhoun@phelps.com
      james.gilbert@phelps.com
      matthew.slaughter@phelps.com

and

Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-mail:pmurphy@wpdn.net
      zmason@wpdn.net

**ATTORNEYS FOR PLAINTIFF THE TRIAL LAWYERS COLLEGE AND THIRD PARTY DEFENDANTS JOHN SLOAN, MILTON GRIMES, MAREN CHALOUPKA, JAMES R. CLARY, JR., DANA COLE, AND ANNE VALENTINE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copy of the foregoing document has been served

electronically by transmission to an electronic filing service provider for service through the

Court's CM/ECF system to all counsel of record this 5th day of November, 2021.

/s/ Christopher K. Ralston

PD.34036726.7