FILED



3:33 pm, 3/29/22

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

THE TRIAL LAWYERS COLLEGE,
a nonprofit corporation,

    Plaintiff, Counterclaim Defendant,

v.

Case No. 1:20-cv-80-JMC

GERRY SPENCES TRIAL LAWYERS
COLLEGE AT THUNDERHEAD RANCH,
a nonprofit corporation,
THE GERRY SPENCE METHOD AT
THUNDERHEAD RANCH, INC.,
a nonprofit corporation, and
JOHN ZELBST,
JOSEPH H. LOW,
KENT SPENCE,
JOHN JOYCE, and
DANIEL AMBROSE, individuals,

    Defendants,

GERALD L. SPENCE, and
REX PARRIS, individuals,

    Defendants, Counterclaim Plaintiffs, Third-Party Plaintiffs,

v.

JOHN SLOAN,
ANNE VALENTINE,
JAMES R. CLARY, JR,
MILTON GRIMES,
MAREN CHALOUPKA,
DANA COLE, individuals,

    Third-Party Defendants.

# ORDER DENYING DEFENDANT JOYCE'S MOTIONS FOR RECONSIDERATION, GRANTING PLAINTIFF'S MOTION FOR SANCTIONS AND CONTEMPT

Defendant John Joyce wants the Court to reconsider two denials of his motions to stay discovery against him. Joyce filed the first Motion to Reconsider (Doc. 243) asking the Court to reverse the Magistrate Judge's Order Denying his Motion to Stay (Doc. 236) because he claims he cannot participate in this case's discovery until his pending criminal case in another jurisdiction ends. After the Magistrate Court's denial, Joyce moved to stay his scheduled deposition (Doc. 239) pending the Motion to Reconsider he planned to file about staying all discovery against him (Doc. 243). When the Magistrate Court denied his Motion to Stay the deposition (Doc. 240), Joyce skipped his deposition and later moved to reconsider that denial, too (Doc. 260). Meanwhile, Plaintiff TLC moved to hold Joyce in contempt for failing to attend his deposition and asked the Court to sanction Joyce and his lawyer for ignoring a court order (Doc. 254). For the following reasons, the Court denies both of Joyce's Motions to Reconsider and grants Plaintiff's Motion for Sanctions and Contempt against Joyce and his attorney.[1]

I. Background

Joyce faces criminal charges in another jurisdiction. Because of his pending charges, he asked the Court to stay discovery against him until his criminal case ends (Doc. 228). He claims sitting for a deposition or answering any written discovery in this civil case would prejudice his Fifth Amendment right in the criminal case because the two cases overlap so much that any information he provides could help the prosecution. The risk of prejudice is especially high, says Joyce, because Plaintiff is allegedly in cahoots with the criminal case's alleged victim. As proof of this accusation, Joyce points to Defendant Joseph Low's deposition where Plaintiff asked him

---

[1] On the date this order was entered, Joyce moved to withdraw both of his motions to reconsider, but the motion to withdraw is now moot in light of the entry of this order (Doc. 324).

if he currently possessed or controlled Joyce's firearms—an odd question to ask given this case involves trademark infringement. But on October 11, 2021, Joyce agreed to sit for a deposition with TLC on the first of November "as an agreed upon date for the deposition in the event our motion [to stay] is denied" (Doc. 255-4).

Ten days later, the magistrate judge denied Joyce's Motion to Stay after balancing Plaintiff's interest in efficient resolution of this case with Joyce's interest in protecting his Fifth Amendment rights and avoiding suffering prejudice in either case (Doc. 236). It used a six-factor test to determine the appropriate balance. The magistrate judge refused to stay proceedings against Joyce because none of the six factors weighed in favor of staying discovery against him. It repeatedly noted that this trademark dispute barely overlapped with Joyce's criminal charges about a domestic violence incident. But the magistrate judge did limit the questions Plaintiff could ask to protect Joyce's rights in his criminal case.

In response to the magistrate judge's order, Joyce's lawyer notified TLC's counsel that Joyce would "assert his Fifth Amendment privilege to any and all questions asked in this matter going forward," without citing any authority to support such a broad refusal to cooperate in this civil case (Doc. 255-5). TLC's counsel offered to conduct the deposition by Zoom so long as Joyce agreed to appear and planned to assert his Fifth Amendment privilege to every question asked (*Id.*). Joyce's lawyer confirmed Joyce would appear by Zoom and that "his counsel will invoke the 5th Amendment on his behalf" (*Id.*). TLC's counsel then reminded Joyce's lawyer that (1) the Fifth Amendment is a personal privilege that only Joyce can assert on his own behalf and (2) the privilege would not apply to all questions asked in the deposition and TLC reserved the right to contest Joyce's assertion of his Fifth Amendment privilege later with the Court (*Id.*).

The Friday before his scheduled deposition, Joyce's lawyer asked TLC to continue Joyce's deposition until TLC could provide her with a list of questions to approve that would allow Joyce to answer without infringing on his Fifth Amendment right (Doc. 255-6). Not surprisingly, TLC denied this request and told Joyce it planned to proceed with the deposition the following business day (Monday) (Doc. 255-7). As one last try, Joyce's lawyer told TLC she planned to move to stay the deposition on Friday (*Id.*). Undeterred, TLC again told her they planned to proceed with the deposition (*Id.*). Joyce then filed another Motion to Stay (Doc. 239), this time to postpone the deposition, while he moved for reconsideration of the denial (Doc. 243).

Finally, on Friday at 5:01pm—after business hours the business day before the scheduled deposition that the magistrate judge had refused to stay—Joyce's lawyer notified TLC that Joyce wouldn't attend his deposition (*Id.*). As promised, Joyce did not show up to the deposition. The magistrate judge denied the second Motion to Stay Monday morning (Doc. 240). Plaintiff then held the deposition anyway and asked questions meant for Joyce, including asking if Joyce could authenticate text messages between him and the criminal case's alleged victim discussing the listserv at issue (Doc. 243-1). Plaintiff later moved to hold Joyce in contempt and asked the Court to award sanctions against Joyce, his counsel, and/or counsel's law firm for failing to attend the deposition and for allegedly trying to evade Plaintiff's discovery requests throughout this litigation (Doc. 254; Doc. 255).

II. Applicable Law

A. Standard of Review for Magistrate Judge's Orders

The Court can reconsider and then modify or set aside any "clearly erroneous or contrary to law" pretrial order from the magistrate judge. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

4

A decision is "clearly erroneous" when it leaves the Court with a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

B. <u>When to Stay Civil Proceeding for Pending Criminal Charges</u>

To receive a stay of proceedings because of parallel criminal proceedings, the movant must show "a clear case of hardship or inequity if even a fair possibility exists that the stay would damage another party." *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) (quotation marks and citations omitted). "The Constitution does not generally require a stay of civil proceedings pending the outcome of the criminal proceedings, absent substantial prejudice to a party's rights." *Id.* (citations omitted). The defendant has "no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id.* (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995)). But the Court should consider how discovery may implicate the defendant's Fifth Amendment privilege and can stay proceedings accordingly. *Id.* (citing *Keating*, 45 F.3d at 324). It can also stay proceedings for other reasons, like to prevent another party from "taking advantage of broader civil discovery" or the revelation of the defendant's criminal defense strategy to the prosecution. *Id.* (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)).

In *Kreisler*, the Tenth Circuit affirmed the district court's denial to stay proceedings because the civil and criminal cases "minimal[ly]" overlapped. *Id.* at 1081. The criminal case charged Kreisler with embezzlement from her former employer, but the civil case concerned a provision of Kreisler's severance agreement with the former employer. *Id.* at 1073–74, 1081. The two cases were more "simultaneous" than "parallel," and so the Tenth Circuit agreed with the district court's conclusion that the cases insufficiently overlapped. *Id.* at 1081. Kreisler also failed to provide "concrete examples" of how the district court's denial "unfairly prejudiced" her. *Id.*

5

These two insufficiencies combined—overlap and prejudice—proved that the district court properly denied the motion to stay. *Id.* at 1081–82 (affirming the district court's judgment).

*Kreisler* gives some guidance on how to evaluate the defendant's Fifth Amendment rights against a speedy resolution of the civil case. But other district courts in the Tenth Circuit use variations of a common factor test to determine "the extent to which a party's Fifth Amendment rights are implicated," as *Kreisler* instructs. *Id.* at 1080; *see United States v. Mendoza*, 487 F. Supp. 3d 1118, 1122 (D.N.M. 2020); *Berreth v. Frazee*, No. 19-cv-00027, 2019 WL 10250759, at *1 (D. Colo. Apr. 1, 2019); *Powell Valley Health Care, Inc. v. Healthtech Mgmt. Servs., Inc.*, No. 12-cv-42-f, 2012 WL 12860569, at *1 (D. Wyo. Aug. 1, 2012). These factors include: (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal case, including whether there has been an indictment; (3) the interest of and prejudice to the plaintiff; (4) the interests of and burden on the defendant; (5) the interest of the court; and (6) the public interest. *Fine v. Tumpkin*, No. 17-cv-02140, 2018 WL 317466, at *3 (D. Colo. Jan. 8, 2018).

C. <u>Standard for Sanctioning and Holding People in Contempt</u>

To prevail in a civil contempt proceeding, the movant must show by clear and convincing evidence that "a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998). If the movant can show those three facts, then the defendant must show either he substantially complied with the order or could not comply with it. *Premium Nutritional Prod., Inc. v. Ducote*, 571 F. Supp. 2d 1216, 1217 (D. Kan. 2008) (citing *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008)). But "[t]he absence of wilfulness does not relieve [a party] from civil contempt." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

Courts impose civil contempt for two "remedial purposes: (1) to compel or coerce obedience to a court order, and (2) to compensate the [movant] for injuries resulting from the [defendant's] noncompliance." *See Entech Sys., Inc. v. Bhaskar*, 72 F. Supp. 2d 1272, 1276 (D. Kan. 1999). Because of the severe nature of a contempt finding, a court should only impose it "when necessary to sustain the authority of the court." *N.L.R.B. v. Shurtenda Steaks, Inc.*, 424 F.2d 192, 194 (10th Cir. 1970). Once the movant has established the elements for civil contempt by clear and convincing evidence, he or she need only prove damages (sanctions) by a preponderance of the evidence. *Reliance*, 159 F.3d at 1318.

The Federal Rules provide for sanctions against "any person who impedes, delays, or frustrates the fair examination of [a] deponent." Fed. R. Civ. P. 30(d)(2). They also authorize the Court to order sanctions against a party who fails to attend his own properly noticed deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). The Rules specifically note that finding the discovery objectionable is not a valid excuse to skip a deposition, unless the party seeking to avoid the deposition has a motion pending for a protective order under Rule 26(c). *Id.* at 37(d)(2).

The Court can also impose costs and attorneys' fees on any attorney who "multiplies the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927. The Court can authorize § 1927 sanctions for attorneys who intentionally or recklessly disregard their duties to the court or who "act[] in the teeth of what [they] know[] to be the law." *See Braley v. Campbell*, 832 F.2d 1504, 1511–12 (10th Cir. 1987). The Tenth Circuit provides four situations that warrant § 1927 sanctions: (1) when the attorney acts cavalier or with the determination to mislead the court; (2) when the attorney intentionally acts without a plausible basis; (3) when the entire course of the proceedings was unwarranted; or (4) when certain discovery is substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay and to increase the costs

7

of litigation. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998). Directing a deponent not to answer questions in a deposition based on a faulty and unsupportable view of the law constitutes acting without a plausible basis. *See Starlight Intern. Inc. v. Herlihy*, 186 F.R.D. 626, 650 (D. Kan. 1999).

Sanctions mainly serve to "deter attorney and litigant misconduct, not to compensate the opposing party for its costs" in the litigation. *White v. Gen. Motors Corp., Inc.*, 908 F.2d 675, 684 (10th Cir. 1990). Given the sanctions' primary purpose, the sanction "should be the least severe of those available . . . ." *Herlihy*, 186 F.R.D. at 647 (citing *White*, 908 F.2d at 685).

III. <u>Discussion</u>

A. <u>The Court Denies Joyce's Motions to Reconsider</u>

Joyce argues in his Motion to Reconsider (Doc. 243) that the magistrate judge used an "incorrect legal standard" in its order (Doc. 236) to analyze his Motion to Stay (Doc. 228) because the magistrate judge looked to the factors set forth in other district courts within the Tenth Circuit. While *Kreisler* controls, the magistrate judge did not reach a conclusion "contrary to law" by considering factors used by other courts within this circuit. At bottom, the magistrate judge needed to determine how discovery might prejudice Joyce—a case-by-case determination. *See Mendoza*, 487 F. Supp. 3d at 1122. It did exactly that with a factor test that other district courts within this circuit have used for the same inquiry.

And in any event, Joyce has not sufficiently distinguished his situation from the defendant's in *Kreisler*. Like that case, "there [is] limited overlap between the issues and evidence in the civil and criminal cases." *Kreisler*, 563 F.3d at 1081. As the magistrate judge noted, domestic violence has nothing to do with trademark infringement (Doc. 236).

But Joyce insists discovery, and especially a deposition, prejudices him. He points to the alleged plotting between TLC and the alleged victim in his criminal case as proof TLC intends to "tak[e] advantage of broader civil discovery rights"—a reason to stay civil proceedings. *Kreisler*, 563 F.3d at 1080. The magistrate judge already minimized that risk, though, by limiting the questions TLC could ask Joyce in a deposition (Doc. 236) (prohibiting Plaintiffs from inquiring into Joyce's location or actions surrounding the criminal allegations or his relationship with the alleged victim in any way). Given the minimal overlap between the two cases, the Court finds the magistrate judge's protection sufficient to prevent any inappropriate questioning.

Joyce argues the magistrate judge's limitations do not adequately protect him because in the deposition he skipped, TLC noted for the record that if Joyce had been there, it would have asked him to authenticate text messages between him and the alleged victim. But the magistrate judge's Order prohibited TLC from asking about Joyce's *relationship* with the alleged victim; it did not prohibit *any* questions involving the alleged victim. Joyce cannot expect TLC to avoid any discussion of the alleged victim given her alleged knowledge of Joyce's involvement in this alleged trademark infringement.[2]

Finally, Joyce asks for a protective order should the Court deny his Motions to Reconsider. The Court finds a protective order unnecessary. For one thing, Joyce moved for a protective order at the end of his Motion to Reconsider without providing any authority, other than quoting the rule itself, to give the Court a basis to grant the request. This alone is adequate reason to deny it. For another, Joyce has failed to explain why the magistrate judge's order does not sufficiently protect his Fifth Amendment rights—given we already concluded that TLC did not in fact violate the

---

[2] Although Joyce did not request this, the Court notes that the magistrate judge could preside over his deposition to make sure TLC complies with its earlier order (Doc. 236).

9

magistrate judge's order when they asked about authenticating certain text messages. The Court need not force Plaintiffs to negotiate the parameters of the deposition questions with Joyce's counsel.

> B. The Court Grants Plaintiff's Motion to Hold Joyce in Contempt and Sanction Joyce and His Counsel

TLC asks the Court to hold Joyce in contempt for skipping his scheduled deposition after the magistrate judge denied his Motions to Stay. TLC also asks the Court to sanction Joyce, his lawyer, and his lawyer's firm by awarding attorneys' fees and the costs incurred by filing these motions and appearing for the deposition after Joyce notified TLC that he would not be coming at the last minute (Doc. 254).

Joyce fails to explain skipping his deposition after the magistrate judge twice denied his motions to stay, other than to cite other circuits' authority for when to hold a party in contempt and claiming he does not qualify under those cases (Doc. 300). Joyce justified his actions by claiming to protect his Fifth Amendment right (Doc. 243). His defense poses several problems, though. First, Joyce's lawyer's attempt to assert the privilege for him contravenes Supreme Court precedent. *See Couch v. United States*, 409 U.S. 322, 328 (1973) ("It is important to reiterate that the Fifth Amendment privilege is a personal privilege . . . ."). And given how unrelated these two cases are, the Court can imagine at least some of TLC's questions Joyce could answer without "reasonable cause to apprehend danger [of incriminating himself] from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). This fact belies Joyce's assertion that he would have pleaded the Fifth to "any and all questions asked" at the deposition. But even if Joyce had legitimate reason to refuse to answer every question, he should have showed up to the deposition. The Court finds inexcusable Joyce skipping a properly noticed deposition—after the magistrate

judge denied his motions to stay *twice*—just because the defendant fears the questions might force him to invoke his Fifth Amendment privilege. *See* Fed. R. Civ. P. 37(d)(2).

Joyce insists that he did not disobey a court order because TLC never moved to compel him to sit for his deposition (Doc. 300). A motion to compel would have just added to the litigious nature of this issue and is unnecessary because the magistrate judge already denied both of Joyce's motions to stay. Acting like the magistrate judge's denials are not orders to attend his deposition puts form over substance, because in its original denial, the magistrate judge set parameters around what TLC could ask Joyce in his deposition, thereby assuming Joyce would attend. The facts leave no doubt that a valid court order existed, Joyce knew of that order, and he disobeyed that order. Indeed, Joyce can in no way show he substantially complied with the order—demanding the other side's deposition questions beforehand does not count as substantial compliance to sit for a properly noticed deposition that the magistrate judge refused to stay. Based on these actions, and because courts use contempt to command compliance with court orders, the Court holds Joyce in contempt. Joyce cannot ignore court orders without consequences.

The Court also sanctions Joyce's lawyer for advising him not to show up to his deposition and misleading TLC that her client would show up—even if just to plead the Fifth to every question—until after the end of the business day before the scheduled deposition. *See Lammle v. Ball Aerospace & Techs. Corp.*, No. 11-cv-03248, 2013 WL 1900563, at *2–3 (D. Colo. May 7, 2013) (sanctioning party for failing to appear for a properly noticed deposition after emailing the other side four days before the deposition letting it know he would not appear for a deposition until the court ruled on his objection). Joyce's lawyer "impede[d], delay[ed], [and] frustrate[d] the fair examination of [a] deponent" by insisting on receiving Plaintiff's deposition questions ahead of time and advising her client to skip his properly noticed deposition. Fed. R. Civ. P. 30(d)(2). And

11

despite her representations that she was simply trying to "protect her client's rights" (Doc. 300), Joyce's lawyer directed her client not to answer questions in a deposition based on a faulty and unsupportable view of the law—in other words, sanctionable conduct. *See Herlihy*, 186 F.R.D. at 650.

Because courts impose sanctions to deter misconduct, the Court will only award sanctions in an amount that will deter Joyce or his lawyer from continuing their sanctionable behavior. Thus, the Court orders TLC to provide an affidavit of fees and costs according to Rule 37 and § 1927 within twenty days of this order. Within fifteen days of TLC filing its affidavit, Joyce and his lawyer may file a response. Based on that affidavit and the response, the Court will fashion an appropriate remedy.

## IV.     Conclusion

The Court DENIES Defendant's Motions for Reconsideration (Doc. 243; Doc. 260). The Court GRANTS Plaintiff's Motion for Contempt and Sanctions (Doc. 254).

IT IS SO ORDERED.

Entered for the Court
this the 29th day of March, 2022

/s/ Joel M. Carson III
Joel M. Carson III
United States Circuit Judge
Sitting by Designation