**FILED**

3:34 pm, 3/29/22

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

THE TRIAL LAWYERS COLLEGE,
a nonprofit corporation,

       Plaintiff, Counterclaim Defendant,

v.                                                                                    Case No. 1:20-cv-80-JMC

GERRY SPENCES TRIAL LAWYERS
COLLEGE AT THUNDERHEAD RANCH,
a nonprofit corporation,
THE GERRY SPENCE METHOD AT
THUNDERHEAD RANCH INC,
a nonprofit corporation, and
JOHN ZELBST,
JOSEPH H. LOW,
KENT SPENCE,
JOHN JOYCE, and
DANIEL AMBROSE, individuals,

       Defendants,

GERALD L. SPENCE, and
REX PARRIS, individuals,

       Defendants, Counterclaim Plaintiffs, Third-Party Plaintiffs,

v.

JOHN SLOAN,
ANNE VALENTINE,
JAMES R. CLARY, JR,
MILTON GRIMES,
MAREN CHALOUPKA,
DANA COLE, individuals,

       Third-Party Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

On October 26, 2021, Plaintiff The Trial Lawyers College filed a Third Amended Verified Complaint (Doc. 238). Defendants Gerald L. Spence, Kent Spence, Gerry Spence's Trial Lawyers College at Thunderhead Ranch, Rex Parris, Joseph H. Low, The Gerry Spence Method at Thunderhead Ranch Inc., and John Zelbst filed an Answer and Third-Party Complaint with counterclaims (Doc. 263). Plaintiff and Third-Party Defendants then filed a Motion to Dismiss Counterclaims and Third-Party Claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (Doc. 290). Defendants responded to the motion by claiming they have proven the Court has jurisdiction to consider each counterclaim (Doc. 308). For the reasons stated below, the Court grants Plaintiff and Third-Party Defendants' Motion to Dismiss Counterclaims and Third-Party Claims.

## I.    Background

Plaintiff alleges the following facts in its Complaint. Plaintiff is a nonprofit corporation that provides training programs to lawyers. Defendant Gerald L. Spence founded Plaintiff in 1993 and remained affiliated with it.[1] Defendants John Zelbst, Rex Parris, Joseph H. Low, and Kent Spence have also affiliated with Plaintiff since the 1990s. Plaintiff began operating in 1994 at the Thunderhead Ranch in Dubois, Wyoming. In 2012, Plaintiff applied for and received two federally registered trademarks. The first, Registration Number 4,197,908 (the '908 Mark) is a trademark for "TRIAL LAWYERS COLLEGE" in standard characters, without claim to any particular font,

---

[1] Although this case involves two defendants with the last name Spence, for purposes of this order, "Defendant Spence" refers to Defendant Gerald L. Spence.

style, size, or color.  The second, Registration Number 4,198,054 (the '054 Mark) is a trademark for a stylized design of a cloud with a lightning bolt.

Plaintiff sued in federal district court alleging Defendants violated the Lanham Act, 15 U.S.C. §§ 1114, *et seq.*, and 15 U.S.C. § 1125(a).  Plaintiff alleges Defendants infringed its federally registered trademarks and engaged in unfair competition, false designation of origin, passing off, and false advertising related to Plaintiff's federally registered trademarks.  Plaintiff also alleges Defendants violated the Defend Trade Secrets Act, 18 U.S.C. § 1836, and Wyo. Stat. Ann. § 40-24-101, *et seq.*, by accessing and misusing Plaintiff's confidential and proprietary computer files.  Plaintiff further alleges Defendant the Gerry Spence Method's agents infringed on Plaintiff's copyrighted materials, including a trial skills outline.  And, finally, Plaintiff alleges Defendants conspired to engage in this tortious behavior.

The Court granted Plaintiff's application for a temporary restraining order and later, after a hearing, granted Plaintiff's motion for a preliminary injunction.[2]  The Court restrained and enjoined Defendants Gerry Spence's Trial Lawyers College at Thunderhead Ranch, Gerald Spence, Rex Parris, and Joseph Low from (1) infringing on either of Plaintiff's Marks and (2) engaging in any false designations of origin, passing off, false and misleading statements, false advertising, and/or unfair competition related to Plaintiff's Marks and Plaintiff's services.  This meant those Defendants should not: (1) use Plaintiff's Marks to market or promote itself as if it is in fact "The Trial Lawyers College," (2) use Plaintiff's Marks to market its faculty as faculty of "The Trial Lawyers College," (3) purport definitively to be Plaintiff's true board unless and until

---

[2] The United States Court of Appeals for the Tenth Circuit recently affirmed this order for the most part but reversed the Court's directive for Defendants to remove sculptures at the Thunderhead Ranch.  *See Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, No. 20-8038, 2022 WL 244079 (10th Cir. Jan. 27, 2022).

such time as the state court makes a ruling to that effect, or (4) use linguistic plays on words or various terms associated with The Trial Lawyers College to create or cause confusion as to whether Defendants are acting as The Trial Lawyers College.  The Court defined the scope of the injunction to make clear that the Preliminary Injunction did not prohibit Defendants from: (1) referencing "The Trial Lawyers College" itself; (2) using the name "Gerry Spence" or "Thunderhead Ranch"; (3) referencing the fact that Defendants are alumni of Plaintiff and have a historical association with Plaintiff; (4) referencing or describing their *claimed*, but not judicially recognized, status as set forth in the ongoing state court litigation to challenge the control of the Board; and (5) making commentary regarding or fair use of Plaintiff's Marks.

Defendants Gerald Spence and Rex Parris filed counterclaims against Plaintiff and third-party claims against Plaintiff's board members.   In their combined Third-Party Complaint, Defendants allege that Defendant Spence founded and created Plaintiff in 1994 and that Plaintiff "has long used Gerry Spence's name and likeness, with his permission, to promote and provide TLC with the necessary skills, experience, and credibility that TLC has used and benefited from over the years."  According to Defendants, in late 2019, "a schism began to grow among TLC's board members over various issues concerning TLC's governance, direction, vision and finances." Because of the schism between the two factions, the Spence Foundation evicted Plaintiff from Thunderhead Ranch for failing to operate in compliance with its Mission Statement and directed Plaintiff to cease and desist from using the names "Gerry Spence," "Spence," and "Thunderhead Ranch" in connection with its operations.  The Spence Foundation directed Plaintiff to remove all photos, videos, and references of and to Gerry Spence from Plaintiff's website, social media sites, alumni sites, course materials, marketing materials, promotional materials, and all other digital and print media using Spence's name and likeness to promote Plaintiff.

Defendants contend that after they sued Plaintiff in state court, Third-Party Defendants "orchestrated a coup in an attempt to wrest total control of TLC from the Spence Group." Defendants allege that the Third-Party Defendants called a special board meeting on May 6, 2020, via Zoom. They assert that Plaintiff's bylaws require a 2/3 vote of the board to remove a member. So Third-Party Defendants allegedly needed seven votes to oust a member, but they had only six votes at most. Third-Party Defendants therefore allegedly devised a scheme to remove Defendants "using an unlawful end-around of the 2/3 majority requirement." Defendants assert Third-Party Defendants purported to pass a motion to amend Plaintiff's bylaws to change the number of board members to no more than eleven. The total board members at that time was eleven, but Defendants allege that Third-Party Defendants declared that this new bylaw effectively removed all members from the board, making them all up for election at the May 6 meeting. Third-Party Defendants reelected the six of themselves back to the board. Defendants objected to the new bylaw, objected to the purported effect of removing board members, and objected to Third-Party Defendants' election of voting themselves back onto the board. Defendants contend the May 6 election was a sham and unlawful under Plaintiff's bylaws. Defendants contend no legal change to the board membership occurred as of that date.

One week after the May 6 elections, Plaintiff filed this civil action. Defendants allege that Third-Party Defendants sued in Plaintiff's name without authority to do so. Defendants contend Third-Party Defendants were acting on their own behalves and for their personal interests alone. Defendants allege that they have a lawful association with Plaintiff and may use Plaintiff's Marks.

On July 14, 2020, Defendants noticed a TLC board meeting. They allege this tracked Plaintiff's bylaws to conduct elections for board members whose terms had expired. Defendants claim to have given Third-Party Defendants notice of the meeting, but they chose not to attend.

Defendants then conducted elections for the board and voted to replace Third-Party Defendants. So Defendants allege that none of the Third-Party Defendants remained on Plaintiff's board after July 14, 2020.

Defendants allege that Third-Party Defendants have tried to benefit from Defendant Spence's name and likeness to promote "their 'version' of TLC." This includes videos of him on Plaintiff's Facebook page where Plaintiff seeks donations. Defendants complain that Plaintiff's executive director exploited his name on her LinkedIn page. Defendants also allege that Third-Party Defendants, acting as Plaintiff, solicited monetary donations by email purporting to preserve Defendant Spence's dream and making false statements about his wishes.

Defendants argue in their Third-Party Complaint that "it is no less false or misleading for [Third-Party Defendants] to claim that they are the 'true Board' of TLC than it would be for [Defendants], given that the State Court Action remains pending and has not made any ruling to that effect." Defendants believe that Third-Party Defendants have wrongfully continued to purport to act on behalf of and as Plaintiff and to represent themselves as Plaintiff's definitive, true board. Defendants also complain that Third-Party Defendants wrongfully have maintained control of Plaintiff's funds. Defendants make these allegations even after the state court decided who encompassed the "true board." *See Trial Laws. Coll*., 2022 WL 244079, at *1 ("[T]he state court resolved the dispute over Board control . . . . [T]his conclusion effectively left the Sloan Group in control of the Board, mooting this part of the requested stay [to obtain a state court ruling before proceeding in federal court].").

As to Plaintiff's Marks, Defendants contend that Plaintiff misrepresented to the USPTO that no other person had the right to use the Thunderhead Ranch cattle brand mark in commerce. Defendants allege that Defendant Spence granted Plaintiff a license to use the Thunderhead Ranch

cattle brand mark but did not authorize its filing with the United States Patent and Trademark Office.

In Count I of the Third-Party Complaint, Defendants allege that Plaintiff and Third-Party Defendants violated the Lanham Act, 15 U.S.C. §1125(a)(1)(A), by using Defendant Spence's name in connection with services and in promotional materials, Plaintiff's Facebook page, and Plaintiff's employees' LinkedIn profiles.  They contend that Plaintiff's use of his name creates a likelihood of confusion or mistake about his affiliation with Plaintiff and Plaintiff's board.  In Count II, Defendants allege that Plaintiff and the Third-Party Defendants violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by using and exploiting Defendant Spence's name in their advertising and solicitation of funds without his permission.  In Count III, Defendants allege Plaintiff and Third-Party Defendants wrongfully appropriated Defendant Spence's name and likeness in violation of Wyoming law.  Finally, in Count IV, Defendants Spence and Parris allege Third-Party Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), by engaging in false and misleading descriptions and representations of fact about Plaintiff and their affiliation with Plaintiff by using Plaintiff's Marks, controlling Plaintiff's website, controlling Plaintiff's listserv, controlling Plaintiff's finances, making many public statements, and filing and maintaining this lawsuit.  Defendants accuse Third-Party Defendants of falsely cloaking themselves as Plaintiff's true board.

Plaintiff and Third-Party Defendants sought to dismiss the counterclaims and third-party claims on several grounds.  First, they claim Defendants failed to establish personal jurisdiction over each third-party defendant given their insufficient contacts with Wyoming.  Plaintiff and Third-Party Defendants also argued that Defendants' counterclaims fail to state any claims upon which the Court can grant relief based on the individual plaintiffs because Defendants failed to

specify how they—rather than TLC generally—used Spence's name or likeness.  And, they argue, the Lanham Act does not protect Defendant Spence from having his name or likeness used because he never trademarked them.  Plaintiffs and Third-Party Defendants also note that neither Defendant Spence nor Parris pleaded any injury based on their alleged behavior—an element of a claim under the Lanham Act.  Plaintiff and Third-Party Defendants dispute Defendants' allegations that they are presenting false or misleading advertising, given Defendant Spence's history of association with TLC, and dispute any existence of confusion among consumers.  They also point out that Wyoming does not provide for a tort for appropriation of name or likeness, thereby foreclosing that counterclaim.  Finally, Plaintiff and Third-Party Defendants note the state court's determination that Third-Party Defendants constitute the "true board" refutes Defendants' last counterclaim that Third-Party Defendants are falsely holding themselves out as such.

II.     <u>Applicable Law</u>

A.     <u>Motion to Dismiss</u>

1.   <u>Rule 12(b)(1)</u>

A party may move to dismiss an action for lack of subject matter jurisdiction under Rule 12(b)(1).  The party invoking the Court's jurisdiction bears the burden of establishing federal jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  And because the Court is a court of limited jurisdiction, a presumption arises against the existence of federal jurisdiction.  *Id.*  A trial court may consider evidence properly before it without converting the proceeding to one for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

2.   Rule 12(b)(2)

When a non-resident defendant raises a challenge under Federal Rule of Civil Procedure 12(b)(2) to a court's exercise of personal jurisdiction over him, the plaintiff bears the burden of proving the existence of the grounds for jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). At this stage of the litigation, a plaintiff need only make a prima facie showing of personal jurisdiction. *Id.*

The Court's analysis begins with two questions. "First, [the Court] ask[s] whether any applicable statute authorizes the service of process on defendants." *Id.* at 1070. "Second, [the Court] examine[s] whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Id.* Because the federal statutes at issue do not provide for nationwide service of process, Rule 4(k)(1)(A) commands the Court to apply the law of the state in which the Court sits. *Id.* Under its "long-arm" statute, Wyoming has enabled its courts to exercise personal jurisdiction over non-residents on any basis not inconsistent with the Wyoming or United States Constitution. Wyo. Stat. § 5-1-107(a). Because the Wyoming long-arm statute is coextensive with the full reach of due process, the first, statutory, inquiry effectively collapses into the second, constitutional, analysis. *Dudnikov*, 514 F.3d at 1070.

The exercise of personal jurisdiction over a non-resident defendant is proper only so long as "minimum contacts" exist between the defendant and the forum state, "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov*, 514 F.3d at 1070. If

the defendant's contacts with the forum state provide the basis for the suit, those contacts may establish specific jurisdiction.

### 3.  Rule 12(b)(6)

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept as true all facts in the pleading.  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Although Rule 8's pleading standard "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, a complaint does not suffice "if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  It follows, then, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  So the Court will "disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."  *Collins*, 656 F.3d at 1214.

### III.  Analysis

### A.  Motion to Dismiss

Plaintiff and Third-Party Defendants seek to dismiss the Third-Party Complaint's counterclaims on three grounds: lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted.[3]  The Court first addresses whether

---

[3] In a one-paragraph argument, Defendants assert Rule 12 prohibits Plaintiff from moving to dismiss because it moved to strike the amended pleading.  But Plaintiff has not moved to strike

it has personal jurisdiction over Third-Party Defendants and, then, whether the Court must dismiss the remaining claims for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted.

      1.  <u>Third-Party Defendants' Motion to Dismiss for Lack of Personal Jurisdiction</u>

Third-Party Defendants argue that the Court lacks personal jurisdiction over them because the allegations in the Third-Party Complaint against them relate to their status as Plaintiff's board members. Defendants counter that Third-Party Defendants mischaracterize the allegations. Defendants allege that Third-Party Defendants have claimed falsely to act as and for Plaintiff and that Third-Party Defendants, as individuals, have appeared voluntarily before the Court and other Wyoming tribunals in connection with the various disputes between Plaintiff and Defendants. Defendants also make jurisdictional allegations against Third-Party Defendants that they have executed declarations or provided testimony in that capacity in this and other proceedings. Defendants contend Third-Party Defendants' participation in these civil actions waives personal jurisdiction objections. And Defendants posit that each Third-Party Defendant has expressly aimed intentional acts into Wyoming—individually and through their alleged collective conspiracy of "perpetrating a fraud upon this court in purporting to litigate this action in Wyoming under the false pretense they are TLC, when they have no authority to act for TLC, and have thus harmed [Defendant]s here by virtue of this lawsuit." Finally, Defendants allege Third-Party Defendants have allowed Plaintiff to use Defendant Spence's name, likeness, image, and mark without permission and have made false and misleading representations to create a likelihood of confusion about an ongoing association between Plaintiff and Defendants.

---

anything since filing the Third Amended Complaint. The Court thus dismisses this argument as moot because it related to an earlier complaint and motion.

In the Tenth Circuit, "[w]here the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction." *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.3d 1518, 1527 (10th Cir. 1987). Indeed, where individual defendants are "mere board members," a plaintiff's allegations fail to allege that board members purposefully directed their activities toward the jurisdiction. *See Miles v. Lawrence*, Nos. 10-cv-34, 10-cv-104, 10-cv-120, 2011 WL 13086566, at *12 n.4 (D. Wyo. Apr. 15, 2011) (unpublished) (finding personal jurisdiction present, but noting that unlike being a mere board member, the defendant had been the vice president, chief operating officer, and general counsel); *see also Cascade Fund, LLC v. Absolute Cap. Mgmt. Holdings, Ltd.*, 707 F. Supp. 2d 1130, 1143 (D. Colo. 2010) (noting that board member status, without more, does not establish personal jurisdiction).

Plaintiff, Defendants, and Third-Party Defendants acknowledge that Third-Party Defendants control Plaintiff's actions. Indeed, the state court has settled the dispute over who is legally exercising control over Plaintiff: Third-Party Defendants. *See Trial Laws. Coll.*, 2022 WL 244079, at *1 ("[T]he state court resolved the dispute over Board control . . . . [T]his conclusion effectively left the Sloan Group in control of the Board, mooting this part of the requested stay [to obtain a state court ruling before proceeding in federal court]."). Defendants allege in their Third-Party Complaint, however, that Third-Party Defendants have improperly asserted control over Plaintiff—meaning that their actions as board members are fraudulent and constitute individual torts.[4]

---

[4] The Court notes that it may consider evidence outside the pleadings on a Rule 12(b)(2) dismissal request. *Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1165 n.9 (D. Colo. 2016). The Court has noted in prior orders that Defendants' position on Plaintiff has not been a model of consistency.

Despite Defendants' arguments to the contrary, both the Wyoming state court and the Tenth Circuit have now confirmed that Third-Party Defendants are Plaintiff's board. *See Trial Laws. Coll.*, 2022 WL 244079, at *1. Thus, no court, state or federal, has found Third-Party Defendants illegal or imposter board members. The mere fact that a different faction of the board disputes the legality of their appointment does not subject non-resident board members to personal jurisdiction in this state. Otherwise, anyone seeking to hale a non-resident board member into court could simply say his or her status as a board member is invalid and that, as a result, he or she is acting on his or her own behalf and is subject to suit in the forum. Defendants point the Court to no such case law. Here, all the allegations Defendants assert against Third-Party Defendants relate to their actions taken as members of Plaintiff's board. And such allegations are insufficient to establish personal jurisdiction. *See Cascade Fund*, 707 F. Supp. 2d at 1143. Defendants needed to allege specific acts by Third-Party Defendants sufficient to establish that "minimum contacts" exist between Third-Party Defendants and Wyoming, "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. They did not and so the Court cannot exercise personal jurisdiction over Third-Party Defendants.

Nor have Third-Party Defendants waived personal jurisdiction by defending Plaintiff in the state court action or by suing Defendants to enjoin them from allowing a newly formed nonprofit entity to use Plaintiff's Marks. Third-Party Defendants sued on behalf of Plaintiff as board members fulfilling board members' duties to defend the corporation. *See Conlee Const. Co. v.*

---

Here are just a few examples. In their Third-Party Complaint, as well as in emails on the listserv, Defendants either have asserted or appeared to assert that they are Plaintiff's true board and held officer elections without the other faction. But another Defendant also testified at a court hearing that he believed both factions remained members of Plaintiff's board. And the Spence Foundation evicted Plaintiff from Thunderhead Ranch and Defendants created a new nonprofit entity that undisputedly used Plaintiff's Marks. When Defendants sued Plaintiff in state court, Third-Party Defendants, as board members, defended Plaintiff.

*Cay Const. Co.*, 221 So. 2d 792, 795 (Fla. Dist. Ct. App. 1969) (noting that someone may sue or defend on behalf of a corporation to preserve urgent vital corporate interests); *see also Regal Cleaners & Dyers, Inc. v. Merlis*, 274 F. 915, 916 (2d Cir. 1921). That does not mean Third-Party Defendants, as individuals, consented to personal jurisdiction over themselves. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The personal jurisdiction requirement recognizes and protects an *individual* liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of *individual* liberty." (emphasis added)). As a result, only Plaintiff as the corporate entity can be said to have waived any objections to personal jurisdiction by suing, not Third-Party Defendants.

Defendants have failed to show Third-Party Defendants have minimum contacts with Wyoming in their individual capacity such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Thus, the Court determines it lacks personal jurisdiction over Third-Party Defendants and dismisses all third-party claims.

Defendants' complaint requires the Court to explain which claims are third-party claims, though. Defendants filed one document entitled "Answer to Third Amended Complaint and Counterclaims/Third-Party Claims." (Doc. 263). But they failed to separate counterclaims from third-party claims, instead only listing each "counterclaim" against the "Sloan Counterclaim Defendants," combining Plaintiff and Third-Party Defendants. Because the Court dismisses all third-party claims, we will only consider true counterclaims against Plaintiff in our remaining analysis. This means the Court will dismiss Counterclaim IV—violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)—for lack of personal jurisdiction because that claim only describes the Third-Party Defendants' allegedly illegal conduct in purporting to constitute Plaintiff's "true board." The other three counterclaims describe Plaintiff's alleged wrongdoing and thus the Court

14

will analyze the merit of those claims against Plaintiff only under the remaining 12(b)(1) and 12(b)(6) arguments when applicable.

2.   <u>Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Plaintiff seeks to dismiss Counts I and II—violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), (B)—for lack of standing, which implicates our subject matter jurisdiction.[5]   In Count I, Defendants assert that Plaintiff has continued to use Defendant Spence's name in connection with its legal education services. Defendants allege that Plaintiff's use of his name "creates a likelihood of confusion or mistake about his affiliation with [Plaintiff]."  Similarly, in Count II, Defendants allege Plaintiff is using Defendant Spence's name in connection with the promotion and advertisement of its legal education services.  In both counts, Defendants contend Plaintiff's use of his name in its business and advertisements will cause him actual damages and irreparable harm for which he has no adequate remedy at law.

---

[5] Defendants claim Plaintiff and Third-Party Defendants' standing argument is "directed solely to the Fourth Counterclaim," which the Court has now dismissed for lack of personal jurisdiction over Third-Party Defendants (Doc. 308).  The Court reads Plaintiff and Third-Party Defendants' Motion to Dismiss differently.  In the section of their memorandum discussing standing, Plaintiff and Third-Party Defendants argue "Defendants' Counterclaims should be dismissed with prejudice." (Doc. 292).  And they conclude by contending "the claims asserted have nothing to do with injuries to Spence and Parris, who lack standing to bring a Lanham Act claim.  For this additional reason, Defendants' claims should be dismissed pursuant to Rule 12(b)(1)."  *Id.*  Based on this last sentence and the accompanying analysis from Plaintiff and Third-Party Defendants, the Court reads Plaintiff and Third-Party Defendants' standing argument to apply to each Lanham Act counterclaim.  Since the Court already dismissed Count IV, our Rule 12(b)(1) analysis will concern the remaining Lanham Act counterclaims (Counts I and II).  Confusingly, Plaintiff and Third-Party Defendants' Reply only mentions 12(b)(1) dismissal in relation to Count III, about Wyoming law.  The Court will treat their new 12(b)(1) argument as waived, because Plaintiff and Third-Party Defendants never mentioned Count III specifically in the standing argument within their memorandum in support of the motion to dismiss.  *See Latham v. High Mesa Commc'ns*, No. 17-cv-02118, 2020 WL 1626976, at *2 (D. Colo. Feb. 7, 2020) (finding an argument the defendants raised for the first time in their reply to an opposition to their motion for summary judgment waived) (citing *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)).

Plaintiff asserts the Court lacks jurisdiction over these claims because Defendants have not adequately pleaded how Defendant Spence has sustained damages in his individual capacity as a result of any implication that he continues to be associated with Plaintiff, especially given that Defendants maintain that they are Plaintiff's true board members.  Without a concrete and particularized injury, Defendant Spence lacks standing to sue.  Defendants, on the other hand, contend that Third-Party Defendants injured his reputation by creating a false association between themselves and their services and him.  Moreover as to injury, Defendants contend that they have incurred expenses in his effort to "dispel the myths" Plaintiff has allegedly spread.  The paragraphs they cite as evidence for these expenses in their Third-Party Complaint, though, do not mention any costs incurred or harm suffered due to Plaintiff's alleged false association or advertising. Defendants also seek damages in the unjust enrichment Plaintiff has allegedly gained by claiming to be associated with Spence.

The Lanham Act provides that:

"(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

15 U.S.C. § 1125(a)(1)(A)–(B).  Subsection (a)(1)(A) creates liability for statements about "affiliation, connection, or association" of goods, and describes the cause of action known as "false association."  Unlike an infringement claim, a false association claim does not require that a plaintiff possess or have used a trademark in commerce.  *Compare* 15 U.S.C. § 1125(a) *with* 15

U.S.C. § 1114.   The injury, for standing purposes, derives from the use in commerce of an offending word, term, name, symbol, or device of a false or misleading description or representation of fact.   15 U.S.C. § 1125(a)(1)(A).   The same goes for advertisements with the offending word, term, name, symbol, or device.   *Id.* at § 1125(a)(1)(B).   And here the alleged offense is Plaintiff's use of Defendant Spence's name in its business.

The statute requires that Defendant Spence be "likely to be damaged" by Plaintiff's use in commerce and advertisement of his name.   § 1125(a)(1).   A couple of background principles frame whether a party has Article III standing under § 1125(a).   First, the claim must fall within the "zone of interests" the statute protects.   *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).   The zone of interests' scope is not especially demanding, and the party pleading receives the "benefit of any doubt."   *Id.* at 130.   This statute's purpose statement—according to the Supreme Court—is "unusual, and extraordinarily helpful."   *Id.* at 131.   Thus, identifying the statute's zone of interests "requires no guesswork."   *Id.*   That purpose statement provides:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127.   The Supreme Court noted that "[m]ost of the enumerated purposes are relevant to a false-association case."   *Lexmark*, 572 U.S. at 131.   The second background principle from *Lexmark* provides that "a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute."   *Id.* at 132.

As to the zone of interests, one enumerated purpose of the Lanham Act is "making actionable the deceptive and misleading use of marks" in "commerce within the control of Congress." 15 U.S.C. § 1127. The "mark" can be a person's identity. *See Arnold v. Treadwell*, 642 F. Supp. 2d 723, 730 (E.D. Mich. 2009). Thus, the Lanham Act authorizes those "likely to be damaged," § 1125(a)(1), by the "deceptive and misleading use of [Defendant Spence's name]," § 1127, to sue for such use. But this authorization coexists with typical standing requirements: (1) a concrete and particularized injury-in-fact that is (2) fairly traceable to the challenged action and (3) likely to be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 576–78 (1992); *see also Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979).

As pleaded, Defendants' false association claim sufficiently alleges injury for standing purposes. Count I alleges Plaintiff's misleading association with Defendant Spence's name has caused both confusion in the marketplace and reputational harm to him. According to Defendants, Plaintiff's use of the Marks has caused Defendants to incur expenses to "dispel the myths [Third-Party Defendants] have dispersed." Defendants left out facts explaining how his reputation has suffered or detailing expenses they have supposedly incurred to dispel any myths. Luckily for Defendants, though, "[a]ll that the Article III's injury-in-fact element requires is 'an identifiable trifle' of harm." *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 177 (3d Cir. 2001) (quoting *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973)). Defendants' allegations, taken as true, establish an injury-in-fact that provides standing to bring the false association claim.

"[T]o come within the zone of interests in a suit for false advertising under § 1125, a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131–32. Like the false association claim, Count II alleges Plaintiff's misleading advertising

with Defendant Spence's name has caused both confusion in the marketplace and reputational harm to him.  Because Defendants allege injury to his reputation, the Court determines, at the pleading stage of this litigation, that they have set forth sufficient allegations to establish an injury-in-fact that provides standing to bring the false advertising claim.

### 3.   Plaintiff's Motion to Dismiss for Failure to State a Claim

Plaintiff makes five arguments for why Defendants have failed to state a Lanham Act claim sufficient to survive Rule 12(b)(6).  All but one of Plaintiff's arguments seeking to dismiss the Lanham Act claims apply to both Count I (false association) and Count II (false advertising).  Accordingly, the Court will first address the argument that concerns only the false advertising claim.  The Court will then address each argument that applies to both counts.  Finally, the Court will assess Plaintiff's argument for dismissing Defendants' Wyoming state law claim.

### a.   Lanham Act Claims

Plaintiff argues that its use of Defendant Spence's name does not constitute commercial speech and thus is not actionable conduct under the Lanham Act for false advertising.  For that claim, Plaintiff must prove:

> "(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff."

*Cottrell, Ltd. v. Biotrol Int'l Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999).

The Tenth Circuit has adopted a four-part test to determine whether a statement qualifies as "commercial advertising or promotion" under a Lanham Act false advertising claim.  *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020).  The statements Defendants identify "must be: (1) commercial speech; (2) by a defendant who is in commercial competition with

plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* (quoting *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000)).

Plaintiff insists the Court should dismiss Count II because the challenged speech does not constitute commercial advertising or promotion. It points out that Defendants have expressly contended that they do not operate a competing entity—and that the Court must accept that as true. So because Defendants did not expressly allege a competing entity, Plaintiff argues no commercial speech can exist and the Court must dismiss Count II. Defendants counter that they alleged facts that "make it reasonable to infer" Plaintiff competes against Defendant Spence, since Plaintiff is exploiting his name so that he cannot use his name to support his own law practice or his new trial institute.

Although Defendants never expressly say they compete against Plaintiff, the Court agrees that it can reasonably infer from the allegations in the pleading that Defendant Spence commercially competes against Plaintiff. True, Defendants argue that they are members of Plaintiff's board rather than or along with Third-Party Defendants. But the counterclaim seeks to make Plaintiff stop using Defendant Spence's name—as long as Third-Party Defendants are exercising control over Plaintiff. *See* Am. Countercl. ⁋⁋ 48–52. Defendants' use of Plaintiff's Mark for a different entity after all sparked this entire civil action. The Court determines Defendants have pleaded facts sufficient to find that Plaintiff commercially competes against Defendant Spence to satisfy this portion of a Lanham Act false advertising claim.

The Court now pivots to each of Plaintiff's arguments against both Lanham Act claims. Plaintiff first argues that the Lanham Act does not protect all uses of Defendant Spence's name

and therefore Defendants cannot simply sue Plaintiff for associating or advertising with his name unless they can prove the Lanham Act protects it.

As discussed above, a person may sue any other person under § 43(a) of the Lanham Act who:

> uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a).

Section 43 "protects qualifying unregistered trademarks," which could include Defendant Spence's name because he has not trademarked it. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "Because [Defendant Spence] has never registered the term with the United States Patent and Trademark Office, it is his burden to demonstrate that it is protectable under § 43." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004). Not every name qualifies as a protectable mark. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 922 (6th Cir. 2003). To receive protection under the Lanham Act, Defendants must prove Defendant Spence's name "performs the job of identification." *Id.* That is, his name must "identify one source and [] distinguish it from other sources." *Id.* (citation omitted).

Defendant Spence has a protectable interest in his name. As Defendants describe in the Third-Party Complaint, he is a "nationally recognized attorney heralded as America's Greatest 20th century lawyer by national lawyer organizations." Given his successful legal career, his name distinguishes him from other successful trial attorneys.

Plaintiff seeks to avoid this conclusion by pointing out that the Sixth Circuit refused to recognize Tiger Woods's image and likeness as protectable marks under § 43. *See ETW Corp.*,

332 F.3d at 922.  But the Court finds that case distinguishable in a few ways.  First, according to the Third-Party Complaint, Defendant Spence is seeking to protect his name—not his image and likeness—under the Lanham Act.  The complaint only mentions his likeness in the state law claim, appropriation of name or likeness.  And the Sixth Circuit did not hold that a person could not seek protection under the Lanham Act for one's name.  Second, Tiger Woods sought to protect his image and likeness from an artist who created a painting commemorating his 1997 Masters Tournament victory.  *ETW Corp.*, 332 F.3d at 918.  That business dispute is very much unlike the business dispute we have here, where two groups are essentially fighting over control of a business.  Defendant Spence seemingly has more interest in protecting his name from competitors who offer the same type of services (lawyering skills) than a random artist who painted a portrait of him in the courtroom.  This case, then, does not change the Court's conclusion.

Thus, Defendant Spence's name qualifies for protection under § 43 of the Lanham Act as Defendants have alleged the facts in the Third-Party Complaint.  *Accord A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 206 (S.D.N.Y 2015) (holding that celebrities hold a trademark-like interest in their name, likeness, and persona that they can vindicate through a false endorsement claim under § 43(a)).  Because Defendants adequately alleged facts to support that Defendant Spence's name qualifies for protection under § 43 of the Lanham Act, their claims seeking to stop Plaintiff's use of his name cannot be dismissed on this basis.

Next, Plaintiff argues Defendants have proved no likelihood of confusion from Plaintiff's use of Defendant Spence's name.  The elements of a false association claim under § 43(a) are "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse consumers."  *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (internal

citation and quotation marks omitted).  "The central question in a typical infringement action under

. . . § 43(a) is whether the defendant's use of the plaintiff's mark is likely to cause consumer

confusion."  *Id.*  The elements for a false advertising claim under the Lanham Act also include

proving confusion.  *See Cottrell*, 191 F.3d at 1252.

 Confusion can take many forms.  *Lens*, 722 F.3d at 1238.  Direct confusion may result

when consumers mistakenly believe that the plaintiff is the origin of the defendant's services,

which allows the defendant to capitalize on the plaintiff's good name.  *Id.*  The "classic case" of

direct confusion occurs when a customer seeking to buy the plaintiff's product mistakenly buys

the defendant's product because of the similarity of the marks.  *Id.*  Reverse confusion occurs when

a consumer mistakenly believes that the defendant is the origin of the plaintiff's services.  *Id.* at

1239.  In that situation, the defendant does not try "to take a free ride on the plaintiff's reputation,"

but would "drown out the value of the plaintiff's mark."  *Id.*  Confusion may also arise from a

mistaken belief in common sponsorship or affiliation.  *Id.*  Finally, the Tenth Circuit has also

recognized "initial-interest confusion," a distinct theory that "results when a consumer seeks a

particular trademark holder's product and instead is lured to the product of a competitor by the

competitor's use of the same or similar mark."  *Id.*  In this scenario, the improper confusion occurs

even if the consumer learns of the defendant's actual identity before purchasing the product.  *Id.*

The Tenth Circuit has identified six non-exhaustive factors—known as the *King of the*

*Mountain* factors—as relevant to whether a likelihood of confusion exists:

> (a)  the degree of similarity between the marks;
> (b)  the intent of the alleged infringer in adopting its mark;
> (c)  evidence of actual confusion;
> (d)  the relation in use and the manner of marketing between the goods or services
>       marketed by the competing parties;
> (e)  the degree of care likely to be exercised by purchasers; and
> (f)  the strength or weakness of the marks.

*Id.* (quoting *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089–90 (10th Cir. 1999)).  A court should not apply these factors mechanically.  *Id.*

Defendants allege four sources of confusion: (1) that Plaintiff posted videos of Defendant Spence on its Facebook page; (2) that Plaintiff advertised with the cattle brand and falsely claimed a continued connection to Thunderhead Ranch; (3) that Plaintiff's executive director listed her employer as "Gerry Spence Trial Lawyer's College"; and (4) that Plaintiff sent fundraising emails seeking monetary donations, expressing a desire to "preserv[e] Gerry Spence's dream" and stating, "Would Gerry Spence have let this happen?"

Plaintiff argues that its use of Defendant Spence's name is not false or misleading—as required by the Lanham Act, *see* § 1125(a)—because of his long-time association with Plaintiff. Plaintiff asserts that Defendant Spence's historical association with Plaintiff is well known, and Plaintiff featured him in the videos during that association.  The Court agrees that Plaintiff's continued use of the videos on Facebook neither misleads nor likely confuses consumers.  As Defendants allege in their Third-Party Complaint, Defendant Spence founded Plaintiff and taught trial skills for Plaintiff.  Plaintiff featured him in the videos while he worked with Plaintiff.  No facts alleged show that Plaintiff's use of Defendant Spence's image in that context misleads or confuses the public or is likely to do so.  Instead, the facts alleged show that the video identifies Defendant Spence's actual association with Plaintiff as a past instructor.  *See Mktg. Prods. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*, 333 F. Supp. 2d 418, 430–31 (D. Md. 2004) (finding no false association where a company continued to show an infomercial after the person in the video left the company).

But Defendants also allege Plaintiff's other uses of Defendant Spence's name in emails and on its executive director's LinkedIn page, as well as Plaintiff's use of the Mark and the name

"Thunderhead Ranch" on a physical sign, create a false impression that Defendant Spence sponsors or approves the version of Plaintiff controlled by Third-Party Defendants.  Plaintiff counters that no confusion can exist because Defendants essentially contend that Plaintiff and its board are creating confusion by implying that Defendant Spence continues to be associated with Plaintiff while simultaneously claiming that such a contention is true.  Defendants respond that the Federal Rules of Civil Procedure allow them to plead inconsistent facts, including that Defendant Spence is and also is not affiliated with Plaintiff.

Rule 8(d)(2) allows a party to make alternative statements of a claim or defense.  The Rule allows a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."  Fed. R. Civ. P. 8(d)(2).  The Court agrees with Plaintiff that Defendants plead inconsistent facts when they allege that Defendant Spence is affiliated with Plaintiff but also not affiliated with Plaintiff.   In essence, Defendants plead alternative theories that they are the board members of Plaintiff, but if they are not, Plaintiff and its board members may not take certain actions that would associate Defendant Spence with Plaintiff.

Defendants run into trouble, however, because "[a]lthough a party is granted substantial flexibility in framing his pleadings under [Rule 8(d)(2)], the person responsible for the document is at all times subject to [Rule 11's obligations]."  Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1285 (4th ed. 2021).  "A party therefore should not set forth inconsistent, or alternative, or hypothetical statements in the pleadings unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims . . . ."  *Id.*  Originally, Defendants brought their Lanham Act claims under the theory that they were the true board, even if Plaintiff and its board members disputed that contention.  But

Defendants can no longer allege that they are Plaintiff's "true board" because the state court, confirmed by the Tenth Circuit, has since ruled otherwise.  *See Trial Laws. Coll.*, 2022 WL 244079, at *1 ("[T]he state court resolved the dispute over Board control . . . . [T]his conclusion effectively left the Sloan Group in control of the Board, mooting this part of the requested stay [to obtain a state court ruling before proceeding in federal court].").  Defendants thus cannot claim they pled inconsistent allegations in which they are "legitimately . . . in doubt about the factual background or legal theories supporting the claims."  Wright & Miller, *supra*, § 1285.

So that just leaves Defendants' theory that if they are not the "true board," Plaintiff and its board members may not take certain actions that would associate Defendant Spence with Plaintiff. The problem with this theory, though, is that Defendants have nowhere alleged how Defendant Spence, or his new trial university, has suffered from Plaintiff's use of his name based on his past affiliation with Plaintiff.  Without such an injury, Plaintiff contends that he does not fall within the zone of interests protected by the Lanham Act.  *Lexmark*, 572 U.S. at 129.[6]  Defendants counter that they need only allege damages, not prove them, because a court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Jordan-Arapahoe, LLP v.*

---

[6] Plaintiff seems to conflate the requisite injury for standing purposes with the injury sufficient to state a claim for relief under Rule 12(b)(6).  Indeed, this argument—that Defendant Spence does not fall within the "zone of interests"—mirrors its earlier standing argument.  But "[t]he fact that a plaintiff may allege facts that, at the pleading stage, satisfy the requirements for Article III standing does not mean these same facts would be sufficient to state a claim."  *Satchell v. Sonic Notify, Inc.*, 234 F.Supp.3d 996, 1001 (N.D. Cal. 2017) (citing *Doe v. Chao*, 540 U.S. 614, 624–25 (2004)).  That is why a party can plead facts sufficient to satisfy standing's injury-in-fact but insufficient to state a claim upon which a court can grant relief—the inquiries differ.  *See, e.g., MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318–23 (11th Cir. 2019) (finding the plaintiff alleged an adequate injury-in-fact but did not allege facts to make their claim for relief plausible); *Gerber v. Herskovitz*, 14 F.4th 500, 505–06, 512 (6th Cir. 2021) (same).  What is more, a party can plead facts sufficient for the necessary injury-in-fact that do not constitute "cognizable injuries" to survive Rule 12(b)(6).  *See Griffey v. Magellan Health Inc.*, No. cv-20-01282, 2021 WL 4427065, at *3–5 (D. Ariz. 2021); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017).

*Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011). At the motion to dismiss stage, Defendants articulate the correct standard. Indeed, to survive such a motion, a plaintiff must allege "enough factual matter, taken as true, [to make] his claim to relief plausible on its face." *Id.* (brackets, ellipsis, and quotation marks omitted). This is where Defendants missed the mark; they neglected to include *facts* in the Third-Party Complaint sufficient to adequately allege that they have suffered injury from Plaintiff's use of Defendant Spence's past affiliation with Plaintiff.

Defendants claim in the Third-Party Complaint that Defendant Spence has suffered "actual damages and irreparable harm and damages" from Plaintiff's association and advertising with his name. They add in their Response to Plaintiff's Motion to Dismiss that Plaintiff's "actions have caused irreparable harm to Spence's reputation" and forced Defendants to incur expenses by having to "dispel the myths [Plaintiff has] dispersed." But both filings lack any facts describing how he, or his new trial institute, has suffered such damages or reputational harm or detailing such expenses. Stating Defendant Spence has suffered "actual damages and irreparable harm [to his reputation] and damages" or that Defendants have "incurred expenses" smacks of a legal conclusion that this Court need not accept as true absent factual allegations to support it. *Iqbal*, 556 U.S. at 678–79; *see also Ghawi v. Law Offs. Howard Lee Schiff, P.C.*, No. 3:13-cv-115, 2014 WL 6885141, at *4 (D. Conn. Dec. 1, 2014) (unpublished) (concluding that "vague and conclusory" allegations regarding damages, including that the plaintiff "suffered lost opportunities, time, and reputation," are insufficient to survive a motion to dismiss). At bottom, Defendants plead such vague allegations regarding damages that we cannot infer a cause of action under the Lanham Act from their complaint. Thus, the Court will dismiss both Lanham Act claims under Rule 12(b)(6) for failure to state a claim for relief.

b.   <u>Appropriation of Name or Likeness</u>

Defendants ask the Court to recognize a common law cause of action for wrongful appropriation of name or likeness for their Third Counterclaim.  Plaintiff contends that the Court should decline to adopt the tort.  We need not reach that question, though, because even if we recognized the tort, the Court would still dismiss the claim for failure to sufficiently allege the requisite injury.

Defendants allege Plaintiff has appropriated Defendant Spence's name, voice, and likeness for its commercial benefit to promote Third-Party Defendants' version of Plaintiff, adverse to Defendant Spence.  They accuse Plaintiff of soliciting donations and marketing its programming by trading on Defendant Spence's name, voice, and likeness without his permission.  As to damages specifically, Defendants claim Plaintiff's "use and exploitation" of his name "has and will cause actual damages and irreparable harm and damages" to him.  The Restatement and other states who have recognized this tort, though, require the plaintiff prove damages he or she has suffered to state a claim upon which relief can be granted.  *See* Restatement (Second) of Torts § 652H (1977); *Hill v. Pub. Advoc. of the U.S.*, 35 F. Supp. 3d 1347, 1355 (D. Colo. 2014); *Moore v. Sun Pub. Corp.*, 881 P.2d 735, 743 (N.M. Ct. App. 1994) (relying on the Restatement for the tort's elements).  That is why Plaintiff argues the claim must fail—because Defendant Spence "has not articulated any actionable damages."

As the Court discussed earlier, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 555).  So "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  Like the Lanham Act claims, Defendant Spence's allegations of injury he has suffered from

Plaintiff allegedly exploiting his name and likeness amount to mere legal conclusions unsupported by factual allegations.  He claims Plaintiff's conduct "has and will cause actual damages and irreparable harm and damages to [him]."  But nowhere in the complaint do Defendants elaborate on what kind of harm he has suffered—not in the section entitled "The Sloan Group's Unauthorized Use of Gerry Spence's Name and Likeness" or in the paragraphs below the Third Counterclaim.  As it stands, the Third-Party Complaint only includes "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  *Id.* at 678.  Put simply, Count III lacks a vital piece of information.  Because of this, the Court determines Defendants have not pleaded facts showing how Plaintiff's actions have injured Defendant Spence sufficient to state a claim for the state law tort of appropriation of another's name or likeness.[7]  We therefore dismiss Defendants' Third Counterclaim under Rule 12(b)(6).

---

[7] To the extent that Defendants argue Plaintiff has been unjustly enriched by its use of Defendant Spence's name in the three remaining counterclaims, they have failed to include such allegations, let alone a claim for unjust enrichment, in the Third-Party Complaint (Doc. 263).  In fact, nowhere in the Third-Party Complaint do Defendants even mention unjust enrichment—it comes up for the first time in their Response to Plaintiff and Third-Party Defendants' Motion to Dismiss (Doc. 308). Defendants cannot salvage their claims by inserting a vague unjust enrichment argument.

IV.   <u>Conclusion</u>

For the reasons set forth above, the Court GRANTS Plaintiff and Third-Party Defendants'

Motion to Dismiss Amended Counterclaims and Third-Party Claims (Doc. 290).


IT IS SO ORDERED.


Entered for the Court
this the 29th day of March, 2022

<u>/s/ Joel M. Carson III</u>
Joel M. Carson III
United States Circuit Judge
Sitting by Designation