# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

_____

THE TRIAL LAWYERS COLLEGE, a
nonprofit corporation,

        Plaintiff and Counterclaim Defendant,

vs.

GERRY SPENCES TRIAL LAWYERS
COLLEGE AT THUNDERHEAD RANCH, a
nonprofit corporation, and GERALD L.
SPENCE, JOHN ZELBST, REX PARRIS,
JOSEPH H. LOW, KENT SPENCE, and
DANIEL AMBROSE, individuals, and
GERRY SPENCE METHOD AT
THUNDERHEAD RANCH, INC., a nonprofit
corporation,

        Defendants,

and JOHN JOYCE,

        Defendant, Counterclaim Plaintiff, and
        Third-Party Plaintiff,

vs.

F WARRIORS,

        Third-Party Defendant.

Case Number: 1:20-CV-00080-JMC-GJF

---

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTIONS TO DISQUALIFY [ECF 247] AND SANCTION [ECF 248] ATTORNEY BETH KUSHNER

---

THIS MATTER is before the Court on Plaintiff's (TLC's) (1) Motion to Disqualify

Attorney Beth Kushner as Trial Counsel for Defendants [ECF 247] ("Motion to Disqualify") and

(2) Motion for Costs, Expenses, and Attorneys' Fees Incurred as a Result of Beth Kushner's

Unreasonable and Vexatious Multiplication of These Proceedings [ECF 248] ("Motion for Sanctions").   The Court meticulously reviewed the briefs and exhibits, which total some 564 pages, *see* ECFs 286, 288, 301-02, and heard nearly three hours of argument on the motions.   *See* Tr. of Mtns. Hrg held Apr. 5, 2022, ECF 342.   Although the conduct that led to the filing of these motions has given the Court substantial pause and concern, the legal standards required to grant TLC the relief it seeks are high.   As explained below, the Court concludes that TLC did not satisfy its burden to show that disqualification or sanction is appropriate at this time.   Therefore, the Court recommends that the motions be denied.   The Court further recommends that the Motion to Disqualify be denied without prejudice given the possibility, however remote, that Attorney Kushner will be a witness at the trial of this case.   That issue is not ripe for judicial resolution at the present time.

## I.   BACKGROUND

TLC is a nonprofit corporation that was founded by Defendant Gerald Spence in 1993 to provide litigation training programs to lawyers.   In 1994, TLC began operating at the Thunderhead Ranch in Dubois, Wyoming.   In 2012, TLC received two trademarks: one for the name "Trial Lawyers College" and one for the emblem of a cloud with a lightning bolt.   In early 2020, following an internal dispute, the leadership of TLC split into two factions: the "Sloan Group" and the "Spence Group."   Shortly thereafter, the Spence Foundation ended TLC's lease at the Thunderhead Ranch and the Spence Group filed a dissolution action in Wyoming state court. TLC, which remains under the control of the Sloan Group, filed its own lawsuit in this Court in May 2020.   The instant suit alleges *inter alia* that Defendants infringed on TLC's trademarks, wrongfully used TLC's copyrighted materials, and misappropriated TLC's trade secrets.

The skirmish now before this Court, however, has nothing to do with trademarks,

copyrights, or trade secrets.   Instead, emblematic and symptomatic of the friction and distrust that characterized this litigation during its first twenty months, the instant dispute involves TLC's requests that Attorney Kushner be disqualified from further participation as counsel for the Spence Defendants[1] and be subject to monetary sanctions.   *See* ECFs 247, 248.   As detailed in Section III herein, the Motion to Disqualify contends that Attorney Kushner violated a host of ethical rules when she (1) posted comments on TLC's internal listserv after the corporate breakup to stir confusion among TLC members, and did so while representing Defendant Parris (but not disclosing that relationship); (2) threatened a third-party subpoena recipient to dissuade him from complying with TLC's subpoena; and (3) lied about the existence and extent of her representation of other third-party subpoena recipients.   *See* ECF 247-1 at 6-23.   The Motion to Disqualify also insists that Attorney Kushner's suspicious interactions with the TLC listserv on Defendant Parris's behalf have made her a trial witness, a role that customarily forecloses her from continuing as counsel.   For its part, the Motion for Sanctions contends that Attorney Kushner should be separately sanctioned for "unreasonably and vexatiously" prolonging this litigation through multiple examples of "improper behavior" in discovery.   *See* ECF 248-1 at 18-27.

## II.   PRIMARY ISSUES

The primary issues the Court must resolve are:

(1) regarding the Motion to Disqualify, whether TLC has demonstrated with sufficient certainty that Attorney Kushner will be a trial witness such that she should be foreclosed *now* from continuing to serve as counsel for the Spence Defendants;

(2) regarding the Motion to Disqualify, whether TLC alternatively has shown that Attorney Kushner violated the governing ethical rules in such a manner as to warrant (a) the extraordinary remedy of disqualification and/or (b) the imposition of sanctions; and

---

[1] As used throughout this Report and Recommendation, the term "Spence Defendants" refers to every named Defendant other than Daniel Ambrose and John Joyce (each of whom has separate counsel).

(3) regarding the Motion for Sanctions, whether TLC has satisfied the "extreme standard" of showing that Attorney Kushner "unreasonably and vexatiously" multiplied this litigation through a "serious and standard disregard for the orderly process of justice." *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (quotation omitted).

## III. PARTIES' ARGUMENTS

### A. Motion to Disqualify

#### 1. Listserv Actions

TLC contends that Attorney Kushner should be disqualified under Wyoming Rule of Professional Conduct 3.7 (Lawyer as Witness) because "[she] will likely be called as a witness in this action and has been identified as a witness by TLC."  ECF 247-1 at 12.[2]  TLC argues that she is a material fact witness because, during her "involvement with the listservs," she "acted in concert with Mr. Parris and the Defendants to stir confusion between TLC and GSTLC [Gerry Spences Trial Lawyers College at Thunderhead Ranch]."  ECFs 247-1 at 12; 301 at 6.

Apart from the trial witness v. trial counsel concern, TLC asserts three additional bases as to why Attorney Kushner should be disqualified.   First, TLC contends that she violated Wyoming Rule 4.2 (Communication with Person Represented by Counsel) because, in posting comments on TLC's listserv and stirring confusion among its members, she knowingly and deceptively "communicat[ed] with TLC, a represented party, about the subject matter of the representation." ECFs 247-1 at 14-15; 306 at 3-6.   TLC next argues that Attorney Kushner violated Wyoming Rule 4.1 (Truthfulness in Statements to Others) because her "posts to the TLC and GSTLC listservs" intentionally "omitted a material fact—that of her close connection to the Defendants by serving as their counsel."  ECF 247-1 at 13-14; ECF 301 at 1, 6.   TLC asserts that this omission

---

[2] On April 2, 2021, TLC served Attorney Kushner with a subpoena duces tecum under Federal Rule of Civil Procedure 45, ECF 1 (21mc208) at ¶ 6, and three weeks later identified her for the first time on its witness list, ECF 157 at 2.

prevented listserv readers from (1) more readily ascertaining Attorney Kushner's "pro-Spence Group" bias and (2) having her "removed from the listserv."   ECFs 247-1 at 13; 301 at 2-6.   TLC appears to argue that Attorney Kushner's omission "assist[ed] a fraudulent act" because it "increas[ed] [listserv readers'] confusion between TLC and GSTLC" (and thereby "perpetuated the Defendants' violation of intellectual property").   ECF 247-1 at 13-14 (citing Rule 4.1).   "At the very least," TLC contends, Attorney Kushner's omission and her disingenuous listserv posts, "involv[ed] dishonesty, fraud, deceit or misrepresentation" and/or was "prejudicial to the administration of justice"—and thus warrants disqualification under Wyoming Rule 8.4 (Misconduct).   *Id.* at 15-16 (quoting Wyoming Rule 8.4(c)-(d)); ECF 301 at 1, 5-6.

In response, Attorney Kushner contends that Wyoming Rule 3.7 "only applies to trial and not pre-trial proceedings" and that "the determination of whether [this rule] actually requires her disqualification from participation at trial" is thus "at best, premature."   ECF 288 at 17-19. Attorney Kushner also asserts that TLC has failed to show how she will be a "necessary witness" with respect to a disputed issue.   *Id.* (quoting Wyoming Rule 3.7).   Furthermore, she argues that her posts on TLC's listserv could not have violated Wyoming Rules 4.1, 4.2, or 8.4 because the Court had already determined that "she was not acting as counsel when she did so."   *Id.* at 19-21 (emphasizing that "Kushner did not represent any Spence Defendant other than Mr. Parris before February 24, 2021" and citing ECF 194 (Order Regarding Defendant's Asserted Privileges) at 10 (expressly declining to address Rule 4.2 upon determining that Kushner's listserv communications "were not carried out in the performance of her duties as an attorney for Mr. Parris")).

### 2.   Actions Regarding Third-Party Subpoena Recipients

TLC next argues that Attorney Kushner should be disqualified and sanctioned because she "improperly contact[ed] [third-party subpoena recipient Jody] Amedee and his counsel" and then

"*threaten[ed] legal action*" if Amedee "produced documents pursuant to [TLC's] subpoena." ECFs 247-1 at 16-19 (emphasis in original) (citing, *inter alia*, ECF 193-6 at 2-3, 12, Wyoming Rule 8.4); 301 at 7-8.   In addition, TLC contends that Attorney Kushner should be disqualified for "[her] statement [via email] to TLC that she represents *each* of the" remaining third-party subpoena recipients (Hillin, Faraj, Torres-Guillen, and Baca).   ECF 247-1 at 19-23 (emphasis in original) (citing, *inter alia*, ECF 247-14 (Kushner's email to TLC's counsel on May 28, 2021)). TLC asserts that this email amounted to "a false statement of material fact" that "caused TLC to expend unnecessary time and resources."   *Id.* at 19-23 (citing, *inter alia*, Wyoming Rules 4.1, 8.4); ECF 301 at 6-7.

Attorney Kushner responds that "[t]he allegation relating to any threats received by [Amedee]" is "simply untrue."   ECF 288 at 9-12, 21-22 (citing ECF 288-4 at ¶¶ 3-4 (Amedee declaring that "Kushner never threatened or pressured [him]"); 288-7 at ¶ 60 (Kushner declaring that "[she] never threatened [Amedee] or his counsel")).   In addition, Kushner argues that her email conveyed the truth, as she "represented [the other third-party subpoena recipients] for a brief period," at their request, "until they could hire local counsel (or … go *pro se*)."   ECF 288 at 10-15, 20, 22-23 (citing ECFs 288-1 (Baca Decl.); 288-2 (Fara Decl.); 288-3 (Hillin Decl.); 288-5 (Getzoff Decl.) 288-6 (Torres-Guillen Decl.); 288-7 (Kushner Decl.); 288-19 (Kushner's June 18, 2021, email to TLC's counsel)).[3]

## B.  Motion for Sanctions

Pursuant to 28 U.S.C. § 1927, TLC requests that the Court order Attorney Kushner to "pay

---

[3] *See also* ECF 248-1 at 3-5, 10, 20, 23-24 (TLC suggesting that "Kushner coordinated with each of the third-part[y] [subpoena recipients]" in "craft[ing]" and asserting "nearly-identical" responses "on both her and [their] behalf"); ECF 302 at 11 (TLC similarly representing that Kushner "coordinated … objections on behalf of other third-party subpoena recipients").

TLC's costs, expenses, and attorneys' fees incurred as a result of her unreasonable and vexatious multiplication of these proceedings." ECF 248-1 at 1-2, 18-27. TLC contends that Attorney Kushner has "unreasonably and vexatiously" multiplied these proceedings through her "improper behavior"—the "[m]ost egregious[]" of which was threatening Amedee. *Id.* at 18-27; ECF 302 at 10. In addition, TLC asserts that Attorney Kushner "improperly" (1) pretended to represent Hillin; (2) "contact[ed] the third-party subpoena recipients" to coordinate "*baseless and improper*" objections "both on her and [their] behalf"—instead of "fil[ing] a motion to quash;" (3) "refused to engage in meaningful conferral;" (4) "refused to consent to transfer the motions to compel to this Court;" (5) "filed belated objections;" and (6) "attempt[ed] to obstruct the review" of the Amedee documents as manifested by the "severe technological problems with Defendants' [document] production." ECFs 248 at 1-2; 248-1 at 7-8 n.15, 10, 19-24; 302 at 1-11 (emphasis in original). TLC argues that at least some of this improper behavior "forced [it] to file four individual motions to compel subpoena responses and five motions to transfer in three different jurisdictions, as well as respond to one third party motion to quash." ECF 248-1 at 23.

TLC next contends that Attorney Kushner "unreasonably and vexatiously" multiplied these proceedings because "on no fewer than <u>three</u> occasions" she "belatedly" made "assertions of attorney-client privilege" that were "frivolous," "improper," and "entirely baseless." *Id.* at 3-11, 13-14, 17-18, 20, 24-26 (emphasis in original); ECF 302 at 1, 11. TLC first asserts that Attorney Kushner made an improper assertion of privilege with her one-page April 6, 2021, letter, which "formally notif[ied] [TLC] of [an] inadvertent production" in September and October 2020 of certain documents that "contain[ed] attorney-client privileged information," ECF 170-2. *See* ECF 248-1 at 25-26 (citing ECF 194). [4] Second, TLC argues that Kushner "belatedly [and

---

[4] *But c.f.* ECF 194 at 4-7 (the Court considering these privilege assertions and finding that "most of the emails at issue

unsuccessfully] asserted attorney-client privilege with respect to documents in Mr. Amedee's possession only *after* Mr. Amedee produced those documents" on May 27, 2021.   ECF 248-1 at 25 (emphasis in original).[5]   Third, TLC claims that, despite the Court's conclusion that any privilege attached to the documents in Amedee's control had been waived, Kushner continues to "frivolous[ly]" "maintain that documents in the possession of the other Subpoena Recipients are somehow privileged."   *Id.*[6]

In response, Attorney Kushner reiterates her assertions that she never threatened Amedee. ECF 286 at 3-4 (citations omitted).   In addition, she argues that she (1) did not <u>"represent that she was counsel, even temporarily, for a party who had not asked her to act in that capacity;"</u> (2) properly objected under Rule 45 to what she and the subpoena recipients viewed as "duplicative, overbroad, disproportional" subpoenas; (3) was permitted to communicate with TLC's counsel solely in writing; (4) was "entitled to seek to have [TLC's] motion to compel heard in her own district;" (5) served TLC counsel with "timely objections;" and (6) had no "involvement in the manner or format of Mr. Amedee's production."   *Id.* at 3-4, 6, 8-10, 12-20, 22 (emphasis in original).   In addition, Attorney Kushner claims that no legal authority "suggest[s] it is appropriate

---

[were] privileged, while few [were] not").

[5] *See* ECF 204 at 1-2 (observing that TLC "served Mr. Amedee with [the] subpoena *duces tecum* on March 30, 2021 and specified April 14, 2021 as the deadline for compliance" and that on April 13, 2021, Amedee "served objections to the subpoena" while "Spence Defendants did not object to Mr. Amedee's subpoena at that time"); ECF 190 (Spence Defendants' Rule 26(b)(5) Notice, filed on June 4, 2021, by attorneys Cave, Pope, Getzoff, and Kushner); ECF 204 at 4 (the Court, in light of the postponement of all deadlines, choosing to "address the substantive issues" in the Rule 26(b)(5) Notice and concluding that "Spence Defendants ha[d] failed to meet their burden of establishing that Mr. Amedee was subject to any claim of attorney-client privilege"—and that because "Mr. Amedee [was] a third party in control of privileged documents and was involved in privileged conversations," "[s]uch constitutes a waiver of any [corresponding] privilege"); ECF 330 (the Court denying Spence Defendants' Motion for Reconsideration and declining to "address Defendants' privilege arguments" because "Defendants failed to move to quash the [Amedee] subpoena" and noting that "even if the Court construed [Spence Defendants'] objection … as a motion to quash, the Court would still [have] dismiss it as untimely").

[6] *C.f.* ECF 41 (21mc181) (clerk's minutes) ("the Court find[ing] [on December 14, 2021] that the dismissal of the [motion to compel] cases against Mr. Hillin, Mr. Baca, Ms. Torres-Guillen, and Ms. Kushner [was] appropriate as the grounds for the motions to compel [were] resolved" and noting that the Court would "deny [Faraj's] motion to quash").

to sanction an attorney for seeking to protect a privilege"—especially when some of the "communications [at issue] concern things like 'litigation strategy' (as reflected on the privilege logs)." *Id.* at 12, 21.[7]

## IV.  APPLICABLE LEGAL STANDARDS

### A.  Motions to Disqualify Counsel

"It is well-established that ordinarily 'the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge,' and is thus a matter of judicial discretion." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) (quoting *Redd v. Shell Oil Co.*, 518 F.2d 311, 314 (10th Cir. 1975)).  "Motions to disqualify are governed by two sources of authority:"

> First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated.   Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.   Therefore, motions to disqualify are governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights.

*Id.* (quotation and citations omitted).

"As a general matter," however, "a litigant has the 'right to employ counsel of [his] choice.'"   *United States ex rel. Tracy v. Emigration Improvement Dist.*, 717 Fed. Appx. 778, 782 (10th Cir. 2017) (unpublished) (quoting *Smith v. Whatcott*, 774 F.2d 1032, 1035 (10th Cir. 1985)).

---

[7] Transitioning from defense to offense, Attorney Kushner insists that the true responsibility for "vexatiously increase[ing] the cost of litigation" lies with TLC counsel—not her.   *Id.* at 2, 4-9, 11, 13-22.   She argues, for instance, that TLC's counsel vexatiously increased the cost of litigation by, *inter alia*, (1) "issu[ing] six nearly identical overbroad [and disproportional] subpoenas to non-parties and opposing counsel that sought documents already in TLC's possession as well as clearly privileged items and irrelevant items;" (2) refusing, "[i]n the face of timely objections, … to honor [TLC's] obligation [under Rule 45(d)(1)] to decrease the burden on third parties in any way"— particularly as "virtually all of the documents sought from the third parties were [more appropriately] obtainable from the parties in this case;" and (3) "blindly push[ing] ahead with fruitless motions practice."   *Id.* at 4-9, 11, 13-19, 22. Whatever else these counter-allegations constitute, the Court need not evaluate their merits as they are outside the scope of the instant motions.

Consequently, a party seeking to disqualify opposing counsel must "adequately [show] how the participation of [the litigant's] attorney[] for the remainder of the case would taint the litigation." *Id.*[8] "As many courts have phrased it, disqualification is an appropriate remedy where the offending conduct 'threatens to taint the underlying trial with a serious ethical violation.'" *Lassiter v. Hidalgo Med. Servs.*, No. 17-cv-0850 JCH/SMV, 2018 U.S. Dist. LEXIS 40622, 2018 WL 1322135, at *6 (D.N.M. Mar. 13, 2018) (quoting *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998)) (citations omitted); *Tracy*, 717 Fed. Appx. at 781-82.

"Typically, ethical violations that require disqualification involve '(1) a conflict of interest that prevents zealous advocacy or (2) the potential use of privileged or confidential information about one party that would give an unfair advantage to a present client.'"  *Id.* at 782 (quoting *Archuleta v. Turley*, 904 F.Supp.2d 1185, 1192 (D. Utah 2012)); *see also Archuleta*, 904 F.Supp.2d at 1192 (explaining that "motions to disqualify are granted rarely unless an ethical violation has occurred that would *taint the underlying trial*" (emphasis added)).   In deciding a motion to disqualify counsel, courts may "balance a number of factors," such as "society's interest in ethical conduct," "the prerogative of parties to choose their own counsel," "the hardship of disqualification," and "whether the party seeking disqualification was prejudiced by the violation." *Lassiter*, 2018 WL 1322135, at *6 (citations omitted).   Nevertheless, "[t]he essential issue to be determined … is whether the alleged misconduct taints the lawsuit."  *Tracy*, 717 Fed. Appx. at 781 (quoting *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1476 (D. Utah 1994)); *Lassiter*, 2018 WL 1322135, at *6-7.[9]

---

[8] *See also Orthopaedics of Jackson Hole, P.C. v. Guier*, No. 06-CV-077-D, 2006 U.S. Dist. LEXIS 103685, 2006 WL 8435112, at * 1 (D. Wyo. Jul. 14, 2006) ("In a motion to disqualify an attorney, the movant has the burden of showing the grounds for disqualification."); *Wyo. Woolens, Inc. v. Nordic Gear*, Inc., No. 00-CV-227-B, 2001 U.S. Dist. LEXIS 26394,   at *6 (D. Wyo. Aug. 9, 2001) (same).

[9] *See also Christensen v. Graco Fishing & Rental Tools, Inc.*, 2:20-cv-00888-HCN-JCB, 2021 U.S. Dist. LEXIS 41849, 2021 WL 824752, at *2 (D. Utah Mar. 4, 2021) ("provid[ing] the following guidance on the factors to consider

1. <u>District of Wyoming's Local Rules</u>

The United States District Court for the District of Wyoming has adopted Local Rules. *See* Local Rules of the United States District Court for the District of Wyoming (Jan. 2022) ("Local Rules").   As relevant here, these Local Rules provide that, "[i]n addition to the Wyoming Rules of Professional Conduct and Fed. R. Civ. P. 11, the following standards of conduct shall be observed by all attorneys participating in civil actions in [the District of Wyoming]:"

> (1) Attorneys shall at all times exercise professional integrity, candor, diligence and utmost respect to the legal system, judiciary, litigants and other attorneys.
>
> (2) Attorneys shall extend to opposing counsel cooperation and courteous behavior at all times and shall not arbitrarily or unreasonably withhold consent to opposing counsel's reasonable requests for cooperation or scheduling accommodations.
>
> (3) Attorneys shall treat each other, the opposing party, the Court and members of the court staff with courtesy and civility, and conduct themselves in a professional manner at all times.
> …
> Attorneys whose conduct does not comport with these rules may be subject to discipline by the Court, including open court reprimands, compulsory legal education, monetary sanctions or other punitive measures appropriate to the circumstances.

Local Rule 84.1; *see also* Local Rule 84.4 (providing that "[t]his Court shall apply the [Wyoming] Rules of Professional Conduct for Attorneys at Law, as they have been adopted by the Wyoming

---

when deciding a motion to disqualify counsel: The sanction of disqualification of counsel in litigation situations should be measured by the facts of each particular case as they bear upon the impact of counsel's conduct *upon the trial*. The egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel are important considerations.  In addition, equitable considerations such as the hardship to the other side and the stage of trial proceedings are relevant.  The essential issue to be determined in the context of litigation is whether the alleged misconduct *taints the lawsuit*." (emphasis added) (quotation omitted)); *id.* (further noting that (1) "the moving party bears the burden of establishing that disqualification is necessary" and (2) "disqualification of counsel is a drastic measure and a court should hesitate to impose it except when necessary," as it should view a motion for such disqualification "with extreme caution" (quotations omitted)); *Vicidiem, Inc. v. Christensen*, No. 2:19-cv-358 DBB-DBP, 2020 U.S. Dist. LEXIS 158080, 2020 WL 5107636, at *2 (D. Utah Aug. 31, 2020) (observing that "[t]he Tenth Circuit [has] specified that the ABA Model Rules of Professional Conduct 'reflect the national standard to be used in ruling on disqualification motions'" (quoting *Cole*, 43 F.3d at 1383)).

Supreme Court," and reiterating that violations of such rules "shall constitute misconduct and shall be grounds for discipline").

### 2. Rules of Professional Responsibility

Because the applicable rules of professional responsibility are "substantively the same under both the Wyoming Rules of Professional Responsibility and the [ABA] Model Rules of Professional Responsibility, … the analysis under either set of rules is the same." *Walk v. Grand Teton Music Festival, Inc.*, No. 16-CV-155-F, 2017 U.S. Dist. LEXIS 163889, at *11 (D. Wyo. Mar. 17, 2017).[10]   As relevant here, the Wyoming (and ABA) Rules describe their role of "provid[ing] guidance to lawyers and … a structure for regulating conduct through disciplinary agencies:"

> A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others.   A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. …
>
> …
>
> … The Rules do not … exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules.   The Rules simply provide a framework for the ethical practice of law.
>
> …
>
> Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process. … [T]he Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations.

---

[10] *Compare* Wyoming Rules of Professional Conduct for Attorneys at Law (Wyoming Rules) Preamble and Scope, Rules 3.7, 4.1, 4.2, and 8.4 (and corresponding Comments), *with* ABA Model Rules of Professional Conduct (ABA Model Rules) Preamble and Scope, Rules 3.7, 4.1, 4.2, and 8.4 (and corresponding Comments); *see also Carter v. Genesis Alkali, LLC*, No. 20-CV-216-S, 2022 U.S. Dist. LEXIS 43112, 2022 WL 613167, at *2 (D. Wyo. Jan. 4, 2022) (observing that "the United States District Court for the District of Wyoming has adopted the Wyoming Rules of Professional Conduct"—but that "case law interpreting the [ABA] Model Rules is instructive" when the Wyoming Rules and the ABA Model Rules "[do] not differ in any material way" (citing Local Rule 84.4(b); *Cole*, 43 F.3d at 1383)).   The Court further observes that neither side suggests that there are any material differences in the context of the instant dispute between the Wyoming and ABA versions of Rules 3.7, 4.1, 4.2, and 8.4.   *See* ECFs 247, 288, 301.

Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.   In addition, *violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation*.   The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.   They are not designed to be a basis for civil liability.   Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.[11] …

Wyo. Rules of Prof'l Conduct – Preamble and Scope (emphasis added).

### 3.   The Drastic Nature of Disqualification

As motions to disqualify opposing counsel "can be a powerful litigation tactic to deny an opposing party's counsel of choice," courts are "mindful of the drastic nature of disqualification" and view such motions with "particularly strict judicial scrutiny," *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 814 F.3d 1046, 1053 (9th Cir. 2016) (quotations and citations omitted):

"Motions to disqualify opposing counsel are viewed with disfavor because they impinge on a party's right to employ the counsel of its choice." *Scantek Med., Inc. v. Sabella*, 693 F.Supp.2d 235, 238 (S.D.N.Y. 2008).   As a result, "courts must guard against the tactical use of motions to disqualify counsel." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009).   "Disqualification is warranted only if 'an attorney's conduct tends to *taint the underlying trial*,'" *GSI Commerce Solutions, Inc. v. BabyCenter, LLC*, 618 F.3d 204, 209 (2d Cir. 2010) [emphasis added], or when the "conflict of interests ... undermines the court's confidence in the vigor of the attorney's representation of his client." *Bd. of Ed. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).   "Not all violations of the legal code of ethics require dismissal or disqualification of counsel, and ... the relevant inquiry is the *possibility of prejudice at trial*." *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 166-67 (2d Cir. 2013) [emphasis added].

*Shader v. Brattleboro Sav. & Loan Ass'n, No.*, 5:14-CV-00152, 2014 U.S. Dist. LEXIS 171978,

---

[11] *See, e.g., Walk*, 2017 U.S. Dist. LEXIS 163889, at *13 (commenting that "courts should generally refuse to entertain a motion to disqualify based on a conflict of interest" unless the motion "raises a conflict that, if left unaddressed, would clearly call into question the fair or efficient administration of justice").

2014 WL 7140612, at *10 (D. Vt. Dec. 12, 2014) (brackets omitted); *see also Kirsch v. Dean*, No. 17-5650, 2017 U.S. App. LEXIS 21257, at *3 (6th Cir. 2017) (unpublished) ("Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." (quotation omitted)).

The Tenth Circuit "review[s] a district court's decision on a motion to disqualify counsel for abuse of discretion." *Chavez v. New Mexico*, 397 F.3d 826, 839 (10th Cir. 2005).   "A district court abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable."   *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (internal quotation marks omitted); *see, e.g.*, *Chavez*, 397 F.3d at 840 ("[W]e cannot conclude that the district court abused its discretion by denying [a] disqualification motion," as the movant had "failed to present [sufficient] evidence.").

### B.  Sanctions Under 28 U.S.C. § 1927

Federal law provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."   28 U.S.C. § 1927. "This is an 'extreme standard,' and fees should be awarded 'only in instances evidencing a serious and standard disregard for the orderly process of justice.'"   *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (quoting *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997)).   "Thus, courts must 'strictly construe' the statute to guard against 'dampening the legitimate zeal of an attorney in representing his client.'"   *Id.* (brackets omitted) (quoting *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987)).

"Courts need not find that an attorney subjectively acted in bad faith.   Rather, 'any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties

to the court is sanctionable.'"  *Baca*, 806 F.3d at 1268 (bracket omitted) (quoting *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008)).  But "'there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings,' such that the conduct 'resulted in proceedings that would not have been conducted otherwise.'"  *Id.* (bracket omitted) (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)); *see Braley*, 832 F.2d at 1513 (requiring a court imposing sanctions under § 1927 to "identify the extent of the multiplicity resulting from the attorney's behavior and the costs arising therefrom").[12]

The Tenth Circuit "generally review[s] an award of fees under § 1927 for an abuse of discretion."  *Baca*, 806 F.3d at 1269 (also noting that "if the exercise of that discretion *depended* on the resolution of a purely legal issue," the court would "review that issue de novo" (emphasis in original) (quotation omitted)).

## V.   ANALYSIS

As explained below, the Court concludes that the questions of whether Attorney Kushner will be an actual trial witness and, if so, whether that role will foreclose her from serving as trial counsel are not yet ripe for judicial resolution.   The Court also concludes that TLC has not satisfied its burden to show that Attorney Kushner (1) violated ethical rules in such a manner that disqualification or sanctions are appropriate, or (2) engaged in "unreasonable and vexatious" multiplication of this litigation such that § 1927 sanctions should be imposed.

---

[12] *See also Hamilton*, 519 F.3d at 1203 (commenting that the "imposition of a sanction under [§ 1927] does not, without more, necessarily reflect on the moral character of the offender"—as such sanctions "are levied to compensate the victims of dilatory practices, not as a means of punishment"); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006) (affirming "a § 1927 sanction against an attorney" who had "commenced the action without grounds and thereafter maintained the litigation in bad faith, vexatiously, wantonly and for oppressive reasons," including by "continu[ing] to assert bogus claims long after it would have been reasonable and responsible to have dismissed the claims" (quotation marks and alterations omitted) (citing *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985))).

### A. Attorney Kushner's Actions Do Not Warrant Disqualification

1. Listserv Actions

The Court concludes that the drastic measure of disqualification is not necessary to neutralize, remedy, or condemn Attorney Kushner's conduct with respect to the TLC listserv.[13] TLC has not shown how her participation for the remainder of the case would "taint the litigation," which is the "essential issue to be determined" in evaluating the impact of her listserv actions. *Tracy*, 717 Fed. Appx. at 781-82.   Indeed, TLC has failed to demonstrate how Attorney Kushner's continued participation as counsel for the Spence Defendants will prejudice in any way TLC's ability to prosecute its claims or defend against any counterclaims.   Nor has TLC articulated how her continued participation as counsel will give the Spence Defendants any unfair or improper advantage in the remainder of this litigation.

Furthermore, it is not clear at all that Attorney Kushner *will be* a witness at trial.   At oral argument, the Court sought additional clarity as to whether TLC still intended to call her as a trial witness.   Tr. 12-19.   TLC's counsel advised that, although TLC still "plan[ned] to have [Kushner] as a witness," TLC had "some depositions scheduled for later in April [2022] … including of Mr. Parris" and "at that point and no later [TLC] will know with absolute certainty" whether it will call Attorney Kushner as a witness.   Tr. 13:18-23.   Now some three months after oral argument, with Defendant Parris and others having been deposed, and on the eve of the closing of the discovery period, TLC has provided the Court with no further insight as to its intentions. Moreover, even if TLC persisted in its effort to call Attorney Kushner as a trial witness, this Court is well less than certain that the presiding judge would allow TLC to do so.   At least at this point,

---

[13] With respect to Attorney Kushner's listserv actions, TLC's Motion to Disqualify seeks solely to disqualify her. *See* ECF 247-1 at 4-16.   In contrast, with respect to her actions concerning the third-party subpoena recipients, the motion seeks both to have her disqualified and sanctioned.   *See id.* at 6, 16-23.

it is an open question whether TLC could demonstrate that Attorney Kushner is a "necessary" witness as contemplated by Rule 3.7 or whether TLC could prove through alternative methods what it would elicit through her testimony.[14]

Separate and apart from whether Attorney Kushner will be a witness at trial is the issue of whether she will actually be *counsel* at trial.   On that score the Court is similarly unclear.   At oral argument, the Court inquired whether Attorney Kushner will serve as trial counsel for any of the Defendants she currently represents.  Tr. 51:6-7.   Her counsel advised that no decision in that regard has been made and that there may be availability-related reasons why she could not do so. Tr. 51:10-13.   He assured the Court, however, that if Attorney Kushner were to be a trial witness "for a legitimate purpose," she would not also serve on the trial defense team.   Tr. 51:18-20.

Regarding Rule 3.7 (Lawyer as Witness), therefore, the Court considers TLC's lawyer-as-witness concerns to be inchoate and premature.   This rule only "prohibits acting as counsel *at trial* when the attorney is likely to be a *necessary* witness, unless the testimony relates to an uncontested issue."  *Morganroth v. DeLorean*, 213 F.3d 1301, 1309 (10th Cir. 2000) (emphasis in original).[15] At this point, any concerns of "prejudice [to] the tribunal" arising from "ambiguities in [Attorney Kushner's alleged] dual role [of advocate and witness]" appear to be "purely theoretical."   Wyo. Rules of Prof'l Conduct R. 3.7, Cmt. 1, 4 (also observing that "if the testimony will be uncontested,

---

[14] Although TLC repeatedly asserts that Attorney Kushner "acted in concert with Mr. Parris and the Defendants to stir confusion between TLC and GSTLC," *see* ECFs 247-1 at 12; 301 at 6; Tr. 14:5-16:1, TLC has not adequately explained how her testimony at trial would be necessary to prove a disputed issue.  *See* Tr. 14:5-16:1 (the Court inquiring whether Attorney Kushner's testimony would be "necessary," including whether TLC "could prove through other methods what Ms. Kushner's testimony could prove").

[15] Wyoming Rule 3.7(a) provides in relevant part that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: [1] the testimony relates to an uncontested issue … or [2] disqualification of the lawyer would work substantial hardship on the client."   *See also Gordon v. Jordan Sch. Dist.*, No. 2:17-cv-00677, 2020 U.S. Dist. LEXIS 149212, 2020 WL 4747763, at *2 (D. Utah Aug. 17, 2020) (observing that "although Rule 3.7(a) generally bars a necessary witness from acting as an advocate at trial, it does not automatically disqualify such a witness from acting as counsel during pre-trial proceedings").

the ambiguities in the dual role are purely theoretical").   If (1) TLC later shows that it indeed will call Attorney Kushner to testify at trial and that her testimony is likely *necessary* to address a *disputed* issue; and (2) Attorney Kushner nevertheless intends to be *trial* counsel for any Defendant(s), then the Rule 3.7 issue will be ripe for the presiding judge to decide.

As to TLC's allegations that Attorney Kushner's listserv actions violated three other ethical rules, the Court concludes that TLC has failed to establish that any of those violations (1) actually occurred, or (2) if the violations did occur, that they warrant disqualification.   Regarding Rule 4.1 (Truthfulness in Statements to Others), the Court is not convinced that—simply because her listserv posts did not mention "her close connection to [Defendant Parris] by serving as [his] counsel," ECFs 247-1 at 13-14; 301 at 1, 6—Attorney Kushner somehow "assist[ed] a criminal or fraudulent act by [Defendant Parris]." Rule 4.1.[16]   Even assuming the posts "increas[ed] the confusion between TLC and GSTLC" as TLC has alleged, ECF 247-1 at 13-14, TLC has not shown that had Attorney Kushner divulged her connection to Parris, doing so would have prevented either the confusion or some unspecified criminal or fraudulent act that resulted from such confusion. *See*, *e.g.*, Tr. 35:5-12 (TLC making no such assertions when asked what would have happened "[i]f Ms. Kushner had signed her post 'counsel to Rex Parris'").[17]   Furthermore, even though

---

[16] Wyoming Rule 4.1 provides that "[i]n the course of representing a client a lawyer shall not knowingly … fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client." *See also* Wyo. Rules of Prof'l Conduct R. 4.1, Cmt. 1 (explaining, *inter alia*, that "[a] lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts").   Although TLC initially alleged that Kushner served as "Defendants'" counsel during her listserv shenanigans in 2020, *see* ECF 247-1 at 6-16, the Court now understands that "Kushner did not represent any Spence Defendant other than Mr. Parris before February 24, 2021."   ECF 288 at 19-21; Tr. 53:3-24.

[17] TLC asserts that Attorney Kushner's posts "perpetuated the Defendants' violation of intellectual property."   ECF 247-1 at 13-14.   It is enough to say that the Court does not share TLC's certainty that a factfinder necessarily would draw that inference.   The same is true for TLC's insistence that a TLC listserv subscriber whose surname is Carter stopped his voluntary contributions to TLC in response to one or more of Attorney Kushner's listserv posts.   As discussed in detail at oral argument, Tr. at 31-35, the Court discerns too many gaps in TLC's evidence to permit the Court to draw the inference that Attorney Kushner *caused* Carter's termination of contributions.

Attorney Kushner's comments on the listserv did not disclose her ongoing representation of Parris, no reasonable reader of those comments would have viewed her as neutral or objective about him or the claims against him. The content of her posts brooked no doubts of her allegiance to him or her view of TLC's legal position in this case. *See*, *e.g.*, ECF 247-9 (Exhibit H) (Kushner commenting on the TLC listserve that the Sloan Group members were acting as "bullies" and "asshole[s]" by filing the instant lawsuit, which she characterized as a SLAPP lawsuit that "has absolutely nothing to do with the legitimate enforcement of rights"). Consequently, TLC has not shown that Attorney Kushner's omission violated Rule 4.1 or otherwise so tainted this litigation as to warrant disqualification.

Regarding Rule 4.2 (Communication with Person Represented by Counsel), the Court is similarly unpersuaded that Attorney Kushner should be disqualified because her listserv posts violated the prohibition on an attorney "communicat[ing] about the subject of the representation with a [represented party]" while the attorney is also "representing a client … in the matter." Rule 4.2.[18] To be sure, it seems quite clear that some of Attorney Kushner's posts transgressed Rule 4.2. After all, she made them at a time she arguably was representing Defendant Parris in this matter, the comments constituted communications with Parris's ongoing litigation adversary, and the comments related to the subject matter of the litigation. In the end, however, the Court need not decide that question. Instead, even if the Court *assumes* a violation of Rule 4.2, TLC has not shown that the listserv communications would so "*taint the underlying trial* with a serious ethical violation," *Lassiter*, No. 17-cv-0850 JCH/SMV, 2018 WL 1322135 (D.N.M.), at *6 (emphasis added), such that Attorney Kushner's disqualification from the litigation is absolutely necessary.

---

[18] Wyoming Rule 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person or entity the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

*See*, *e.g.*, ECFs 247-1 at 14-15; 306 at 3-6.   TLC simply has not shown how the trial of this case will be influenced or affected in any way because of the posts in question or the Rule 4.2 violation they may have constituted.   Nor has TLC shown how its ability to prosecute this litigation has been prejudiced by the posts.   In the end, whether Attorney Kushner should face discipline for violating Rule 4.2 (or any of the other rules invoked here) is a question for another tribunal in another proceeding, if ever.[19]

Of the rules invoked by TLC, Rule 8.4. (Misconduct)[20] has given the Court the greatest pause.   Attorney Kushner's posts to the listserv and her email exchanges with Defendant Parris surrounding them feature prominently in the record before the Court.   For his part, Judge Carman has elsewhere summarized the most suspicious of the posts and emails.   *See* ECF 194 at 6. While the posts and emails speak for themselves, the Court finds that Attorney Kushner in 2020 knowingly assisted her client (Defendant Parris) in maintaining access to the TLC listserv from which he had been excluded.   She *knew* he had been excluded and yet sought to "lurk" as his "mole" to maximize her value to him.   What is more, she posted comments on the listserv that appear to have been vetted and pre-authorized by Defendant Parris.   Through these comments,

---

[19] The Court briefly addresses Attorney Kushner's reminder that Judge Carman already determined that her listserv posts "were not carried out in the performance of her duties as an attorney for Mr. Parris."   ECF 194 (Order Regarding Defendant's Asserted Privileges) at 10.   The Court views that argument as a red herring.   Judge Carman made that determination in the context of Attorney Kushner's effort to claw back from TLC her listserv-related communications. *See* ECF *id.* at 4-10.   In denying some of the relief requested, Judge Carman reasoned that certain of the communications were not protected by the attorney-client privilege because they were not made for the purpose of seeking or providing legal advice.   *Id.* at 6-7.   Judge Carman did *not* find that Attorney Kushner was not otherwise serving as Parris's counsel in this matter—indeed, he found precisely the opposite.   *Id.* at 5 ("The Court finds Kushner was in fact acting as Parris's attorney.").   Instead, Judge Carman found only that the communications in question were not made for a purpose the privilege protects.   *See id.* at 4-7.   Whether communications between an attorney and her client are privileged is a vastly different inquiry than the one compelled by Rule 4.2 and, in this Court's view, the two inquiries have virtually nothing to do with each other.

[20] Wyoming Rule 8.4 (Misconduct) provides, in relevant part, that "[i]t is professional misconduct for a lawyer to … [1] engage in conduct involving dishonesty, fraud, deceit or misrepresentation [or] [2] engage in conduct that is prejudicial to the administration of justice."

some of which were false and still others misleading, Attorney Kushner not only communicated with a represented party but advanced a controversial narrative that was favorable to Defendants Parris and Gerald Spence and hostile to the Sloan Group.   To avoid getting herself barred from the listserv, which would have ended her ability to continue as Parris's "mole," Attorney Kushner intentionally concealed her association with him and her active role as his counsel.[21]

The Court has already suggested that Attorney Kushner lacked a "defensible reason … to maintain access to her clients' litigation adversary and to use that access both to obtain information from it and to post information to it without disclosing that she was counsel to Mr. Parris, a man to whom access to that listserv had been denied."   Tr. 62:8-63:2.    Although Attorney Kushner now insists that she was not acting as an attorney in making these posts,[22] such actions at a minimum are inconsistent with the requirement that attorneys "*at all times* exercise professional *integrity*, *candor*, … and *utmost respect* to … litigants."   Local Rule 84.1 (emphasis added).

Nevertheless, a "violation of a Rule does not necessarily warrant … disqualification of a lawyer in pending litigation."   Wyo. Rules of Prof'l Conduct – Scope.   The Court remains mindful that it should "hesitate to impose" such a "drastic measure" and should view "with extreme caution" the request to disqualify Attorney Kushner for her listserv posts, no matter how misleading or duplicitous they may have been.   *Christensen*, 2021 WL 824752, at *2.   Given this standard—and considering that such posts do not amount to one of the "[t]ypical[] ethical violations that require disqualification"—the Court finds that disqualification based on a potential

---

[21] No doubt recognizing the conflict between her role as Parris's counsel and her surreptitious reconnaissance of his litigation adversary, Attorney Kushner opted out of participating in Zoom calls offered to TLC listserv subscribers at which TLC's litigation strategy in this case was to be discussed.   Although this decision does not excuse the lack of judgment attendant to the rest of her listserv interactions, it mitigates the gravity of those errors and allays at least some of the Court's concerns.

[22] *But cf.* Tr. 60:22-61:17 (the Court observing that when Kushner sought to "to claw back those [listserv] emails as privileged, she believed that she was acting as counsel to Mr. Parris at the time she was sending them").

Rule 8.4 violation is unwarranted.   *Tracy*, 717 Fed. Appx. at 782.[23]

### 2. Actions Related to Third-Party Subpoena Recipients

As explained below, the Court concludes based on the evidence before it that Attorney Kushner should not be disqualified or sanctioned for her actions with respect to the third-party subpoena recipients.

TLC argues that Attorney Kushner "improperly contact[ed] Amedee and his counsel" and then "*threaten[ed] legal action*" if Amedee "produced documents pursuant to [TLC's] subpoena." ECFs 247-1 at 16-19 (emphasis in original) (citing, *inter alia*, ECF 193-6 at 2-3, 12, Wyoming Rule 8.4); 301 at 7-8.   Attorney Kushner responds that "[t]he allegation relating to any threats received by [Amedee]" is "simply untrue."   ECF 288 at 9-12, 21-22 (citing ECF 288-4 at ¶¶ 3-4 (Amedee declaring that "Kushner never threatened or pressured [him]"); 288-7 at ¶ 60 (Attorney Kushner declaring that "[she] never threatened [Amedee] or his counsel")).

As it suggested at oral argument, the Court lacks sufficient evidence to find that such a threat—which TLC has branded the "most egregious" alleged transgression—did in fact occur. *See* Tr. 35:18-37:17 (the Court commenting that, although it "gave each side in this hearing an opportunity to call witnesses," "neither side took [the Court] up on it"—thus leaving the Court with "dueling declarations" and unable to "tell who is telling the truth from cold pieces of paper"). Although the Court was perfectly prepared to assess witness credibility and make findings of fact,

---

[23] TLC has not shown that Kushner committed one of the "[t]ypical[] ethical violations that require disqualification"— i.e., "(1) a conflict of interest that prevents [Kushner's] zealous advocacy or (2) the potential use of privileged or confidential information about [TLC] that would give an unfair advantage to [Spence Defendants]."   *Tracy*, 717 Fed. Appx. at 782; *see also Quest Diagnostics*, 73 4 F.3d at166-67 (commenting that "[n]ot all violations of the legal code of ethics require dismissal or disqualification of counsel, and ... the relevant inquiry is the possibility of prejudice at trial"); *compare Tracy*, 717 Fed. Appx. at 782 (requiring TLC to "adequately [show] how the participation of [Kushner] for the remainder of the case would taint the litigation"), *with* ECF 247-1 at 15-16 (TLC's one-paragraph argument addressing Rule 8.4—with no explanation for how the alleged rule infraction taints the litigation and warrants the drastic measure of disqualification in this case).

the parties' decision to not put on live testimony prevented the Court from doing so. Consequently, the Court concludes that Attorney Kushner should not be disqualified or sanctioned for something that TLC has not proven that she did.

TLC also asserts that Attorney Kushner should be disqualified based on her May 28, 2021, email to TLC's counsel, which stated that "she represents *each* of the" remaining third-party subpoena recipients" (referring to Hillin, Faraj, Torres-Guillen, and Baca).   ECF 247-1 at 19-23. TLC contends that Attorney Kushner did *not* represent those individuals and her statement to the contrary was "a false statement of material fact" that "caused TLC to expend unnecessary time and resources."   ECFs 247-1 at 19-23; 301 at 6-7.   Attorney Kushner, however, argues that she *did* represent these individuals, at their request, if only "for a brief period."   ECF 288 at 10-15, 20, 22-23 (citing ECFs 288-1 (Baca Decl.); 288-2 (Fara Decl.); 288-3 (Hillin Decl.); 288-5 (Getzoff Decl.) 288-6 (Torres-Guillen Decl.); 288-7 (Kushner Decl.); 288-19 (Kushner's June 18, 2021, email to TLC's counsel)).[24]   Again, based solely on the documentary evidence before it, the Court lacks sufficient evidence to conclude that Attorney Kushner's May 28, 2021, email falsely represented a material fact.[25]   Witness testimony would have permitted the Court to resolve the

---

[24] *See supra* Note 3 (referencing TLC's suggestion that Attorney Kushner at least "coordinated with each of the third-part[y] [subpoena recipients]" in crafting subpoena responses).

[25] TLC's reply asserts that "[i]t is clear (at the very least) that Ms. Kushner's communication to TLC's counsel on May 28, 2021 stating that she represented Mr. Faraj was false" in light of her June 18, 2021, email response to TLC's inquiry about the Faraj subpoena.   ECF 301 at 6-7.   In the later email, Attorney Kushner clarified that she "represent[ed] Mr. Faraj in his capacity as a director" and that Arash Zabetian "represent[ed] [Faraj] in his individual capacity."   ECF 288-19 at 2.   Attorney Kushner advised TLC counsel to "confer with Mr. Zabetian" regarding questions about the Faraj subpoena and further explained her intent "to participate" in such conversations "[t]o the extent [her] schedule permits" and to work with Zabetian to "protect privileges."   *Id.*   On its own, this email sequence does not permit the finding that the cursory May 28th email amounted to a "false statement of *material* fact" or that TLC was somehow damaged thereby.   *See also* ECFs 247-1 at 19-23; 301 at 6-7 (TLC not specifically asserting that Attorney Kushner's initial statement regarding Faraj amounted to a false statement of *material* fact or caused TLC to incur costs).   This is especially true considering that she later clarified that the representation was more limited in scope than she initially suggested in the one-sentence substance of her original email.   The Court concludes that the May 28, 2021, email with respect to Faraj does not warrant disqualification or sanctions.

conflict in the evidentiary record currently before it, but TLC chose not to introduce any.

In sum, the Court lacks sufficient evidence to conclude that Attorney Kushner either (1) threatened Amedee or (2) made a false statement of material fact in asserting that she represented the remaining third-party subpoena recipients. Consequently, the Court concludes that she should not be disqualified or sanctioned for her actions with respect to them.

### B.  Kushner Has Not Unreasonably and Vexatiously Multiplied the Litigation

After reviewing TLC's list of Attorney Kushner's alleged transgressions, the Court concludes that TLC has not satisfied 28 U.S.C. § 1927's "extreme standard" of showing that she "unreasonably and vexatiously" multiplied this litigation through a "serious and standard disregard for the orderly process of justice."  *Baca*, 806 F.3d at 1268.

The Court already has addressed the "most egregious" allegation that Attorney Kushner threatened Amedee and the allegation that she essentially lied about which of the third-party subpoena recipients she represented.  With respect to the remaining allegations, the Court finds that TLC has not shown that they occurred in such a manner as to warrant § 1927 sanctions. Specifically, the Court finds that it lacks sufficient evidence to conclude that Attorney Kushner's behavior satisfied § 1927's extreme standard of "unreasonably and vexatiously" multiplying this litigation, *Baca*, 806 F.3d at 1268, during the course of (a) raising Rule 45 proportionality objections to subpoenas; (b) choosing to communicate with opposing counsel solely in writing; (c) refusing to consent to transfer of a motion to compel compliance with her own Rule 45 supboena; (d) filing certain discovery objections past the default deadline; (e) making a document production riddled with technological problems; and (f) seeking to protect arguably unprivileged conversations. *See supra,* Section III(B) (distilling TLC's various "less severe" allegations and Attorney Kushner's responses thereto).

The Court pauses to comment further on the events associated with the Rule 45 subpoenas served by TLC.  The Court certainly can appreciate the inconvenience and expense that TLC endured in having to chase down third-party witnesses, serve them with subpoenas, attempt to negotiate compliance, and then formally move to compel compliance in multiple districts when some of the negotiations failed.  So far as the Court can tell, however, each of these witnesses invoked rights and sought protection that the law gives them under Rule 45 and the attorney-client privilege.  At the very least, these witnesses had the legal right to object to all or a portion of TLC's subpoenas, to either concede or oppose transfer of the matter to the district from which the subpoena issued, and to litigate the matter before a magistrate judge.

Furthermore, that each of these witnesses lodged roughly identical objections and assumed similar litigating positions should surprise *no one*.   After all, five of the witnesses are members of a dissident faction of TLC (and/or the board of a new rival) and the sixth is counsel for multiple defendants in this case.[26]   That they might adopt a common strategy in parrying an advance by their litigation adversary is to be expected, just as five members of the governing board of TLC have done in more recent Rule 45 litigation.  *See* ECF 365 (motion to quash Rule 45 subpoenas served on five of TLC's board of directors).   In any event, if TLC considered the witnesses' compliance to be egregiously at odds with the requirements of the law, it could have sought its own relief for contempt under Rule 45(g).   Yet TLC for its own reasons eschewed that step, opting

---

[26] Of the six subpoenas in question, the one issued to Attorney Kushner understandably sparked the most combustible reaction.   After all, for reasons it endeavored with only mixed results to explain at oral argument, Tr. at 19-22, TLC waited months after obtaining Attorney Kushner's listserv posts and related emails before serving her subpoena and listing her as a witness.   This timing proved problematic, coming as it did a full three weeks *after* Attorney Kushner entered her appearance on behalf of the Spence Defendants.  *See* ECF 151 (entry of appearance).   Serving a subpoena duces tecum on opposing counsel is an aggressive tactic, particularly when carried out without substantial warning or explanation.   That this tactic would spark objections, chill the desire to confer, and trigger protracted and spirited litigation in the Eastern District of Wisconsin and in this District should have been altogether expected.   And that this tactic damaged and disfigured the relationship between counsel has been among its most unfortunate byproducts.

instead to focus all of its Rule 45 litigation frustration on Attorney Kushner herself.   Based on the information and evidence presented to it, however, the Court is unable to find that Attorney Kushner engaged in the kind of extreme conduct sanctionable under § 1927 with respect to any of the third-party subpoenas issued by TLC.

In sum, having analyzed the allegations against Attorney Kushner individually and in the aggregate, the Court nonetheless concludes that she has not unreasonably and vexatiously multiplied this litigation so as to warrant § 1927 sanctions.

## VI.  CONCLUSION

Although the Court today recommends that both motions be denied, the Court assigns TLC no blame for filing either of them.[27]   Some of the behavior chronicled in the motions was so unorthodox and at odds with the customary and expected conduct of counsel that it warranted close judicial scrutiny.   The Court has already expressed its disappointment in and disapproval of the conduct that led to the filing of the instant motions.   *See* Tr. at 90 ("I hope for as long as I live I never have to read anything that comes close to the kind of stuff that I've read involved with these motions.   I think this … skirmish is beneath the dignity of our shared profession, and I hope never to see it again."); *see also* Tr. at 77 ("I'm not here to defend or applaud what I understand to be Ms. Kushner's approach to conferring with opposing counsel about discovery issues.   I don't defend it, and I hope it changes.   And I don't blame you for being frustrated by it.").

The Court today need not belabor its point, considering (1) the Court has since been assured that its concerns were taken to heart, and (2) the Court has neither read nor heard evidence of anything but exemplary professional conduct by *all* counsel since the Court replaced Judge

---

[27]  Indeed, Judge Carman himself hinted that a motion to disqualify may be in order.   *See* ECF 194 at 6 (observing as to TLC's arguments that Attorney Kushner served as Parris's conduit to the TLC listserv that "[t]he arguments seem more suited for a disqualification motion.").

Carman in December.   Although this regrettable episode has much to teach—including the peril of serving as counsel for a close friend involved in turbocharged litigation and the challenge of maintaining professional objectivity as counsel in a case the legal merits of which the attorney long ago prejudged—it is time for counsel and this Court to learn from those lessons and move on.

For the foregoing reasons, this Court concludes that whether Attorney Kushner will be a trial witness and, if so, whether that role will foreclose her from serving as trial counsel are not yet ripe for judicial resolution.   The Court further concludes that TLC has not demonstrated that Attorney Kushner violated ethical rules in such a manner that (a) her continued participation in this case would so taint this litigation or the impending trial as to render the drastic remedy of disqualification necessary or (b) the imposition of sanctions is warranted.   The Court finally concludes that TLC has not demonstrated that Attorney Kushner has engaged in the "unreasonable and vexatious" multiplication of this litigation such that § 1927 sanctions should be imposed.

**IT IS THEREFORE RECOMMENDED** that TLC's Motion to Disqualify [ECF 247] be **DENIED WITHOUT PREJUDICE**.   **IT IS FURTHER RECOMMENDED** that TLC's Motion for § 1927 Sanctions [ECF 248] be **DENIED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE NOTIFIED THAT** pursuant to Local Civil Rule 74.1(b) of the Local Civil Rules for the United States District Court for the District of Wyoming:

A party may object to a Magistrate Judge's proposed findings and recommendations on any matter referred pursuant to 28 U.S.C. § 636(b)(1)(B) within fourteen (14) days after service of the Magistrate Judge's proposed findings and recommendations.   Any objections shall specifically identify the portions of the proposed findings and recommendations to which objections are made and the basis for such objections.   The District Judge assigned to the case will conduct a de novo review of the objections in accordance with 28 U.S.C. § 636(b)(1).   Any objections, response thereto and reply, if any, shall be subject to the page limitations imposed on dispositive matters under Local Rule 7.1(b)(2)(B) and (C).

Any party objecting to the above proposed findings and recommendations shall comply with the Local Civil Rules and 28 U.S.C. § 636(b)(1) accordingly.