

**FILED**

**8:19 am, 7/11/22**

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

THE TRIAL LAWYERS COLLEGE,
a nonprofit corporation,

    Plaintiff, Counterclaim Defendant,

v.   Case No. 1:20-cv-80-JMC

GERRY SPENCES TRIAL LAWYERS
COLLEGE AT THUNDERHEAD RANCH,
a nonprofit corporation,
THE GERRY SPENCE METHOD AT
THUNDERHEAD RANCH INC,
a nonprofit corporation, and
JOHN ZELBST,
JOSEPH H. LOW,
KENT SPENCE, and
DANIEL AMBROSE, individuals,

    Defendants,

JOHN JOYCE,

    Defendant, Counterclaim Plaintiff,

GERALD L. SPENCE, and
REX PARRIS, individuals,

    Defendants, Counterclaim Plaintiffs, Third-Party Plaintiffs,

v.

JOHN SLOAN,
ANNE VALENTINE,
JAMES R. CLARY, JR,
MILTON GRIMES,
MAREN CHALOUPKA,
DANA COLE, individuals,

    Third-Party Defendants,

JOHN JOYCE,

    Third-Party Plaintiff,

v.

F WARRIORS,

    Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING AS FRAMED PLAINTIFF'S MOTION TO SET ATTORNEYS' FEES AND COSTS

Plaintiff The Trial Lawyers College moved to hold Defendant John Joyce in contempt for failing to attend his deposition and asked the Court to sanction Defendant Joyce and his attorney, Nina Hodjat, for ignoring a court order (Doc. 254). The Court granted Plaintiff's motion (Doc. 327). Based on that order, Plaintiff moved to set attorneys' fees and costs against Defendant Joyce and his counsel (Doc. 339). Defendant Joyce responded (Doc. 359). He later supplemented his response (Doc. 382). Plaintiff then responded to the supplement (Doc. 383). For the reasons set forth below, the Court grants as framed Plaintiff's Motion to Set Attorneys' Fees and Costs Associated with Defendant John Joyce and Counsel Nina Hodjat's Sanctionable and Contemptuous Conduct.

### I.    Background

Defendant Joyce feared that sitting for a deposition in this case would incriminate him in his pending state criminal case. So he moved to stay discovery against him on October 6, 2021 (Doc. 228). Despite this concern, on October 11th, Defendant Joyce agreed to sit for a deposition on the first of November "as an agreed upon date for the deposition in the event our motion [to stay] is denied" (Doc. 255-4). Ten days later, the magistrate judge denied Defendant Joyce's Motion to Stay after balancing Plaintiff's interest in efficient resolution of this case with Defendant Joyce's interest in protecting his Fifth Amendment rights and avoiding suffering prejudice in either

case (Doc. 236). But the magistrate judge did limit the questions Plaintiff could ask to protect Defendant Joyce's rights in his criminal case (*Id.*).

In response to that denial, Defendant Joyce's attorney notified Plaintiff's counsel on October 21st that he would "assert his Fifth Amendment privilege to any and all questions asked in this matter going forward," without citing any authority to support such a broad refusal to cooperate in this civil case (Doc. 255-5). Plaintiff's counsel offered to conduct the deposition by Zoom so long as Defendant Joyce agreed to appear and planned to assert his Fifth Amendment privilege to every question asked (*Id.*). On October 25th, Defendant Joyce's counsel confirmed he would appear by Zoom and that "his counsel will invoke the 5th Amendment on his behalf" (*Id.*). Plaintiff's counsel then reminded his attorney the next day that (1) the Fifth Amendment is a personal privilege that only Defendant Joyce can assert on his own behalf and (2) the privilege would not apply to all questions asked in the deposition and Plaintiff reserved the right to contest Defendant Joyce's assertion of his Fifth Amendment privilege later with the Court (*Id.*).

The Friday before his scheduled deposition, on October 29th, Defendant Joyce's attorney asked Plaintiff to continue the deposition until Plaintiff could provide her with a list of questions to approve that would allow Defendant Joyce to answer without infringing on his Fifth Amendment right (Doc. 255-6). Plaintiff denied this request and told Defendant Joyce's attorney it planned to proceed with the deposition the following business day (Monday) (Doc. 255-7). As one last try, Defendant Joyce's attorney told Plaintiff she planned to move to stay the deposition on Friday (*Id.*). Undeterred, Plaintiff again told her they planned to proceed with the deposition (*Id.*). Defendant Joyce then filed another Motion to Stay that day (Doc. 239), this time to postpone the deposition, while he moved for reconsideration of the denial (Doc. 243).

Finally, on Friday at 5:01pm—after business hours the business day before the scheduled deposition that the magistrate judge refused to stay—Defendant Joyce's attorney notified Plaintiff that Defendant Joyce wouldn't attend his deposition (*Id.*). As promised, Defendant Joyce did not show up to the deposition. The magistrate judge denied the second Motion to Stay Monday morning (Doc. 240). Plaintiff then held the deposition anyway and asked questions meant for Defendant Joyce, including asking if he could authenticate text messages between him and the criminal case's alleged victim discussing the listserv at issue (Doc. 243-1). Plaintiff later moved to hold Defendant Joyce in contempt and asked the Court to award sanctions against Defendant Joyce, his counsel, and/or counsel's law firm for failing to attend the deposition and for allegedly trying to evade Plaintiff's discovery requests throughout this litigation (Doc. 254; Doc. 255).

Based on this evidence, the Court found Defendant Joyce in civil contempt for skipping his properly noticed deposition (Doc. 327). The Court also found Plaintiff entitled to its reasonable attorneys' fees and costs based on Defendant Joyce's contemptuous conduct (*Id.*). Lastly, the Court decided to award sanctions in an amount that will deter Defendant Joyce and his attorney from continuing their sanctionable behavior (*Id.*). Plaintiff timely applied for attorneys' fees and costs, and Defendant Joyce timely responded (Docs. 339, 359, 382, 383).

## II.     Applicable Law

### A.     Attorneys' Fees and Costs

Federal courts have the authority "to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citation omitted). One "permissible sanction" is ordering the losing party to "reimburse legal fees and costs incurred by the other side." *Id.* (citation omitted). This sanction should compensate the complaining party, not punish the offending party. *Id.* (citation omitted). In other words, the

sanction should reflect "only the portion of [the complaining party's] fees that he would not have paid but for the misconduct." *Id.* at 1187 (quotation omitted) (citation omitted); *see also Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1240 (10th Cir. 2018) (recognizing the Supreme Court's but-for test). So the sanction should display the "complainant's actual losses sustained" from the misconduct. *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (citations omitted). The Supreme Court also expects "[c]ounsel for the prevailing party . . . [to] make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In sum, to determine a reasonable fee amount, the Supreme Court requires "no precise rule or formula," but instead allows district courts the discretion to make an "equitable judgment" that can be based on the "nature of the relief obtained" by the moving party. *Id.* at 436–37.

B.  Sanctions

The Federal Rules authorize sanctions against any "person who impedes, delays, or frustrates the fair examination of [a] deponent." Fed. R. Civ. P. 30(d)(2). They also authorize the Court to order sanctions against a party who fails to attend his own properly noticed deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). The Rules specifically note that finding the discovery objectionable is not a valid excuse to skip a deposition, unless the party seeking to avoid the deposition has a motion pending for a protective order under Rule 26(c). *Id.* 37(d)(2). And they require either the client, the client's counsel, or both "to pay the reasonable expenses, including attorney's fees, caused by the failure" to attend the deposition. *Id.* 37(d)(3). The Supreme Court has encouraged courts to apply Rule 37 sanctions "diligently" so that they "penalize" those who disobey discovery orders and "deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (quoting *Nat'l Hockey League v.*

5

*Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (per curiam)), *superseded by statute on other grounds*, Antitrust Procedural Improvements Act of 1980, Pub. L. 96-349, 94 Stat. 1154.

An attorney's "reckless indifference to the law may impose substantial costs on the adverse party." *Braley v. Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987) (en banc) (citation omitted). Section 1927 allows the Court to make that attorney "bear the costs of [her] own lack of care." *Id.* (citation omitted). So the Court can impose costs and attorneys' fees on any attorney who "multiplies the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927. This statute authorizes sanctions against attorneys who intentionally or recklessly disregard their duties to the court or who "act[] in the teeth of what [they] know[] to be the law." *Braley*, 832 F.2d at 1511–12 (citation omitted).

The Tenth Circuit provides four situations that warrant § 1927 sanctions: (1) when the attorney acts cavalierly or with the determination to mislead the court; (2) when the attorney intentionally acts without a plausible basis; (3) when the entire course of the proceedings was unwarranted; or (4) when certain discovery is substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay, and to increase the costs of litigation. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998). An attorney acts without a plausible basis when she directs a deponent not to answer questions in a deposition based on a "faulty and unsupportable view" of the law. *See Starlight Int'l. Inc. v. Herlihy*, 186 F.R.D. 626, 650 (D. Kan. 1999).

Sanctions mainly serve to "deter attorney and litigant misconduct, not to compensate the opposing party for its costs" in the litigation. *White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990). Given sanctions' primary purpose, the sanction "should be the least severe of those available." *Starlight*, 186 F.R.D. at 647 (citing *White*, 908 F.2d at 685).

*Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (per curiam)), *superseded by statute on other grounds*, Antitrust Procedural Improvements Act of 1980, Pub. L. 96-349, 94 Stat. 1154.

An attorney's "reckless indifference to the law may impose substantial costs on the adverse party." *Braley v. Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987) (en banc) (citation omitted). Section 1927 allows the Court to make that attorney "bear the costs of [her] own lack of care." *Id.* (citation omitted). So the Court can impose costs and attorneys' fees on any attorney who "multiplies the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927. This statute authorizes sanctions against attorneys who intentionally or recklessly disregard their duties to the court or who "act[] in the teeth of what [they] know[] to be the law." *Braley*, 832 F.2d at 1511–12 (citation omitted).

The Tenth Circuit provides four situations that warrant § 1927 sanctions: (1) when the attorney acts cavalierly or with the determination to mislead the court; (2) when the attorney intentionally acts without a plausible basis; (3) when the entire course of the proceedings was unwarranted; or (4) when certain discovery is substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay, and to increase the costs of litigation. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998). An attorney acts without a plausible basis when she directs a deponent not to answer questions in a deposition based on a "faulty and unsupportable view" of the law. *See Starlight Int'l. Inc. v. Herlihy*, 186 F.R.D. 626, 650 (D. Kan. 1999).

Sanctions mainly serve to "deter attorney and litigant misconduct, not to compensate the opposing party for its costs" in the litigation. *White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990). Given sanctions' primary purpose, the sanction "should be the least severe of those available." *Starlight*, 186 F.R.D. at 647 (citing *White*, 908 F.2d at 685).

To sanction a party under § 1927, the Court must "sufficiently express the basis for the sanctions imposed to identify the excess costs reasonably incurred by the party to whom they will be due." *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995) (quoting *Braley*, 832 F.2d at 1513). In other words, the Court must identify the "multiplicity resulting from the attorney's behavior" and the costs accrued from multiplying the proceedings. *Braley*, 832 F.2d at 1513. Section 1927 "does not authorize sanctions to compensate fees merely *related* to unreasonable and vexatious conduct." *Chung v. Lamb*, No. 20-1278, 2021 WL 4852417, at *4 (10th Cir. Oct. 19, 2021) (unpublished). Instead, the statute authorizes only "sanctions to compensate excess fees incurred *because of* the offending attorney's sanctionable action." *Id.* (internal quotation marks omitted) (quoting *Baca v. Berry*, 806 F.3d 1262, 1278 (10th Cir. 2015) ("[T]his means excess costs and fees for which a sanctioned attorney must pay must have been cause by that attorney's sanctionable action.")). In *Chung*, the Tenth Circuit held that the district court abused its discretion in awarding fees for work done before the sanctionable conduct—moving to strike a defense raised in the answer—such as drafting the answer. *Id.*

III.   Analysis

Plaintiff attached an exhibit to its motion listing the fees it incurred because of Defendant Joyce's contemptuous conduct and his attorney's sanctionable behavior. In total, Plaintiff asks the Court to require Defendant Joyce and his counsel to pay $43,155.00 of its fees and costs (Doc. 339). Defendant Joyce disputes this amount, arguing that he need only pay fees incurred on November 1, 2021—the day he failed to appear for his deposition—and fees incurred from the motion for contempt and sanctions (Doc. 359). So he should only have to pay $5,362.00, which allegedly reflects the fees Plaintiff incurred from both events (*Id.*). But, Defendant Joyce says, awarding Plaintiff any of its fees from his and his attorney's misconduct would be unjust because

Plaintiff has funded the litigation in this case using money he and his friends donated to Plaintiff over the years (*Id.*). And, he continues, the Court need not award anything to Plaintiff because Defendant Joyce has learned his lesson simply from the Court granting Plaintiff's motion (*Id.*).

Defendant Joyce's reasoning falters in a few ways. First, the Court finds noticeably absent from Defendant Joyce's response any discussion of the award amount based on Ms. Hodjat's sanctionable conduct. Perhaps this explains why Defendant Joyce does not suggest an appropriate § 1927 sanction for his counsel anywhere in his response. As the Court noted when it granted Plaintiff's motion for sanctions and denied Defendant Joyce's motions for reconsideration, Ms. Hodjat not only advised her client not to show up to his deposition, but also she misled Plaintiff that her client would show up—even if just to plead the Fifth to every question—until after the end of the business day before the scheduled deposition. Instead of recognizing this misconduct and agreeing to pay a fair share of Plaintiff's fees for her actions, Defendant Joyce and his attorney continue to make arguments that ignore or misconstrue settled law and this Court's prior orders. For example, Defendant Joyce's response, either purposely or carelessly, misconstrues this Court's prior order as it relates to his attorney's sanctionable conduct. When wrapping up, Defendant Joyce says: "The Court made it clear in its order that 'the Court will only award sanctions in an amount that will deter Joyce.'" (Doc. 359). But the Court actually said: "Because courts impose sanctions to deter misconduct, the Court will only award sanctions in an amount that will deter Joyce *or his lawyer* from continuing *their* sanctionable behavior." (Doc. 327) (emphasis added).

Second, and relatedly, one would think from reading Defendant Joyce's response that the Court sanctioned him and his attorney merely for missing a single deposition. Not so. While such an action would warrant sanctioning, the conduct here goes beyond Defendant Joyce ignoring a court order. Indeed, skipping his deposition was the only *contemptuous* conduct found by the

Court, but the Court must also consider his counsel's *sanctionable* conduct when deciding an appropriate amount for Plaintiff's award. Thus, the Court will consider fees Plaintiff's counsel incurred because of Ms. Hodjat's sanctionable conduct and Defendant Joyce failing to appear for the deposition.

The Court agrees with Defendant Joyce that he should not have to pay fees and costs incurred before he skipped his deposition. *See Goodyear*, 137 S. Ct. at 1187 (noting that the sanction should reflect "the portion of [the complaining party's] fees that he would not have paid but for the misconduct" (internal quotation marks omitted)). According to the Court's calculation, then, Defendant Joyce must pay Plaintiff $2,319—the amount Plaintiff incurred from its counsel conducting the deposition without him, letting Plaintiff's board know Defendant Joyce did not show, and communicating with the magistrate judge about Defendant Joyce's absence.

But to determine the amount that Defendant Joyce's attorney must pay, the Court will first define the window of sanctionable conduct that caused Plaintiff to incur fees and costs. Ms. Hodjat's sanctionable conduct started on October 11th, 2021, when she falsely represented to Plaintiff's counsel that they could depose her client on November 1st "in the event [Defendant Joyce's] motion [to stay] is denied." Once the magistrate judge denied that motion, a back and forth with Plaintiff's counsel ensued, where Ms. Hodjat repeatedly demanded unusual limitations on the deposition. These conversations started on October 21st, when Ms. Hodjat notified Plaintiff's counsel that although Defendant Joyce would appear for his deposition, he planned to "assert his Fifth Amendment privilege to any and all questions asked in this matter going forward," without citing any authority to support such a broad refusal to cooperate in this civil case. Such frivolous assertions continued until Ms. Hodjat informed Plaintiff's counsel after business hours the business day before the scheduled deposition that Defendant Joyce would not attend.

9

Based on this timeline, the Court orders Ms. Hodjat to pay for all fees Plaintiff incurred while she misled Plaintiff and its counsel about Defendant Joyce attending the deposition, asserted baseless arguments about Defendant Joyce pleading the Fifth, and demanded deposition questions ahead of time. *See Baca*, 806 F.3d at 1278 ("[T]his means excess costs and fees for which a sanctioned attorney must pay must have been caused by that attorney's sanctionable action."). These fees amount to $9,134, reflecting Plaintiff's counsel (1) communicating with Ms. Hodjat whenever she came up with another groundless limitation to the upcoming deposition and her last-minute notice of Defendant Joyce's plan to fail to appear for his deposition; (2) analyzing and researching Ms. Hodjat's claims about her client's inability to participate in a deposition because of his Fifth Amendment right, only including the deposition preparation that Plaintiff's counsel conducted in anticipation of Defendant Joyce (or his attorney) invoking the Fifth Amendment; and (3) strategizing how to depose Defendant Joyce once it appeared he would not cooperate. Mindful of the duty to only award fees *because of* Defendant Joyce's attorney's misconduct, like *Baca* instructs, the Court excluded any fees incurred from general deposition preparation.

The Court also finds it appropriate to award Plaintiff its fees and costs after November 1st given Plaintiff's success on its motion for contempt and sanctions. *See Hensley*, 461 U.S. at 437 (instructing district courts to "make clear that [they have] considered the relationship between the amount of the fee awarded and the results obtained"). Plaintiff moved to hold Defendant Joyce in contempt for ignoring the magistrate judge's order denying his motions to stay discovery against him (Doc. 254). Plaintiff also asked the Court to sanction Defendant Joyce and his attorney for disobeying court orders (*Id.*). The Court granted Plaintiff's motion and denied Defendant Joyce's requests for this Court to reconsider the magistrate judge's denials of his motions to stay (Doc. 327).

So Defendant Joyce and his attorney must pay Plaintiff's fees incurred from successfully moving for contempt and sanctions plus opposing both motions for reconsideration. That work amounted to $17,466 in fees. This amount comes from Plaintiff's counsel (1) drafting each filing to support the motion for sanctions and contempt and opposition to the motions to reconsider; (2) researching and analyzing for that drafting; and (3) communicating with Plaintiff and Defendant Joyce's attorney about those filings. Finally, because the Court cannot decipher the degree of culpability between Defendant Joyce and his counsel, the Court will order them each to pay half: $8,733. Although generally clients pay fees and costs, § 1927 allows the Court to make an attorney "bear the costs of [her] own lack of care." *Braley*, 832 F.2d at 1511 (citation omitted).

IV.   Conclusion

For the reasons set forth above, the Court GRANTS AS FRAMED Plaintiff's Motion to Set Attorneys' Fees and Costs Associated with Defendant John Joyce and Counsel Nina Hodjat's Sanctionable and Contemptuous Conduct (Doc. 339). The Court thus will award Plaintiff $28,919 in attorneys' fees and costs that Defendant Joyce and his attorney must pay. This amount comes from what Plaintiff incurred when its counsel (1) jousted with Ms. Hodjat over the parameters of a deposition Defendant Joyce ultimately skipped ($9,134); (2) worked the day of the deposition ($2,319); and (3) successfully moved for contempt and sanctions and opposed Defendant Joyce's motions for reconsideration ($17,466). The Court orders Defendant Joyce to pay $11,052; his counsel must pay the remaining $17,867.[1]

---

[1] Defendant Joyce supplemented his response to Plaintiff's motion to set attorneys' fees and costs (Doc. 382). In the supplement, he mentioned "recently discovered facts" about Plaintiff's alleged dishonesty that he asserts the Court should consider "in mitigation of any sanction award." Those facts include Plaintiff's alleged knowledge and concealment of a pending motion in Defendant Joyce's criminal case it allegedly claimed to know nothing about in its representations to the Court when opposing Defendant Joyce's motions to stay. Defendant Joyce seems to suggest that such alleged misconduct proves his efforts to avoid his deposition were worthwhile. Even if true, none

IT IS SO ORDERED.

Entered for the Court
this the 11th day of July, 2022

/s/ Joel M. Carson III
Joel M. Carson III
United States Circuit Judge
Sitting by Designation

---

of that changes the fact that Defendant Joyce and his counsel ignored a court order and acted in a sanctionable way. As the Court noted in its Order Granting Plaintiff's Motion for Contempt and Sanctions, even if Defendant Joyce had legitimate reason to refuse to answer every question, he should have showed up to the deposition (Doc. 327). Nor does Plaintiff's alleged concealment justify his counsel's sanctionable conduct in advising him not to show up to his deposition and misleading Plaintiff that her client would show up—even if just to plead the Fifth to every question—until after the end of the business day before the scheduled deposition (*Id.*). In short, even if the record can verify Defendant Joyce's "recently discovered facts," he and his attorney handled the situation poorly and will pay Plaintiff its costs and fees incurred because of their contemptuous and sanctionable conduct as set forth above.