IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>GERRY SPENCES TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, a nonprofit corporation, and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, and DANIEL AMBROSE, individuals, and GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC., a nonprofit corporation,<br><br>    Defendants,<br><br>and JOHN JOYCE,<br><br>    Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff,<br><br>vs.<br><br>F WARRIORS,<br><br>    Third-Party Defendant. | Case Number: 1:20-CV-00080-JMC-GJF |

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL PRODUCTION AND REOPEN DISCOVERY**

THIS MATTER is before the Court on Plaintiff's (TLC's) Motion to Compel Production and Reopen Discovery [ECF 412] (Motion). The Motion—filed three weeks after the close of discovery and 81 days before trial—is fully briefed. *See* ECFs 413 (Mot.), 418 (Resp.), 423

(Reply).[1]  On August 4, 2022, the Court heard extensive argument on the Motion.  *See* ECFs 437 (clerk's minutes), 466 (transcript).  Fundamentally, the Motion raises the question of whether the Court should reopen discovery to allow TLC's damages expert to supplement his opinion on TLC's lost profits and offer his very first opinion on the potential disgorgement of Defendant Gerry Spence Method at Thunderhead Ranch, Inc.'s (GSM's) profits.  As explained below, the Court concludes that TLC has not shown good cause to reopen discovery.  Consequently, the Court will deny TLC's Motion.

## I.  BACKGROUND

In May 2020, TLC filed its Complaint, and in November 2020, TLC timely filed its expert report.  ECFs 1, 106.  The report provided an opinion on TLC's "lost profits" in light of TLC's claims (e.g., "trademark infringement and misappropriation of trade secrets").  ECF 106-1 at 9.  The report, however, provided no opinions on the "[d]isgorgement of defendant's profits [or] reasonable royalty measures."  *Id.*  Instead, the report simply related its "understanding that … Defendants have not produced [the] relevant information" for such damage calculations and "reserve[d] the right to amend th[e] report as appropriate."  *Id.*

In May 2021, TLC became aware of GSM and its plan to "collect[] tuition from the approximately 55 students [it] plan[ned] to host" at the rate of "at least $5,500 per student."  ECF 198 at 22–23.[2]  In June 2021, TLC represented to the Court that "[these] efforts to collect tuition will no doubt continue" and that "disgorgement of such profits remains a viable vehicle for

---

[1] TLC's Memorandum in Support [ECF 413], which contains the actual briefing that supports TLC's Motion [ECF 412], is simply abbreviated as "Mot." in the Court's citations for ease of reference.  In addition, when citing the parties' briefing, the Court references the parties' own pagination at the bottom of their briefing (and not the automated pagination at the top).

[2] Approximately one week later, the Spence Defendants deposed TLC's expert, who represented that his report—which still expressed no opinion on the disgorgement of GSM's profits—"contain[ed] a complete statement of all opinions that [he] will express at trial."  ECF 418-2 at 3–4.

recovery of damages" to the extent that "[such] revenue derives from [the alleged] unlawful acts." *Id.* at 23. In September 2021, TLC moved for leave to amend its complaint *inter alia* to add GSM as a Defendant. ECF 223. The Court granted permission, and TLC filed its Third Amended Complaint in October 2021. ECF 238.[3] In addition to other relief, this iteration of the complaint (as with its two previous iterations) sought disgorgement of profits from Defendants. *See* ECFs 1 at ¶ 115; 101 at ¶ 159; 238 at ¶ 181. TLC first served discovery on GSM on February 2, 2022. *See* Resp. at 18; ECF 418-1 at 3; Tr. [ECF 466] 13:3-11. In response, GSM disclosed its bank statements to TLC "on March 3, 2022 (covering June 2021–January 2022)" and again "on June 26, 2022 (covering February 2022–May 2022)." ECF 437 (clerk's minutes) at 2.

On February 22, 2022, the Court filed its Third Scheduling Order, which remains operative. ECF 313. This scheduling order included no expert disclosure dates, as these had already expired, but implemented other deadlines and an overall "discovery cutoff date" of July 1, 2022, and a new trial date of October 11, 2022. *Id.* at 1–2.

On July 1, 2022, the Court's discovery deadline expired. ECF 313. Prior to this deadline expiring, neither the Court nor Defendants were ever notified that TLC wished to supplement its expert report—despite the Court holding *ten* previous discovery hearings in the preceding eight months. *See* ECF 418-1 at 2; Tr. 20–21:5.[4]

---

[3] *See also* ECF 238 (TLC's Third Amended Complaint) at ¶ 181 (stating "TLC seeks disgorgement damages from Defendants"); Mot. at 11 (noting that TLC's disgorgement claim is "based on TLC's claims for trademark infringement and misappropriation of trade secrets").

[4] At oral argument, the Court reconstructed the timeline depicting how and when TLC raised with the Court the issue of GSM's deficient document production. Tr. 9:19–10:24. The very first time TLC's counsel ever alerted the Court to the issue in any respect occurred at the June 22, 2022, discovery hearing, when TLC's counsel "asked whether the Court could also address Defendants' production of documents related to damages at the next hearing" and "[t]he Court agreed to do so." ECF 379 (clerk's minutes) at 4. And at the next hearing, TLC's counsel briefly stated that GSM had agreed to turn over these documents—but still had failed to do so—and that TLC wanted the documents as soon as possible in light of the upcoming (July 22, 2022) dispositive motions deadline. *See* ECF 389 (clerk's minutes from July 7, 2022); Organ Courtroom Recording from July 7, 2022, at 2:52:25. But TLC's counsel never mentioned in either of these hearings—or any other hearing—that it wished to supplement its expert report (or have the discovery deadlines modified for this purpose). Furthermore, on June 1, 2021, the Spence Defendants filed a Motion to Exclude

## II. TLC'S MOTION

TLC's Motion—filed July 22, 2022—requests the "unordinary relief" of having "the Court order discovery to be reopened for the purpose of allowing both parties to supplement their expert reports." Mot. at 1, 3–9. TLC makes this request because of its "serious need to supplement its damages expert report" so that this report may include an opinion on the "disgorgement of [GSM's] profits." *Id.* at 7–11.[5] In addressing the lateness of this request, TLC asserts that it was simply unaware—until June 26, 2022, when it received a supplemental production of GSM's financial documents (i.e., updated bank statements)—that "disgorgement [of GSM's profits] was a viable vehicle for recovery of damages." Reply at 3.[6] TLC, however, never explains what specific aspect of this supplemental production gave TLC its newfound revelation that GSM's profits could potentially be disgorged. *See* Mot. at 6–7; Reply at 3. Nor has TLC adequately explained why its suspicions of disgorgement as a viable theory were not aroused as early as May 2021.

During its discussion with TLC's counsel at oral argument, the Court expressed its "concern[] about the timing of [TLC's] request:"

---

Opinion of Tuan Pham [TLC's damages expert], which asserted *inter alia* that this expert's opinions (1) contained "no meaningful analysis," (2) "[were] premised on unexplained and inexplicable logical leaps," and (3) "fail[ed] to account for obvious alternative explanations for [TLC's] alleged losses." ECF 183 at 2. If nothing else, this motion put TLC on notice more than a year ago of Defendants' criticism of its expert's opinion and methodologies. Yet despite the warning, TLC took no step toward supplementing his report until three weeks after discovery closed.

[5] Although TLC seems to focus on the primary goal of adding a disgorgement opinion to its expert report, *see* Mot. at 4–11; Reply at 1–4, TLC also suggests that, if the Court were to grant the Motion, TLC would additionally have its expert "update [his] [existing] analysis tied to [his] [existing] estimation of [TLC's] Lost Profits with [TLC's] financial data for the period from September 2020 through the present," ECF 413-1 at ¶ 6; Mot. at 4.

[6] *See also id.* (asserting that prior to June 26, 2022, TLC only had "little more than a suspicion that disgorgement might be an appreciable remedy with respect to GSM's harmful conduct"); Mot. at 2–3, 6–7 (asserting that prior to June 26, 2022, "it was impossible for TLC to evaluate whether [GSM's financial documents] [would] contain[] enough information such that they could be used by [TLC's expert]"; *but c.f.* ECF 437 (clerk's minutes) at 2 (observing that the GSM disclosed "bank statements" to TLC "on March 3, 2022 (covering June 2021–January 2022), and [again] on June 26, 2022 (covering February 2022–May 2022)").

4

> Had this happened substantially earlier, you'd have a friendlier audience. But the issue—the overall theme of my heartburn with TLC's position—is the timing with which this issue was raised and the due diligence with which TLC acted, or omitted to act, during the course of raising this issue to me.

Tr. 31:25–32:5 (minor formatting omitted). In response to the Court's questioning on "why … it t[ook] TLC so long to raise this issue to the Court for action," TLC responded that "the short answer" was that—although there was no "catastrophic roadblock to [TLC] issuing discovery"— "there were a lot of moving parts," such as TLC (1) not receiving GSM's updated bank statements earlier,[7] (2) spending time "trying to understand who is who" in light of the establishment of GSM in April 2021 and (3) operating under the assumption that TLC was to "work things out amongst [the parties] and not come to the Court every time there was a looming problem." Tr. 9:19–32:5.

Near the end of the Court's discussions with TLC on this issue of timeliness, TLC's counsel represented that TLC "does not want a continuance of the trial date." Tr. 56:13–20. Furthermore, TLC's counsel stated that, if its Motion were granted, TLC and counsel would "operate as swiftly as [they] possibly can"—e.g., by "taking whatever the time the Court gives [them]" to supplement the expert's report. *Id.* Nevertheless, TLC's counsel conceded that permitting TLC to supplement this report could "imperil [the Court's] pretrial schedule and the trial date." Tr. 53:2–17; *see also* Tr. 53:17 (TLC's counsel conceding "[t]hat's obviously a concern of ours").

### A. TLC's Primary Arguments

While acknowledging that reopening discovery to allow expert report supplementation "will require some limited discovery activities," TLC insists that it nevertheless has shown good

---

[7] *See* Tr. 32:19–21 (TLC confirming that GSM's "second production was simply the same information [i.e., bank statements]," which now included "the intervening months" of February 2022–May 2022).

cause to reopen discovery for this limited purpose. Mot. 4–9.[8] Specifically, TLC asserts that (1) it "does not seek to upset any currently established deadlines or delay the [October 11, 2022] trial;" (2) "Defendants' opposition to TLC's request is blatantly self-serving;" (3) "Defendants will not be prejudiced by reopening discovery;" (4) "TLC was diligent in its efforts to obtain [more detailed financial records from GSM]" whereas GSM "delayed production of supplemental financial materials until June 26, 2022;" (5) "it was impossible"—until June 26, 2022—"for TLC to evaluate whether [GSM's financial documents] [would] contain[] enough information such that they could be used by [TLC's] expert;" and (6) there is a "very high" likelihood that "the additional discovery will lead to relevant evidence"—particularly evidence regarding the potential "disgorgement of [GSM's] profits" and GSM's "unjust enrichment." *Id.* at 4 –7 (citing *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987)).

### B. Defendants' Primary Arguments

Defendants[9] claim that TLC has failed to show good cause "for relief from deadlines that have already passed" (i.e., the deadlines to reopen discovery and provide expert opinions). Resp. at 2, 8–11. Defendants assert that TLC already knew—no later than June 2021, when TLC filed its opposition to summary judgment [ECF 198]—that "TLC could recover whatever money was paid to GSM in tuition on a disgorgement theory." *Id.* at 9 (citing ECF 198 at 22–23).[10] In

---

[8] TLC also appears to suggest that Rule 26(e), which requires a party to supplement its expert's written report, authorizes TLC to supplement its expert report after the close of discovery. *See* Mot. at 4.

[9] Defendants, for purposes of the Court's instant order, consist of (1) "Spence Defendants" (i.e., every named Defendant other than Daniel Ambrose and John Joyce), who filed the Response [ECF 418] and (2) Defendant Joyce, who filed a Notice of Joinder [ECF 419] to Spence Defendants' Response.

[10] TLC's June 2021 brief in opposition [ECF 198] stated:

> At his recent deposition, … Defendant Zelbst indicated that [Defendants'] new college will shortly begin collecting tuition from the approximately 55 students they plan to host. Defendants' website ["Gerry Spence Method," accessed and archived by TLC's counsel on May 10, 2021] indicates that this tuition amount will be at least $5,500 per student. Those efforts to collect tuition will no doubt continue, and TLC should be permitted to adduce testimony at trial as to the amount of tuition

6

addition, Defendants assert that TLC could have—but failed to—take actions that might have allowed TLC to obtain a disgorgement opinion significantly sooner, such as (1) "[seeking] leave (during the summer of **2021**) to offer an opinion on disgorgement" or at least (2) expressing at or before the February 17, 2022, scheduling conference "[an] intention to offer new opinions on the theory of disgorgement"—and then requesting leave and time to obtain such opinions. *Id.* at 6–7, 10 (emphasis in original).

Defendants further assert that—up until July 21, 2022, which was three weeks after the close of discovery—neither TLC nor its damages expert ever suggested an intent to supplement the expert's report. *Id.* at 2–5, 10. Finally, Defendants argue that TLC cannot use its Rule 26(e) disclosure obligations as a "loophole" to now supplement its expert's opinion after the close of discovery. *Id.* at 9–11.

## III. APPLICABLE LEGAL STANDARDS

### A. Modifying Scheduling Deadlines

The Federal Rules of Civil Procedure provide that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "To satisfy this standard a movant must show that 'the scheduling deadlines cannot be met despite the movant's diligent efforts.'" *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1118 (10th Cir. 2021) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). "Good cause" also "obligates the moving party to provide an adequate explanation for any delay." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quoting *Husky Ventures,*

---

collected.  To the extent that the jury finds that Defendants' ability to collect tuition revenue derives from their unlawful acts in, *inter alia*, passing off their new entity as TLC, disgorgement of such profits remains a viable vehicle for recovery of damages.

ECF 198 at 22–23.

*Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018)). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch*, 771 F.3d at 1240. If, however, the movant "knew of the underlying conduct but simply failed to raise [its] claims," *Husky Ventures*, 911 F.3d at 1020 (alteration in original) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015)), then "the claims are barred." *Gorsuch*, 771 F.3d at 1240.

"Appellate decisions have identified several relevant factors in reviewing decisions concerning whether discovery should be reopened." *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).[11] Nevertheless, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Tesone*, 942 F.3d at 988 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also id.* (observing that, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," "the factor on which courts are most likely to focus is the relative diligence of the lawyer who seeks the change" (quotations and alterations omitted)). Thus, good cause "is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Id.* (quoting 3 James Wm. Moore, Moore's Federal Practice - Civil § 16.14[1][b] (3d ed. 2019)). In contrast, "carelessness" or "[m]ere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation … should not be considered good cause." *Id.* at 989 (quoting *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D.

---

[11] *See, e.g., id.* (observing that these factors "includ[e]: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence").

8

95, 105 (D.D.C. 2005)).

The Tenth Circuit "review[s] the denial of a motion to revisit a scheduling order … for an abuse of discretion."  *Hamric*, 6 F.4th at 1119; *Smith*, 834 F.2d at 169 ("Whether to extend or reopen discovery is committed to the sound discretion of the trial court and its decision will not be overturned on appeal absent abuse of that discretion."); *see also Bylin v. Billings*, 568 F.3d 1224, 1229-31 (10th Cir. 2009) (observing that "[a] district court abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable"—and that appellate courts, in applying Rule 16, "have afforded *wide discretion* to district courts' applications of that rule" (emphasis added)).

### B. Supplementing Expert Disclosures

"Rules 26(e)(1) and (2) require a party to supplement the expert's written report and deposition testimony where the prior information 'is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'"  *Gillum v. United States*, 309 Fed. Appx. 267, 269 (10th Cir. 30, 2009) (unpublished) (quoting Fed. R. Civ. P. 26(e)).[12]  Nevertheless, "[a] supplemental expert report that states additional opinions or rationales or seeks to strengthen or deepen opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)."  *FTC v. Nudge*, No. 2:19-cv-00867, 2022 WL 823933, 2022 U.S. Dist. LEXIS 48781, at *14 (D. Utah   Mar. 18, 2022) (quoting *Cohlmia v. Ardent Health Servs.*, LLC, 254 F.R.D. 426, 433 (N.D. Okla. 2008)); *see also Guevara v. NCL (Bahamas) Ltd.*,

---

[12] *See also id.* (further observing that "Rule 37 addresses failures to comply with the discovery provisions: 'If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless'" (quoting Fed. R. Civ. P. 37(c)(1))).

920 F.3d 710, 719 (11th Cir. 2019) ("[A] party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report." (internal quotation marks omitted)); *EEOC v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015) (holding Rule 26(e) could not be used as a "loophole to revise [a party's] disclosures in light of [its opponent's] challenges to the analysis and conclusions therein" (quotation and alterations omitted)).

"Instead, [Rule 26(e)] supplementation is permissible only to address 'additional or corrective information that was unavailable when the expert made his or her initial report,' or to make 'relatively minor changes that simply correct inaccuracies in the original report.'" *Nudge*, 2022 U.S. Dist. LEXIS 48781, at *14-15 (quoting *Sibley v. Sprint Nextel Corp.*, No. 08-2063, 2013 WL 1819773, 2013 U.S. Dist. LEXIS 61358, at *8 (D. Kan. April 30, 2013)). "However, substantive changes to methodology or decisions about what data to include in the analysis exceed the bounds of permissible supplementation." *Id.* at *15 (citing *Sibley*, 2013 U.S. Dist. LEXIS 61358, at *19-20).[13]

## IV. ANALYSIS

As discussed below, the Court concludes that TLC has shown neither (1) good cause to

---

[13] *See also Rodgers v. Beechcraft Corp.*, 759 Fed. Appx. 646, 663 (10th Cir. 2018) (unpublished) (observing that (1) "Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report" (quoting *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) (brackets omitted)); (2) "Rule 26(e) does not grant a license to supplement a previously filed expert report because a party wants to" (quoting *Richardson v. Korson*, 905 F. Supp. 2d 193, 199 (D.D.C. 2012) (brackets omitted)); and (3) "[t]o construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation" (quoting *S.E.C. v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2008 U.S. Dist. LEXIS 117666, 2008 WL 4587240, at *3 n.3 (D. Colo. Oct. 15, 2008)) (brackets omitted)); *Beller v. United States*, 221 F.R.D. 689 (D.N.M. 2003) (similarly commenting that Rule 26(e) "does not give license to sandbag one's opponent with [untimely] claims and issues"— particularly because (1) "[permitting such an approach] would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given;" (2) "[such a] practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions" (quotation omitted)).

10

reopen discovery to supplement its expert report nor (2) other permissible grounds to supplement the report. Because this conclusion renders moot the portion of the instant Motion that seeks to compel additional financial documentation by GSM, the Court will deny that request as well.

### A. TLC Has Not Shown Good Cause under Rule 16(b)(4) to Reopen Discovery

The Court finds that TLC has not shown "good cause," Fed. R. Civ. P. 16(b)(4), for why the Court should reopen discovery to allow expert report supplementation. For instance, TLC has not "provide[d] an adequate explanation for [its] delay" in seeking leave to supplement its expert report. *Tesone*, 942 F.3d at 988. In other words, TLC has not shown that, "despite [its] diligent efforts," *Hamric*, 6 F.4th at 1118, it could not have sought such leave significantly sooner—i.e., in a manner that would not have placed the Court's July 1, 2022, discovery deadline (or the trial date) in jeopardy.

As noted, TLC became aware of GSM and its business plans at least as early as May 2021—nearly 14 months before the July 1, 2022, discovery deadline. ECF 198 at 22–23. Moreover, TLC was aware—at least as early as June 2021—that "disgorgement of [GSM's] profits remain[ed] a viable vehicle for recovery of damages." *Id.* at 23. And TLC subsequently pled disgorgement as a theory of recovery against GSM in the Third Amended Complaint. Then TLC waited until February 2022 to first serve discovery on GSM and delayed until July 22, 2022, to ask this Court for permission to amend its expert's report to address disgorging GSM's profits. Although TLC had ample opportunities to explain in writing and at the hearing why the course it pursued was duly diligent, the Court finds that such a delay was inexcusable. *See*, *e.g.*, *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 878 (7th Cir. 2021) (observing that "[f]ederal courts do not possess infinite patience, nor are the discovery tools of litigation meant to substitute for ... diligence").

TLC claims that it did not know until it received GSM's second set of bank statements (covering February 2022–May 2022) on June 26, 2022, that "disgorgement [of GSM's profits] was a viable [option]." Reply at 3. Yet TLC never explains what specific aspect of this supplemental production—which merely increased the eight months of GSM bank statements that TLC already had to twelve—put TLC on notice that GSM's profits could only now be disgorged. *See* Mot. at 2–3, 6–7 (asserting only that GSM's June 26, 2022, disclosure convinced TLC that the GSM's financial documents "contained enough information such that they could be used by [TLC's] expert"). But even if these updated bank statements brought additional clarity to its disgorgement theory, TLC still "knew of [GSM's] underlying [and revenue-generating] conduct" as early as May 2021—conduct that TLC viewed as "disgorgeable"—but TLC "simply failed to raise [its disgorgement] claim[]" during the last 14 or so months of discovery (e.g., by seeking leave to supplement its expert report to address disgorgement of GSM's profits). *Husky Ventures*, 911 F.3d at 1020.

In addition to TLC's inadequate explanation for its delay, which is "the focus of the [Court's] inquiry," *Tesone*, 942 F.3d at 988, the *Smith* multi-factor analysis also militates against reopening discovery. First, "trial is imminent." *Smith*, 834 F.2d at 169. As noted, trial was set to occur only 81 days from the time TLC filed its Motion (and is set to occur less than six weeks from the entry of this order). This trial date has been fixed and pending since February 22, 2022. ECF 313. Moreover, if the Court were to reopen discovery, Defendants—who adamantly oppose such a course of action—"[would] be prejudiced by having to jettison their timely filed *Daubert* and summary judgment motions, consider a new [expert] report, depose [TLC's expert], and get their own expert report and deposition." Resp. at 2–5, 10 (also asserting that, until July 21, 2022, TLC never suggested an intent to supplement its report). Although the reopening of discovery

would allow TLC to produce a revised expert addressing, *inter alia*, the disgorgement of GSM's profits, TLC was neither "diligent in obtaining [such] discovery" nor unable to timely "foresee[] … the need for [such] discovery."  *Smith*, 834 F.2d at 169.[14]

The Court pauses here to address what TLC emphasized in its briefing and at the hearing to be the primary culprit for why it waited until now to raise the need to reopen discovery: GSM's incomplete responses to document requests, its months-long foot-dragging in supplementing its production, and its counsels' failure to uphold the commitments they made to do so.  *See* Mot. 2–9; Tr. 9:19–32:5. At oral argument, the Court did not hide its frustration with the breezy approach GSM adopted toward supplementing its production.  *See* Tr. 69:10–24.  Promising certain records and then failing to uphold that promise does very little to promote trust between counsel or earn respect from the Court.   Indeed, GSM's approach prompted the Court to wonder whether the months of foot-dragging were deliberate and tactical.  *See id*.  Regardless, as the party with the burden of proving damages, TLC had an obligation to timely notify Defendants and this Court of its intention to supplement its expert's opinions on lost profits and disgorgement of profits. And yet it waited until three weeks after the close of discovery, 81 days before a long-scheduled trial, and 21 months after disclosing the original report before providing notice of its intent to supplement.  Whatever else it may be, this sequence does not constitute good cause to reopen discovery.

---

[14] TLC urged the Court to rely on two cases in which a plaintiff was allowed to reopen discovery.  *See* Mot. at 7–8. But these cases (which were before the same magistrate judge) are meaningfully distinguishable from the instant case. *See Appliance Recycling Centers of Am., Inc. v. A & A Quality Appliance, Inc.*, No. 17-cv-02923-KMT, 2019 WL 13194901, 2019 U.S. Dist. LEXIS 243025, at *10 (D. Colo. Mar. 14, 2019) (finding, *inter alia*, that, although there was typically a short gap between granting a trial date and ruling on dispositive motions, "a trial date [was] not set;" the movant was "diligent in seeking the [requested] discovery;" and "the delay … rest[ed] solely at the doorstep of [the non-movant]"); *Pandeosingh v. Am. Med. Response, Inc.*, No. 14-cv-01792-PAB-KMT, 2014 WL 5465220, 2014 U.S. Dist. LEXIS 152825, at *4–8 (D. Colo. Oct. 28, 2014) (finding, *inter alia*, that "no trial ha[d] yet been set;" "Plaintiff ha[d] acted diligently but ha[d] been thwarted by Defendants;" and the need to significantly supplement the existing discovery was "not reasonably foreseeable during the Court-prescribed discovery period").

### B. TLC's Requested Supplementation Is Not Permitted by Rule 26(e)

To the extent TLC suggests that Rule 26(e)'s requirement for a party to timely supplement its expert report independently authorizes TLC to supplement its expert report more than three weeks after the close of discovery, *see* Mot. at 4, the Court finds that TLC's request "exceeds the bounds of permissible supplementation." *Nudge*, 2022 U.S. Dist. LEXIS 48781, at *14-15. For instance, adding an entirely new opinion to address disgorgement of GSM's profits would exceed Rule 26(e)'s "narrow purpose of correcting inaccuracies or [simply] adding [to an existing opinion] information that was not available at the time of the initial report." *Rodgers*, 759 Fed. Appx. at 663. Instead, such an addition would amount to an impermissible "additional opinion[]" or "substantive change" to the scope of the expert's report. *Nudge*, 2022 U.S. Dist. LEXIS 48781, at *14-15.[15] The Court therefore holds that Rule 26(e) does not require the Court—in the absence of good cause to reopen discovery as set forth above in Section IV(A)—to nevertheless permit the reopening of discovery (de facto or otherwise) for the sake of Rule 26(e) supplementation under these circumstances.

### C. TLC Has Already Received Sufficient Financial Information from GSM

TLC's Motion also requests that the Court order Defendants to "immediately produce supplemental financial documents." Mot. at 1–4, 9–11.[16] But because the Court denies TLC's

---

[15] To the extent TLC is also requesting permission to update the expert's opinion on TLC's "lost profits" with new data from TLC, *see* Mot. at 4, the Court will not "permit [TLC] to supplement its expert report given the timing of the supplementation and the harm to [Defendants]"—particularly as TLC has already "had all of the information necessary to develop [such a] supplement[ation]" of its own lost profits. *Coffey v. United States,* No. CIV 08-0588 JB/LFG, 2012 WL 2175747, 2012 U.S. Dist. LEXIS 83154, at *25-26 (D.N.M. May 26, 2012) (Browning, J.) (quotation omitted). Indeed, TLC's expert back in November 2020 issued his original (and thus far only) report based solely on an analysis of *TLC's* financial records. *See* Tr. 50: 2–5. Nothing has stopped TLC or its expert from seeking leave to supplement that opinion in the 21 months since it was first rendered. *See* Tr. 49:5–50:10 (TLC's counsel conceding that the expert "could have looked at TLC's internal data and done a supplement [to his opinion]" in February 2022 but that "[TLC] determined not to do that"). After all, TLC has constant access to its *own* financial information.

[16] Such "supplemental financial documents" include "documents relating to GSM's finances, including bank statements with all relevant information such as the issuers and amounts of canceled checks; donor information including the identity and amounts of donations or pledges; and information relating to GSM's income from tuition."

14

w

request to reopen discovery, the Court also denies TLC's request for more detailed financial information from GSM as moot. Furthermore, the Court denies the request as not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court finds that GSM has already provided sufficiently proportional financial information—particularly in light of the representations made during the August 4, 2022, hearing; the Court's review of the financial documents that GSM provided;[17] and Rule 37, which precludes TLC's expert from opining on any disgorgement of GSM's profits, *see* Fed. R. Civ. P. 37(c)(1).

## V. CONCLUSION

After scrutinizing the briefing and the record, permitting extensive oral argument, and carefully considering all relevant circumstances, the Court in its discretion concludes that TLC has not shown good cause or other permissible grounds to reopen discovery to allow the supplementation of expert reports. In addition, the Court concludes that GSM has already disclosed sufficient financial information to TLC and that any further production is both moot and disproportional to the needs of the case.

**IT IS THEREFORE ORDERED** that TLC's Motion to Compel Production and Reopen Discovery [ECF 412] is **DENIED**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

*Id.* at 1–2, 10.

[17] *E.g.*, "bank statements that [GSM] disclosed to TLC on March 3, 2022 (covering June 2021–January 2022), and on June 26, 2022 (covering February 2022–May 2022)." ECF 437 (clerk's minutes) at 2.