IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

THE TRIAL LAWYERS COLLEGE,
a nonprofit corporation,

    Plaintiff,

v.    Case No. 1:20-cv-80-JMC

GERRY SPENCES TRIAL LAWYERS
COLLEGE AT THUNDERHEAD RANCH,
a nonprofit corporation,
GERRY SPENCE METHOD AT
THUNDERHEAD RANCH INC,
a nonprofit corporation,
GERALD L. SPENCE,
JOHN ZELBST,
REX PARRIS,
JOSEPH H. LOW,
KENT SPENCE,
JOHN JOYCE, and
DANIEL AMBROSE, individuals,

Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART TLC'S
MOTION IN LIMINE; GRANTING IN PART AND DENYING IN PART
JOYCE'S MOTION IN LIMINE; AND GRANTING IN PART AND
DENYING IN PART THE SPENCE DEFENDANTS' MOTION IN LIMINE**

Before the Court are Plaintiff Trial Lawyer College's Motion in Limine (Doc. 454), Defendant Joyce's Motion in Limine (Doc. 458), and the Spence Defendants' Motion in Limine (Doc. 456).[1] The parties have fully briefed all three motions. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART each motion.

---

[1] The Spence Defendants consist of Gerald Spence, John Zelbst, Rex Parris, Joseph Low, Kent Spence and the two Spence corporate entities.

I.  Background

This case is, among other things, an intellectual property dispute between the Trial Lawyers College and a group of its former board members. Plaintiff is a nonprofit corporation that provides training programs to lawyers. Part of Plaintiff's stated mission is to represent and obtain justice for "the poor, the injured, the forgotten, the voiceless, the defenseless and the damned," and to protect the rights of such people from corporate and government oppression. From its inception until May 2020, Plaintiff operated at the Thunderhead Ranch pursuant to a lease with the Spence Foundation. Plaintiff's founder, Defendant Gerald ("Gerry") L. Spence, controls the Spence Foundation. The other individual defendants have also been affiliated with Plaintiff since the 1990s. Until May 2020, all individual defendants undisputedly served on Plaintiff's board.

In 2012, Plaintiff applied for and received two federally registered trademarks. The first, Registration Number 4,197,908 (the '908 Mark) is a trademark for "TRIAL LAWYERS COLLEGE" in standard characters, without claim to any particular font, style, size, or color. The second, Registration Number 4,198,054 (the '054 Mark) is a trademark for a stylized design of a cloud with a lightning bolt (sometimes called the "Thunderhead logo"). Plaintiff also copyrighted a Skills Outline. The Registration Number for the copyright is TX0008891118.

In late 2019, a dispute erupted between two blocs of Plaintiff's board: the Spence Group and the Sloan Group.[2] Plaintiff, now controlled by the Sloan Group, alleges that the conflict was born when its board refused to expend Plaintiff's funds to build a library in Spence's honor on the land Plaintiff leased from Spence. But the Spence Group claims that the tensions arose when they discovered members of the Sloan Group violating Plaintiff's stated mission. According to the

---

[2] The Spence Group consists of the five individuals in the Spence Defendant group and the Sloan Group consists of six individuals who are not now parties to this suit.

Spence Group, the Sloan Group used a secret third-party entity, eXmarX, to betray Plaintiff's values for profit.

Whatever the reason, in April 2020, the Spence Foundation terminated Plaintiff's lease and the Spence Group registered Defendant "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" as a Wyoming nonprofit corporation. On May 6, 2020, the Sloan Group—acting as a majority of Plaintiff's board of directors—voted to remove the Spence Group from the Board.

The Spence Group then filed a derivative action against the Sloan Group in Wyoming state court. In that suit, the Spence Group claimed to be the rightful Board—or at least still members of the full Board. But the district court rejected the Spence Group's arguments, held that the Sloan Group constituted the duly elected board, and dismissed the case. The Supreme Court of Wyoming affirmed. *Spence v. Sloan*, 515 P.3d 572 (Wyo. 2022).

During this time, Plaintiff claims that the Spence Group also began a coordinated campaign to pass off Gerry Spence's TLC for it. Members of the Spence Group accessed Plaintiff's listserv and began sending mass emails to recipients whose email addresses they obtained from Plaintiff. In these emails, the Spence Group claimed to be Plaintiff's new board and allegedly tried to confuse Plaintiff's members into believing that Gerry Spence's TLC was in fact the real Plaintiff. The individual defendants also posted a YouTube video using both the '908 and the '054 Marks in which Gerry Spence claimed that Plaintiff was continuing under "marvelous new leadership."

As a result, fifteen days after the Spence Group filed the state court action, Plaintiff sued in federal district court. As amended, Plaintiff's complaint alleges that nine named defendants—the Spence Group, plus two of their corporate entities and two additional individuals—violated the Lanham Act, 15 U.S.C. §§ 1114, *et seq.*, and 15 U.S.C. § 1125(a) by infringing Plaintiff's federally registered trademarks and engaging in unfair competition, false designation of origin, passing off,

3

and false advertising related to Plaintiff's federally registered trademarks. Plaintiff also allege Defendants violated the Defend Trade Secrets Act, 18 U.S.C. § 1836 and Wyo. Stat. Ann. § 40-24-101, *et seq.*, through their unauthorized access and misuse of TLC's confidential and proprietary computer files. Finally, Plaintiff alleges that Defendant Gerry Spence Method violated the Copyright Act, 17 U.S.C. § 101, *et seq.*, by infringing TLC's federally registered copyrights

The Court granted Plaintiff's request for a temporary restraining order (Doc. 27), and then granted Plaintiff's subsequent application for a preliminary injunction. (Doc. 46). Among other things, the preliminary injunction prohibited Gerry Spence's TLC, Gerry Spence, Rex Parris, and Joseph Low from: (1) using TLC's registered trademark—"Trial Lawyers College"—or other terms that sound similar to mislead consumers or infringe on that Mark; (2) using the geographic location "Thunderhead Ranch" in conjunction with "Trial Lawyers College"; or (3) purporting definitively to be the Trial Lawyers College's "true board" until the state court made such a determination.

Within a month of entry of the preliminary injunction, Rex Parris engaged in a litany of actions in violation of this Court's order. After an evidentiary hearing, the magistrate judge overseeing pretrial proceedings recommended that the Court hold Parris in contempt. The Court affirmed the magistrate judge's recommendation in all material respects and held Parris in contempt. (Doc. 326).

Meanwhile, the Court also held John Joyce and his attorney in contempt for an unrelated set of reasons. Joyce faces criminal charges in another jurisdiction. Joyce first moved to stay all discovery against him, claiming that sitting for a deposition or answering any written discovery would prejudice his Fifth Amendment rights because of the overlap between the two cases. The magistrate judge denied Joyce's motion to stay his deposition but limited the questions Plaintiff

4

could ask him. After the magistrate judge denied his motion, Joyce and his counsel confirmed to Plaintiff that Joyce would appear virtually for his properly noticed deposition. But the Friday night before his Monday morning deposition, Joyce again moved to stay. The magistrate judge promptly denied Joyce's second motion that Monday morning. On the advice of his counsel, Joyce elected to skip his deposition anyway, and the Court sanctioned both Joyce and his attorney accordingly. (Doc. 326).

Part of Joyce's concern about overlap between his two cases is that Plaintiff is allegedly in cahoots with the criminal case's alleged victim—Joyce's ex-girlfriend Jennifer Merchant. Acting on her own free will, Merchant provided Plaintiff with screenshots of certain text messages Joyce sent her while the two were dating. These text messages allegedly implicate Joyce and the other individual defendants in a conspiracy to misappropriate TLC's intellectual property. Because of these messages, Plaintiff is likely to call Merchant to testify at trial.

## II. Applicable Law

A motion in limine is a 'pretrial request that certain inadmissible evidence not be referred to or offered at trial. *Edens v. The Netherlands Ins. Co.,* 834 F.3d 1116, 1130 (10th Cir. 2016) (quoting Black's Law Dictionary (10th ed. 2014)). A ruling on a motion in limine is no more than a preliminary opinion on the admissibility of evidence that falls within the discretion of the district court. *See United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). The Court notes that limine orders are not binding the trial judge, who may always change his mind during the trial. *Ohler v. United States*, 529 U.S. 753, 758 n.3. (2000). The Court also notes that such orders do not absolve the parties of the need to object at trial or make offers of proof to preserve an issue for appeal. Fed. R. Evid. 103(b).

III.     Analysis

Plaintiff, the Spence Defendants, and Joyce all seek limine orders on various categories of potential evidence and argument. The Court discusses the motions in the order in which the parties filed them. Thus, the Court begins with Plaintiff's motion, then turns to the Spence Defendants' motion, before lastly addressing Joyce's motion.

A.     TLC's Motion

Plaintiff seeks to prohibit evidence and argument about three topics: evidence contradicting the Wyoming state court decisions; evidence about non-party eXmarX; and evidence related to dismissed claims. The Court grants Plaintiff's motion on the first two points and denies it on the third, subject to the parameters outlined below.

1.     The Wyoming State Court Decisions

Plaintiff first seeks to bar evidence and argument disputing the validity of its current board and its actions on collateral estoppel grounds. The Wyoming courts established the composition of Plaintiff's Board in *Spence*, 515 P.3d at 572. To their credit, the Spence Defendants accept the finality of the Wyoming court decision and represent that they will not offer evidence that contradicts the issues determined by the valid final judgement in *Spence*. The Spence Defendants, however, contend that the Court should allow them to present evidence about what they subjectively believed when they made certain statements.

Under the doctrine of collateral estoppel, when a valid and final judgment determines an issue of ultimate fact, the same parties in any future lawsuit cannot litigate that issue again. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). A court's refusal to admit evidence in support of an issue the parties previously litigated is a permissible method of exercising collateral estoppel. *See N.L.R.B. v. Deaton Truck Line, Inc.*, 389 F.2d 163 (5th Cir. 1968).

For that reason, the Court grants Plaintiff's motion on this point and bars any evidence or argument that contradicts issues the *Spence* final judgment determined. But the Court agrees that evidence offered to prove the Spence Defendants' state of mind during the relevant period is not evidence that contradicts any judicially determined issue. As a result, the Spence Defendants' limited and narrow use of state-of-mind evidence is likely outside the scope of the Court's limine order.

## 2.  eXmarX

Plaintiff next asks this Court to preclude Defendants from introducing evidence and argument relating to third-party-entity eXmarX under Federal Rules of Evidence 401, 402, and 403. Plaintiff argues that eXmarX and its alleged business practices are simply a red herring that bears no relevance to any of its claims. Plaintiff then suggests that the Spence Defendants may try to use eXmarX as part of an unclean hands defense but argues that the unclean hands doctrine clearly should not apply here. On the other hand, the Spence Defendants argue eXmarX establishes key facts in the dispute, raises questions about the bias and veracity of TLC's witnesses, and provides powerful impeachment evidence of at least two anticipated Sloan Group witnesses.

Evidence must be relevant to be admissible. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. The Court may exclude relevant evidence if its probative value is substantially outweighed by one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

The Court finds evidence related to eXmarX irrelevant to this dispute. Whether the Spence and Sloan Groups fell out over a failed library proposal or violations of Plaintiff's stated mission,

the origin of their conflict is irrelevant to any of the questions before the jury in this case. As for the Spence Defendants' unclean hands defense, the Court will hear evidence pertaining to propriety of Plaintiff's requested injunctive relief after trial, outside the presence of the jury, and only if Plaintiff prevails on the merits.[3] If eXmarX becomes relevant impeachment evidence at trial, the Court remains free to reconsider its ruling at that time.[4] Thus, the Court precludes the parties from introducing argument and evidence relating to third-party eXmarX.

### 3.   Evidence Relating to Dismissed Claims

Lastly, Plaintiff requests an order preventing the mention of evidence related to any of the Defendants' affirmative defenses, counterclaims, and/or third party demands that the Court dismissed at the time of trial.

Although the Court knows that the dismissal of an affirmative defense, counterclaim, or third-party demand affects the relevance of certain pieces of evidence, the Court declines to speculate on what that evidence may be. Courts properly deny motions in limine that lack specificity. *See Shotts v. GEICO Gen. Ins. Co.*, No. 16-cv-1266-SLP, 2018 WL 4832625, at *1 (W.D. Okla. July 12, 2018) (unpublished); *Mantle v. Albertson's, Inc.*, No. 03-cv-1601-T, 2004 WL 7330805, at *2 (W.D. Okla. Sept. 29, 2004) (unpublished). The Court accordingly denies this portion of Plaintiff's motion. Plaintiff may object contemporaneously at trial to irrelevant or improper evidence relating to dismissed claims.

---

[3] Whether Plaintiff's unclean hands preclude the issuance of injunctive relief rests in the sound discretion of the district court. *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1214 (10th Cir. 2020). A finding of unclean hands need not rest on facts the jury considered. *See Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 959–960 (10th Cir. 2009).

[4] Requests for the Court to reconsider its ruling on this issue—or on any other topic the Court limits—must be raised outside the presence of the jury.

B.  The Spence Defendants' Motion

Turning to the Spence Defendants' motion, the Spence Defendants seek a limine order on five categories of potential evidence: the temporary restraining order and the preliminary injunction issued in this case; the contempt orders entered in this case; the above-mentioned state court actions; Kent Spence's suspension from the board; and lastly, purported text messages and testimony from Jennifer Merchant.  The Court grants the motion for the fourth category and denies the motion for the third and fifth.  As for first and second categories, the Court grants in part and denies in part.

1.  The TRO and the Preliminary Injunction

The Spence Defendants first seek to preclude Plaintiff from mentioning or arguing about the Court's orders imposing a temporary restraining order and preliminary injunction.  The Spence Defendants first argue that the orders are irrelevant.  They next contend that because the Rules of Evidence do not apply to courts in injunction proceedings, the Court's orders are a vehicle by which Plaintiff can stealthily offer inadmissible evidence.  The Spence Defendants also argue that the admission of these orders would unfairly prejudice them by conveying this Court's opinion on the merits of Plaintiff's claims.  On the other hand, Plaintiff argues that the orders are admissible to allow the jury to assess the willfulness of defendants' conduct.  Plaintiff also contends that the Court's orders are specifically admissible to assess whether a case is extraordinary under the Lanham Act's fee shifting provision.  *See* 15 U.S.C. 1117.

An alleged infringer's state of mind is relevant to damages issues in cases arising under the Lanham Act and the Defend Trade Secrets Act because both Acts provide for enhanced damages measures in cases involving willful violations.  *See* 18 U.S.C. § 1836; 15 U.S.C. § 1117.  The Lanham Act also allows for a prevailing party to recover attorney's fees "in exceptional cases."  15

U.S.C. § 1117(a).  Whether a case is "exceptional" or "routine" is a discretionary decision for the district court to make after considering several factors, including the plaintiff's bad faith, and any unusually vexatious and oppressive litigation practices.  *Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1245–46 (10th Cir. 2021).

Plaintiff correctly contends that a defendant's decision to engage in infringing conduct after receiving notice of alleged infringement and until that defendant was ordered to stop by a court is relevant evidence of the alleged infringer's state of mind.  The Court, however, finds the Lanham Act's fee shifting provision to be irrelevant to the present analysis.

Thus, based on the other damages enhancements for willful conduct within the pertinent statutes, the Court denies the Spence Defendants' motion on the existence and scope of the injunctive orders, the factual reasons why Plaintiff sought those orders and any Defendant's conduct following those orders.  But the Court grants the Spence Defendants' motion on the Court's reasoning within the TRO and preliminary injunction order.  Any attempt to use the Court's orders to imply that the Court sides with a particular party would be highly improper.  The Court also grants the motion on any facts within the orders supported solely by inadmissible evidence.

### 2.    The Contempt Orders

The Spence Defendants next move to prevent Plaintiff from mentioning the contempt orders this Court issued earlier in the pretrial process.  They argue that because litigation conduct is generally inadmissible at trial, Plaintiff should be unable to reference the contempt orders to the jury.  On the other hand, Plaintiff argues that contemptuous conduct is relevant, highly probative evidence of willful infringement.  It also argues that Defendants' litigation conduct is relevant to show that this case is exceptional under the Lanham Act.

As discussed above, contemptuous conduct is relevant, probative evidence on the willfulness issue. *See Sara Lee Corp. v. Sycamore Fam. Bakery, Inc*., No. 2:09CV523DAK, 2011 WL 3439933, at *3 (D. Utah Aug. 5, 2011). Because the Court held Rex Parris in contempt for violating the Court's orders barring him from taking certain actions that may infringe Plaintiff's intellectual property rights, the Court denies the Spence Defendants' motion on the orders entered against Parris. Plaintiff may introduce evidence of Parris' alleged post-injunction infringement and the reason they claim it ceased in a narrow and limited manner at trial.[5]

But the Court's contempt order against John Joyce and his counsel is different. The Court held Joyce and his attorney in contempt because Joyce failed to appear for a deposition. His conduct is irrelevant to the issue of willful infringement. To the extent that Plaintiff argues Joyce's conduct is relevant to the issue of whether this case is "exceptional" under the Lanham Act's fee-shifting provision, the Court will answer that question, not the jury. Thus, the Court grants the Spence Defendant's motion on the Court's order holding John Joyce in contempt.

### 3.  The State Court Actions

The Spence Defendants also seek to prevent Plaintiff from mentioning the state court orders on relevance grounds. Plaintiff represents that it does not intend to introduce evidence relating to those orders unless necessary to establish the constitution of its board, and to refute any suggestion that any doubt exists as to the validity of its board and its actions.

For now, the Court will not prohibit Plaintiff from narrowly using the state court decisions to establish the constitution of its board after the May 6, 2020, election. Because the Court grants Plaintiff's motion to disallow evidence and argument contradicting those decisions, Plaintiff will

---

[5] Pursuant to the Court's discretion under Rule 403, the Court limits Plaintiff's evidence related to the orders sanctioning Parris to witness testimony only. The Court will not allow Plaintiff to present the orders to the jury nor introduce the orders as substantive exhibits at trial.

have no need to refute any arguments that contravene the state court orders.[6] The Court grants the remainder of the Spence Defendants' motion on this point.

####       4.       Kent Spence's Suspension

The Spence Defendants next target evidence and argument about Kent Spence's suspension from Plaintiff's board. Plaintiff suspended Kent Spence from the board in 2019 to undergo workplace remediation training. The Spence Defendants argue his suspension and the surrounding circumstances are irrelevant. Plaintiff responds by arguing Kent Spence's suspension may become relevant impeachment evidence, and that Kent Spence's suspension is necessary to counter the Spence Defendants' suggestions that Plaintiff's board violated its mission.

The Court grants the Spence Defendants' motion to prohibit argument or evidence related to Kent Spence's suspension and its surrounding circumstances. Just as the Court found evidence about the Sloan Group's alleged violations of Plaintiff's mission to be irrelevant to this dispute, the Court considers evidence relating to the Sloan Group's alleged compliance with Plaintiff's mission to be similarly irrelevant. And as before, if Kent Spence's suspension becomes relevant impeachment evidence, the Court remains free to reconsider its ruling upon request at trial.

####       5.       Text messages and testimony from Jennifer Merchant

The final category of evidence at issue in the Spence Defendants' motion concerns the text messages and testimony from Jennifer Merchant. The Spence Defendants ask this Court to bar any mention of Merchant's messages and prevent her from testifying under Rule 403. In doing so, they attack Merchant's messages' reliability based on their alleged incompleteness. They also point to the history between Joyce and Merchant to support allegations of Merchant's bias. The

---

[6] If Defendants open the door, the Court will consider allowing Plaintiff to use the rulings in a broader fashion.

Spence Defendants claim they cannot raise this bias at trial, because exposing the inflammatory history between the two will prejudice the jury against Joyce. For its part, Plaintiff responds that the messages from Merchant are relevant, authenticated, highly probative evidence relating to Defendants' infringement of its intellectual property.

The Court denies the Spence Defendants' motion to preclude the introduction of evidence and argument about Merchant's messages. To that degree the Spence Defendants attack the text messages on reliability grounds, those arguments go to the weight, not the admissibility of the evidence. *See United States. v. Long*, 857 F.2d 436, 442 (8th Cir. 1988) (concluding no need to prove that a document is reliable or accurate to authenticate that document). The Court also rejects the Spence Defendants' Rule 403 argument. Relevant evidence is inherently prejudicial; but, it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter. *See United States v. McRae*, 593 F.2d 700 (5th Cir. 1979). Because of the messages' significant probative value and the Court's ability to limit any unfair prejudice by barring the mention of Merchant and Joyce's past relationship, the messages do not warrant exclusion under Rule 403.

Lastly, if the Spence Defendants believe that Merchant's alleged bias impacts the weight the jury should give her testimony, they may argue accordingly. As discussed below, the Court grants Joyce's motion as to his relationship to Merchant. Whether the Spence Defendants wish to open the door to this subject is up to them.

### C. Joyce's Motion in Limine

Turning finally to the third motion, Joyce moves to prevent evidence and argument touching on the following three areas: an email he received from Patrick McLain; his relationship with Merchant; and the contempt and sanctions orders issued against him. The Court grants the

motion as to the third category and denies it as to the first. As for the second category, the Court grants in part and denies in part.

### 1. The McClain Email

Joyce first aims at an email he received from third-party Patrick McLain containing an email list that Plaintiff alleges Joyce used to create Defendants' infringing listserv. Joyce argues first that this email is irrelevant. He also argues that a danger of confusing or misleading the jury substantially outweighs any probative value the email possesses. Plaintiff responds that the email is relevant and is not confusing or misleading in any way.

The Court denies Joyce's motion to preclude evidence or argument over the McLain email. The email is relevant to establish Joyce's access to Plaintiff's claimed trade secrets. And the Court fails to see how an email containing a list, offered to establish that someone received an email containing a list, presents any danger of confusing or misleading the jury. Joyce should direct his evidentiary arguments about what he did or did not do with that list to the jury, not the Court.

### 2. Joyce's Relationship with Jennifer Merchant

Joyce next seeks an order precluding the introduction of evidence or argument about his relationship with Jennifer Merchant. Topics within that expansive umbrella include criminal charges, civil litigation, and professional misconduct proceedings arising out of the relationship. Also within this class are the above-mentioned text messages Merchant turned over to Plaintiff, and evidence related to a motion for electronic monitoring filed in Joyce's criminal case. Joyce alleges Plaintiff is attempting to abuse the legal process by intertwining his "unrelated" matters. In response, Plaintiff asks only to use the text messages between Merchant and Joyce. Plaintiff represents that it has no plans to introduce the other listed topics for any purpose other than impeachment.

For the same reasons the Court denies the Spence Defendants' motion as to the text messages between Merchant and Joyce, the Court denies Joyce's motion on those messages. But the Court grants Joyce's motion in all other material respects.

Thus, the Court prohibits evidence, opinions, and argument related to Joyce's relationship with Merchant and the legal proceedings it spawned for all purposes except for impeachment. As discussed above, Joyce and the Spence Defendants may raise Merchant's past with Joyce to try to establish her bias. The right to confront, cross-examine and impeach adverse witnesses is fundamental to civil jury trials. *See Adickes v. Kress & Co.*, 398 U.S. 144, 176 (1970) (Black, J., concurring))). If Plaintiff seeks to use the relationship between Joyce and Merchant to impeach a now unidentified witness, the Court instructs Plaintiff to raise the issue with the Court at trial outside the presence of the jury.

### 3. Joyce's Contempt Orders

Joyce lastly moves for a limine order covering his contemptuous conduct during discovery in this case. The Court grants Joyce's motion on this point for the same reason that the Court granted this part of the Spence Defendants' motion—Joyce's discovery conduct is irrelevant.

### IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Plaintiff Trial Lawyer College's Motion in Limine (Doc. 454), Defendant Joyce's Motion in Limine (Doc. 458), and the Spence Defendants' Motion in Limine (Doc. 456). The Court PROHIBITS evidence, argument, and opinions relating to topics within the parts of the motions granted by the Court.

IT IS SO ORDERED.

                    Entered for the Court
                    this the 27th day of September, 2022

                    /s/ Joel M. Carson III_____
                    Joel M. Carson III
                    United States Circuit Judge
                    Sitting by Designation