Patrick J. Murphy, WSB No. 5-1779
Zara S. Mason, WSB No. 7-6267
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail: pmurphy@wpdn.net
zmason@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email:  chris.ralston@phelps.com
          lindsay.calhoun@phelps.com

Attorneys for The Trial Lawyers College

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation ) ) ) | |
| | CIVIL ACTION NO. 1:20-cv-0080-JMC |
| Plaintiff, ) | _____ |
| ) | |
| v. ) | |
| ) | **JUDGE CARSON** |
| GERRY SPENCES TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, ) a nonprofit corporation, et al. ) | **MAGISTRATE JUDGE FOURATT** |
| ) | |
| Defendants. ) ) ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTION FOR CONTEMPT

Plaintiff, The Trial Lawyers College ("TLC"), through undersigned counsel, respectfully submits this Memorandum in Opposition of Defendants' Motion for Contempt.

## I. INTRODUCTION

A cursory glance at the record of this litigation reveals a defense stratagem that was unnecessarily contentious, vexatious, and, according to this Court, contemptuous.[1] Defendants' most recent motion is more of the same. Although some factual and procedural history is necessary to convey to this Court why it must deny Defendants' present motion, the Court need not reenter the labyrinth of hostility it had once escaped. Rather, the Court can deny the present motion for two reasons: 1) the social media posts which Defendants allege violate the Permanent Injunction fall squarely within the Injunction's exception that allows for "factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020" and 2) even if the posts are outside the scope of the exception, which TLC denies, TLC was not given adequate time to cure the alleged violations.

The underlying dispute began when Defendants, former affiliates of TLC, left the organization because TLC refused to finance the construction of a library. Among the Defendants is Gerry Spence, who controls the Spence Foundation. The Spence Foundation owns the Thunderhead Ranch, a rural property where TLC operated for over twenty years. When TLC declined to appropriate a disproportionate amount of funds to the proposed library, Gerry Spence, through the Spence Foundation, evicted TLC from the Thunderhead Ranch. After the eviction, the majority of the individual Defendants were not reelected to TLC's board of directors, and thus, their formal affiliation with the organization ended.[2] Thereafter, Spence and the other Defendants continued to use TLC's registered trademarks in their marketing materials for their new entity, known at that time as "Gerry Spence's Trial Lawyers College at the Thunderhead Ranch." TLC

---

[1] *See Trial Laws. Coll. v. Gerry Spences Trial Laws. Coll. at Thunderhead Ranch*, No. 1:20-CV-80-JMC, 2022 WL 2718073, at *2 (D. Wyo. Mar. 29, 2022).
[2] Defendants John Joyce and Dan Ambrose were not TLC board members.

filed suit and, after a contentious and prolonged legal battle, accepted a settlement offer from Defendants, which was tendered shortly after trial began. On October 12, 2022, the parties signed the Settlement Agreement and, on the same day, this Court issued a Consent Permanent Injunction. *See* Rec. Doc. 588. The terms of the Settlement Agreement are confidential but, suffice to say, Defendants have not complied. This failure to comply with the settlement agreement is the true origin of the present motion before the Court.

**Factual Background**

Over the last two years, TLC has made numerous efforts to enforce a specific provision of the Settlement Agreement amicably and without court intervention. But every single request has consistently been rebuffed. Finally, on October 14, 2024, counsel for TLC sent an email to counsel of record for Defendants, Steve Velkei, again requesting that Defendants fulfill their obligations under the agreement. *See* Exhibit A. Even after two years of non-compliance, TLC stressed its position that the issue did not require court intervention and that it would be far better for all parties to resolve this seemingly simple, ancillary issue outside of court. Mr. Velkei responded politely, asking for clarification and promising to follow-up. But that did not happen. Instead, Defendants' counsel Beth Kushner responded two days later with the first of multiple letters. *See* Rec. Doc. 598, Exhibit 2. The remaining letters were sent within 10 days after the first, with each containing a series of new allegations that TLC has violated the Consent Permanent Injunction. *See* Rec. Doc. 598, Exhibit 3-7. In so doing, the real aim of Defendants was to fashion a "quid pro quo" style exchange, effectively providing that Defendants will only comply with the terms of the settlement agreement if TLC acquiesces to these new demands. On November 15, 2024, Defendants filed the instant motion now before the Court. *See* Rec. Doc. 597.

- 2 -
PD.47649540.3

Consistent throughout the conspiratorial web Defendants weave are allegations that TLC's failure to remove social media posts—which Defendants allege feature the name, image, or likeness of Defendants and/or the Thunderhead Ranch—violates the Injunction entered by this Court. *See* Rec. Doc. 597. As explained further below, every single social media post Defendants' counsel complains of was posted well before the litigation commenced. *See* Exhibit B. This fact is critical because the spirit and purpose of the Permanent Injunction was to prevent the use of Defendants' name, image, or likeness on a going forward basis, which TLC has more than substantially complied with. To reinforce the forward-looking nature of the Injunction, the Court included an exception for "factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020." *See* Rec. Doc. 588. The purpose of the exception was to carve out references—including social media posts—to TLC's two decades of history on the Thunderhead Ranch. Accordingly, the social media posts which form the basis of Defendants' motion all fall neatly within the scope of the exception, and Defendants have failed to carry their burden under the law.

## II. LAW AND ARGUMENT

"To prevail in a civil contempt proceeding, the [moving party] has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the [non-moving party] had knowledge of the order, and that the [non-moving party] disobeyed the order." *Trial Laws. Coll. v. Gerry Spence's Trial Laws. Coll. at Thunderhead Ranch*, No. 1:20-CV-00080-JMC, 2020 WL 13065454, at *4 (D. Wyo. Aug. 28, 2020), *report and recommendation adopted in part, rejected in part sub nom. Trial Laws. Coll. v. Gerry Spences Trial Laws. Coll. at Thunderhead Ranch*, No. 1:20-CV-80-JMC, 2022 WL 2718073 (D. Wyo. Mar. 29, 2022). If the moving party meets its burden, the burden shifts to the non-moving party to show it either substantially complied with the

order or could not comply with the order. *Id.* "Civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous." *EagleMed, LLC v. Wyoming ex rel. Dep't of Workforce Servs.*, No. 15-CV-26-ABJ, 2018 WL 11250999, at *3 (D. Wyo. Apr. 12, 2018) (citing *Bowles Fin. Group v. Stifel, Nicolaus & Co.*, No. 93-6303, 1994 WL 459647, at *7 (10th Cir. Aug. 22, 1994).

> **A. Defendants have not met their burden as they have failed to show a single violation of the Permanent Injunction by TLC.**

Defendants allege that TLC violated the Injunction by "posting hundreds of photographs of and references to Thunderhead Ranch" and by posting "photos and videos of TLC's registered trademark above the name 'Thunderhead Ranch.'" *See* Rec. Doc. 597, pg. 2. But one indisputable and critical fact is conspicuously absent from Defendants' motion: TLC has not posted a single image, video, or any content whatsoever involving Defendants or Thunderhead Ranch since this Court entered its Permanent Injunction. Every single social media post complained of by Defendants was posted before the Permanent Injunction. This fact is obfuscated in the exhibits attached to Beth Kushner's Declaration, which has the dates for each image removed.

It is Defendants' burden to prove by clear and convincing evidence that TLC continued to post images that are violative of the Injunction and, quite simply, they have not carried this burden. There is not one single post included in Defendants' motion that has a date occurring after the litigation commenced. Although it is clearly Defendants' burden to prove the images were posted after the Permanent Injunction, TLC has attached to this motion 55 of the complained of images and has included the date each was posted to make clear to this Court that none were posted after the Permanent Injunction was entered. *See* Exhibit B.

The question before this court is whether social media content posted by TLC prior to when the Permanent Injunction was entered violates the terms of the Permanent Injunction. The relevant provisions of the Permanent Injunction are:

> Plaintiff TLC is enjoined from using the name, image, or likeness of Defendants Gerry Spence, Joey Low, Kent Spence, John Zelbst, Rex Parris, John Joyce, their family members (without their written consent), unless such family members are faculty, staff, or students of the Trial Lawyers College on a going forward basis from the date of this agreement, as well as Thunderhead Ranch, beyond factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020.

> Plaintiff TLC is (1) enjoined from using the logo of the Gerry Spence Method in connection with promoting any of its programs or services; (2) enjoined from using the name, image, or likeness of Gerry Spence, Joey Low, Kent Spence, John Zelbst, Rex Parris, John Joyce, their family members (without their written consent), unless such family members are faculty, staff, or students of the Trial Lawyers College on a going forward basis from the date of this agreement, or Thunderhead Ranch in connection with promoting any of its programs or services, beyond factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020.

Never once has TLC posted any content using the name, image, or likeness of Defendants or Thunderhead Ranch "on a going forward basis from the date of [the] agreement." Rather, any existing posts on TLC's social media that reference Defendants or Thunderhead Ranch are clearly within the scope of the exception. TLC operated its programming on Thunderhead Ranch for 26 years and it is unreasonably onerous to expect TLC to completely erase this history. For over two decades, TLC operated hundreds of programs on the Thunderhead Ranch, hosting thousands of attorneys from across the country, all of whom shared in impactful and memorable experiences during that time. TLC happily agrees that it is no longer affiliated with Defendants, and has not and will not suggest otherwise. But TLC cannot divorce itself from its past entirely. To do so would erase TLC's history as an organization. This Court was well aware of this issue and that is

- 5 -
PD.47649540.3

exactly why it provided in the Permanent Injunction that any "factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020" are excepted from the injunction. Defendants offer an alternative, and patently absurd, explanation for the purpose and scope of the exception.

Defendants, in their motion, address the exception only one time in a footnote wherein they argue that the exception does not apply because the social media posts do not reference the lease itself. *See* Rec. Doc. 597, pg. 8, n.3. Thus, according to Defendants' tortured exegesis, the purpose of this exception was only to allow TLC to make literal references to a written lease agreement. To suggest, as Defendants do, that TLC is relegated only to non-image references to a written contract is beyond absurd. There is simply no reason that this Court would have created an exception that only allows TLC to refer to a lease agreement. Obviously, the intention and purpose of the exception is to remove the burden from TLC of having to excise its 26-year history on the Thunderhead Ranch.

In her Declaration submitted to this Court, Ms. Kushner represents that "contrary to Mr. Ralston's representations, TLC had never stopped posting the names, images, or likenesses of the individual defendants, their family members, or Thunderhead Ranch." *See* Rec. Doc. 598, ¶ 7. This statement is demonstrably false. TLC did in fact stop posting any content related to names, images, or likenesses of the individual defendants, their family members, or Thunderhead Ranch. Every single image Ms. Kushner has submitted to this Court was posted well before the Consent Permanent Injunction was entered. Defendants failed to submit a single post that is dated after such time, and indeed Defendants cannot produce a post by TLC dated after such time, because no such post exists. Accordingly, Defendants have failed to meet their burden of proving that TLC did not comply with the Permanent Injunction.

- 6 -

PD.47649540.3

The uncontroverted evidence shows that TLC has stopped using the Defendants' name, image, or likeness since the time the Permanent Injunction was entered and therefore has substantially complied with every provision of the Injunction. For this reason alone, the Court should deny Defendants' motion.

**B. Even assuming that there was a violation of the Injunction, TLC has not been given proper time to cure.**

Assuming *arguendo* that any violation exists, TLC had no meaningful chance to respond to the series of ever-evolving, increasingly vociferous allegations Defendants presented in the back-to-back letters sent by Ms. Kushner.[3]

In the first letter, Defendants simply conclude that the right to cure period expired in 2022. However, the specific complaints discussed in 2022 were with respect to different social media posts—all of which were diligently addressed by TLC. TLC took every reasonable step it could to honor Defendants' requests. And to be clear, none of the requests Defendants made in 2022 with respect to social media posts were even required by the Permanent Injunction. TLC complied anyways simply because it is in TLC's best interest to cease its affiliation with Defendants. Defendants do not explain why they waited two years to take further action. Of course, as explained above, it is apparent to TLC that the new allegations levied by Defendants are in response to TLC's request that Defendants comply with a specific provision of the Settlement Agreement. Indeed, the Motion for Contempt itself appears to be a transparent attempt to deflect from Defendants' failure to fulfill its obligations under the Settlement Agreement. In any event, the right to cure period could not have begun until TLC sent its final letter on October 25, 2024. This is because each letter

---

[3] TLC maintains that there is nothing that needs to be "cured." As explained above, the social media posts fall squarely within Injunction's exception for historically accurate references to TLC's time on Thunderhead Ranch.

presented new allegations of violations, effectively moving the goal posts and preventing TLC from adequately responding.

In response to TLC's October 14 request that Defendants comply with the Settlement Agreement, Defendants responded with a rapid-fire barrage of demand letters, each of which articulate different allegations of violations of the Permanent Injunction. In each letter, the complex web of allegations grew ever larger. A summary of the staggering cascade of demands is produced here.

On October 16, 2024, in the first demand letter, Defendants alleged that TLC violated the Consent Injunction in at least two ways: 1) the existence of images on TLC's social media, 2) the use of Defendants' name, image, or likeness by former students of TLC—including those which TLC has no control over. *See* Rec. Doc. 598, Exhibit 2. The very next day, Kushner wrote yet another demand letter, this time demanding that TLC force its alumni—who are not identified in the letter—to refrain from using a "logo that references either Gerry Spence or Thunderhead Ranch." *See id.* at Exhibit 3. Exactly one day later, on October 18, 2024, yet another lengthy letter graced the desk of counsel for TLC, this time informing him that TLC "has continued to publicly post photographs" of Thunderhead Ranch and the individual defendants, sending TLC into a scramble to determine if one of its employees had posted an image of the Defendants in the two years since the Injunction was entered.[4] *See id.* at Exhibit 4.

After a well-received respite, Ms. Kushner followed up four days letter, on October 22, 2024, with another letter, this time supplementing the list of "offending images" with a different list of several old posts Ms. Kushner identified. *See id.* at Exhibit 5. On October 23, 2024, Ms. Kushner wrote another letter, which, for the first time, demanded that any images that "combine

---

[4] As confirmed by the uncontroverted evidence, TLC determined this was simply not true—every post complained of preexisted the Permanent Injunction.

- 8 -
PD.47649540.3

the name 'Trial Lawyers College' with 'Thunderhead Ranch'" must be deleted by the end of October, five days after this letter was sent. *See id.* at Exhibit 6. On October 25, 2024, Ms. Kushner sent the last of her letters, which summarized the previous five already received. *See id.* at Exhibit 7. Finally, on October 26, 2024, Ms. Kushner wrote an email expressing her disbelief and frustration with the lack of response. *See id*. From the time the final letter was sent to when the present motion was filed, only 16 days had elapsed.

Defendants were not afforded the full 30 days to respond to the allegations until it received Kushner's final letter sent on October 24, 2024. Before TLC even had an opportunity to finish its review of one letter, it was immediately presented with another that identified an entirely different set of images or posts that Defendants alleged were violative. It was not until the bombardment of demands stopped that TLC could possibly piece together the entirety of what all had been requested of it. Consequently, the 30-day cure period provided by the Injunction had not yet elapsed, and the contempt motion was filed prematurely.

### III. CONCLUSION

The substance of this motion is without merit because Defendants have not proven that any of the complained of social media posts—which predate the Permanent Injunction—do not fall into the Injunction's exception. The spirit and purpose of the Permanent Injunction was to prevent the use of Defendants' name, image, or likeness on a going forward basis, which TLC has more than substantially complied with. The exception was included to carve out references—including social media posts—to TLC's two decades of history predating the litigation. Additionally, this motion is premature as Defendants did not allow for a 30-day cure period as mandated by the Permanent Injunction. For these reasons, Plaintiff respectfully requests that this Court deny Defendants' motion for contempt.

- 9 -
PD.47649540.3

Respectfully submitted,

**THE TRIAL LAWYERS COLLEGE**

*/s/ Christopher K. Ralston*
Christopher K. Ralston, (La. Bar #26706)
(Admitted *pro hac vice*)
Lindsay Calhoun, (La. Bar #35070)
(Admitted *pro hac vice*)
Phelps Dunbar LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: chris.ralston@phelps.com
        lindsay.calhoun@phelps.com

and

By: /s/ Patrick J. Murphy
Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-mail: pmurphy@wpdn.net

**ATTORNEYS FOR PLAINTIFF THE TRIAL LAWYERS COLLEGE**

## **CERTIFICATE OF SERVICE**

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all counsel of record this 29th day of November, 2024.

*/s/ Christopher K. Ralston*
Christopher K. Ralston
