Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY
SPENCE METHOD AT THUNDERHEAD
RANCH, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation, <br><br> Plaintiff. <br><br> vs. <br><br> GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC., <br><br> Defendants. | Civil Action No. 1:20-CV-00080-JMC |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION FOR CONTEMPT**

**INTRODUCTION**

Plaintiff does not dispute that the permanent injunction ("Injunction") contains two provisions barring TLC from using the Defendants,' their family members,' or Thunderhead Ranch's names, likenesses or images. Plaintiff does not dispute that TLC's social media contains roughly 200 photographs, names, likenesses, and videos of Defendants, their family members, and Thunderhead Ranch.

TLC argues that the Injunction only banned **new** social media, i.e., that TLC could freely continue to display photos and videos of Defendants, their family members, and Thunderhead Ranch, including to promote TLC's programs. That argument is contrary to rules of construction, the history of this litigation, and TLC's own past interpretation of the Injunction.

**ARGUMENT**

**1. TLC's Argument is Contrary to Ordinary Rules of Construction and the Parties' Interpretation.**

According to TLC, the Injunction's two paragraphs directed at TLC did only one thing: stopped TLC from **future** posts about the Defendants, their family members, or Thunderhead Ranch (Dkt. 599, pp. 4-5 of 11). But the Injunction does not say that. Instead, the Injunction expressly prohibits any **use** of the name, likeness, or image of the Defendants, their family members, or of Thunderhead Ranch (Dkt. 588, p. 2). Obviously, "use" is broader than "new postings." TLC does not dispute that, by continuing to display photographs, images, and videos on TLC's social media, TLC is "using" those photographs, images, and videos.

There are two exceptions in the Injunction. One applies to the individual Defendants' family members and the other applies to Thunderhead Ranch. The exception for **family members** permits TLC to use the images, names, and likenesses of family members who are part of TLC

1

after October 12, 2022.  The exception for the **Ranch** permits TLC to refer to the lease that TLC had until 2020.  Neither exception applies to the Defendants themselves or to photographs or videos of the Ranch.

In interpreting the Injunction, the appropriate method is to apply the same analysis that would be pertinent to construction of a contract. *In re Otero County Hospital Ass'n. Inc.,* 560 B.R. 551, 559 (D.N.M. 2016).  That will begin by determining what the Injunction says.  *Id.* ("When the language used is clear and unambiguous, it is conclusive."); *Murphy v. State Canvassing Bd.,* 12 P.3d 677, 679 (Wyo. 2000) (where language is unambiguous, court will apply as written).

The Injunction prohibits TLC from using the names, likenesses, or images of Defendants' "family members…**unless such family members are faculty, staff, or students of the Trial Lawyers College on a going forward basis from the date of this agreement[.]"** (Dkt. 588, p. 2, emphasis supplied).  That language is plain and unambiguous.  The phrase "going forward basis" only appears in the clauses concerning family members, and applies to "**such** family members." "Going forward basis" does not appear in the earlier, general restrictions on use (there is nothing such as "TLC is enjoined on a going forward basis…").  Further, there is no comma after "Trial Lawyers College" that could mean "going forward basis" applied to all of the previous text.  Each of these facts establish that the "going forward" language applies only to a family member's status (faculty, staff, or student) after October 2022.  *State v. Denhardt,* 760 P.2d 988, 990 (Wyo. 1988); *Waid v. State ex rel. Dep't. of Transportation,* 996 P.2d 18, 23 (Wyo. 2000).  Applying the plain language of the Injunction shows TLC has, and continues to, violate it.

In light of the claims that were resolved, a blanket prohibition on use of Defendants' names, images, or likenesses made absolute sense.[1] Indeed, to enlarge the "going forward" language beyond "family members" would impermissibly expand such language beyond its express terms.

The second exception applies to Thunderhead Ranch: "Plaintiff TLC is enjoined from **using** the name, image, or likeness of Thunderhead Ranch, "beyond factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020." (Dkt. 588, p. 2). That means that TLC could, consistent with the Injunction, **refer** to the past **lease.** A plain reading of the provision could not be construed to include a mere photograph. And photos of the Defendants at the Ranch—of which there are scores—are doubly violative of the Injunction.

TLC argues that any image, video, or photo of or at Thunderhead Ranch that was **taken** between 1994 and 2020 is a "reference" to the "lease." (Dkt. 599, p. 7 of 11). In other words, TLC wants to rewrite the injunction to say something that the injunction does not say. But that would require this Court to impermissibly construe "references to the lease" to mean "photographs and videos of a ranch," and to read "lease" as "anything occurring between 1994 and 2020."

"Reference" is a commonly understood term. It means "mention." *Reference*, BRITANNICA DICTIONARY (2024). Nowhere, in any dictionary definition or case law, does "reference" mean "photographs or videos." "Lease" is a contractual arrangement by which someone pays money to use an asset for a specified term. *Lease*, BLACK'S LAW DICTIONARY (12th ed. 2024). Under the Injunction, TLC could state that it had such a contract for Thunderhead Ranch between 1994 and 2020, but TLC could not do more than that.[2]

---

[1] Gerry Spence had a pending lawsuit in California against TLC for TLC's use of Mr. Spence's name, likeness, and image. (Kushner Supp. Dec., Ex. A). Mr. Spence also asserted counterclaims in this case against TLC and its directors for using Mr. Spence's name, likeness, and image (Dkt. 108).

[2] Without offering analysis or legal authority, TLC claims that construing the restrictions on use to apply unless excepted is absurd. (Dkt. 599, p. 7 of 11). That canon only applies when the language is ambiguous, *In re Loberg,* 88 P.3d 1045, 1048 (Wyo. 2004), and TLC never suggests—much less demonstrates—ambiguity.

TLC claims that Judge Carson would not have "intended" or "created" a restriction on TLC's use of its "history" (Dkt. 599, p. 7 of 11).  But this was a stipulated Injunction (Dkt. 588, first sentence).  It was the **parties** who determined how they would (and would not) conduct business going forward.  And part of that agreement was that TLC would be limited to what it could show and say about Defendants, their family members, and Thunderhead Ranch.  It was pivotal in the resolution of a case in which **TLC** claimed there was confusion about which entity—TLC or GSM—operated at the Ranch (Dkt. 89, ¶¶ 40, 43; Dkt. 598, par. 10) and in which GSM's name and marketing centered around the Ranch (Dkt. 598, par. 10).

**TLC previously shared Defendants' understanding of these provisions.**  In November 2022, TLC counsel represented, in a letter addressing "the parties' mutual obligations," that TLC had removed photos of and references to the Defendants from TLC's social media (Dkt. 598-1). In March 2023, Defendant (and GSM President) John Zelbst wrote to TLC President John Sloan that photos and videos were still posted of Defendants and Thunderhead Ranch (Zelbst Declaration, Ex. A ). Mr. Zelbst asked "Can you get this stuff taken down" **Mr. Sloan's response was not "oh, but we get to do that" or "but it's on a going forward basis!"**  Instead, Mr. Sloan immediately said "Sorry for the delay.  Will see what I can get done!"  A week later, Mr. Sloan wrote "Think we were able to get those taken down."  Similarly, on June 20, 2023, Mr. Zelbst texted Sloan that a photograph on TLC's Facebook page had been taken "inside the Big Barn" and that "We are requesting to have it taken down."  (Id.).  The Sloan response?  **"I will email about it now.**"  (Sloan Dec., Ex. A)

If TLC had any confusion (which Mr. Sloan's communications make clear TLC did not), TLC had the burden to seek clarification from the Court.  Instead, TLC took the sort of "calculated risk" that the United States Supreme Court has held cannot excuse a finding of contempt.

4

*McComb v. Jacksonville Paper* Co., 336 U.S. 187, 192 (1949). TLC knew more than two years ago that Moving Defendants viewed any photographs or videos of Thunderhead Ranch and the individual Defendants as violating the Injunction (Dkt. 598-2). At that point, TLC "could have [asked] the district court for "a modification, clarification[,] or construction of the order." *Id.,* p. 192. But TLC did not do so, opting instead to "make [its] own determination of what the decree meant. *Id.* That risk should be as costly as it was calculated.

### 2. TLC Had More Than 30 Days to Cure Its Violations of the Permanent Injunction.

TLC was informed in October 2022 that it was violating the Injunction and needed to cure (Dkt. 598-2; Supp. Kushner Dec., ¶ 5). On October 16, 2024, TLC was informed about specific continued violations (Dkt. 598-2). The Injunction does not require particular specificity in a cure notice; however, TLC was provided that over the next several weeks (Dkts. 598-3-7). Nothing in the Injunction supports TLC's position that, by subsequently identifying additional violations, the original notice was nullified. TLC was provided 30 days from October 16, 2024.

### CONCLUSION

For the foregoing reasons, Moving Defendants respectfully ask the Court to grant their Motion.

Respectfully submitted this 5th day of December, 2024.

*/s/ Beth J. Kushner*

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307-635-2391

[jim@fitzgeraldlaw.com](mailto:jim@fitzgeraldlaw.com)

ATTORNEYS FOR DEFENDANTS GERRY SPENCE TRIAL INSTITUTE, GERALD L. SPENCE, REX PARRIS, JOSEPH LOW, JOHN ZELBST, KENT SPENCE AND GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all parties on December 5, 2024.

*/s/ Beth J. Kushner*

42047382_2.DOCX