Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail:        pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email:        chris.ralston@phelps.com
lindsay.calhoun@phelps.com

Attorneys for The Trial Lawyers College

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br>　　　　Plaintiff.<br><br><br>vs.<br><br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC.,<br>　　　　Defendants. | Civil Action No. 1:20-CV-00080-JMC |

---

**PARTIES' JOINT SUBMISSION RELATING TO**

**MOTIONS FOR CONTEMPT AND TO ENFORCE SETTLEMENT**

---

Pursuant to this Court's December 11, 2024 Order, the parties file this joint statement to indicate in what ways the issues have been narrowed in this dispute. The parties have exchanged correspondence in an effort to narrow the issues but have been unsuccessful. The correspondence between counsel for Plaintiffs and counsel for Defendants displaying such efforts is attached herein.

Respectfully submitted this 7th day of January, 2025.

/s/ Beth J. Kushner

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI  53202
Telephone:  414-287-1373
bkushner@vonbriesen.com

James Fitzgerald
Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY  82001
Telephone:  307-634-4000
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY
SPENCE METHOD AT THUNDERHEAD
RANCH, INC.


/s/ Chris Ralston

Christopher K. Ralston (admitted *pro hac vice*)
Lindsay Calhoun (admitted *pro hac vice*)
PHELPS DUNBAR LLP
Canal Place / 365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  504-566-1311
chris.ralston@phelps.com
Lindsay.calhoun@phelps.com

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P.O. Box 10700
Casper, WY  82602-3902
Telephone:  307-265-0700
pmurphy@wpdn.net

ATTORNEYS FOR PLAINTIFF
THE TRIAL LAWYERS COLLEGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all parties on January 7th, 2025.

*/s/ Beth J. Kushner*

**From:** Beth J. Kushner <beth.kushner@vonbriesen.com>
**Sent:** Thursday, December 12, 2024 10:19 AM
**To:** Chris Ralston (1358) <Chris.Ralston@phelps.com>; Lindsay Calhoun (1315) <Lindsay.Calhoun@phelps.com>
**Cc:** jim@fitzgeraldlaw.com; Joan Pawlak <joan.pawlak@vonbriesen.com>
**Subject:** TLC--Court Order of December 11, 2024
**Attachments:** [CLEANED]2024-12-11 TLC - Ltr to CRalston re Judge Fouratt's Order of 12-11-24.pdf

Good morning, counsel.  Please see the attached.

I will remain available to address the issues and look forward to your anticipated prompt and constructive response.

**Beth J. Kushner | von Briesen & Roper, s.c.**
Direct: 414-287-1373 | Cell: 414-305-7794
beth.kushner@vonbriesen.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.



TAGLaw International Lawyers

Beth J. Kushner
Direct Telephone
414-287-1373
Beth.kushner@vonbriesen.com

December 12, 2024

**<u>VIA EMAIL</u>**

Christopher K. Ralston
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA  70130
**Chris.Ralston@phelps.com**

Re:     Trial Lawyers' College

Dear counsel:

In Judge Fouratt's order yesterday, he directed the parties to prepare a joint submission "indicating **whether** and **in what ways** they have been able to narrow the issues in dispute."  (Dkt. 609, emphasis supplied).  I understand that requires us to set out the parties' respective positions on the issues, as well as any progress we make in conciliating.  I will remain available to discuss this with you by email or phone, and will strive to accommodate your schedule.

The submission must be filed by January 7 and I believe will require both reflection and communication; accordingly, I submit that we should begin this process immediately.  I assume, and will proceed under the assumption, that all of our communications attempting to narrow the issues will be appropriate for filing.

I have previously indicated that I would be handling issues relating to the settlement.  That remains the case.  In addition, I will be handling the attempt to narrow the issues in dispute.  I do acknowledge your preference for communicating with Mr. Velkei; however, Local Rule 7.1 does not say "reasonable good faith efforts to resolve the dispute with, or obtain the consent of, opposing counsel *chosen by the moving party...* prior to filing the motion."  The same manifestly holds true for this joint submission.

With that said, below is our position:

1.       <u>Scope of the Permanent Injunction and Compliance with Local Rule 7.1(b)(1)(A).</u>

We believe that the language of the injunction is clear and consistent with the parties' actions and statements before the contempt motion was filed.  To this end, I direct you to your letter of November 15, 2022, in which you spoke of the parties' "mutual obligations;" your representations that all images of the Defendants were deleted from TLC's social media (which is inconsistent

Christopher K. Ralston
December 12, 2024
Page 2

with the continued display of the roughly 200 images that are the crux of the contempt motion); and Mr. Sloan's responses to requests that photographs be removed.

You have stated that the deletion of a small number of photographs and images was merely because your client wanted to remove any trace of the individual defendants. We would submit that if that truly were the case, your client would have removed the far greater number of images at issue in this motion. If your client had any doubt about compliance, your client had the burden to return to Judge Carson for clarification or modification. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 192 (1049). It is undisputed that TLC did not do so, so that issue is narrowed.

We further believe that the term "reference to the lease" does not include photographs, images, or videos. Further, "reference to the lease" does not include images or photographs of Defendants or their family members on Thunderhead Ranch. That position is consistent with Mr. Sloan's response to requests for removal of photographs of the Ranch.

The Plaintiff has not suggested that performance would be impossible or that it made every effort to comply with the above interpretation. Nor has the Plaintiff raised any other defense to the Injunction. We concur on both issues, and believe they have been narrowed.

Plaintiff also takes the position that it was not afforded 30 days to cure violations of the Injunction. Defendants do not believe the Injunction can be construed to mean that every time a violation is brought to TLC's attention, the "clock" restarts for the cure period. Further, where TLC is claiming that it never violated the Injunction, it is unclear why TLC is simultaneously claiming that it did not have sufficient time to evaluate the issue. What else would you have done? In light of TLC's position that there was no violation, I believe the issue is narrowed.

Defendants have asked for damages based on the unauthorized use of photographs and images. Plaintiff has not disputed that, if the Court finds contempt, that would be an appropriate remedy. We obviously concur, and believe that issue has been narrowed.

The Defendants repeatedly attempted to confer about the Injunction. The Plaintiff did not respond to any of those communications. Although you justified your refusal to communicate with me about the injunction by your single email to Mr. Velkei about property, we are aware of no authority that would support that position.

2.  <u>Scope of the Settlement Agreement (apart from the Injunction) and Compliance with Local Rule 7.1(b)(1)(A).</u>

We believe that the provision for return of various items of property means to the <u>owner</u> of such property. We further believe that the owner of a name board is the person who paid for a particular board. That is consistent with Ms. Chaloupka's various communications with alumni about the boards. Accordingly, we believe that, if an owner does not want his or her board to go to TLC, the board should be handled as the owner directs. That, of course, would be consistent with your

Christopher K. Ralston
December 12, 2024
Page 3

argument (if the reply brief is considered) that TLC's goal with respect to the boards is to respect the sensibilities of the people who paid for them.

TLC has taken the position that the boards were of enormous religious, sentimental, and emotional importance. I would direct your attention to Mr. Mishlove's statement to Ms. Chaloupka that they are "just pieces of wood." Based on Ms. Chaloupka's document production, it appears that the boards may be of greater significance to Ms. Chaloupka than to the alumni.

TLC made only two requests between the signing of the Settlement Agreement and your letter of October 2024 to Mr. Velkei. The first was from Mr. Sloan, documented by emails among him and Messrs. Zelbst and Low. Mr. Sloan did not respond further. The second was from Ms. Chaloupka to Mr. Zelbst, in February 2024. Ms. Chaloupka did not respond further.

The Plaintiff has claimed that there was an unconditional obligation to provide name boards, regardless of the owners' wishes, and on a *seriatim* basis. Defendants believe that is contrary to Wyoming rules of contract construction, as well as Mr. Sloan's and Ms. Chaloupka's statements about providing a "list." Obviously, if a list had been compiled, it is apparent that neither Mr. Sloan nor Ms. Chaloupka believed that all boards would be released.

At the time Mr. Sloan raised the issue of name boards, he also referred to two other signs, i.e., the Don Clarkson sign and a Bill Trine sign. Nobody at or representing TLC subsequently asked about a Trine sign, and Ms. Chaloupka did not request the Clarkson sign.

Notwithstanding the lengthy hiatus between TLC's requests for any property, GSM remained willing to provide property that exists and is owned by TLC. Further, on behalf of GSM, I have personally worked to obtain the property of third parties and/or their consent to providing property to TLC. I have advised you of those efforts, but you have not acknowledged them. However, I do not believe there is any dispute that you received the offers. Accordingly, that issue is narrowed.

The Defendants believe that it was reasonable to ask TLC to pay for shipping expenses, where that was not specified in the Settlement Agreement. The Defendants further believe it was reasonable to require TLC to specify what TLC wanted to obtain, particularly where TLC's former Executive Director had taken and stored property at a commercial facility in Riverton, Wyoming.

Plaintiff sent one email to Steve Velkei and refused to communicate beyond that. There was no "reasonable good faith effort" to conciliate and it is surprising that you would cite your own previous failure to conciliate as support for the proposition that you did not need to conciliate (Dkt. 608, p. 2 of 7 and fn. 4). That is particularly the case when TLC was admonished in this case for the prior non-compliance.

Christopher K. Ralston
December 12, 2024
Page 4

3.      Repeated violations of Local Rule 7.1(b)(1)(A).

TLC has justified its failure to conciliate by noting that former Magistrate Judge Carman proceeded to decide a previous motion that TLC had not conciliated (Dkt. 194). In his Order, Judge Carman noted Plaintiff's failure to conciliate and stated that, although he would consider the Motion, *"[i]t must be understood, though, the Court will not take kindly to this failure again."* (Id., p. 4, emphasis supplied). In other words, far from endorsing TLC's practice of filing motions without conciliating, Judge Carman warned that it was not acceptable.

On June 23, 2022, Judge Fouratt denied a TLC motion on the basis that "this Motion does not indicate whether TLC 'conferred and made reasonable good faith efforts to resolve the dispute with, or obtain the consent of, opposing counsel prior to filing the [M]otion[.]" (Dkt. 376, p. 2).

In connection with its pending Motions, TLC has failed to confer three separate times (Dkts. 602, 603, and 608). Further, TLC does not dispute that it would not conciliate with Defendants' counsel about the motion for contempt. No authority—and certainly none cited by Plaintiff—suggests that a party satisfies the conciliation requirement when such party (a) sends a single communication; (b) refuses to respond to answering communications; and (c) will not accept any discourse other than with the lawyer of the party's preference.

Local Rule 7.1(b)(1)(A) requires "good faith efforts" to resolve a dispute (or obtain the opposing party's consent to filing a motion). We submit that "good faith efforts" involve more than going through the motions of contacting another party. Unilateral communications are typically inadequate. In *Greenwood v. Point Meadows Place Condominium Ass'n, Inc.*, No. 3:10-cv 1183 J 34TEM, 2011 WL 5358682, at **1–2 (M.D. Fla. Nov. 7, 2011), one letter sent to opposing counsel "detailing the deficiencies in Plaintiff's discovery responses" was deemed insufficient to satisfy the "meet and confer" requirement. Similarly, in *Racine v. PHW Las Vegas, LLC*, No. 2:10-cv-01651-LDG-VCF, Dkt. 41 (D. Nev. Dec. 7, 2011), the plaintiff sent one letter to opposing counsel and followed up with emails. The District of Nevada found that this was not a "meaningful" discussion. Of course, in our case, TLC would not even engage in discussions about the Injunction and affirmatively rejected engaging about the property after one email to Mr. Velkei.

Certainly, it is up to the Court to determine whether, under the circumstances, a party has truly engaged in good faith, sincere attempts to resolve a dispute. Under circumstances where a party intentionally **cuts off** another party's efforts, we do not believe the Court would do so.

Plaintiff believes that it satisfied Local Rule 7.1(b)(1)(A) by sending a single email to Steve Velkei, and that Plaintiff did not need to communicate with me. Defendants disagree.

Christopher K. Ralston
December 12, 2024
Page 5

## PROTOCOL FOR PROPERTY

Putting aside the above, we believe that the Motion to Enforce can be largely mooted, even with the passage of time since the January 2023 offer by Messrs. Low and Zelbst to make property available. There would be a single "pick up" or other disbursement, because the Settlement Agreement does not provide for storage or piecemeal distributions. The specifics for this would be as follows:

1. TLC will provide GSM with an updated list of who wants his or her name board. Those individuals' boards, to the extent they still exist, can be sent elsewhere at TLC's expense. As TLC has no facility, TLC will need to advise us of the destination. Alternatively, they can be made available for pick up at Thunderhead Ranch.

2. Upon confirmation from Don Clarkson of his wishes for his board, GSM will send the board to the place of his direction at TLC's expense, or make it available for pick up outside of Thunderhead Ranch.

3. The "Cowboy sign" will be made available for pick up outside of Thunderhead Ranch or sent to another place at TLC's direction.

4. TLC will inventory the property taken by Laurie Goodman and, at least initially, stored in Riverton, Wyoming. That inventory will be provided to GSM, in order to determine what of the property at issue is already under TLC's control.

5. TLC will make the barn flooring that is owned by the Spence Foundation, which was not a party to the settlement, available in Riverton for pick up. To the extent the flooring has been moved from Riverton, TLC will send it to Thunderhead Ranch at TLC's expense.

6. TLC will return all photographs taken at the Ranch or that include one or more of the Individual Defendants or their family members (other than a family member who, after October 12, 2022, worked for, taught at, or attended TLC).

## CONCLUSION

Damages for the Motion for Contempt can be mitigated to some extent by TLC removing from its social media all photographs of any of the Individual Defendants or their family members (other than a family member who, after October 12, 2022, worked for, taught at, or attended TLC), as well as all photographs or images of Thunderhead Ranch. Please confirm any efforts in this regard.

In summary, I believe that the following issues have been narrowed: (a) it would not be impossible for TLC to delete photographs, images, and videos from TLC's social media; (b) Defendants have articulated an appropriate measure of damages if the Court finds the Injunction was violated; (c) TLC did not seek any modification or clarification of the Injunction;

Christopher K. Ralston
December 12, 2024
Page 6

and (d) Defendants have offered to make the property that TLC has requested available, whether to TLC or to the owners.

I believe that the following issues remain:  (a) whether TLC violated the Injunction, according to the Injunction's language and TLC's actions; (b) whether that violation was intentional; (c) whether Defendants have attempted performance of their obligations under the Settlement Agreement; and (d) whether TLC has violated Local Rule 7.1 and, if so, the appropriate response for the Court.  I remain optimistic that those issues can be narrowed, and will welcome any legal authority or new facts to support TLC's positions in its briefs.

If there are any other issues that you believe I have not addressed, please advise me promptly.  I trust that TLC will make a sincere, constructive effort to narrow the issues in dispute and I look forward to your response.  Please plan to have it to me by December 27, so that we can consider it and respond.  Again, I will be available to speak as well as to respond in writing.

Very truly yours,

von BRIESEN & ROPER, s.c.

Beth J. Kushner
BJK:jmp

cc:    Mr. James Fitzgerald (via email)

42096105_1.DOCX

**From:** Beth J. Kushner <beth.kushner@vonbriesen.com>
**Sent:** Tuesday, December 17, 2024 9:50 AM
**To:** Chris Ralston (1358) <Chris.Ralston@phelps.com>; Lindsay Calhoun (1315) <Lindsay.Calhoun@phelps.com>; pmurphy@wpdn.net
**Cc:** jim@fitzgeraldlaw.com; Joan Pawlak <joan.pawlak@vonbriesen.com>
**Subject:** TLC litigation--Effort to comply with Court Order of December 11, 2024
**Attachments:** [CLEANED]2024-12-16 TLC - Parties Stipulated Facts Narrowing Issues for Hearing.DOCX

Good morning, counsel. As part of our commitment to minimizing or avoiding the disputes that are submitted to the Court, we are providing you with a Word version of our proposed stipulated facts. These are an effort to narrow the issues that will be addressed January 10.

In hopes that we can reach agreement, we have stayed with facts that we do not believe can seriously be disputed; e.g., your clients' texts, emails, and documents; the correspondence between counsel; and the social media posts in question.

We look forward to your response, and send good wishes for the holidays. Thank you.

**Beth J. Kushner | von Briesen & Roper, s.c.**
Direct: 414-287-1373 | Cell: 414-305-7794
beth.kushner@vonbriesen.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br><br>        Plaintiff.<br><br>vs.<br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC.,<br><br>        Defendants. | Civil Action No. 1:20-CV-00080-JMC |

## PARTIES' STIPULATED FACTS NARROWING ISSUES FOR HEARING ON
## MOTIONS FOR CONTEMPT AND TO ENFORCE SETTLEMENT

1.     Included in the cases that were resolved pursuant to the Settlement Agreement was litigation in California involving allegations that certain directors of Trial Lawyers' College ("TLC") misappropriated the Thunderhead Ranch brand and logo.

2.     The Settlement Agreement included certain provisions for the disposition of property and was silent on others:

    a.     Property was to be "returned," but the Settlement Agreement did not specify to whom and therefore did not suggest it would be "returned" other than to the property's owner(s).

    b.     There was no provision for the payment of costs incurred in connection with the return of property.

    c.     There was no provision for property to be returned on a *seriatim* basis.

    d.     There were no warranties concerning the existence or condition of any property.

3.     The parties informally agreed that issues concerning implementation of the property provisions would be addressed between John Sloan, President of TLC, and John Zelbst, President of Gerry Spence Method at Thunderhead Ranch ("GSM").

4.     The Settlement Agreement required entry of a Stipulated Permanent Injunction ("Injunction"), which was entered by the Hon. Joel Carson on October 12, 2022.

5.     Beginning immediately after the Settlement Agreement was filed, Defendants began to remove any website or social media content that was under their control and that could violate the Injunction. Defendants' counsel advised TLC's counsel on October 19, 2022 that they had removed all such content of which Defendants were aware and asked that TLC advise if it learned of any additional content.

6.     After October 19, 2022, TLC never asserted that the Defendants were in violation of the provisions of the Injunction that applied to Defendants.

7.    In a letter of October 19, 2022, Defendants' counsel advised TLC's counsel as follows:

> *Beginning on October 14, 2022, I advised you of a number of actions that TLC and its directors/employees will need to take to comply with the portion of the injunction that applies to TLC. The 30 day cure period was triggered at that time. TLC will need to delete/edit the below in order to comply with the injunction: 1. Mr. Clary's bio on his law firm website. 2. TLC YouTube videos, including "Method of Opening Statement," Mr. Clary's video on why he supports TLC, August 5, 2011 TLC YouTube, November 3, 2011 TLC YouTube, and October 14, 2011 TLC YouTube. 3. Anne Valentine's bio on her law firm and the Legal Aid Society of Columbus websites. 4. Eric Davis's professional bio. 5. Francisco Duarte's bio on his firm and the Washington Foundation for Criminal Justice websites… 8. Ms. Goodman's LinkedIn profile states that Trial Lawyers College is at Thunderhead Ranch. 9. TLC podcasts for March 30, 2016, September 15, 2016, and December 9, 2016. We will continue to monitor the use of our clients' names and likenesses, as well as that of Thunderhead Ranch. With respect to the latter, the sole permitted use is to correctly refer to the lease between 1994 and 2020.*

8.    In a letter of October 20, 2022, Defendants' counsel advised TLC's counsel as follows:

> *In addition to the list from yesterday, your client will need to delete/edit the following: 1. April 26, 2012 TLC YouTube video. 2. Twitter post of November 22, 2019. In addition, your client will need to search Twitter and Instagram to remove/edit any references or images in violation of the mutual injunction (i.e., of any Spence Defendant or their family members, and of Thunderhead Ranch). 3. There are a significant number of TLC Facebook posts/photos that need to be removed, including but not limited to August 18, 2019, August 12, 2019, May 2, 2019, March 26, 2019, May 1, 2018, November 7, 2017, December 26, 2016, October 17, 2016, June 7, 2016, as well as any photos taken at or depicting Thunderhead Ranch Again, this is not exhaustive. We are identifying the uses of the Spence Defendants' (and their affiliates and family members') names and likenesses, as well as that of Thunderhead Ranch, and calling them to your attention for prompt resolution. This is a good faith attempt to resolve the issues promptly, cost-effectively, and without court intervention. We hope that you will cooperate in this effort.*

9.    TLC's counsel responded in a letter of October 31, 2022, including as follows in a letter discussing "mutual obligations of the parties:"

> *… TLC has no interest in using the name, image, or likeness of any of the Defendants to this litigation, even incidentally, and is endeavoring to remove any*

*such references from its 28 years of archival materials....9. November 22, 2019 Twitter post, TLC podcasts, and additional Facebook posts/photos....*

In his October 31, 2022 letter, TLC counsel stated that: *Again, TLC is diligently reviewing all of its archives to remove references to the Spence Defendants. However, historically-accurate references to TLC 's time on the Thunderhead Ranch, including images depicting TLC's tenure on the Thunderhead Ranch from 1994-2020, do not violate the terms of the Consent Injunction or the Settlement Agreement.* TLC counsel further stated that *Ms. Goodman has been directed to remove all references to Defendants from her LinkedIn page.*

10.     Immediately upon receiving TLC's counsel's October 31, 2022 letter, Defendants'

counsel responded, including as follows:

*TLC may not use "the name, image, or likeness of [any of the Spence Defendants or their family members who are not TLC faculty] on a going forward basis from [October 12, 2022] or Thunderhead Ranch in connection with promoting any of [TLC's] programs or services, beyond factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-220." (ECF 588, p. 2, emphasis supplied). October 31, 2022 Page 2 There is no exception for photographs. In fact, there is no exception for anything beyond (a) references to (b) the lease. And there cannot be any serious dispute that TLC's Facebook page and other social media are in connection with promoting TLC programs or services; in fact, your client took that position in the federal litigation. This is, in fact, using the names/likenesses of the Spence Defendants and Thunderhead Ranch for the benefit of TLC.*

11.     TLC did not seek clarification or modification of the Injunction in response to

Defendants' counsel's letters or at any time.

12.     On November 15, 2022, TLC's counsel wrote to Defendants' counsel as follows

about "the parties' mutual obligations under the Settlement Agreement and Consent Injunction":

*TLC has made every effort to make certain that any references to the Defendants have been removed from its archived materials, including its social media accounts. Likewise, Ms. Laurie Goodman has removed any references to Defendants from her social media accounts under her control, including her personal LinkedIn account. TLC has also reviewed videos on its YouTube page and requested YouTube remove TLC's entire channel. As of today's date, TLC is still waiting for YouTube's administrative services to fulfill TLC's request. To the best of TLC's knowledge, no other references to any of the Defendants' name, image or likeness exist on TLC's social media accounts.*

13.     At no time before responding to Defendants' Motion for Contempt did TLC take the position that it could continue to display photographs of the Defendants on TLC's social media.

14.     In March 2023, GSM's President texted TLC's President that photos and videos were still posted of Defendants and Thunderhead Ranch and asked "Can you get this stuff taken down?"  TLC's President responded "Sorry for the delay.  Will see what I can get done!" and a week later stated "Think we were able to get those taken down."

15.     In June 2023, GSM's President texted TLC's President that TLC was continuing to display a photograph taken "inside the Big Barn" and that "We are requesting to have it taken down."  TLC's President responded "I will email about it now."

16.     TLC's counsel was apprised in October 2022 that issues relating to property would be addressed between Messrs. Zelbst and Sloan.

17.     The first time Mr. Sloan requested any property was in February 2023, when he sent an email to Mr. Zelbst  that stated "Johnny, We need to send someone onto the ranch to retrieve the plaques that are a part of the settlement agreement.  I assume Kent [Spence] could meet someone there?"[1]  Mr. Zelbst promptly responded "Tell us who you want and we can get them for you."

18.     Joseph Low, GSM's Vice President, Director of Staff & Curriculum, and Chief Instructor," was added to the email string and stated "Give me a list of plaques and I will have them removed at our earliest convenience."

---

[1] On page 2 of Dkt. 607, the date is incorrectly stated to have been March 2023.

19.     Mr. Low further offered a protocol for TLC to obtain any property:

> *I will arrange for having a Pod delivered to the ranch. I will have that Pod(s) loaded with the signs.*
>
> *Please provide a shipping address and payment to the Pod company.*
>
> *Once it is loaded I will call the Pod company to come pick it up.*
>
> *There was a wooden sign that hung from the wood arch at the entrance. It has a quote on the back from Gerry. I will not be releasing that. It has TLC on the front.*
>
> *My recommendation is to have it destroyed.*
>
> *Joseph H. Low IV*  (Id., Ex. A, p. 5, italics supplied).[2]

Mr. Sloan never responded to that proposed protocol.

20.     Mr. Sloan provided a few names for the memorial boards, but stated that, beyond those names, "I guess that we will just take a poll of the other TLC folks that paid for them and see what they desire" and "I will investigate further and get you more names." Mr. Sloan never provided such a list or communicated any further about property.

21.     In February 2024, Maren Chaloupka wrote to Mr. Zelbst, asking for four particular memorial boards. She stated that she had "a list of other TLC alums who have requested return of their barnwood plaques." Mr. Zelbst responded that he agreed the parties should resolve any remaining issues and asked about barn flooring that TLC's former executive director, Laurie Goodman, had taken from Thunderhead Ranch and stored in Riverton, Wyoming. Ms. Chaloupka did not respond further.

22.     The next time that TLC raised any issues about property was in an email of October 14, from TLC counsel Chris Ralston to attorney Steve Velkei. The lawyer who TLC counsel had been advised would be handling any settlement issues that were not resolved between

---

[2] Under the Injunction, TLC could not use Gerry Spence's name (Dkt. 588, p. 2).

Messrs. Zelbst and Sloan promptly responded and sent approximately 12 communications to Mr. Ralston over the following six weeks about the Injunction and property issues. Mr. Ralston never acknowledged or responded to any of the communications.

23.    Defendants' counsel has repeatedly reiterated the availability of the protocol that Mr. Low had offered to Mr. Sloan in February 2023. Mr. Ralston never responded.

24.    Defendants' counsel has advised Mr. Ralston that she had reached out directly to one of the people specifically raised as an example of someone who wanted their barn plaque, as well as to Don Clarkson. Mr. Ralston never responded.

25.    TLC has never taken the position that the memorial boards (or "plaques") belonged to TLC, rather than to the people who had purchased them. TLC has never taken the position before December 10, 2024 that TLC is entitled to all boards, including for people who do not want their boards to go to TLC.

26.    The memorial boards were made at no cost, simply by burning a name into a piece of wood. TLC has the wood that was used.

27.    GSM does not display any of the boards that were purchased by alumni before TLC was evicted from Thunderhead Ranch.

28.    On September 23, 2020, one of the owners of the four memorial boards that TLC identified stated to Ms. Chaloupka that the boards were "just pieces of wood."

29.    Defendants have identified approximately 200 photographs of individual Defendants, their family members, or Thunderhead Ranch that are currently on TLC's social media. TLC continues to post photos and videos that include TLC's registered trademark above the name "Thunderhead Ranch."

30.    Of TLC's album for "profile photos" on Facebook, three of five photos are of Thunderhead Ranch.   Of TLC's sixteen Facebook "cover photos" on Facebook, six are of Thunderhead Ranch and one is of John Zelbst.

31.    None of the photos of or at Thunderhead Ranch that TLC continues to display on social media identify the lease of the property.  Many of the photos of or at Thunderhead Ranch do not mention TLC at all—they are simply photographs of the Ranch or its cattle signs.

32.    TLC displays photos of the individual defendants both on and away from Thunderhead Ranch on TLC's social media.

33.    TLC displays photos of individual defendants' family members on TLC's social media.  Those family members are not currently students, staff, or faculty of TLC.

34.    TLC does not have a facility from which TLC operates.  TLC holds seminars at public facilities such as YMCAs and hotels.

35.    TLC has not provided Defendants with any comprehensive list of the alumni who want their barn boards, although Ms. Chaloupka stated in February 2024 that she has such a list.

Respectfully submitted this _____ day of January, 2025.

/s/ Beth J. Kushner

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James Fitzgerald
Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307-634-4000
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.


/s/ _____

Christopher K. Ralston (admitted *pro hac vice*)
Lindsay Calhoun (admitted *pro hac vice*)
PHELPS DUNBAR LLP
Canal Place / 365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Telephone: 504-566-1311
chris.ralston@phelps.com
Lindsay.calhoun@phelps.com

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: 307-265-0700
pmurphy@wpdn.net

ATTORNEYS FOR PLAINTIFF
THE TRIAL LAWYERS COLLEGE

9

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all parties on January __, 2025.

*/s/ Beth J. Kushner*

42114106_1.DOCX

| | |
|---|---|
| **From:** | Sally Whitlow (1540) |
| **Sent:** | Monday, December 23, 2024 9:59 AM |
| **To:** | beth.kushner@vonbriesen.com |
| **Cc:** | Chris Ralston (1358); Lindsay Calhoun (1315); Mark Ackal (1261) |
| **Subject:** | The Trial Lawyers College v. Gerry Spence's Trial Lawyers College at Thunderhead Ranch, et al. - Acknowledgment of Correspondence and Interim Contact Information |
| **Attachments:** | 2024-12-23 Letter to Beth Kushner.pdf |

Dear Ms. Kushner,

Please see the attached sent on behalf of Christopher Ralston.

Sincerely,

**Sally Whitlow**
Legal Assistant
Litigation
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA  70130
Telephone: 504-679-5540
Fax: 504-568-9130
Email: sally.whitlow@phelps.com



CONFIDENTIALITY NOTICE - This e-mail message, including any attachments, is private communication sent by a law firm, Phelps Dunbar LLP, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, any use, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system. Thank you.



Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
504 566 1311

December 23, 2024

Christopher K. Ralston
Partner
Direct 504 584 9358

**<u>VIA US MAIL</u>**

Ms. Beth Kushner
Van Briesen & Roper, S.C.
411 East Wisconsin Avenue, Suite
1000 Milwaukee, WI 53202
beth.kushner@vonbriesen.com

Re:     *The Trial Lawyers College v. Gerry Spence's Trial Lawyers College at
        Thunderhead Ranch, et al.*
        Wyoming Dist. Court Case No. 1:20-CV-80

Dear Ms. Kushner,

I write today to acknowledge receipt of your recent correspondence containing the proposed set of stipulated facts. Please be assured that we are reviewing the details and will provide a formal reply in due course. Additionally, we are currently reviewing your opposition to our motion for leave to file a reply. We were surprised to see this filing, as you had previously indicated that you would "not object to the Court's consideration" of our motion for leave. In any event, we look forward to working collaboratively towards narrowing the issues in the present dispute pursuant to Judge Fouratt's December 11, 2024 Order.

Please note that the two primary attorneys handling this case will be largely inaccessible until the first week of January. In the meantime, you may continue to direct all correspondence to either Lindsay Calhoun or Chris Ralston, but please ensure that our associate, Mark Ackal, is copied on all communications during this period. Mark can be reached at mark.ackal@phelps.com.

Thank you for your understanding and cooperation.

Best regards,

Christopher K. Ralston

CKR:saw

Louisiana  Mississippi  Texas  Florida  Alabama  North Carolina  London    phelps.com
PD.47910263.1

| | |
|---|---|
| **From:** | Beth J. Kushner <beth.kushner@vonbriesen.com> |
| **Sent:** | Monday, December 23, 2024 8:21 PM |
| **To:** | Sally Whitlow (1540) |
| **Cc:** | Chris Ralston (1358); Lindsay Calhoun (1315); Mark Ackal (1261); Joan Pawlak |
| **Subject:** | RE: The Trial Lawyers College v. Gerry Spence's Trial Lawyers College at Thunderhead Ranch, et al. - Acknowledgment of Correspondence and Interim Contact Information |

Received.  Thank you

**Beth J. Kushner | von Briesen & Roper, s.c.**
Direct: 414-287-1373 | Cell: 414-305-7794
beth.kushner@vonbriesen.com

---

**From:** Sally Whitlow (1540) <Sally.Whitlow@phelps.com>
**Sent:** Monday, December 23, 2024 9:59 AM
**To:** Beth J. Kushner <beth.kushner@vonbriesen.com>
**Cc:** Chris Ralston (1358) <Chris.Ralston@phelps.com>; Lindsay Calhoun (1315) <Lindsay.Calhoun@phelps.com>; Mark Ackal (1261) <Mark.Ackal@phelps.com>
**Subject:** [EXTERNAL] The Trial Lawyers College v. Gerry Spence's Trial Lawyers College at Thunderhead Ranch, et al. - Acknowledgment of Correspondence and Interim Contact Information

Dear Ms. Kushner,

Please see the attached sent on behalf of Christopher Ralston.

Sincerely,

**Sally Whitlow**
Legal Assistant
Litigation
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA  70130
Telephone: 504-679-5540
Fax: 504-568-9130
Email: sally.whitlow@phelps.com



CONFIDENTIALITY NOTICE - This e-mail message, including any attachments, is private communication sent by a law firm, Phelps Dunbar LLP, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, any use, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system. Thank you.

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

| | |
|---|---|
| **From:** | Beth J. Kushner <beth.kushner@vonbriesen.com> |
| **Sent:** | Monday, December 30, 2024 1:51 PM |
| **To:** | Chris Ralston (1358); Lindsay Calhoun (1315); Mark Ackal (1261) |
| **Cc:** | jim@fitzgeraldlaw.com; Joan Pawlak |
| **Subject:** | TLC litigation--updated proposed stipulated facts |
| **Attachments:** | 2024-12-16 TLC - Parties Stipulated Facts Narrowing Issues for Hearing.docx |

Dear counsel:  I hope you and yours are enjoying the holidays.

On December 18, TLC started to use a new logo and began to remove certain of the photographs that are the subject of our contempt motion.  Although this does not affect the contemptuous nature of the conduct (please see Doc. 59, pp. 2-3 and Doc. 76, pp. 11-12), we believe that the proposed stipulations should be updated to reflect the actions that TLC has taken.  A redlined version is attached for your convenience.

We wish you an enjoyable New Year's holiday and look forward to narrowing the issues for the January 10 hearing.


**Beth J. Kushner | von Briesen & Roper, s.c.**
Direct: 414-287-1373 | Cell: 414-305-7794
beth.kushner@vonbriesen.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br><br>    Plaintiff.<br><br>vs.<br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC.,<br><br>    Defendants. | Civil Action No. 1:20-CV-00080-JMC |

**PARTIES' STIPULATED FACTS NARROWING ISSUES FOR HEARING ON
MOTIONS FOR CONTEMPT AND TO ENFORCE SETTLEMENT**

1

1.      Included in the cases that were resolved pursuant to the Settlement Agreement dated October 12, 2022 ("Settlement Agreement") was litigation in California involving allegations that certain directors of Trial Lawyers' College ("TLC") misappropriated the Thunderhead Ranch brand and logo.

2.      The Settlement Agreement included certain provisions for the disposition of property and was silent on others:

      a.  Property was to be "returned," but the Settlement Agreement did not specify to whom and therefore did not suggest it would be "returned" other than to the property's owner(s).

      b.  There was no provision for the payment of costs incurred in connection with the return of property.

      c.  There was no provision for property to be returned on a *seriatim* basis.

      d.  There were no warranties concerning the existence or condition of any property.

3.      The parties informally agreed that issues concerning implementation of the property provisions would be addressed between John Sloan, President of TLC, and John Zelbst, President of Gerry Spence Method at Thunderhead Ranch ("GSM").

4.      The Settlement Agreement required entry of a Stipulated Permanent Injunction ("Injunction"), which was entered by the Hon. Joel Carson on October 12, 2022.

5.      Beginning immediately after the Settlement Agreement was filed, Defendants began to remove any website or social media content that was under their control and that could violate the Injunction. Defendants' counsel advised TLC's counsel on October 19, 2022 that they had removed all such content of which Defendants were aware and asked that TLC advise if it learned of any additional content.

6.     After October 19, 2022, TLC never asserted that the Defendants were in violation

of the provisions of the Injunction that applied to Defendants.

7.     In a letter of October 19, 2022, Defendants' counsel advised TLC's counsel as

follows:

> *Beginning on October 14, 2022, I advised you of a number of actions that TLC and its directors/employees will need to take to comply with the portion of the injunction that applies to TLC. The 30 day cure period was triggered at that time. TLC will need to delete/edit the below in order to comply with the injunction: 1. Mr. Clary's bio on his law firm website. 2. TLC YouTube videos, including "Method of Opening Statement," Mr. Clary's video on why he supports TLC, August 5, 2011 TLC YouTube, November 3, 2011 TLC YouTube, and October 14, 2011 TLC YouTube. 3. Anne Valentine's bio on her law firm and the Legal Aid Society of Columbus websites. 4. Eric Davis's professional bio. 5. Francisco Duarte's bio on his firm and the Washington Foundation for Criminal Justice websites… 8. Ms. Goodman's LinkedIn profile states that Trial Lawyers College is at Thunderhead Ranch. 9. TLC podcasts for March 30, 2016, September 15, 2016, and December 9, 2016. We will continue to monitor the use of our clients' names and likenesses, as well as that of Thunderhead Ranch. With respect to the latter, the sole permitted use is to correctly refer to the lease between 1994 and 2020.*

8.     In a letter of October 20, 2022, Defendants' counsel advised TLC's counsel as

follows:

> *In addition to the list from yesterday, your client will need to delete/edit the following: 1. April 26, 2012 TLC YouTube video. 2. Twitter post of November 22, 2019. In addition, your client will need to search Twitter and Instagram to remove/edit any references or images in violation of the mutual injunction (i.e., of any Spence Defendant or their family members, and of Thunderhead Ranch). 3. There are a significant number of TLC Facebook posts/photos that need to be removed, including but not limited to August 18, 2019, August 12, 2019, May 2, 2019, March 26, 2019, May 1, 2018, November 7, 2017, December 26, 2016, October 17, 2016, June 7, 2016, as well as any photos taken at or depicting Thunderhead Ranch Again, this is not exhaustive. We are identifying the uses of the Spence Defendants' (and their affiliates and family members') names and likenesses, as well as that of Thunderhead Ranch, and calling them to your attention for prompt resolution. This is a good faith attempt to resolve the issues promptly, cost-effectively, and without court intervention. We hope that you will cooperate in this effort.*

3

9.    TLC's counsel responded in a letter of October 31, 2022, including as follows in a

letter discussing "mutual obligations of the parties:"

> *… TLC has no interest in using the name, image, or likeness of any of the Defendants to this litigation, even incidentally, and is endeavoring to remove any such references from its 28 years of archival materials.…9. November 22, 2019 Twitter post, TLC podcasts, and additional Facebook posts/photos….*

> In his October 31, 2022 letter, TLC counsel stated that:  *Again, TLC is diligently reviewing all of its archives to remove references to the Spence Defendants. However, historically-accurate references to TLC 's time on the Thunderhead Ranch, including images depicting TLC's tenure on the Thunderhead Ranch from 1994-2020, do not violate the terms of the Consent Injunction or the Settlement Agreement.*  TLC counsel further stated that *Ms. Goodman has been directed to remove all references to Defendants from her LinkedIn page.*

**Formatted:** Indent: Left:  1"

10.    Immediately upon receiving TLC's counsel's October 31, 2022 letter, Defendants'

counsel responded, including as follows:

> *TLC may not use "the name, image, or likeness of [any of the Spence Defendants or their family members who are not TLC faculty] on a going forward basis from [October 12, 2022] or Thunderhead Ranch in connection with promoting any of [TLC's] programs or services, beyond factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-220." (ECF 588, p. 2, emphasis supplied). October 31, 2022 Page 2 There is no exception for photographs. In fact, there is no exception for anything beyond (a) references to (b) the lease. And there cannot be any serious dispute that TLC's Facebook page and other social media are in connection with promoting TLC programs or services; in fact, your client took that position in the federal litigation. This is, in fact, using the names/likenesses of the Spence Defendants and Thunderhead Ranch for the benefit of TLC.*

11.    TLC did not seek clarification or modification of the Injunction in response to

Defendants' counsel's letters or at any time.

12.    On November 15, 2022, TLC's counsel wrote to Defendants' counsel as follows

about "the parties' mutual obligations under the Settlement Agreement and Consent Injunction":

> *TLC has made every effort to make certain that any references to the Defendants have been removed from its archived materials, including its*

**Formatted:** Indent: Left:  1"

4

*social media accounts. Likewise, Ms. Laurie Goodman has removed any references to Defendants from her social media accounts under her control, including her personal LinkedIn account. TLC has also reviewed videos on its YouTube page and requested YouTube remove TLC's entire channel. As of today's date, TLC is still waiting for YouTube's administrative services to fulfill TLC's request. To the best of TLC's knowledge, no other references to any of the Defendants' name, image or likeness exist on TLC's social media accounts.*

13.    At no time before responding to Defendants' Motion for Contempt did TLC take the position that it could continue to display photographs of the Defendants on TLC's social media.

14.    In March 2023, GSM's President texted TLC's President that photos and videos were still posted of Defendants and Thunderhead Ranch and asked "Can you get this stuff taken down?"  TLC's President responded "Sorry for the delay.  Will see what I can get done!" and a week later stated "Think we were able to get those taken down."

15.    In June 2023, GSM's President texted TLC's President that TLC was continuing to display a photograph taken "inside the Big Barn" and that "We are requesting to have it taken down."  TLC's President responded "I will email about it now."

16.    TLC's counsel was apprised in October 2022 that issues relating to property would be addressed between Messrs. Zelbst and Sloan.

17.    The first time Mr. Sloan requested any property was in February 2023, when he sent an email to Mr. Zelbst  that stated "Johnny, We need to send someone onto the ranch to retrieve the plaques that are a part of the settlement agreement.  I assume Kent [Spence] could meet someone there?"[1]  Mr. Zelbst promptly responded "Tell us who you want and we can get them for you."

---

[1] On page 2 of Dkt. 607, the date is incorrectly stated to have been March 2023.

18.     Joseph Low, GSM's Vice President, Director of Staff & Curriculum, and Chief Instructor," was added to the email string and stated "Give me a list of plaques and I will have them removed at our earliest convenience."

19.     Mr. Low further offered a protocol for TLC to obtain any property:

> *I will arrange for having a Pod delivered to the ranch. I will have that Pod(s) loaded with the signs.*
>
> *Please provide a shipping address and payment to the Pod company.*
>
> *Once it is loaded I will call the Pod company to come pick it up.*
>
> *There was a wooden sign that hung from the wood arch at the entrance. It has a quote on the back from Gerry. I will not be releasing that. It has TLC on the front.*
>
> *My recommendation is to have it destroyed.*
>
> *Joseph H. Low IV*  (Id., Ex. A, p. 5, italics supplied).[2]

Mr. Sloan never responded to that proposed protocol.

20.     Mr. Sloan provided a few names for the memorial boards, but stated that, beyond those names, "I guess that we will just take a poll of the other TLC folks that paid for them and see what they desire" and "I will investigate further and get you more names."  Mr. Sloan never provided such a list or communicated any further about property.

21.     In February 2024, Maren Chaloupka wrote to Mr. Zelbst, asking for four particular memorial boards.  She stated that she had "a list of other TLC alums who have requested return of their barnwood plaques."  Mr. Zelbst responded that he agreed the parties should resolve any remaining issues and asked about barn flooring that TLC's former executive director, Laurie Goodman, had taken from Thunderhead Ranch and stored in Riverton, Wyoming.  Ms. Chaloupka

---

[2] Under the Injunction, TLC could not use Gerry Spence's name (Dkt. 588, p. 2).

did not respond further.  Ms. Chaloupka never provided the list she stated she had "of other TLC alums who have requested return of their barnwood plaques."

22.    The next time that TLC raised any issues about property was in an email of October 14, from TLC counsel Chris Ralston to attorney Steve Velkei.  The lawyer who TLC counsel had been advised would be handling any settlement issues that were not resolved between Messrs. Zelbst and Sloan promptly responded and sent approximately 12 communications to Mr. Ralston over the following six weeks about the Injunction and property issues.  Mr. Ralston never acknowledged or responded to any of those communications.

23.    Defendants' counsel has repeatedly reiterated the availability of the protocol that Mr. Low had offered to Mr. Sloan in February 2023.  Mr. Ralston never responded.

24.    Defendants' counsel has advised Mr. Ralston that she had reached out directly to one of the people specifically raised as an example of someone who wanted their barn plaque, as well as to Don Clarkson.  Mr. Ralston never responded.

25.    TLC has never taken the position that the memorial boards (or "plaques") belonged to TLC, rather than to the people who had purchased them.  TLC has never taken the position before December 10, 2024 that TLC is entitled to all boards, including for people who do not want their boards to go to TLC.

26.    The memorial boards were made at no cost, simply by burning a name into a piece of wood.  TLC has the wood that was used.

27.    GSM does not display any of the boards that were purchased by alumni before TLC was evicted from Thunderhead Ranch.

28.    On September 23, 2020,  one of the owners of the four memorial boards that TLC identified stated to Ms. Chaloupka that the boards were "just pieces of wood."

7

29.     Defendants have identified approximately 200 photographs of individual Defendants, their family members, or Thunderhead Ranch that are currently on TLC's social media.  TLC continues to post photos and videos that include TLC's registered trademark above the name "Thunderhead Ranch."

30.     Until December 18, 2024, ~~Of~~ TLC's album for "profile photos" on Facebook consisted of ~~, three of~~ five photos.  Three were ~~are~~ of Thunderhead Ranch.  Of TLC's sixteen Facebook "cover photos" on Facebook, six were ~~are~~ of Thunderhead Ranch and one is of John Zelbst.  After December 18, 2024, TLC removed the three photos of Thunderhead Ranch from the "profile photos" album.  TLC still displays a photo of John Zelbst in TLC's "cover photos" album.

31.     None of the photos of or at Thunderhead Ranch that TLC continues to display on social media identify the lease of the property.  Many of the photos of or at Thunderhead Ranch do not mention TLC at all—they are simply photographs of the Ranch or its cattle signs.

32.     TLC displays photos of the individual defendants both on and away from Thunderhead Ranch on TLC's social media.

33.     TLC displays photos of individual defendants' family members on TLC's social media.  Those family members are not currently students, staff, or faculty of TLC.

34.     TLC does not have a facility from which TLC operates.  TLC holds seminars at public facilities such as YMCAs and hotels.

35.     TLC has not provided Defendants with any comprehensive list of the alumni who want their barn boards, although Ms. Chaloupka stated in February 2024 that she has such a list.

36.     As of December 30, 2024, TLC still displays the following photographs on Facebook:

a.   "Twenty-fifth birthday celebration."  Photos of or taken at Thunderhead Ranch

b.  "Staff training—2018."  Photos of or taken at Thunderhead Ranch, photograph of Gerry Spence.

c.  "California Voir Dire Regional—2018."  Multiple photos of Kent Spence and John Joyce

d.  "September College 2017."  Multiple photos of Gerry Spence.

e.  "Eclipse at the Thunderhead."  Photos of and taken at Thunderhead Ranch.

f.  "Grad One—2017."  Photos of and taken at Thunderhead Ranch.  Photos of Joseph Low and Clay Zelbst.

g.  "In Defense of the Damned."  Photos of and taken at Thunderhead Ranch.

h.  "TLC Merchandise."  Images and name of Thunderhead Ranch.

i.  Untitled album 2013.  Photo of Joseph Low.

j.  "Grad One—2013."  Photos of  and taken at Thunderhead Ranch.  Photos of John and Clay Zelbst and of Joseph Low.

k.  "Grad Two—2013."  Photos of and taken at Thunderhead Ranch.

l.  "July 2013 graduation."  Photos of and taken at Thunderhead Ranch.

m.  "Summer fun at the Ranch."  Photos of and taken at Thunderhead Ranch.

n.  "July 2013 three-week college."  Photos of and taken at Thunderhead Ranch.  Photos of Gerry Spence, Joseph Low, and John Joyce.

o.  "Experience the magic."  Photographs of and taken at Thunderhead Ranch.  Three photos of John Joyce.  Photographs of merchandise saying "Thunderhead Ranch."

p.  "2013 Death Penalty."  Photographs of and taken at Thunderhead Ranch.  Photograph of John Joyce.

q.  "2013 Work Week."  Photographs of and taken at Thunderhead Ranch.  Multiple photographs of John Joyce.

9

r.   "2013 Staff Training."  Photographs of and taken at Thunderhead Ranch.  Nine photographs of Joseph Low.

s.   "2013 California."  Photograph of Kent Spence.

~~35.~~t.   "September class of 2012."  Photographs of and taken at Thunderhead Ranch.  Photographs of Gerry Spence.  Multiple photographs of Joseph Low.  Photographs of Kent Spence, including two  with John Zelbst.

**Formatted:** Font:

u.   "Grad Two—August 2012."  Photographs of and taken at Thunderhead Ranch.

v.   "July college—2012."  Photographs of and taken at Thunderhead Ranch.  Shirt with Gerry Spence's name.  Multiple photographs of Joseph Low.  Multiple photographs of Gerry Spence, including of him photographing small child.

w.   "Death Penalty 2012."  Photographs of and taken at Thunderhead Ranch.  Sign with Imaging Spence's name in close up.

x.   "Staff Training—May 2012." Photographs of and taken at Thunderhead Ranch.

y.   "Texas Regional—2012."  Photograph of Gerry Spence.  Twelve photographs of John Zelbst.

z.   "Winter 2012—Ranch."  Photographs of and taken at Thunderhead Ranch.

aa.  "Florida Regional 2012."  Multiple photographs of shirts saying "Thunderhead Ranch."

bb.  "California Regional 2012."  Multiple photographs of John Zelbst and Joseph Low.

cc.  "Board meeting 2012."  Multiple photographs of Joseph Low.

dd.  "September 2011 graduation."  Photographs of and taken at Thunderhead Ranch.

ee.  "September 2011 class."  Photographs of and taken at Thunderhead Ranch.

ff.  "Grad two 2011."  Photographs of and taken at Thunderhead Ranch.  Photographs of Joseph Low.

10

gg.  "Grad one 2011."  Photographs of and taken at Thunderhead Ranch.

hh. "July 2011."  Photographs of and taken at Thunderhead Ranch.  Six photographs of Kent Spence.

37.  As of December 30, 2024, images that "link" to "Events"  before 2020 on TLC's Facebook page include ones of Gerry Spence or the "Big Barn" at Thunderhead Ranch.

38.  As of December 30, 2024, a video for "TLC's Opening Statement Regional Seminar" includes footage of Gerry Spence speaking about opening statements.

39.  As of December 30, 2024, TLC has made no changes to its Twitter feed, which includes photographs of Thunderhead Ranch, Gerry Spence, Rex Parris, and John and Clay Zelbst.

11

Respectfully submitted this _____ day of January, 2025.

/s/ Beth J. Kushner

Beth J. Kushner (admitted pro hac vice)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James Fitzgerald
Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307-634-4000
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.


/s/

Christopher K. Ralston (admitted pro hac vice)
Lindsay Calhoun (admitted pro hac vice)
PHELPS DUNBAR LLP
Canal Place / 365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Telephone: 504-566-1311
chris.ralston@phelps.com
Lindsay.calhoun@phelps.com

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: 307-265-0700
pmurphy@wpdn.net

ATTORNEYS FOR PLAINTIFF
THE TRIAL LAWYERS COLLEGE

12

**CERTIFICATE OF SERVICE**

     I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all parties on January __, 2025.

*/s/ Beth J. Kushner*

42114106_1.DOCX

| **From:** | Beth J. Kushner  <beth.kushner@vonbriesen.com> |
|---|---|
| **Sent:** | Monday, January 6, 2025 5:24 PM |
| **To:** | Mark Ackal (1261) |
| **Cc:** | Lindsay Calhoun (1315); Chris Ralston (1358); Joan Pawlak; jim@fitzgeraldlaw.com |
| **Subject:** | RE: Stipulated Facts and Joint Filing Proposal |

Acknowledging receipt.

I will convey your proposal to my client representatives.

I unfortunately will not be able to do more tonight, so I am not sure that I'll be able to provide a meaningful response by noon tomorrow.   I received your proposal at 5:00 p.m. with a noon deadline tomorrow, after providing you with our proposal more than three weeks ago, and our proposed stipulations soon after that.

Best,

**Beth J. Kushner | von Briesen & Roper, s.c.**
Direct: 414-287-1373 | Cell: 414-305-7794
beth.kushner@vonbriesen.com

---

**From:** Mark Ackal (1261) <Mark.Ackal@phelps.com>
**Sent:** Monday, January 6, 2025 4:58 PM
**To:** Beth J. Kushner <beth.kushner@vonbriesen.com>
**Cc:** Lindsay Calhoun (1315) <Lindsay.Calhoun@phelps.com>; Chris Ralston (1358) <Chris.Ralston@phelps.com>
**Subject:** [EXTERNAL] Stipulated Facts and Joint Filing Proposal

Dear Ms. Kushner,

I hope this message finds you well. I have spoken to Chris Ralston and Lindsay Calhoun who, as you are aware, have been out of the office. We have also received your filing with the Court expressing your displeasure with the timelines of our response. Rest assured, we have received and reviewed both editions of your proposed stipulated facts and have been diligently preparing a response which we planned to send you today. Additionally, we would like to offer an alternative way to narrow the issues.

TLC wishes to offer you the following: TLC will remove every social media post attached as exhibits to Defendants' Motion for Contempt and accompanying Declaration if and when Defendants return the property specified in paragraph 8 of the Settlement Agreement to TLC, including every memorial plaque. Additionally, TLC will withdraw its Motion to Enforce the Settlement Agreement if and when Defendants withdraw its Motion for Contempt.

We view this option as the most efficient method of narrowing the issues, preventing unnecessary argument, and resolving the entirety of the present disagreement.  We hope you will agree and help us put an end to this dispute.

In the event you do not find this offer compelling, TLC has prepared two other documents for your consideration. First, we have redlined your set of proposed facts and have attached our edits to this email. Second, we have prepared another document containing an alternate set of proposed facts and a brief summary of the issues before the Court.

Please note that this email and the accompanying documents are only proposals and should not be construed as a waiver concerning any argument or legal claim. TLC reserves all rights afforded to it under the law.

Best regards,

Mark Ackal

_____

**Mark Ackal**
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Direct: 504-584-9261
Fax: 504-568-9130
Email: mark.ackal@phelps.com



CONFIDENTIALITY NOTICE - This e-mail message, including any attachments, is private communication sent by a law firm, Phelps Dunbar LLP, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, any use, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system. Thank you.

---

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:**      Mark Ackal (1261)
**Sent:**      Monday, January 6, 2025 4:58 PM
**To:**        Beth J. Kushner
**Cc:**        Lindsay Calhoun (1315); Chris Ralston (1358)
**Subject:**   Stipulated Facts and Joint Filing Proposal
**Attachments:** Alternative Joint Submission.docx; TLC Edits - 2024-12-16 TLC - Parties Stipulated Facts
               Narrowing Issues for Hearing.docx

Dear Ms. Kushner,

I hope this message finds you well. I have spoken to Chris Ralston and Lindsay Calhoun who, as you are aware, have been out of the office. We have also received your filing with the Court expressing your displeasure with the timelines of our response. Rest assured, we have received and reviewed both editions of your proposed stipulated facts and have been diligently preparing a response which we planned to send you today. Additionally, we would like to offer an alternative way to narrow the issues.

TLC wishes to offer you the following: TLC will remove every social media post attached as exhibits to Defendants' Motion for Contempt and accompanying Declaration if and when Defendants return the property specified in paragraph 8 of the Settlement Agreement to TLC, including every memorial plaque. Additionally, TLC will withdraw its Motion to Enforce the Settlement Agreement if and when Defendants withdraw its Motion for Contempt.

We view this option as the most efficient method of narrowing the issues, preventing unnecessary argument, and resolving the entirety of the present disagreement.  We hope you will agree and help us put an end to this dispute.

In the event you do not find this offer compelling, TLC has prepared two other documents for your consideration. First, we have redlined your set of proposed facts and have attached our edits to this email. Second, we have prepared another document containing an alternate set of proposed facts and a brief summary of the issues before the Court.

Please note that this email and the accompanying documents are only proposals and should not be construed as a waiver concerning any argument or legal claim. TLC reserves all rights afforded to it under the law.

Best regards,

Mark Ackal



---

**Mark Ackal**
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Direct: 504-584-9261
Fax: 504-568-9130
Email: mark.ackal@phelps.com



CONFIDENTIALITY NOTICE - This e-mail message, including any attachments, is private communication sent by a law firm, Phelps Dunbar LLP, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, any use, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system. Thank you.

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail:      pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email:      chris.ralston@phelps.com
lindsay.calhoun@phelps.com

Attorneys for The Trial Lawyers College

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation, <br>　　　Plaintiff. <br><br><br>vs. <br><br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC., <br>　　　Defendants. | Civil Action No. 1:20-CV-00080-JMC |

**PARTIES' STIPULATED FACTS NARROWING ISSUES FOR HEARING ON**

**MOTIONS FOR CONTEMPT AND TO ENFORCE SETTLEMENT**

Pursuant to this Court's December 11, 2024 Order, the parties file this joint statement to indicate in what ways the issues have been narrowed in this dispute. In pursuit of this goal and in accordance with principles of good faith, the parties have agreed to stipulate to the facts listed below. Additionally, the parties have likewise summarized the arguments and precise issues they ask this Court to resolve.

**Stipulated facts**

1. The litigation underlying the present dispute was resolved on October 12, 2022, when the parties entered into the Confidential Settlement Agreement (the "Settlement Agreement") and this Court entered the Consent Permanent Injunction (the "Inunction").

2. The parties to the Settlement Agreement are the Trial Lawyers College ("TLC") and the named Defendants.

3. The Injunction required TLC to stop using Defendants' Name, Image, or Likeness.

4. The Injunction provided an exception for "factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020."

5. At the time Defendants filed their Motion for Contempt on November 15, 2024, TLC's social media contained images of Defendants, Defendants' family members, and Thunderhead Ranch, all of which were posted prior to the date of the Injunction, October 12, 2022.

6. TLC has not posted any images using the Defendants' name, image, or likeness since the Injunction was entered.

7. All social media posts complained of in Defendants' Motion for Contempt were posted prior to the date the Injunction was entered.

8. Paragraph 8 of the Settlement Agreement required Defendants to return property, including memorial plaques.

9. Representatives of Plaintiff and Defendants have communicated regarding the return of the memorial plaques to TLC.

10. Defendants have not returned any plaques to TLC.

11. The plaques are relatively inexpensive to produce.

12. The plaques have sentimental value and spiritual significance.

## Issues before the Court

The parties have conferred and determined that the following issues are the only disagreements which the Parties cannot resolve. The parties further agree that the arguments listed below are the only arguments currently advanced by the parties. Thus, the issues for the Court to resolve are:

1. Whether the social media posts fall within the Injunction's carve-out for historically accurate references to TLC's lease of Thunderhead Ranch and, if not, whether TLC's failure to remove the posts amounts to contemptuous conduct.

TLC maintains that it was not obligated to remove social media posts which were posted prior to the date of the Injunction because such posts are historically accurate references to its time on Thunderhead Ranch and therefore fall within the scope of the Injunction's exception. TLC maintains that it has always understood that it was not obligated to delete old social media posts which predate the Injunction. Any efforts by TLC to remove old social media posts were undertaken because TLC does not wish to be associated with Defendants, not because TLC was obligated to do so under the Injunction. Moreover, TLC maintains that, even if the existence of old posts on its social media page are violative of the Injunction, Defendants have 1) not met their burden to prove this conduct was contemptuous and 2) did not give adequate time for TLC to cure the issue before filing its Motion for Contempt.

Defendants maintain that such posts are not within the scope of the exception and are therefore violative of the Injunction. Specifically, Defendants maintain that only references to the lease agreement itself are permissible under the Injunction and that the social media posts are 1)

not "references" and 2) do not pertain to the lease agreement. Defendants further argue that they have apprised TLC of the existence of the social media posts and TLC has, in the past, agreed to take them down. This, Defendants maintain, shows that TLC knew it was obligated to take the posts down. Consequently, Defendants maintain that TLC's failure to take the posts down amounts to contemptuous conduct.

2. <u>Whether Defendants' failure to return the plaques to TLC is violative of the Settlement Agreement.</u>

TLC maintains that the Settlement Agreement required Defendants to return the plaques to TLC without any additional conditions. TLC further maintains that the plaques at issue are memorial plaques which were donated to TLC and are therefore owned by TLC. Moreover, the Settlement Agreement was executed only between the parties, and it was understood all parties at the time of signing the Settlement Agreement that the plaques would be returned to TLC. Consequently, TLC asks this Court to order Defendants to return all plaques to TLC.

Defendants maintain that the Settlement Agreement either 1) does not require them to return the plaques to TLC, but rather only requires that the plaques be given to the alumni who donated them or 2) allows the Defendants to withhold the plaques until TLC provides a list of alumni who want the plaques returned. In the alternative, Defendants maintain that it is not required to return the plaques until TLC returns certain property to Defendants.

Respectfully submitted this _____ day of January, 2025.

<i>/s/ Beth J. Kushner</i>

Beth J. Kushner (admitted <i>pro hac vice</i>)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000

Milwaukee, WI  53202
Telephone:  414-287-1373
bkushner@vonbriesen.com

James Fitzgerald
Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY  82001
Telephone:  307-634-4000
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY
SPENCE METHOD AT THUNDERHEAD
RANCH, INC.


/s/ _____

Christopher K. Ralston (admitted *pro hac vice*)
Lindsay Calhoun (admitted *pro hac vice*)
PHELPS DUNBAR LLP
Canal Place / 365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  504-566-1311
chris.ralston@phelps.com
Lindsay.calhoun@phelps.com

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P.O. Box 10700
Casper, WY  82602-3902
Telephone:  307-265-0700
pmurphy@wpdn.net

ATTORNEYS FOR PLAINTIFF
THE TRIAL LAWYERS COLLEGE


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all parties on January __, 2025.

_/s/ Beth J. Kushner_

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail:        pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email: chris.ralston@phelps.com
lindsay.calhoun@phelps.com

Attorneys for The Trial Lawyers College

1

**Formatted Table**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br><br>      Plaintiff.<br><br>vs.<br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC.,<br><br>      Defendants. | Civil Action No. 1:20-CV-00080-JMC |

## PARTIES' STIPULATED FACTS NARROWING ISSUES FOR HEARING ON MOTIONS FOR CONTEMPT AND TO ENFORCE SETTLEMENT

2

1. Included in the cases that were resolved pursuant to the Settlement Agreement dated October 12, 2022 ("Settlement Agreement") was litigation —in Wyoming involving allegations that Defendants infringed lawfully registered trademarks belonging to Plaintiffs. Trial Lawyers College ("TLC") and litigation in California involving allegations that certain directors of ~~Trial Lawyers' College ("TLC")~~TLC misappropriated the Thunderhead Ranch brand and logo.

~~1.~~2. The only parties to the Settlement Agreement were TLC and the named Defendants.

3. The Settlement Agreement ~~included certain provisions for the disposition of property and was silent on others:~~provided that Defendants would return certain property to TLC.

~~2.~~ There were no conditions imposed on the return of the property to TLC.

4.

~~a. Property was to be "returned," but the Settlement Agreement did not specify to whom and therefore did not suggest it would be "returned" other than to the property's owner(s).~~

~~b. There was no provision for the payment of costs incurred in connection with the return of property.~~

~~c. There was no provision for property to be returned on a *seriatim* basis.~~

~~5. There were no warranties concerning the existence or condition of any property.~~ The property at issue included memorial plaques.

6. The memorial plaques were donated to TLC by various alumni during the time TLC was operating on the Thunderhead Ranch.

~~d.~~7. TLC owns the memorial plaques.

~~3. The parties informally agreed that issues concerning implementation of the property provisions would be addressed between John Sloan, President of TLC, and John Zelbst, President of Gerry Spence Method at Thunderhead Ranch ("GSM").~~

4. 8.    The Settlement Agreement required entry of a Stipulated Permanent Injunction ("Injunction"), which was entered by the Hon. Joel Carson on October 12, 2022.

> **Formatted:** Font:

9.    ~~Beginning immediately after the Settlement Agreement was filed, Defendants began to remove any website or social media content that was under their control and that could violate the Injunction. Defendants' counsel advised TLC's counsel on October 19, 2022 that they had removed all such content of which Defendants were aware and asked that TLC advise if it learned of any additional content.~~ TLC has not posted any content on social media featuring Defendants' name, image, or likeness since the time the Injunction was entered by the Court.

10.    Every social media post which is the subject of Defendants' Motion for Contempt was posted prior to the Injunction.

> **Formatted:** Font:

5. 11.    TLC has never stated that it was obligated to remove old social media posts which predate the Injunction.

6. 12.    ~~After October 19, 2022, TLC never asserted that the Defendants were in violation of the provisions of the Injunction that applied to Defendants.~~ TLC has asked representatives of the Defendants for the return of the memorial plaques on numerous occasions.

7. 13.    In a letter of October 19, 2022, Defendants' counsel advised TLC's counsel as follows:

> *Beginning on October 14, 2022, I advised you of a number of actions that TLC and its directors/employees will need to take to comply with the portion of the injunction that applies to TLC. The 30 day cure period was triggered at that time. TLC will need to delete/edit the below in order to comply with the injunction: 1. Mr. Clary's bio on his law firm website. 2. TLC YouTube videos, including "Method of Opening Statement," Mr. Clary's video on why he supports TLC, August 5, 2011 TLC YouTube, November 3, 2011 TLC YouTube, and October 14, 2011 TLC YouTube. 3. Anne Valentine's bio on her law firm and the Legal Aid Society of Columbus websites. 4. Eric Davis's professional bio. 5. Francisco Duarte's bio on his firm and the Washington Foundation for Criminal Justice websites… 8. Ms. Goodman's LinkedIn profile states that Trial Lawyers College is at Thunderhead Ranch. 9. TLC podcasts for March 30, 2016, September 15, 2016, and*

4

*December 9, 2016. We will continue to monitor the use of our clients' names and likenesses, as well as that of Thunderhead Ranch. With respect to the latter, the sole permitted use is to correctly refer to the lease between 1994 and 2020.*

~~8.~~ 14.    In a letter of October 20, 2022, Defendants' counsel advised TLC's counsel as

follows:

> *In addition to the list from yesterday, your client will need to delete/edit the following: 1. April 26, 2012 TLC YouTube video. 2. Twitter post of November 22, 2019. In addition, your client will need to search Twitter and Instagram to remove/edit any references or images in violation of the mutual injunction (i.e., of any Spence Defendant or their family members, and of Thunderhead Ranch). 3. There are a significant number of TLC Facebook posts/photos that need to be removed, including but not limited to August 18, 2019, August 12, 2019, May 2, 2019, March 26, 2019, May 1, 2018, November 7, 2017, December 26, 2016, October 17, 2016, June 7, 2016, as well as any photos taken at or depicting Thunderhead Ranch Again, this is not exhaustive. We are identifying the uses of the Spence Defendants' (and their affiliates and family members') names and likenesses, as well as that of Thunderhead Ranch, and calling them to your attention for prompt resolution. This is a good faith attempt to resolve the issues promptly, cost-effectively, and without court intervention. We hope that you will cooperate in this effort.*

~~9.~~ 15.    TLC's counsel responded in a letter of October 31, 2022, including as follows in a

letter discussing "mutual obligations of the parties:"

> *... TLC has no interest in using the name, image, or likeness of any of the Defendants to this litigation, even incidentally, and is endeavoring to remove any such references from its 28 years of archival materials....9. November 22, 2019 Twitter post, TLC podcasts, and additional Facebook posts/photos....*

In his October 31, 2022 letter, TLC counsel stated that: *Again, TLC is diligently reviewing all of its archives to remove references to the Spence Defendants. However, historically-accurate references to TLC 's time on the Thunderhead Ranch, including images depicting TLC's tenure on the Thunderhead Ranch from 1994-2020, do not violate the terms of the Consent Injunction or the Settlement Agreement.* TLC counsel further stated that *Ms. Goodman has been directed to remove all references to Defendants from her LinkedIn page.*

5

10.16.  Immediately upon receiving TLC's counsel's October 31, 2022 letter, Defendants'

counsel responded, including as follows:

> *TLC may not use "the name, image, or likeness of [any of the Spence*
> *Defendants or their family members who are not TLC faculty] on a going*
> *forward basis from [October 12, 2022] or Thunderhead Ranch in*
> *connection with promoting any of [TLC's] programs or services, beyond*
> *factually and historically accurate references to TLC's lease of the*
> *Thunderhead Ranch from 1994-220." (ECF 588, p. 2, emphasis supplied).*
> *October 31, 2022 Page 2 There is no exception for photographs. In fact,*
> *there is no exception for anything beyond (a) references to (b) the lease.*
> *And there cannot be any serious dispute that TLC's Facebook page and*
> *other social media are in connection with promoting TLC programs or*
> *services; in fact, your client took that position in the federal litigation. This*
> *is, in fact, using the names/likenesses of the Spence Defendants and*
> *Thunderhead Ranch for the benefit of TLC.*

11.17.  TLC  Neither Defendants nor TLC  did not seek ever sought  clarification  or

modification of the Injunction in response to Defendants' counsel's letters or at any time. the above

correspondence.

12.18.  On November 15, 2022, TLC's counsel wrote to Defendants' counsel as follows

about "the parties' mutual obligations under the Settlement Agreement and Consent Injunction": nd

stated the following:

> *TLC has made every effort to make certain that any references to the*          ← Formatted: Indent: Left: 1"
> *Defendants have been removed from its archived materials, including its*
> *social media accounts. Likewise, Ms. Laurie Goodman has removed any*
> *references to Defendants from her social media accounts under her control,*
> *including her personal LinkedIn account. TLC has also reviewed videos on*
> *its YouTube page and requested YouTube remove TLC's entire channel. As*
> *of today's date, TLC is still waiting for YouTube's administrative services*
> *to fulfill TLC's request. To the best of TLC's knowledge, no other references*
> *to any of the Defendants' name, image or likeness exist on TLC's social*
> *media accounts.*

19.    At no time before responding to Defendants' Motion for Contempt did TLC take

the position that it could continue to display photographs of the Defendants on TLC's social

media.  TLC never stated in any of the foregoing correspondence that it was obligated to remove social media posts which predate the Injunction.

20.    TLC expressly stated in its October 31, 2022 letter that images depicting TLC's tenure on the Thunderhead ranch from 1994-2020 do not violate the Injunction.

**Formatted:** Font:

21.    TLC and Defendants do not wish to be affiliated with one another.

13.22.  TLC has removed social media posts which GSM requested be removed.

**Formatted:** Font:

14.23.  In March 2023, GSM's President texted TLC's President that photos and videos were still posted of Defendants and Thunderhead Ranch and asked "Can you get this stuff taken down?"  TLC's President responded "Sorry for the delay.  Will see what I can get done!" and a week later stated "Think we were able to get those taken down."

15.24.  In June 2023, GSM's President texted TLC's President and requested that an old that TLC was continuing to display a photograph taken "inside the Big Barn" and that "We are requesting to have it taken down."be taken down.  TLC's President responded "I will email about it now."

25.    TLC's counsel was apprised in October 2022 that issues relating to property would be addressed between Messrs. Zelbst and Sloan.  Throughout the entirety of the underlying litigation, TLC repeatedly sought return of the plaques which had been donated to TLC.

26.    The memorial plaques were donated to TLC by alumni of TLC.

27.    The memorial plaques are relatively inexpensive to produce.

28.    The memorial plaques have significant sentimental value and spiritual significance.

29.    The Settlement Agreement does not mandate that the plaques be returned to specific alumni who donated them to TLC.

30.    The Settlement Agreement, executed between TLC and the Defendants, states: "Defendants will return all … plaques in their possession, including the memorial plaques for TLC's observant Jewish alumni."

31.    TLC representatives have, on multiple occasions, offered to go retrieve the plaques under the supervision of Defendants.

32.    Defendants have repeatedly refused to allow TLC representative to retrieve the plaques.

16.

33.    On February 6, 2023, ~~The first time~~ Mr. Sloan sent an email to Mr. Zelbst request~~ing~~ed return of the plaques.~~any property was in February 2023, when he sent a~~The ~~n~~ email ~~to Mr. Zelbst  that~~ stated "Johnny, We need to send someone onto the ranch to retrieve the plaques that are a part of the settlement agreement.  I assume Kent [Spence] could meet someone there?"[1] Mr. Zelbst ~~promptly~~ responded by stating "That's going to be a problem. Tell us who you want and we can get them for you." Defendant, Joseph Low further responded by stating, " ~~"Tell us who you want and we can get them for you."~~ No one from TLC will be permitted on the ranch. Give me a list of plaques and I will have them removed at our earliest convenience."

34.    On February 8, 2023, Sloan responded stating: "I frankly don't understand why this has to be difficult. It is a part of the settlement agreement." Mr. Sloan further provided names for four memorial plaques and an address for them to be sent to.

35.    Defendants did not send the plaques.

17.

---

[1] On page 2 of Dkt. 607, the date is incorrectly stated to have been March 2023.

18.    Joseph Low, GSM's Vice President, Director of Staff & Curriculum, and Chief Instructor," was added to the email string and stated "Give me a list of plaques and I will have them removed at our earliest convenience."

19.36.  Mr. Low then responded to the list provided by Mr. Sloan, and stated that TLC could pay for the expense of a shipping "Pod" to be sent to the ranch Mr. Low further offered a protocol for TLC to obtain any property:

>    *I will arrange for having a Pod delivered to the ranch. I will have that Pod(s) loaded with the signs.*
>
>    *Please provide a shipping address and payment to the Pod company.*
>
>    *Once it is loaded I will call the Pod company to come pick it up.*
>
>    *There was a wooden sign that hung from the wood arch at the entrance. It has a quote on the back from Gerry.  I will not be releasing that.  It has TLC on the front.*
>
>    *My recommendation is to have it destroyed.*
>
>    *Joseph H. Low IV*  (Id., Ex. A, p. 5, italics supplied).[2]

Mr. Sloan never responded to that proposed protocol. Mr. Low.

20.    Mr. Sloan provided a few names for the memorial boards, but stated that, beyond those names, "I guess that we will just take a poll of the other TLC folks that paid for them and see what they desire" and "I will investigate further and get you more names."  Mr. Sloan never provided such a list or communicated any further about property.

37.    In February 2024, representative for TLC, Maren Chaloupka wrote to Mr. Zelbst, asking again for the return of the for four particular memorial boards.  She stated that she had "a list of other TLC alums who have requested return of their barnwood plaques."

---

[2] Under the Injunction, TLC could not use Gerry Spence's name (Dkt. 588, p. 2).

38.   In this letter, Ms. Chaloupka offered to come retrieve the plaques herself and further suggested that a representative of Defendants could observe her as she entered the property.

39.   In response to Ms. Chaloupka's request for return of the plaques, Mr. Zelbst responded by stating: "We will be happy to work out a transfer of your requested barn wood plaques, at TLC expense, conditioned upon TLC returning to us all of the old barn wood flooring that was taken by your former administrator and hauled off in a U-Haul trailer."

40.   The Settlement Agreement does not address barn wood flooring.

41.   Defendants did not send the plaques.

~~21.~~42.   ~~that he agreed the parties should resolve any remaining issues and asked about barn flooring that TLC's former executive director, Laurie Goodman, had taken from Thunderhead Ranch and stored in Riverton, Wyoming.~~ Ms. Chaloupka did not respond further. ~~Ms. Chaloupka never provided the list she stated she had "of other TLC alums who have requested return of their barnwood plaques."~~

43.   On ~~The next time that TLC raised any issues about property was in an email of~~ October 14, 2024 ~~from~~ TLC counsel Chris Ralston sent an email to ~~attorne~~counsel of record for Defendants,~~v~~ Steve Velkei. In this email, Ralston again requested return of the memorial plaques and stated: "Will you let me know whether we can avoid a request for court intervention by getting the items in Paragraph 8 of the settlement agreement returned to TLC within 10 days?"

Mr. Velkei responded stating: "Has any property been returned? Do you have a specific list? Let me know and I will follow up."

~~22.~~44.   Mr. Velkei did not respond further. Instead, Counsel for Defendants, ~~The lawyer who TLC counsel had been advised would be handling any settlement issues that were not resolved between Messrs. Zelbst and Sloan~~Beth Kushner, then ~~promptly~~ responded and sent approximately 12 communications to Mr. Ralston over the following six weeks ~~about the Injunction and property~~

10

issuesraising numerous issues relating to the Injunction.  .  Mr. Ralston never acknowledged or responded to any of those communications.

23.45.  Defendants' counsel has repeatedly reiterated the availability of the protocol that Mr. Low had offered to Mr. Sloan in February 2023.  Mr. Ralston never responded.Defendants have not returned the plaques to TLC but have offered to return the plaques to the alumni who donated them to TLC.

24.46.  Defendants' counsel has advised Mr. Ralston that she had reached out directly to one of the people specifically raised as an example of someone who wanted their barn plaque, as well as to Don Clarkson.  Mr. Ralston never responded.

25.    TLC has never taken the position that the memorial boards (or "plaques") belonged to TLC, rather than to the people who had purchased them.  TLC has never taken the position before December 10, 2024 that TLC is entitled to all boards, including for people who do not want their boards to go to TLC.

26.47.  The memorial boards were made at no cost, simply by burning a name into a piece of wood.  TLC has the wood that was used.TLC is not capable of reproducing the sentimental value and spiritual significance of the plaques which were previously donated to it.

27.    GSM does not display any of the boards that were purchased by alumni before TLC was evicted from Thunderhead Ranch.

28.    On September 23, 2020, one of the owners of the four memorial boards that TLC identified stated to Ms. Chaloupka that the boards were "just pieces of wood."

48.    Defendants have identified approximately 200 photographs of individual Defendants, their family members, or Thunderhead Ranch that are currently on TLC's social media.  TLC continues to post photos and videos that include TLC's registered trademark above

the name "Thunderhead Ranch." has not posted any content related to the Defendants on its social media since the Injunction was entered.

49.    TLC operated on Thunderhead Ranch for over two decades.

29.    The Injunction specifically allowed for TLC to continue making historically accurate references to its time on Thunderhead Ranch.

50.    .

30.    Until December 18, 2024, Of TLC's album for "profile photos" on Facebook consisted of , three of five photos.  Three were are of Thunderhead Ranch.  Of TLC's sixteen Facebook "cover photos" on Facebook, six were are of Thunderhead Ranch and one is of John Zelbst.  After December 18, 2024, TLC removed the three photos of Thunderhead Ranch from the "profile photos" album.  TLC still displays a photo of John Zelbst in TLC's "cover photos" album.

31.51.  None of the photos of or at Thunderhead Ranch that TLC continues to display on social media identify the lease of the property.  Many of the complained of photos of or at Thunderhead Ranch do not mention TLC at all—they are simply photographs of the Ranch or its cattle signs.

32.    TLC displays photos of the individual defendants both on and away from Thunderhead Ranch on TLC's social media.

33.    TLC displays photos of individual defendants' family members on TLC's social media.  Those family members are not currently students, staff, or faculty of TLC.

34.    TLC does not have a facility from which TLC operates.  TLC holds seminars at public facilities such as YMCAs and hotels.

52.    As of January 3, 2024, TLC has not provided Defendants with any comprehensive list of the alumni who want their barn boards, although Ms. Chaloupka stated in February 2024 that she has such a list. Defendants have not returned a single memorial plaque to TLC.

12

As of December 30, 2024, TLC still displays the following photographs on Facebook:

"Twenty-fifth birthday celebration." Photos of or taken at Thunderhead Ranch

"Staff training—2018." Photos of or taken at Thunderhead Ranch, photograph of Gerry Spence.

"California Voir Dire Regional—2018." Multiple photos of Kent Spence and John Joyce

"September College 2017." Multiple photos of Gerry Spence.

"Eclipse at the Thunderhead." Photos of and taken at Thunderhead Ranch.

"Grad One—2017." Photos of and taken at Thunderhead Ranch. Photos of Joseph Low and Clay Zelbst.

"In Defense of the Damned." Photos of and taken at Thunderhead Ranch.

"TLC Merchandise." Images and name of Thunderhead Ranch.

Untitled album 2013. Photo of Joseph Low.

"Grad One—2013." Photos of and taken at Thunderhead Ranch. Photos of John and Clay Zelbst and of Joseph Low.

"Grad Two—2013." Photos of and taken at Thunderhead Ranch.

"July 2013 graduation." Photos of and taken at Thunderhead Ranch.

"Summer fun at the Ranch." Photos of and taken at Thunderhead Ranch.

"July 2013 three-week college." Photos of and taken at Thunderhead Ranch. Photos of Gerry Spence, Joseph Low, and John Joyce.

"Experience the magic." Photographs of and taken at Thunderhead Ranch. Three photos of John Joyce. Photographs of merchandise saying "Thunderhead Ranch."

"2013 Death Penalty." Photographs of and taken at Thunderhead Ranch. Photograph of John Joyce.

"2013 Work Week." Photographs of and taken at Thunderhead Ranch. Multiple photographs of John Joyce.

"2013 Staff Training." Photographs of and taken at Thunderhead Ranch. Nine photographs of Joseph Low.

"2013 California." Photograph of Kent Spence.

35. "September class of 2012." Photographs of and taken at Thunderhead Ranch. Photographs of Gerry Spence. Multiple photographs of Joseph Low. Photographs of Kent Spence, including two—with John Zelbst.

"Grad Two—August 2012." Photographs of and taken at Thunderhead Ranch.

"July college—2012." Photographs of and taken at Thunderhead Ranch. Shirt with Gerry Spence's name. Multiple photographs of Joseph Low. Multiple photographs of Gerry Spence, including of him photographing small child.

"Death Penalty 2012." Photographs of and taken at Thunderhead Ranch. Sign with Imaging Spence's name in close up.

"Staff Training—May 2012." Photographs of and taken at Thunderhead Ranch.

"Texas Regional—2012." Photograph of Gerry Spence. Twelve photographs of John Zelbst.

"Winter 2012—Ranch." Photographs of and taken at Thunderhead Ranch.

"Florida Regional 2012." Multiple photographs of shirts saying "Thunderhead Ranch."

"California Regional—2012." Multiple photographs of John Zelbst and Joseph Low.

"Board meeting—2012." Multiple photographs of Joseph Low.

"September 2011 graduation." Photographs of and taken at Thunderhead Ranch.

"September 2011 class." Photographs of and taken at Thunderhead Ranch.

"Grad two—2011." Photographs of and taken at Thunderhead Ranch. Photographs of Joseph Low.

"Grad one 2011." Photographs of and taken at Thunderhead Ranch.

"July 2011." Photographs of and taken at Thunderhead Ranch. Six photographs of Kent Spence.

As of December 30, 2024, images that "link" to "Events" before 2020 on TLC's Facebook page include ones of Gerry Spence or the "Big Barn" at Thunderhead Ranch.

As of December 30, 2024, a video for "TLC's Opening Statement Regional Seminar" includes footage of Gerry Spence speaking about opening statements.

As of December 30, 2024, TLC has made no changes to its Twitter feed, which includes photographs of Thunderhead Ranch, Gerry Spence, Rex Parris, and John and Clay Zelbst.

**Formatted:** Space After: 0 pt

**Formatted:** Space After: 0 pt, Line spacing: single

14

Respectfully submitted this _____ day of January, 2025.

*/s/ Beth J. Kushner*

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI  53202
Telephone:  414-287-1373
bkushner@vonbriesen.com

James Fitzgerald
Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY  82001
Telephone:  307-634-4000
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

*/s/*_____

Christopher K. Ralston (admitted *pro hac vice*)
Lindsay Calhoun (admitted *pro hac vice*)
PHELPS DUNBAR LLP
Canal Place / 365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  504-566-1311
chris.ralston@phelps.com
Lindsay.calhoun@phelps.com

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P.O. Box 10700
Casper, WY  82602-3902
Telephone:  307-265-0700
pmurphy@wpdn.net

ATTORNEYS FOR PLAINTIFF
THE TRIAL LAWYERS COLLEGE

**CERTIFICATE OF SERVICE**

15

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all parties on January __, 2025.

*/s/ Beth J. Kushner*

42114106_1.DOCX

16

| | |
|---|---|
| **From:** | Beth J. Kushner <beth.kushner@vonbriesen.com> |
| **Sent:** | Tuesday, January 7, 2025 8:25 AM |
| **To:** | Mark Ackal (1261); Chris Ralston (1358); Lindsay Calhoun (1315) |
| **Cc:** | Jim; Joan Pawlak |
| **Subject:** | Alternative Joint Submission (003) (002) (002).docx--response. |
| **Attachments:** | Alternative Joint Submission (003) (002) (002).docx |

Good morning, all.  I am attaching our response to the proposed joint submission that you sent yesterday at 5:00 p.m.

I believe, based on your comments and draft from yesterday, that we are unlikely to move much beyond this; however, it will allow us to comply with Judge Fouratt's Order that we file a joint submission.  I believe this accurately reflects the parties' positions.

Once you have had the opportunity to review the attached, I will welcome your position as to how to proceed.  Obviously, we will want to sign off on anything that is represented to be jointly submitted.

Have an enjoyable day.

---

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail:       pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email:        chris.ralston@phelps.com
lindsay.calhoun@phelps.com

Attorneys for The Trial Lawyers College

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br>  Plaintiff.<br><br><br>vs.<br><br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC.,<br>  Defendants. | Civil Action No. 1:20-CV-00080-JMC |

**PARTIES' JOINT SUBMISSION RELATING TO** ~~STIPULATED FACTS NARROWING ISSUES FOR HEARING ON~~

**MOTIONS FOR CONTEMPT AND TO ENFORCE SETTLEMENT**

Pursuant to this Court's December 11, 2024 Order, the parties file this joint statement to indicate in what ways the issues have been narrowed in this dispute. ~~In pursuit of this goal and in accordance with principles of good faith, the parties have agreed to stipulate to the facts listed below. Additionally, the parties have likewise summarized the arguments and precise issues they ask this Court to resolve.~~

The Parties have not been able to meaningfully narrow the issues to be presented at the January 10, 2025 hearing.  Defendants submitted their position on the Motions to Plaintiff on

December 12, 2025, and followed that position with proposed stipulated facts on December 17, 2024 and updated proposed stipulated facts on December 30, 2024.  Plaintiff provided its response at 5:00 p.m. on January 6, 2025.

**Stipulated facts**

1. The litigation underlying the present dispute was resolved on October 12, 2022, when the parties entered into the Confidential Settlement Agreement (the "Settlement Agreement") and this Court entered the Consent Permanent Injunction (the "Inunction").

2. The parties to the Settlement Agreement include~~are~~ the Trial Lawyers College ("TLC") and the named Defendants.  The Spence Foundation was not a party to the litigation or the Settlement Agreement.

3. The Injunction contained two provisions that prohibited ~~required~~ TLC from ~~to stop~~ using Defendants' n~~N~~ame, i~~I~~mage, or l~~L~~ikeness: the name, image, or likeness of any Defendant's family member(s) or the name, image, or likeness of Thunderhead Ranch.  ~~.~~

4. The Injunction provided ~~an~~ exceptions for (a) the names, images, or likenesses of family members who were actually involved with TLC after October 12, 2022; and for (b) "factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020."

5. The Injunction contained a thirty day cure period for violations.

6. On October 31, 2022, TLC counsel stated in a letter to Defendants' counsel that "TLC has made every effort to remove [any references to the Defendants] from its archived materials,

including its social media accounts.…To the best of TLC's knowledge, no references to any of the Defendants' name, image, or likeness exist on TLC's social media accounts."

4.

7.   At the time Defendants filed their Motion for Contempt on November 15, 2024, TLC's social media contained over two hundred images of Defendants, Defendants' family members, and Thunderhead Ranch, all of which were initially posted prior to the date of the Injunction, October 12, 2022.

8.   Beginning on December 18, 2025, TLC began to make changes to TLC's Facebook page, including deleting certain of the photographs that are the subject of Defendants' Motion for Contempt.  Those changes, which were largely made during the week before the date of this Joint Submission, include removing certain photographs of Thunderhead Ranch from Facebook (but not Twitter).  As of the date of this Joint Submission, TLC's Facebook page still contains roughly 115 photographs of the Defendants or their family members (who are not associated with TLC), including a photograph of John Zelbst on one of TLC's Facebook "cover photos."

5. 9. The photographs and names of the Defendants or their family members that are on TLC's Facebook page as of the date of this Joint Submission include but are not limited to photographs of a book authored by Gerry Spence; a photograph of John and Clay Zelbst in court in Oklahoma; photographs of Kent Spence in a public restaurant and of Mr. Spence playing the harmonica; photographs of Rex Parris as a speaker and appearing at a formal event in California; a photograph of John Zelbst at the same event; and a photograph of Joseph Low in a bar.  The photographs also include one of Thunderhead Ranch in 1937.

Formatted: Font: (Default) Times New Roman, 12 pt

Formatted: Normal,  No bullets or numbering

6.  ~~TLC has not posted any images using the Defendants' name, image, or likeness since the Injunction was entered.~~

~~7.~~10.    All social media posts complained of in Defendants' Motion for Contempt were initially posted prior to the date the Injunction was entered and have been consistently available to the public on TLC's social media since their initial posting.  .

11. Paragraph 8 of the Settlement Agreement required Defendants to return property, including ~~memorial~~ plaques.  "Plaques" are simply pieces of old board with a name burned on it, such as this:

**Formatted:** Indent: Left:  0.5",  No bullets or



12. TLC could not use boards containing the names of Defendants or Defendants' family members (who are not currently affiliated with TLC) without violating the Injunction.

13. TLC has not provided Defendants with a list of people who want their boards, beyond identifying four memorial boards and the additional boards mentioned by John Sloan in an email in February 2023.

14. TLC's position, as expressed in the attached Exhibit A, was that boards would be provided to people who wanted them.

~~8.~~15.     TLC has not provided Defendants with an inventory of property that former Executive Director Laurie Goodman took from Thunderhead Ranch in May 2020 and stored in a commercial facility in Riverton, Wyoming.

~~9.~~16.     Representatives of Plaintiff and Defendants have communicated regarding the return of the name boards.  ~~memorial plaques to TLC.~~

~~10.~~17.     Defendants have not returned any name boards  ~~plaques to TLC~~although Defendants have offered to do so.  .

~~11.~~18.     ~~The plaques are relatively inexpensive to produce.~~

~~12.~~19.     TLC claims that the boards ~~he plaques~~ have sentimental value and spiritual significance to certain of the people who purchased boards. ~~.~~


**Issues before the Court**

~~The parties have conferred and determined that the following issues are the only disagreements which the Parties cannot resolve. The parties further agree that the arguments listed below are the only arguments currently advanced by the parties. Thus, the issues for the Court to resolve are:~~

1. Whether the social media posts fall within the Injunction's carve out for historically accurate references to TLC's lease of Thunderhead Ranch and, if so, not, whether TLC's failure to remove the posts amounts to contemptuous conduct.

TLC maintains that it was not obligated to remove social media posts which were posted prior to the date of the Injunction because such posts are historically accurate references to its time on Thunderhead Ranch and therefore fall within the scope of the Injunction's exception. TLC maintains that it has always understood that it was not obligated to delete old social media posts which predate the Injunction. Any efforts by TLC to remove old social media posts were undertaken because TLC does not wish to be associated with Defendants, not because TLC was obligated to do so under the Injunction. Moreover, TLC maintains that, even if the continued existence of old posts on its social media page are violative of the Injunction, Defendants have 1) not met their burden to prove this conduct was contemptuous and 2) did not give adequate time for TLC to cure the issue before filing its Motion for Contempt.

Defendants maintain TLC has violated the plain language of the Injunction and that TLC's current position is contrary to TLC's representations and actions before the contempt Motion was filed. Defendants further maintain that if TLC were truly acting "because TLC does not wish to be associated with Defendants," TLC would not continue to display over 100 photographs of Defendants or their family members on TLC social media. Defendants further maintain that such posts are not within the scope of the exception and are therefore violative of the Injunction. Specifically, Defendants maintain that only references to the lease agreement itself are permissible under the Injunction and that photographs the social media posts are 1) not "references." and 2) do not pertain to the lease agreement. Defendants further argue that they have apprised TLC of the existence of the social media posts and TLC has, in the past, agreed to take them down. This,

~~Defendants maintain, shows that TLC knew it was obligated to take the posts down. Consequently,~~ Defendants maintain that TLC's failure to take the posts down amounts to contemptuous conduct<u>, based on the legal standard that TLC itself has advocated in this case</u>. <u>Finally, Defendants contend that they are entitled to damages based on TLC's continued use of their (and their family members') and Thunderhead Ranch's names and images.</u>

2. <u>Whether Defendants'</u> <u>unwillingness</u> ~~' failure~~ to <u>provide  boards</u> ~~return the plaques~~ to TLC <u>as and when TLC directs breaches</u> ~~is violative of~~ the Settlement Agreement.

TLC maintains that the Settlement Agreement required Defendants to return the plaques to TLC without any additional conditions. TLC further maintains that the plaques at issue <u>include</u>~~are~~ memorial plaques which were donated to TLC and are therefore owned by TLC. Moreover, <u>TLC's position is that</u> the Settlement Agreement was executed only between the parties, and it was understood all parties at the time of signing the Settlement Agreement that the plaques would be returned to TLC. Consequently, TLC asks this Court to order Defendants to return all plaques to TLC.

Defendants maintain that the Settlement Agreement <u>must be construed together with the Injunction and that TLC may not possess or use any boards that bear the name of a Defendant or family member.  Defendants further maintain that the boards belong to the person who paid for them, and that TLC's correspondence about the boards with the actual owners and with Defendants proves that TLC shared such understanding until TLC filed its Motion to Enforce.</u>

<u>Defendants further maintain that  Defendants have consistently offered to make available to TLC or the boards' owners  any boards that the owners want, but that TLC has refused to identify other than a small number of the owners.  Finally, Defendants maintain that TLC forfeited any ability to enforce the Settlement Agreement by TLC's prior breaches and by rejecting Defendants'</u>

attempt to perform.  ~~either 1) does not require them to return the plaques to TLC, but rather only~~ ~~requires that the plaques be given to the alumni who donated them or 2) allows the Defendants to~~ ~~withhold the plaques until TLC provides a list of alumni who want the plaques returned. In the~~ ~~alternative, Defendants maintain that it is not required to return the plaques until TLC returns~~ ~~certain property to Defendants.~~  Nonetheless, Defendants have consistently been willing to provide any property to which TLC is entitled (or that the board owners want TLC to have), but are unwilling to simply store property for TLC until TLC wants particular property.

Finally, Defendants maintain that TLC has failed to comply with the applicable Local Rules governing motion practice in the District of Wyoming and that the Court may deny TLC's Motion to Enforce on that basis.

Respectfully submitted this _____ day of January, 2025.

*/s/ Beth J. Kushner*

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI  53202
Telephone:  414-287-1373
bkushner@vonbriesen.com

James Fitzgerald
Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY  82001
Telephone:  307-634-4000
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY

SPENCE METHOD AT THUNDERHEAD
RANCH, INC.

/s/_____

Christopher K. Ralston (admitted *pro hac vice*)
Lindsay Calhoun (admitted *pro hac vice*)
PHELPS DUNBAR LLP
Canal Place / 365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  504-566-1311
chris.ralston@phelps.com
Lindsay.calhoun@phelps.com

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P.O. Box 10700
Casper, WY  82602-3902
Telephone:  307-265-0700
pmurphy@wpdn.net

ATTORNEYS FOR PLAINTIFF
THE TRIAL LAWYERS COLLEGE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all parties on January ___, 2025.

*/s/ Beth J. Kushner*

| | |
|---|---|
| **From:** | Beth J. Kushner <beth.kushner@vonbriesen.com> |
| **Sent:** | Tuesday, January 7, 2025 8:27 AM |
| **To:** | Mark Ackal (1261); Chris Ralston (1358); Lindsay Calhoun (1315) |
| **Cc:** | Jim; Joan Pawlak |
| **Subject:** | Exhibit A |
| **Attachments:** | 38228662_1.pdf |

This should have been attached to the responsive draft joint submission.  My apologies for the inconvenience.

**Beth J. Kushner | von Briesen & Roper, s.c.**
Direct: 414-287-1373 | Cell: 414-305-7794
beth.kushner@vonbriesen.com

---

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

| | |
|---|---|
| **From:** | Andrew Mishlove |
| **To:** | Maren Chaloupka; Jonathan S Follender; Louise Lipman |
| **Subject:** | RE: Sigh. |
| **Date:** | Wednesday, September 23, 2020 8:53:17 AM |
| **Attachments:** | image001.png |

Maren,

I am deeply moved. It is acts of kindness such as yours that are a more fitting memorial to our loved ones.  The plaques, after all, are only pieces of wood.

Thank you for act of Chesed :

חסד

May the next four seasons bring you health, prosperity, and fulfillment.

Fondly,

Andrew



***Andrew Mishlove***

***Mishlove and Stuckert, LLC***
***Serving Wisconsin Since 1981.***
***Offices in Glendale, Oshkosh, West Bend, and Waukesha***

**From:** Maren Chaloupka
**Sent:** Wednesday, September 23, 2020 9:36 AM
**To:** Jonathan S Follender; Andrew Mishlove; Louise Lipman
**Subject:** Sigh.

Jon, Andrew and Louise, I had optimism that I would be allowed into the Big Barn on Yom

Kippur to remove your loved ones' memorials.  My optimism turned out to be unfounded:  I thought that because the plan I developed with our counsel, and proposed to the other side, was so unobtrusive to the other side, there could be no reason for them to say no.

After our efforts to educate them on the spiritual significance of the memorial plaques as well as our explanation that High Holy Days have been celebrated on Thunderhead Ranch in September many times, and after our reiteration that they need to do nothing but watch while I climb a ladder and remove four plaques from the wall in about 30 minutes' time, the final response we received from counsel for Gerry Spence, Joseph Low, John Zelbst, Kent Spence, and Rex Parris was:  no.

Our lawyer has described their counsel's response and rationale on our very quiet, and very respectful request as "some of the most insensitive litigation conduct I have ever endured."

Andrew and Louise, I am so sorry that I could not perform this service for you and, by extension, for your families.

At whatever point our litigation concludes, please know that I will be in contact with you regarding the respectful removal of your loved ones' memorial plaques, and the return of those plaques to you (or the safekeeping, whichever you request) so that there is some distinction between those plaques and the "regular" plaques of alums who just memorialized themselves and fellow class members who are still living.  I will not forget the importance of your memorial for your loved ones.

And in the short term, be advised that our counsel will not forget this indignity either.  He plans to ask questions in depositions of Messrs. Low, Spence, Zelbst and Parris (and Gerry if he is competent to be deposed), to make a record of why they could not show the minimal human decency to allow this act of respect.  I will keep you posted as I am allowed.

Please, let me know what else I may do.  I am very saddened that I could not complete this mission for you and your families.



**Maren Lynn Chaloupka**
1714 Second Avenue
PO Box 2424
Scottsbluff, NE 69363-2424
T: (308) 635-5000
F: (308) 635-8000
www.panhandlejustice.com

CHALOUPKA_0103

CHALOUPKA_0104

| | |
|---|---|
| **From:** | Mark Ackal (1261) |
| **Sent:** | Tuesday, January 7, 2025 10:48 AM |
| **To:** | beth.kushner@vonbriesen.com |
| **Cc:** | Chris Ralston (1358); Lindsay Calhoun (1315) |
| **Subject:** | Updated revisions for joint filing |
| **Attachments:** | TLC edits - Alternative Joint Submission.docx |

Dear Ms. Kushner,

We have reviewed your proposed revisions and have made others. All edits were made with the purpose of respecting Defendants' current position and understanding of the facts while maintaining the same for TLC. We believe that the current state of the document is our best efforts at a non-argumentative endeavor to narrow the issues before the court.

We have abstained from editing the portion of the document which summarizes Defendants' positions and likewise hope you will agree to abstain from editing the portion which summarizes TLC's positions.

Note that this email and the accompanying documents are only proposals and should not be construed as a waiver concerning any argument or legal claim. TLC reserves all rights afforded to it under the law.

Please let us know if you have any questions or further revisions. We are prepared to file if and when you approve the document.

Best regards,

Mark Ackal

---

**Mark Ackal**
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Direct: 504-584-9261
Fax: 504-568-9130
Email: mark.ackal@phelps.com



CONFIDENTIALITY NOTICE - This e-mail message, including any attachments, is private communication sent by a law firm, Phelps Dunbar LLP, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, any use, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system. Thank you.

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail:      pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email:       chris.ralston@phelps.com
lindsay.calhoun@phelps.com

Attorneys for The Trial Lawyers College

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br>      Plaintiff.<br><br><br>vs.<br><br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC.,<br>      Defendants. | Civil Action No. 1:20-CV-00080-JMC |

**PARTIES' JOINT SUBMISSION RELATING TO** ~~STIPULATED FACTS NARROWING ISSUES FOR HEARING ON~~

**MOTIONS FOR CONTEMPT AND TO ENFORCE SETTLEMENT**

Pursuant to this Court's December 11, 2024 Order, the parties file this joint statement to indicate in what ways the issues have been narrowed in this dispute. ~~In pursuit of this goal and in accordance with principles of good faith, the parties have agreed to stipulate to the facts listed below. Additionally, the parties have likewise summarized the arguments and precise issues they ask this Court to resolve.~~

~~The Parties have not been able to meaningfully narrow the issues to be presented at the January 10, 2025 hearing. Defendants submitted their position on the Motions to Plaintiff on~~

PD.48021584.2

December 12, 2025, and followed that position with proposed stipulated facts on December 17, 2024 and updated proposed stipulated facts on December 30, 2024. Plaintiff provided its response at 5:00 p.m. on January 6, 2025.

**Stipulated facts**

1. The litigation underlying the present dispute was resolved on October 12, 2022, when the parties entered into the Confidential Settlement Agreement (the "Settlement Agreement") and this Court entered the Consent Permanent Injunction (the "Inunction").

2. The parties to the Settlement Agreement are are the Trial Lawyers College ("TLC") and the named Defendants. The Spence Foundation was not a party to the litigation or the Settlement Agreement.

3. The Injunction contained two provisions that prohibited required TLC from to stop using Defendants' nName, iImage, or lLikeness: the name, image, or likeness of any Defendant's family member(s) or the name, image, or likeness of Thunderhead Ranch. ,.

4. The Injunction provided an exceptions for (a) the names, images, or likenesses of family members who were actually involved with TLC after October 12, 2022; and for (b) "factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020."

The Injunction contained a thirty day cure period for violations.

On October 31, 2022, TLC counsel stated in a letter to Defendants' counsel that "TLC has made every effort to remove [any references to the Defendants] from its archived materials, including its social media accounts….To the best of TLC's knowledge, no references to any of the Defendants' name, image, or likeness exist on TLC's social media accounts."

4.5.

6.    At the time Defendants filed their Motion for Contempt on November 15, 2024, TLC's social media contained over two hundred images of Defendants, Defendants' family members, and Thunderhead Ranch, all of which were initially posted prior to the date of the Injunction, October 12, 2022.

Beginning on December 18, 2025, TLC began to make changes to TLC's Facebook page, including deleting certain of the photographs that are the subject of Defendants' Motion for Contempt.  Those changes, which were largely made during the week before the date of this Joint Submission, include removing certain photographs of Thunderhead Ranch from Facebook (but not Twitter).  As of the date of this Joint Submission, TLC's Facebook page still contains roughly 115 photographs of the Defendants or their family members (who are not associated with TLC), including a photograph of John Zelbst on one of TLC's Facebook "cover photos."

5.    The photographs and names of the Defendants or their family members that are on TLC's Facebook page as of the date of this Joint Submission include but are not limited to photographs of a book authored by Gerry Spence; a photograph of John and Clay Zelbst in court in Oklahoma; photographs of Kent Spence in a public restaurant and of Mr. Spence playing the harmonica; photographs of Rex Parris as a speaker and appearing at a formal

Formatted: Font: (Default) Times New Roman, 12 pt

~~event in California; a photograph of John Zelbst at the same event; and a photograph of~~ ~~Joseph Low in a bar.  The photographs also include one of Thunderhead Ranch in 1937.~~

~~6.~~ ~~TLC has not posted any images using the Defendants' name, image, or likeness since the Injunction was entered.~~

7. All social media posts complained of in Defendants' Motion for Contempt were initially posted prior to the date the Injunction was entered and ~~have been consistently~~have been available to the public on TLC's social media. ~~since their initial posting.~~ TLC represents that it has been actively removing the social media posts for several weeks and that it intends to remove all of the identified posts.

Paragraph 8 of the Settlement Agreement required Defendants to return property, including ~~memorial~~ plaques.  ~~"Plaques" are simply pieces of old board with a name burned on it, such as this:~~

8.

Formatted: Font: (Default) Times New Roman, 12 pt

Formatted: Font: (Default) Times New Roman, 12 pt



TLC could not use boards containing the names of Defendants or Defendants' family members (who are not currently affiliated with TLC) without violating the Injunction.

9.    TLC has not provided Defendants with a list of people who want their boards. , beyond identifying four memorial boards and the additional boardsPlaques for certain individuals were mentionedrequested by John Sloan in an email in February 2023 and a letter sent by Maren Chaloupka in February 2024.

TLC's position, as expressed in the attached Exhibit A, was that boards would be provided to people who wanted them.

8.10.    TLC has not provided Defendants with an inventory of property that former Executive Director Laurie Goodman took from Thunderhead Ranch in May 2020 and stored in a commercial facility in Riverton, Wyoming.

9.11.    Representatives of Plaintiff and Defendants have communicated regarding the return of the name boardsplaques.  memorial plaques to TLC.

10. Defendants have not returned any name boardsplaques to TLC  plaques to TLCalthough Defendants have offered to do soreturn them to individual alumni. .

11.12.    The plaques are relatively inexpensive to produce.

12.13.    TLC claims that the boards he plaques have sentimental value and spiritual significance. to certain of the people who purchased boards. .

**Formatted:** Font: (Default) Times New Roman, 12 pt

### <u>Issues before the Court</u>

The parties have conferred and determined that the following issues are the only disagreements which the Parties cannot resolve. The parties further agree that the arguments listed below are the only arguments currently advanced by the parties. Thus, the issues for the Court to resolve are:

1.  Whether the social media posts fall within the Injunction's carve out for historically accurate references to TLC's lease of Thunderhead Ranch and, if so,not, whether TLC's failure to remove the posts amounts to contemptuous conduct. Defendants' Motion for Contempt.

TLC maintains that it was not obligated to remove social media posts which were posted prior to the date of the Injunction because such posts are historically accurate references to its time on Thunderhead Ranch and therefore fall within the scope of the Injunction's exception. TLC

maintains that it has always understood that it was not obligated to delete old social media posts which predate the Injunction. Any efforts by TLC to remove old social media posts were undertaken because TLC does not wish to be associated with Defendants, not because TLC was obligated to do so under the Injunction. Moreover, TLC maintains that, even if the ~~continued~~ existence of ~~old~~ old posts on its social media page are violative of the Injunction, Defendants have 1) not met their burden to prove this conduct was contemptuous and 2) did not give adequate time for TLC to cure the issue before filing its Motion for Contempt. TLC also represents that it has taken down many of the posts identified by Defendants and continues to work to remove all of the posts.

Defendants maintain TLC has violated the plain language of the Injunction and that TLC's current position is contrary to TLC's representations and actions before the contempt Motion was filed. Defendants further maintain that if TLC were truly acting "because TLC does not wish to be associated with Defendants," TLC would not continue to display over 100 photographs of Defendants or their family members on TLC social media. Defendants further maintain ~~that such posts are not within the scope of the exception and are therefore violative of the Injunction. Specifically, Defendants maintain~~ that only references to the lease agreement itself are permissible under the Injunction and that photographs ~~the social media posts~~ are ~~1)~~ not "references." ~~and 2) do not pertain to the lease agreement. Defendants further argue that they have apprised TLC of the existence of the social media posts and TLC has, in the past, agreed to take them down. This, Defendants maintain, shows that TLC knew it was obligated to take the posts down. Consequently,~~ Defendants maintain that TLC's failure to take the posts down amounts to contemptuous conduct, based on the legal standard that TLC itself has advocated in this case. Finally, Defendants contend

that they are entitled to damages based on TLC's continued use of their (and their family members') and Thunderhead Ranch's names and images.

2. ~~Whether Defendants' unwillingness ' failure to provide  boards return the plaques to TLC as and when TLC directs breaches is violative of the Settlement Agreement.~~Plaintiffs' Motion to Enforce Settlement Agreement.

TLC maintains that the Settlement Agreement required Defendants to return the plaques to TLC without any additional conditions. TLC further maintains that the plaques at issue ~~are~~ are memorial plaques which were donated to TLC and are therefore owned by TLC. Moreover, ~~TLC's position is that~~ that the Settlement Agreement was executed only between the parties, and it was understood by all parties at the time of signing the Settlement Agreement that the plaques would be returned to TLC. Consequently, TLC asks this Court to order Defendants to return all plaques to TLC. However, to the extent there are any plaques bearing the names of Defendants to this lawsuit, TLC has no interest in receiving those plaques, and Defendants may keep them. Moreover, TLC disagrees with Defendants' contention that it did not comply with the local rules before filing its Motion to Enforce Settlement Agreement, as it clearly contacted Defendants' lead counsel, Steve Velkei, prior to filing the motion, and advised that its preferred method was resolution without court intervention, but that it would file a Motion to Enforce Settlement Agreement if Defendants would not agree to return the plaques.

Defendants maintain that the Settlement Agreement must be construed together with the Injunction and that TLC may not possess or use any boards that bear the name of a Defendant or family member.  Defendants further maintain that the boards belong to the person who paid for them, and that TLC's correspondence about the boards with the actual owners and with Defendants proves that TLC shared such understanding until TLC filed its Motion to Enforce.

PD.48021584.2

Defendants further maintain that~~-~~ Defendants have consistently offered to make available to TLC or the boards' owners~~-~~ any boards that the owners want, but that TLC has refused to identify other than a small number of the owners.  Finally, Defendants maintain that TLC forfeited any ability to enforce the Settlement Agreement by TLC's prior breaches and by rejecting Defendants' attempt to perform.  ~~either 1) does not require them to return the plaques to TLC, but rather only requires that the plaques be given to the alumni who donated them or 2) allows the Defendants to withhold the plaques until TLC provides a list of alumni who want the plaques returned. In the alternative, Defendants maintain that it is not required to return the plaques until TLC returns certain property to Defendants.~~  Nonetheless, Defendants have consistently been willing to provide any property to which TLC is entitled (or that the board owners want TLC to have), but are unwilling to simply store property for TLC until TLC wants particular property.

Finally, Defendants maintain that TLC has failed to comply with the applicable Local Rules governing motion practice in the District of Wyoming and that the Court may deny TLC's Motion to Enforce on that basis.

Respectfully submitted this _____ day of January, 2025.

*/s/ Beth J. Kushner*

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI  53202
Telephone:  414-287-1373
bkushner@vonbriesen.com

James Fitzgerald
Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY  82001

PD.48021584.2

Telephone:  307-634-4000
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY
SPENCE METHOD AT THUNDERHEAD
RANCH, INC.

/s/ _____

Christopher K. Ralston (admitted *pro hac vice*)
Lindsay Calhoun (admitted *pro hac vice*)
PHELPS DUNBAR LLP
Canal Place / 365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  504-566-1311
chris.ralston@phelps.com
Lindsay.calhoun@phelps.com

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P.O. Box 10700
Casper, WY  82602-3902
Telephone:  307-265-0700
pmurphy@wpdn.net

ATTORNEYS FOR PLAINTIFF
THE TRIAL LAWYERS COLLEGE

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all parties on January __, 2025.

PD.48021584.2

_/s/ Beth J. Kushner_

**From:**                     Beth J. Kushner <beth.kushner@vonbriesen.com>
**Sent:**                    Tuesday, January 7, 2025 10:52 AM
**To:**                         Mark Ackal (1261)
**Cc:**                         Chris Ralston (1358); Lindsay Calhoun (1315); Joan Pawlak; jim@fitzgeraldlaw.com
**Subject:**               RE: Updated revisions for joint filing

I will review now. Please cc Mr. Fitzgerald and Ms. Pawlak on communications.

I'll be back to you as quickly as I can review and connect with Mr. Fitzgerald and the client.

**Beth J. Kushner | von Briesen & Roper, s.c.**
Direct: 414-287-1373 | Cell: 414-305-7794
beth.kushner@vonbriesen.com

---

**From:** Mark Ackal (1261) <Mark.Ackal@phelps.com>
**Sent:** Tuesday, January 7, 2025 10:48 AM
**To:** Beth J. Kushner <beth.kushner@vonbriesen.com>
**Cc:** Chris Ralston (1358) <Chris.Ralston@phelps.com>; Lindsay Calhoun (1315) <Lindsay.Calhoun@phelps.com>
**Subject:** [EXTERNAL] Updated revisions for joint filing

Dear Ms. Kushner,

We have reviewed your proposed revisions and have made others. All edits were made with the purpose of respecting Defendants' current position and understanding of the facts while maintaining the same for TLC. We believe that the current state of the document is our best efforts at a non-argumentative endeavor to narrow the issues before the court.

We have abstained from editing the portion of the document which summarizes Defendants' positions and likewise hope you will agree to abstain from editing the portion which summarizes TLC's positions.

Note that this email and the accompanying documents are only proposals and should not be construed as a waiver concerning any argument or legal claim. TLC reserves all rights afforded to it under the law.

Please let us know if you have any questions or further revisions. We are prepared to file if and when you approve the document.

Best regards,

Mark Ackal

_____

**Mark Ackal**
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Direct: 504-584-9261
Fax: 504-568-9130
Email: mark.ackal@phelps.com



CONFIDENTIALITY NOTICE - This e-mail message, including any attachments, is private communication sent by a law firm, Phelps Dunbar LLP, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, any use, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system. Thank you.

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

| | |
|---|---|
| **From:** | Beth J. Kushner <beth.kushner@vonbriesen.com> |
| **Sent:** | Tuesday, January 7, 2025 11:13 AM |
| **To:** | Mark Ackal (1261); Chris Ralston (1358); Lindsay Calhoun (1315) |
| **Cc:** | Joan Pawlak; jim@fitzgeraldlaw.com |
| **Subject:** | TLC edits - Alternative Joint Submission.docx |
| **Attachments:** | TLC edits - Alternative Joint Submission.docx |

I have not connected with the client or Mr. Fitzgerald, but in the interests of trying to move things along, have raised a number of questions.

In particular, I am unsure of the basis for the following:

1. Why do you object to the inclusion of Mr. Ralston's letter? Obviously, it is inconsistent with TLC's current position and we are entitled to show that to the Court.
2. What is your dispute with the number and subjects of the posts on TLC's social media? We were scrupulous in providing those and they are obviously relevant to the Court's analysis and to refute TLC's current legal argument.
3. Why does TLC dispute that it only began to remove photos within the past few weeks? If you have an earlier time that TLC did so, please provide it. I don't believe there is any dispute that TLC did not begin to remove photos until the contempt motion was filed.
4. Why does TLC take the position that it has consistently asserted that the boards would be going to those who paid for them, yet not want the Court to see such communications as Ms. Chaloupka's representations to the owners of the very boards that are TLC's focus?

I believe that TLC can certainly make its legal arguments. However, I trust you agree that we are entitled to impeach those arguments.

Our edits were a good faith attempt to stay with facts that cannot seriously be disputed because they are TLC's own communications (or similarly credible evidence). We will respect your request not to edit your arguments or the statements of your position, but we are understandably concerned with TLC's apparent attempt to skew the record.

I do not anticipate that Mr. Fitzgerald or the client would take a different view of the above response but will promptly advise of any differences. Otherwise, I believe that we might wish to prepare a PDF that shows the respective communications and submit that to the Court. If you wish to do so, I'll obviously want to review before you do. We are happy to do so, affording you the same courtesy.

Looking forward to your response.

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

1

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail:       pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email:        chris.ralston@phelps.com
lindsay.calhoun@phelps.com

Attorneys for The Trial Lawyers College

PD.48021584.2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,
      Plaintiff.

vs.

GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC.,
      Defendants.

Civil Action No. 1:20-CV-00080-JMC

**PARTIES' JOINT SUBMISSION RELATING TO STIPULATED FACTS NARROWING ISSUES FOR HEARING ON**

**MOTIONS FOR CONTEMPT AND TO ENFORCE SETTLEMENT**

Pursuant to this Court's December 11, 2024 Order, the parties file this joint statement to indicate in what ways the issues have been narrowed in this dispute. In pursuit of this goal and in accordance with principles of good faith, the parties have agreed to stipulate to the facts listed below. Additionally, the parties have likewise summarized the arguments and precise issues they ask this Court to resolve.

The Parties have not been able to meaningfully narrow the issues to be presented at the January 10, 2025 hearing. Defendants submitted their position on the Motions to Plaintiff on

~~December 12, 2025, and followed that position with proposed stipulated facts on December 17,~~
~~2024 and updated proposed stipulated facts on December 30, 2024. Plaintiff provided its response~~
~~at 5:00 p.m. on January 6, 2025.~~

**Stipulated facts**

1. The litigation underlying the present dispute was resolved on October 12, 2022, when the parties entered into the Confidential Settlement Agreement (the "Settlement Agreement") and this Court entered the Consent Permanent Injunction (the "Inunction").

2. The parties to the Settlement Agreement ~~are~~ are the Trial Lawyers College ("TLC") and the named Defendants. The Spence Foundation was not a party to the litigation or the Settlement Agreement.

3. The Injunction contained two provisions that prohibited ~~required~~ TLC from ~~to stop~~ using Defendants' ~~n~~Name, ~~i~~Image, or ~~l~~Likeness: the name, image, or likeness of any Defendant's family member(s) or the name, image, or likeness of Thunderhead Ranch. ~~.~~

4. The Injunction provided ~~an~~ exceptions for (a) the names, images, or likenesses of family members who were actually involved with TLC after October 12, 2022; and for (b) "factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020."

The Injunction contained a thirty day cure period for violations.

On October 31, 2022, TLC counsel stated in a letter to Defendants' counsel that "TLC has made every effort to remove [any references to the Defendants] from its archived materials, including its social media accounts…To the best of TLC's knowledge, no references to any of the Defendants' name, image, or likeness exist on TLC's social media accounts."

**Formatted:** Font: (Default) Times New Roman, 12 pt

**Commented [BJK1]:** Please advise why you have deleted this. It is an accurate quote.

4.5.

6.   At the time Defendants filed their Motion for Contempt on November 15, 2024, TLC's social media contained over two hundred images of Defendants, Defendants' family members, and Thunderhead Ranch, all of which were initially posted prior to the date of the Injunction, October 12, 2022.

**Commented [BJK2]:** Same question.

Beginning on December 18, 2025, TLC began to make changes to TLC's Facebook page, including deleting certain of the photographs that are the subject of Defendants' Motion for Contempt.  Those changes, which were largely made during the week before the date of this Joint Submission, include removing certain photographs of Thunderhead Ranch from Facebook (but not Twitter).  As of the date of this Joint Submission, TLC's Facebook page still contains roughly 115 photographs of the Defendants or their family members (who are not associated with TLC), including a photograph of John Zelbst on one of TLC's Facebook "cover photos."

**Commented [BJK3]:** Same question

5.   The photographs and names of the Defendants or their family members that are on TLC's Facebook page as of the date of this Joint Submission include but are not limited to photographs of a book authored by Gerry Spence; a photograph of John and Clay Zelbst in court in Oklahoma; photographs of Kent Spence in a public restaurant and of Mr. Spence playing the harmonica; photographs of Rex Parris as a speaker and appearing at a formal

PD.48021584.2

~~event in California; a photograph of John Zelbst at the same event; and a photograph of~~

~~Joseph Low in a bar. The photographs also include one of Thunderhead Ranch in 1937.~~

**Commented [BJK4]:** Same question.

~~6. TLC has not posted any images using the Defendants' name, image, or likeness since the~~

~~Injunction was entered.~~

7.  All social media posts complained of in Defendants' Motion for Contempt were initially
    posted prior to the date the Injunction was entered and ~~have been consistently~~have been
    available to the public on TLC's social media. ~~since their initial posting.~~ TLC represents
    that it has been actively removing the social media posts for several weeks and that it
    intends to remove all of the identified posts.

**Commented [BJK5]:** I appreciate this acknowledgment—it is the first I have seen it.

Paragraph 8 of the Settlement Agreement required Defendants to return property, including

~~memorial~~ plaques. ~~"Plaques" are simply pieces of old board with a name burned on it,~~

~~such as this.~~

**Commented [BJK6]:** Please advise why you dispute this. And we will want the example included.

8.



**Formatted:** Font: (Default) Times New Roman, 12 pt

**Formatted:** Font: (Default) Times New Roman, 12 pt

~~TLC could not use boards containing the names of Defendants or Defendants' family members (who are not currently affiliated with TLC) without violating the Injunction.~~

**Commented [BJK7]:** Please advise why you dispute that TLC could not use the names of Defendants' or the family members.

9. TLC has not provided Defendants with a list of people who want their boards~~, beyond identifying four memorial boards and the additional boards~~Plaques for certain individuals were ~~mentioned~~requested by John Sloan in an email in February 2023 and a letter sent by Maren Chaloupka in February 2024.

~~TLC's position, as expressed in the attached Exhibit A, was that boards would be provided to people who wanted them.~~

**Commented [BJK8]:** Why are you deleting this?

8.10.     TLC has not provided Defendants with an inventory of property that former Executive Director Laurie Goodman took from Thunderhead Ranch in May 2020 and stored in a commercial facility in Riverton, Wyoming.

9.11.     Representatives of Plaintiff and Defendants have communicated regarding the return of the name boardsplaques.  memorial plaques to TLC.

10. Defendants have not returned any name boardsplaques to TLC plaques to TLCalthough Defendants have offered to do soreturn them to individual alumni. .

11.12.     The plaques are relatively inexpensive to produce.

12.13.     TLC claims that the boards he plaques have sentimental value and spiritual significance. to certain of the people who purchased boards. .

**Commented [BJK9]:** This is incorrect. We have repeatedly said we will provide to TLC upon the approval of the individuals.

**Formatted:** Font: (Default) Times New Roman, 12 pt

**Commented [BJK10]:** What is the foundation for this?

## **Issues before the Court**

The parties have conferred and determined that the following issues are the only disagreements which the Parties cannot resolve. The parties further agree that the arguments listed below are the only arguments currently advanced by the parties. Thus, the issues for the Court to resolve are:

1. Whether the social media posts fall within the Injunction's carve out for historically accurate references to TLC's lease of Thunderhead Ranch and, if so,not, whether TLC's failure to remove the posts amounts to contemptuous conduct. Defendants' Motion for Contempt.

TLC maintains that it was not obligated to remove social media posts which were posted prior to the date of the Injunction because such posts are historically accurate references to its time on Thunderhead Ranch and therefore fall within the scope of the Injunction's exception. TLC

maintains that it has always understood that it was not obligated to delete old social media posts which predate the Injunction. Any efforts by TLC to remove old social media posts were undertaken because TLC does not wish to be associated with Defendants, not because TLC was obligated to do so under the Injunction. Moreover, TLC maintains that, even if the ~~continued~~ existence of ~~old~~ old posts on its social media page are violative of the Injunction, Defendants have 1) not met their burden to prove this conduct was contemptuous and 2) did not give adequate time for TLC to cure the issue before filing its Motion for Contempt. TLC also represents that it has taken down many of the posts identified by Defendants and continues to work to remove all of the posts.

Defendants maintain TLC has violated the plain language of the Injunction and that TLC's current position is contrary to TLC's representations and actions before the contempt Motion was filed. Defendants further maintain that if TLC were truly acting "because TLC does not wish to be associated with Defendants," TLC would not continue to display over 100 photographs of Defendants or their family members on TLC social media. Defendants further maintain ~~that such posts are not within the scope of the exception and are therefore violative of the Injunction. Specifically, Defendants maintain~~ that only references to the lease agreement itself are permissible under the Injunction and that photographs ~~the social media posts~~ are ~~1)~~ not "references." ~~and 2) do not pertain to the lease agreement. Defendants further argue that they have apprised TLC of the existence of the social media posts and TLC has, in the past, agreed to take them down. This, Defendants maintain, shows that TLC knew it was obligated to take the posts down. Consequently,~~ Defendants maintain that TLC's failure to take the posts down amounts to contemptuous conduct, based on the legal standard that TLC itself has advocated in this case. Finally, Defendants contend

that they are entitled to damages based on TLC's continued use of their (and their family members') and Thunderhead Ranch's names and images.

2. ~~Whether Defendants' unwillingness ' failure to provide  boards return the plaques to TLC as and when TLC directs breaches is violative of the Settlement Agreement.~~Plaintiffs' Motion to Enforce Settlement Agreement.

TLC maintains that the Settlement Agreement required Defendants to return the plaques to TLC without any additional conditions. TLC further maintains that the plaques at issue ~~are~~ are memorial plaques which were donated to TLC and are therefore owned by TLC. Moreover, ~~TLC's position is that~~ that the Settlement Agreement was executed only between the parties, and it was understood by all parties at the time of signing the Settlement Agreement that the plaques would be returned to TLC. Consequently, TLC asks this Court to order Defendants to return all plaques to TLC. However, to the extent there are any plaques bearing the names of Defendants to this lawsuit, TLC has no interest in receiving those plaques, and Defendants may keep them. Moreover, TLC disagrees with Defendants' contention that it did not comply with the local rules before filing its Motion to Enforce Settlement Agreement, as it clearly contacted Defendants' lead counsel, Steve Velkei, prior to filing the motion, and advised that its preferred method was resolution without court intervention, but that it would file a Motion to Enforce Settlement Agreement if Defendants would not agree to return the plaques.

Defendants maintain that the Settlement Agreement must be construed together with the Injunction and that TLC may not possess or use any boards that bear the name of a Defendant or family member.  Defendants further maintain that the boards belong to the person who paid for them, and that TLC's correspondence about the boards with the actual owners and with Defendants proves that TLC shared such understanding until TLC filed its Motion to Enforce.

Defendants further maintain that Defendants have consistently offered to make available to TLC or the boards' owners any boards that the owners want, but that TLC has refused to identify other than a small number of the owners. Finally, Defendants maintain that TLC forfeited any ability to enforce the Settlement Agreement by TLC's prior breaches and by rejecting Defendants' attempt to perform. either 1) does not require them to return the plaques to TLC, but rather only requires that the plaques be given to the alumni who donated them or 2) allows the Defendants to withhold the plaques until TLC provides a list of alumni who want the plaques returned. In the alternative, Defendants maintain that it is not required to return the plaques until TLC returns certain property to Defendants. Nonetheless, Defendants have consistently been willing to provide any property to which TLC is entitled (or that the board owners want TLC to have), but are unwilling to simply store property for TLC until TLC wants particular property.

Finally, Defendants maintain that TLC has failed to comply with the applicable Local Rules governing motion practice in the District of Wyoming and that the Court may deny TLC's Motion to Enforce on that basis.

Respectfully submitted this _____ day of January, 2025.

/s/ Beth J. Kushner

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI  53202
Telephone:  414-287-1373
bkushner@vonbriesen.com

James Fitzgerald
Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY  82001

PD.48021584.2

Telephone:  307-634-4000
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY
SPENCE METHOD AT THUNDERHEAD
RANCH, INC.


/s/_____

Christopher K. Ralston (admitted *pro hac vice*)
Lindsay Calhoun (admitted *pro hac vice*)
PHELPS DUNBAR LLP
Canal Place / 365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  504-566-1311
chris.ralston@phelps.com
Lindsay.calhoun@phelps.com

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P.O. Box 10700
Casper, WY  82602-3902
Telephone:  307-265-0700
pmurphy@wpdn.net

ATTORNEYS FOR PLAINTIFF
THE TRIAL LAWYERS COLLEGE


## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing document has been served
electronically by transmission to an electronic filing service provider for service through the
Court's CM/ECF system to all parties on January __, 2025.


PD.48021584.2

*/s/ Beth J. Kushner*

PD.48021584.2

**From:**      Beth J. Kushner <beth.kushner@vonbriesen.com>
**Sent:**      Tuesday, January 7, 2025 11:23 AM
**To:**        Mark Ackal (1261); Chris Ralston (1358); Lindsay Calhoun (1315)
**Cc:**        Joan Pawlak; jim@fitzgeraldlaw.com
**Subject:**   TLC edits - Alternative Joint Submission.docx--one additional point
**Attachments:** TLC edits - Alternative Joint Submission.docx

We will need the inclusion of the explanation for the delay.  If you'd like to rationalize it, you certainly may do so.  But I believe there is no meaningful dispute that we started trying to reach a joint submission on December 12 and consistently attempted to move things forward.  We received your substantive response last night.

Accordingly, please include that in what you will be considering.  Many thanks

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-287-1373
bkushner@vonbriesen.com

James E. Fitzgerald
FITZGERALD LAW OFFICES
2108 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.635.2391
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY SPENCE
METHOD AT THUNDERHEAD RANCH, INC.

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail:        pmurphy@wpdn.net

Christopher K. Ralston (Admitted *Pro Hac Vice*)
Lindsay Calhoun (Admitted *Pro Hac Vice*)
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-584-9358
Facsimile: 504-568-9130
Email:        chris.ralston@phelps.com
lindsay.calhoun@phelps.com

Attorneys for The Trial Lawyers College

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

|  |  |
|---|---|
| THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,<br>          Plaintiff.<br><br><br>vs.<br><br><br>GERRY SPENCE TRIAL INSTITUTE, a nonprofit corporation and GERALD L. SPENCE, JOHN ZELBST, REX PARRIS, JOSEPH H. LOW, KENT SPENCE, JOHN JOYCE, and DANIEL AMBROSE, individuals, GERRY SPENCE METHOD AT THUNDERHEAD RANCH, INC.,<br>          Defendants. | Civil Action No. 1:20-CV-00080-JMC |

**PARTIES' <span style="color:red">JOINT SUBMISSION RELATING TO</span> <span style="color:red">~~STIPULATED FACTS NARROWING ISSUES~~</span> <span style="color:red">~~FOR HEARING ON~~</span>**

**MOTIONS FOR CONTEMPT AND TO ENFORCE SETTLEMENT**

Pursuant to this Court's December 11, 2024 Order, the parties file this joint statement to indicate in what ways the issues have been narrowed in this dispute. <span style="color:red">~~In pursuit of this goal and in accordance with principles of good faith, the parties have agreed to stipulate to the facts listed below. Additionally, the parties have likewise summarized the arguments and precise issues they ask this Court to resolve.~~</span>

<span style="color:red">~~The Parties have not been able to meaningfully narrow the issues to be presented at the January 10, 2025 hearing. Defendants submitted their position on the Motions to Plaintiff on~~</span>

PD.48021584.2

~~December 12, 2025, and followed that position with proposed stipulated facts on December 17,~~
~~2024 and updated proposed stipulated facts on December 30, 2024. Plaintiff provided its response~~
~~at 5:00 p.m. on January 6, 2025.~~

> **Commented [BJK1]:** One more point—this needs to remain in. We are entitled to have the court see the efforts we made and the difficulties. It will be part of our presentation.

### Stipulated facts

1. The litigation underlying the present dispute was resolved on October 12, 2022, when the parties entered into the Confidential Settlement Agreement (the "Settlement Agreement") and this Court entered the Consent Permanent Injunction (the "Inunction").

2. The parties to the Settlement Agreement ~~are~~ are the Trial Lawyers College ("TLC") and the named Defendants. The Spence Foundation was not a party to the litigation or the Settlement Agreement.

3. The Injunction contained two provisions that prohibited ~~required~~ TLC from ~~to stop~~ using Defendants' ~~n~~Name, ~~i~~Image, or ~~l~~Likeness: the name, image, or likeness of any Defendant's family member(s) or the name, image, or likeness of Thunderhead Ranch. ~~.~~

4. The Injunction provided ~~an~~ exception~~s~~ for (a) the names, images, or likenesses of family members who were actually involved with TLC after October 12, 2022; and for (b) "factually and historically accurate references to TLC's lease of the Thunderhead Ranch from 1994-2020."

The Injunction contained a thirty day cure period for violations.

On October 31, 2022, TLC counsel stated in a letter to Defendants' counsel that "TLC has made every effort to remove [any references to the Defendants] from its archived materials, including its social media accounts….To the best of TLC's knowledge, no references to any of the Defendants' name, image, or likeness exist on TLC's social media accounts."

**Formatted:** Font: (Default) Times New Roman, 12 pt

**Commented [BJK2]:** Please advise why you have deleted this. It is an accurate quote.

4. 5.

6. At the time Defendants filed their Motion for Contempt on November 15, 2024, TLC's social media contained over two hundred images of Defendants, Defendants' family members, and Thunderhead Ranch, all of which were initially posted prior to the date of the Injunction, October 12, 2022.

**Commented [BJK3]:** Same question.

Beginning on December 18, 2025, TLC began to make changes to TLC's Facebook page, including deleting certain of the photographs that are the subject of Defendants' Motion for Contempt. Those changes, which were largely made during the week before the date of this Joint Submission, include removing certain photographs of Thunderhead Ranch from Facebook (but not Twitter). As of the date of this Joint Submission, TLC's Facebook page still contains roughly 115 photographs of the Defendants or their family members (who are not associated with TLC), including a photograph of John Zelbst on one of TLC's Facebook "cover photos."

**Commented [BJK4]:** Same question

5. The photographs and names of the Defendants or their family members that are on TLC's Facebook page as of the date of this Joint Submission include but are not limited to photographs of a book authored by Gerry Spence; a photograph of John and Clay Zelbst in court in Oklahoma; photographs of Kent Spence in a public restaurant and of Mr. Spence playing the harmonica; photographs of Rex Parris as a speaker and appearing at a formal

PD.48021584.2

~~event in California; a photograph of John Zelbst at the same event; and a photograph of~~
~~Joseph Low in a bar.  The photographs also include one of Thunderhead Ranch in 1937.~~

> **Commented [BJK5]:** Same question.

~~6.  TLC has not posted any images using the Defendants' name, image, or likeness since the~~
~~Injunction was entered.~~

7.  All social media posts complained of in Defendants' Motion for Contempt were initially
    posted prior to the date the Injunction was entered and ~~have been consistently~~have been
    available to the public on TLC's social media.~~since their initial posting.~~  TLC represents
    that it has been actively removing the social media posts for several weeks and that it
    intends to remove all of the identified posts.

> **Commented [BJK6]:** I appreciate this acknowledgment—it is the first I have seen it.

Paragraph 8 of the Settlement Agreement required Defendants to return property, including
~~memorial~~ plaques.  ~~"Plaques" are simply pieces of old board with a name burned on it,~~
~~such as this.~~

> **Commented [BJK7]:** Please advise why you dispute this.  And we will want the example included.

8.



**Formatted:** Font: (Default) Times New Roman, 12 pt

**Formatted:** Font: (Default) Times New Roman, 12 pt

~~TLC could not use boards containing the names of Defendants or Defendants' family members (who are not currently affiliated with TLC) without violating the Injunction.~~

**Commented [BJK8]:** Please advise why you dispute that TLC could not use the names of Defendants' or the family members.

9.  TLC has not provided Defendants with a list of people who want their boards~~, beyond identifying four memorial boards and the additional boards~~Plaques for certain individuals were ~~mentioned~~requested by John Sloan in an email in February 2023 and a letter sent by Maren Chaloupka in February 2024.

~~TLC's position, as expressed in the attached Exhibit A, was that boards would be provided to people who wanted them.~~

**Commented [BJK9]:** Why are you deleting this?

8.10.    TLC has not provided Defendants with an inventory of property that former Executive Director Laurie Goodman took from Thunderhead Ranch in May 2020 and stored in a commercial facility in Riverton, Wyoming.

9.11.    Representatives of Plaintiff and Defendants have communicated regarding the return of the ~~name boards~~plaques. ~~memorial plaques to TLC.~~

10.Defendants have not returned any ~~name boards~~plaques to TLC ~~plaques to TLC~~although Defendants have offered to ~~do so~~return them to individual alumni. ~~.~~

11.12.    ~~The plaques are relatively inexpensive to produce.~~

12.13.    T~~LC claims that the boards~~ ~~he plaques~~ have sentimental value and spiritual significance. ~~to certain of the people who purchased boards. .~~

**Issues before the Court**

~~The parties have conferred and determined that the following issues are the only disagreements which the Parties cannot resolve. The parties further agree that the arguments listed below are the only arguments currently advanced by the parties. Thus, the issues for the Court to resolve are:~~

1. ~~Whether the social media posts fall within the Injunction's carve-out for historically accurate references to TLC's lease of Thunderhead Ranch and, if so,not, whether TLC's failure to remove the posts amounts to contemptuous conduct.~~Defendants' Motion for Contempt.

TLC maintains that it was not obligated to remove social media posts which were posted prior to the date of the Injunction because such posts are historically accurate references to its time on Thunderhead Ranch and therefore fall within the scope of the Injunction's exception. TLC

> **Commented [BJK10]:** This is incorrect. We have repeatedly said we will provide to TLC upon the approval of the individuals.
>
> **Formatted:** Font: (Default) Times New Roman, 12 pt

> **Commented [BJK11]:** What is the foundation for this?

maintains that it has always understood that it was not obligated to delete old social media posts which predate the Injunction. Any efforts by TLC to remove old social media posts were undertaken because TLC does not wish to be associated with Defendants, not because TLC was obligated to do so under the Injunction. Moreover, TLC maintains that, even if the ~~continued~~ existence of ~~old~~ old posts on its social media page are violative of the Injunction, Defendants have 1) not met their burden to prove this conduct was contemptuous and 2) did not give adequate time for TLC to cure the issue before filing its Motion for Contempt. TLC also represents that it has taken down many of the posts identified by Defendants and continues to work to remove all of the posts.

Defendants maintain TLC has violated the plain language of the Injunction and that TLC's current position is contrary to TLC's representations and actions before the contempt Motion was filed. Defendants further maintain that if TLC were truly acting "because TLC does not wish to be associated with Defendants," TLC would not continue to display over 100 photographs of Defendants or their family members on TLC social media. Defendants further maintain ~~that such posts are not within the scope of the exception and are therefore violative of the Injunction. Specifically, Defendants maintain~~ that only references to the lease agreement itself are permissible under the Injunction and that photographs ~~the social media posts~~ are ~~1)~~ not "references." ~~and 2) do not pertain to the lease agreement. Defendants further argue that they have apprised TLC of the existence of the social media posts and TLC has, in the past, agreed to take them down. This, Defendants maintain, shows that TLC knew it was obligated to take the posts down. Consequently,~~ Defendants maintain that TLC's failure to take the posts down amounts to contemptuous conduct, based on the legal standard that TLC itself has advocated in this case. Finally, Defendants contend

that they are entitled to damages based on TLC's continued use of their (and their family members') and Thunderhead Ranch's names and images.

2. ~~Whether Defendants' unwillingness ' failure to provide  boards return the plaques to TLC as and when TLC directs  breaches is violative of the Settlement Agreement.~~ Plaintiffs' Motion to Enforce Settlement Agreement.

TLC maintains that the Settlement Agreement required Defendants to return the plaques to TLC without any additional conditions. TLC further maintains that the plaques at issue ~~are~~ are memorial plaques which were donated to TLC and are therefore owned by TLC. Moreover, ~~TLC's position is that~~ that the Settlement Agreement was executed only between the parties, and it was understood by all parties at the time of signing the Settlement Agreement that the plaques would be returned to TLC. Consequently, TLC asks this Court to order Defendants to return all plaques to TLC. However, to the extent there are any plaques bearing the names of Defendants to this lawsuit, TLC has no interest in receiving those plaques, and Defendants may keep them. Moreover, TLC disagrees with Defendants' contention that it did not comply with the local rules before filing its Motion to Enforce Settlement Agreement, as it clearly contacted Defendants' lead counsel, Steve Velkei, prior to filing the motion, and advised that its preferred method was resolution without court intervention, but that it would file a Motion to Enforce Settlement Agreement if Defendants would not agree to return the plaques.

Defendants maintain that the Settlement Agreement  must be construed together with the Injunction and that TLC may not possess or use any boards that bear the name of a Defendant or family member.  Defendants further maintain that the boards belong to the person who paid for them, and that TLC's correspondence about the boards with the actual owners and with Defendants proves that TLC shared such understanding until TLC filed its Motion to Enforce.

Defendants further maintain that~~- Defendants have consistently offered to make available to TLC or the boards' owners~~ any boards that the owners want, but that TLC has refused to identify other than a small number of the owners.  Finally, Defendants maintain that TLC forfeited any ability to enforce the Settlement Agreement by TLC's prior breaches and by rejecting Defendants' attempt to perform.  ~~either 1) does not require them to return the plaques to TLC, but rather only requires that the plaques be given to the alumni who donated them or 2) allows the Defendants to withhold the plaques until TLC provides a list of alumni who want the plaques returned. In the alternative, Defendants maintain that it is not required to return the plaques until TLC returns certain property to Defendants.~~   Nonetheless, Defendants have consistently been willing to provide any property to which TLC is entitled (or that the board owners want TLC to have), but are unwilling to simply store property for TLC until TLC wants particular property.

Finally, Defendants maintain that TLC has failed to comply with the applicable Local Rules governing motion practice in the District of Wyoming and that the Court may deny TLC's Motion to Enforce on that basis.

Respectfully submitted this _____ day of January, 2025.

/s/ Beth J. Kushner

Beth J. Kushner (admitted *pro hac vice*)
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI  53202
Telephone:  414-287-1373
bkushner@vonbriesen.com

James Fitzgerald
Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY  82001

PD.48021584.2

Telephone:  307-634-4000
jim@fitzgeraldlaw.com

ATTORNEYS FOR DEFENDANTS GERRY
SPENCE TRIAL INSTITUTE, GERALD L.
SPENCE, REX PARRIS, JOSEPH LOW, JOHN
ZELBST, KENT SPENCE AND GERRY
SPENCE METHOD AT THUNDERHEAD
RANCH, INC.


/s/_____

Christopher K. Ralston (admitted *pro hac vice*)
Lindsay Calhoun (admitted *pro hac vice*)
PHELPS DUNBAR LLP
Canal Place / 365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  504-566-1311
chris.ralston@phelps.com
Lindsay.calhoun@phelps.com

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P.O. Box 10700
Casper, WY  82602-3902
Telephone:  307-265-0700
pmurphy@wpdn.net

ATTORNEYS FOR PLAINTIFF
THE TRIAL LAWYERS COLLEGE


**<u>CERTIFICATE OF SERVICE</u>**


I hereby certify that true and correct copy of the foregoing document has been served electronically by transmission to an electronic filing service provider for service through the Court's CM/ECF system to all parties on January __, 2025.


PD.48021584.2

_/s/ Beth J. Kushner_

PD.48021584.2

**From:**                 Beth J. Kushner <beth.kushner@vonbriesen.com>
**Sent:**                 Tuesday, January 7, 2025 12:03 PM
**To:**                    Mark Ackal (1261); Chris Ralston (1358); Lindsay Calhoun (1315)
**Cc:**                    Joan Pawlak; jim@fitzgeraldlaw.com
**Subject:**            RE: TLC edits - Alternative Joint Submission.docx

See below.  Again, I am used to being a bit more thoughtful but trying my best.

**Beth J. Kushner | von Briesen & Roper, s.c.**
Direct: 414-287-1373 | Cell: 414-305-7794
beth.kushner@vonbriesen.com

---

**From:** Mark Ackal (1261) <Mark.Ackal@phelps.com>
**Sent:** Tuesday, January 7, 2025 11:52 AM
**To:** Beth J. Kushner <beth.kushner@vonbriesen.com>; Chris Ralston (1358) <Chris.Ralston@phelps.com>; Lindsay Calhoun (1315) <Lindsay.Calhoun@phelps.com>
**Cc:** Joan Pawlak <joan.pawlak@vonbriesen.com>; jim@fitzgeraldlaw.com
**Subject:** [EXTERNAL] RE: TLC edits - Alternative Joint Submission.docx

Dear Ms. Kushner,

Here are our responses to your points raised.

1.  **Why do you object to the inclusion of Mr. Ralston's letter?  Obviously, it is inconsistent with TLC's current position and we are entitled to show that to the Court.**

We do not believe that Mr. Ralston's letter is inconsistent with TLC's current position. Our aim in this document was to stipulate to facts that we can both agree to in order to narrow the issues. As you note, Defendants contend that the letter is contrary to TLC's current position. TLC disagrees. Instead of responding with argument, we thought it better to just remove this as a stipulated fact.   <span style="color:red">Then we simply stipulate to the letter and what it says.</span>

2.  **What is your dispute with the number and subjects of the posts on TLC's social media?  We were scrupulous in providing those and they are obviously relevant to the Court's analysis and to refute TLC's current legal argument.**

We are offering a concession on whether the social media posts featuring defendants were still available on TLC's social media. However, the exact number of posts is unknown to us and may be an important fact to establish should the Court reach your request for damages. Consequently, we will not concede at this time to the number of posts which were on TLC's social media. <span style="color:red">That is a fair point.  You can certainly move that to our position.</span>

3.  **Why does TLC dispute that it only began to remove photos within the past few weeks?  If you have an earlier time that TLC did so, please provide it.  I don't believe there is any dispute that TLC did not begin to remove photos until the contempt motion was filed.**

We do not dispute that TLC has begun to remove photos. The language used was argumentative and, again, we think it is best to present facts we can agree to without argument.   <span style="color:red">Feel free to tinker with the language to make clear when TLC began to remove photos.  I am fine with that.  You are aware of the importance of waiting until after the contempt motion was filed.</span>

4. **Why does TLC take the position that it has consistently asserted that the boards would be going to those who paid for them, yet not want the Court to see such communications as Ms. Chaloupka's representations to the owners of the very boards that are TLC's focus?**

We welcome the Court's review of the documents which have already been submitted. Simply put, the purpose of this exercise is not to create more argument. Rather, we view the Court's order as an opportunity to narrow the issues and focus on what has been submitted. Accordingly, we cannot agree to the inclusion of new exhibits at this time. Then we are at impasse. You have no record from which to argue that you have consistently taken that position; in fact, what is in the record is contrary to the position. You can say that Defendants would like the Court to see Ms. Chaloupka's communications with the two alumni and one staff person (Lipman) about these plaques.

We also do not believe extrinsic evidence is appropriate or required to interpret the unambiguous language of the settlement agreement. I'm a bit confused because you offered canons of construction that only apply when a contract is ambiguous. So you'll need to say that the Defendants' position is that the language of the injunction was unambiguous, that the settlement agreement left several terms unaddressed, and that the parties' behavior is (a) consistent with what we say is the plain language of the injunction; and (b) shows how the parties agreed to proceed with respect to the unaddressed terms.

**I believe that TLC can certainly make its legal arguments. However, I trust you agree that we are entitled to impeach those arguments.**

We agree you are entitled to make any argument or attempt at impeachment that are reasonable to make. Respectfully, this joint filing is not the time or place for such argument. Please understand that TLC's efforts in the latest version it sent to you were not designed to raise further contention, but rather were intended to honestly narrow the issues before the Court.

**We will need the inclusion of the explanation for the delay.**

There was no delay. TLC counsel informed you that it could not respond until the first week of January. Nonetheless, TLC was diligently reviewing your proposal and provided you with a timely response. It is unfortunate that this exercise has degraded to argument. Who's arguing? I'm not arguing. I'm simply a bit frustrated that I tried to accommodate your schedules (including the holidays) and it wasn't successful. No worries.

As it seems we are unable to agree on any set of stipulated facts or summary of the issues, it seems that your suggestion of a PDF containing the communications between you and TLC's counsel is now the best option. While we find this outcome less than optimal, we are willing to prepare this document for your review now. Please do so. I'll stand by to review. It's important that we include the sample board and the Chaloupka correspondence concerning same.

TLC again reiterates that these communications are not to be construed as a waiver of an argument or legal claim. TLC reserves all rights. So do we. Not sure either of us needs to keep saying it, but that's fine.

Best,

Mark Ackal

---

**From:** Beth J. Kushner <beth.kushner@vonbriesen.com>
**Sent:** Tuesday, January 7, 2025 11:13 AM
**To:** Mark Ackal (1261) <Mark.Ackal@phelps.com>; Chris Ralston (1358) <Chris.Ralston@phelps.com>; Lindsay Calhoun (1315) <Lindsay.Calhoun@phelps.com>
**Cc:** Joan Pawlak <joan.pawlak@vonbriesen.com>; jim@fitzgeraldlaw.com
**Subject:** TLC edits - Alternative Joint Submission.docx

I have not connected with the client or Mr. Fitzgerald, but in the interests of trying to move things along, have raised a number of questions.

In particular, I am unsure of the basis for the following:

1. Why do you object to the inclusion of Mr. Ralston's letter?  Obviously, it is inconsistent with TLC's current position and we are entitled to show that to the Court.
2. What is your dispute with the number and subjects of the posts on TLC's social media?  We were scrupulous in providing those and they are obviously relevant to the Court's analysis and to refute TLC's current legal argument.
3. Why does TLC dispute that it only began to remove photos within the past few weeks?  If you have an earlier time that TLC did so, please provide it.  I don't believe there is any dispute that TLC did not begin to remove photos until the contempt motion was filed.
4.  Why does TLC take the position that it has consistently asserted that the boards would be going to those who paid for them, yet not want the Court to see such communications as Ms. Chaloupka's representations to the owners of the very boards that are TLC's focus?

I believe that TLC can certainly make its legal arguments.  However, I trust you agree that we are entitled to impeach those arguments.

Our edits were a good faith attempt to stay with facts that cannot seriously be disputed because they are TLC's own communications (or similarly credible evidence).  We will respect your request not to edit your arguments or the statements of your position, but we are understandably concerned with TLC's apparent attempt to skew the record.

I do not anticipate that Mr. Fitzgerald or the client would take a different view of the above response but will promptly advise of any differences.  Otherwise, I believe that we might wish to prepare a PDF that shows the respective communications and submit that to the Court.  If you wish to do so, I'll obviously want to review before you do.  We are happy to do so, affording you the same courtesy.

Looking forward to your response.

---

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.